UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-cv-00018-D

| | |
|---|---|
| FREDRIC N. ESHELMAN, <br><br> Plaintiff, <br><br> v. <br><br> PUMA BIOTECHNOLOGY, INC., <br><br> Defendant. | **Dr. Eshelman's Response in Opposition To Defendant's Motion for a Protective Order to Stay Discovery** |

## STATEMENT OF THE CASE AND THE FACTS

Plaintiff Fredric N. Eshelman ("Dr. Eshelman") respectfully submits this Memorandum in Opposition to Defendant Puma Biotechnology, Inc.'s ("Puma") Motion for a Protective Order to Stay Discovery ("Motion to Stay"). Dr. Eshelman filed this defamation action because Puma—in a widely-distributed investor presentation ("Defamatory Presentation")—knowingly and falsely accused Dr. Eshelman of having personally engaged in fraud while CEO of a North Carolina company. Puma published that false accusation to retaliate against Dr. Eshelman for questioning Puma's current Board of Directors. Although Puma has contracted with a North Carolina bank to solicit investments from people in North Carolina, has accepted capital from numerous investors in North Carolina (including Dr. Eshelman), and knowingly defamed Dr. Eshelman, a North Carolina resident, Puma moved to dismiss for lack jurisdiction and venue. And, although there is overwhelming evidence that Puma's made those defamatory statements about a North Carolina resident into North Carolina, Puma moved to dismiss for failure to state a claim pursuant to *California*'s Code of Civil Procedure.

On May 3, 2016, *after* Puma filed its Motion to Dismiss, the Court ordered the parties to hold a Rule 26(f) conference by June 2, 2016 and to serve initial disclosures within fourteen (14) days of the conference. On June 3, in compliance with the Court's order and the Federal Rules of Civil Procedure,

Dr. Eshelman served his first sets of requests for production and interrogatories. Instead of preparing responses to these properly propounded discovery requests, Puma claims that it is entitled to a total stay of discovery simply because it has filed a Motion to Dismiss that is still pending. But the Motion to Stay should be denied for five reasons: (1) the Federal Rules of Civil Procedure do not automatically stay discovery upon the filing of a motion to dismiss; (2) Puma is not likely to prevail on its Motion to Dismiss; (3) a stay of discovery would be highly prejudicial to Dr. Eshelman; (4) California's Code of Civil Procedure does not apply; and (5) Dr. Eshelman's discovery requests seek discovery of issues relevant to the pending Motion to Dismiss.

**ARGUMENT**

## I. THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT STAY DISCOVERY UPON THE FILING OF A POTENTIALLY DISPOSITIVE MOTION TO DISMISS AND PUMA HAS NOT PROVIDED GOOD CAUSE WHY THE DEFAULT RULE SHOULD BE MODIFIED HERE.

Motions "which seek to prohibit or delay discovery are not favored" and courts "need[] to remain mindful of [their] responsibility to expedite discovery and minimize delay." *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988). While Congress explicitly instituted mandatory stay provisions for certain kinds of actions in federal court, such as actions subject to the Private Securities Litigation Reform Act, it has ***not*** done so generally for motions to dismiss, even dispositive ones. *See* 15 U.S.C.A. § 78u-4 (b)(3). Were such a general rule to exist, a "court would have to stay discovery in nearly every case in which a party files a motion to dismiss" because "[p]ractically every motion to dismiss . . . seeks dismissal of all claims against a party." *Fed. Ins. Co. v. S. Lithoplate, Inc.*, No. 5:12-CV-793-F, 2013 WL 4045924, at *1 (E.D.N.C. Aug. 8, 2013). When a party moves for a protective order to stay discovery, the party seeking to overturn the default rule – and prevent discovery from proceeding as contemplated by the Federal Rules – "bears the burden of showing good cause and reasonableness" for the stay. *Id*.

## II. PUMA IS NOT LIKELY TO PREVAIL ON ITS MOTION TO DISMISS.

Discovery should proceed because Puma's Motion to Dismiss is not likely to be granted, for the reasons set forth in Dr. Eshelman's Opposition to Puma's Motion to Dismiss, which is incorporated here by reference and summarized below. ***First***, this Court has jurisdiction over Puma because Puma

contracted with a North Carolina bank to solicit investments from people in North Carolina,[1] accepted capital from investors in North Carolina,[2] and then knowingly defamed one of those North Carolina residents to a global audience, including to people in North Carolina.[3] *See Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1069 (4th Cir. 1982) (finding jurisdiction over California corporation with no contacts with North Carolina except for letters and phone calls giving rise to claim for tortious interference); *see Saxon v. Smith*, 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997) (North Carolina court had jurisdiction over out-of-state defendant alleged to have sent newsletters throughout the United States including some in North Carolina that defamed North Carolina resident).

*Second*, Dr. Eshelman's Complaint alleges with more than sufficient detail that Puma knowingly and falsely stated that Dr. Eshelman engaged in fraud, alleging in detail that Puma published and distributed the Defamatory Presentation despite having access to publicly available court records and Congressional testimony vindicating Dr. Eshelman of any wrongdoing. *See* Compl., ¶¶ 50, 54, 70, 75. The Declaration of Alan Auerbach only confirms this, showing that Puma published the defamatory accusation about Dr. Eshelman *after* learning that the proxy contest was already over, for the sole purpose of retaliating against Dr. Eshelman for challenging Puma's board.[4]

*Third*, California's Code of Civil Procedure does not apply because (1) it is preempted by Federal Rules of Civil Procedure 12 and 56. *See 3M Co. v. Boulter*, 842 F. Supp. 2d 85, 101-11 (D.D.C. 2012) (holding that DC's anti-SLAPP statute could not be applied in federal court because it attempts to answer the same question that Federal Rules of Civil Procedure 12 and 56 cover). (2) It is procedural. *See id*. at 108; see *Stuborn Ltd. P'ship v. Bernstein*, 245 F. Supp. 2d 312, 316 (D. Mass. 2003); *see also The Saint Consulting Grp., Inc. v. Litz*, No. 10-10990-RGS, 2010 WL 2836792, at *1 (D. Mass. July 19, 2010). (3) Even if it was substantive, it would not apply because the substantive law of North Carolina governs this case. In North Carolina, "[f]or actions sounding in tort, the state **where the <u>injury</u> occurred** is considered

---

[1] *See* Declaration of Dr. Fredric Eshelman, Dkt. 28-1 (E.D.N.C. filed May 2, 2016), ¶ 19, EX2 ("Eshelman Decl."); *see* Compl., *Eshelman v. Puma,* Dkt. 1 (E.D.N.C. filed Feb. 2, 2016) ("Compl.")
[2] *See* Eshelman Decl. ¶ 19; *see* Compl. ¶ 10,
[3] *See* Eshelman Decl. ¶ 31; *see* Compl. ¶¶ 54, 75.
[4] *See* Motion to Dismiss and Index of Exhibits, *Eshelman v. Puma,* Dkt. 20 (E.D.N.C. filed Apr. 4, 2016), Ex. 1, ¶ 7.

the situs of the claim." *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988) (applying Florida law to negligence and strict liability claims where allegedly defective chair caused injury to the plaintiff in Florida) (emphasis added); *see also Harco Nat'l Ins. Co. v. Grant Thornton LLP, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010).* (4) It has ***never*** been applied against a North Carolina citizen in federal court in North Carolina, such that doing so here would violate Dr. Eshelman's constitutional right to due process. *See BMW of N. Am. v. Gore*, 517 U.S. 559, 560 (1996) (where "[e]lementary notions of fairness enshrined in…constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose.").

### III. A STAY OF DISCOVERY WOULD BE UNFAIRLY PREJUDICIAL TO DR. ESHELMAN.

Puma damaged Dr. Eshelman's reputation and business by knowingly and falsely accusing him of fraud. *See* Compl. ¶¶ 39-45. This is an ongoing harm and Dr. Eshelman has been damaged by having to expend resources to respond to the defamatory statements and to attempt to repair his reputation. *Id*. As long as Puma delays adjudication of its intentional and malicious conduct, the harm to Dr. Eshelman's reputation and business will continue to grow and fester. In addition, memories of witnesses will continue to fade and third parties may delete or destroy potentially relevant documents. As such, any stay of discovery would be highly prejudicial to Dr. Eshelman.

Puma faces no prejudice. Since Puma's Motion to Dismiss is meritless, Puma is going to be compelled to engage in discovery sooner or later. Moreover, Puma argues that, if Puma's Motion to Dismiss was to prevail, then California's Code of Civil Procedure would apply and Dr. Eshelman should be required to reimburse Puma for the expenses it might have incurred engaging in discovery. Thus, Puma itself does not believe that it would be prejudiced by discovery proceeding.

### IV. THE STAY OF DISCOVERY IN CALIFORNIA'S CODE OF CIVIL PROCEDURE DOES NOT APPLY.

Even if California's "special motion to strike" procedure could be applied in this Court, its discovery-limiting procedure could not. *See Haack v. City of Carson City*, 3:11-cv-00353-RAM, 2012

WL 3638767, at *6 (D. Nev. Aug. 22, 2012); *Verizon Delaware, Inc. v. Covad Commc'n Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). In the event that Puma's Motion is deemed a "special motion to strike," Dr. Eshelman has cross-moved pursuant to Federal Rule of Civil Procedure 56(d) and requested that Defendants' Motion be denied as premature pursuant to Rule 56(d)(1) or, alternatively, that the Court order discovery to proceed pursuant to Rule 56(d)(2). Because actual malice concerns Puma's subjective state of mind, most of the evidence of actual malice is ***in Puma's exclusive possession***. Indeed, that is why "the issue of 'actual malice' . . . ***cannot*** be properly disposed of . . . where there has been no discovery." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 848 (9th Cir. 2001); *see Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002). Full discovery of all evidence relevant to actual malice is essential because defendants almost never admit "to entertaining serious subjective doubt about the authenticity of [the] article[s] [they] publish[]." *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1087 (9th Cir. 2002).

## V. DR. ESHELMAN'S DISCOVERY REQUESTS ARE HIGHLY RELEVANT TO THE DETERMINATION OF PUMA'S MOTION TO DISMISS.

As Puma itself admits, a court that is considering a protective order to stay discovery with a motion to dismiss pending "should not stay discovery which is necessary to gather facts in order to defend against the motion." *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988). Here, Dr. Eshelman's discovery requests are directly relevant to the determination of Puma's Motion to Dismiss, specifically with regards to the issues of jurisdiction, venue, transfer, and the purported California "special motion to strike" for lack of actual malice. RFPs 6-9, 14-18, 46-50, and 52-56 and Interrogatories 3 and 5 all seek information and documents relevant to Puma's jurisdictional, venue, and transfer claims. *See* RFPs Nos. 6-9, 14-18, 46-50, 52-56; *see* Interrogatories Nos. 3, 5. These RFPs and Interrogatories seek documents and information that would show how, when, and to whom in North Carolina Puma, including its agents, sent the Defamatory Presentation and other important communications and documents. *See id*. Responses to these requests would also show that many of the key fact witnesses reside in North Carolina. These facts are highly relevant to Puma's Motion to Dismiss for lack of jurisdiction and venue.

In addition, Dr. Eshelman's discovery requests seek documents and information regarding Puma's knowledge of the falsity of its statements, which is relevant to Puma's purported "special motion to strike" pursuant to California's Code of Civil Procedure for Puma's purported lack of actual malice. Responses to RFPs 1-13, 19-39, and 41-56 will show Puma's intent and motives in publishing the defamatory investor presentation and defaming Dr. Eshelman, what Puma knew and found out about the false information it ultimately included in its Defamatory Presentation, and when it discovered it. *See* RFPs Nos. 1-13, 19-39, 41-56. Responses to Interrogatories 1-4 will show who at Puma reviewed and investigated the claims it made about Dr. Eshelman in the Defamatory Presentation and how it conducted that research. *See* Interrogatories Nos. 1-4. All of this information goes directly to who at Puma discovered that the statements about Dr. Eshelman were false, what they discovered, how they discovered it, and the fact that despite this knowledge, Puma still went forward with publishing and disseminating the false statements. This is all relevant to Puma's reckless disregard for the truth when it published and disseminated the Defamatory Presentation, which will directly rebut the claims Puma makes in its purported "special motion to strike" under California's Code of Civil Procedure.

## CONCLUSION

For the reasons stated herein, Dr. Fredric N. Eshelman respectfully requests that Defendant's Motion for a Protective Order to Stay Discovery be denied and that Puma Biotechnology, Inc. be ordered to provide its initial disclosures and respond to Fredric N. Eshelman's First Set of Requests (Nos. 1-62) for the Production of Documents to Puma Biotechnology, Inc. and Fredric N. Eshelman's First Set of Interrogatories (Nos. 1-5) to Puma Biotechnology, Inc. within twenty-one (21) days.

Date: June 20, 2016

                            Respectfully Submitted

/s/ Megan L. Meier
Attorneys for Plaintiff
Thomas A. Clare (of counsel)
Elizabeth M. Locke (of counsel)
Megan L. Meier (of counsel)
CLARE LOCKE LLP
902 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
megan@clarelocke.com

Andrew K. McVey
North Carolina State Bar No. 20217
(Local Civil Rule 83.1 Counsel)
Murchinson, Taylor & Gibson PLLC
16 North Fifth Avenue
Wilmington, NC 28401-4537
Telephone: 910-763-2426
Facsimile: 910-763-6561
Email: amcvey@murchisontaylor.com

*Attorneys for Plaintiff Fredric N. Eshelman*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff Fredric N. Eshelman's Response In Opposition To Defendant's Motion for a Protective Order to Stay Discovery was filed with the Clerk of court using the CM/ECF system on June 20, 2016, which will send notification of such filing to the following:

Pressly M. Millen
Womble Carlyle Sandridge & Rice, PLLC
Post Office Box 831
Raleigh, NC 27602
Telephone: (919) 755-2100
Facsimile: (919) 755-6067
Email: pmillen@wcsr.com

Brant W. Bishop, P.C.
Wilkinson, Walsh + Eskovitz LLP
1900 M Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
Fax: (202) 847-4005
Email: bbishop@wilkinsonwalsh.com

Sean Eskovitz
Wilkinson, Walsh + Eskovitz LLP
1158 26th Street, Suite 883
Santa Monica, CA 90402
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
Email: seskovitz@wilkinsonwalsh.com

Dated: June 20, 2016　　　　　　　　　　　　By: /s/ Megan L. Meier
　　　　　　　　　　　　　　　　　　　　　　　　Megan L. Meier