MIN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-cv-00018-D

| | |
|---|---|
| FREDRIC N. ESHELMAN, | **Memorandum In Support Of** |
| Plaintiff, | **Dr. Eshelman's Motion For A Jury** |
| | **Instruction And To Compel The** |
| v. | **Production Of Documents And** |
| | **Information Responsive To Dr.** |
| PUMA BIOTECHNOLOGY, INC. | **Eshelman's First Set of Requests for** |
| | **Production And First Set of** |
| Defendant. | **Interrogatories** |

Plaintiff Dr. Fredric N. Eshelman submits this memorandum in support of his Motion For a Jury Instruction and to Compel The Production of Documents and Information Responsive To Dr. Eshelman's First Set of Requests for Production and First Set of Interrogatories, which is being filed contemporaneously.

**INTRODUCTION, NATURE OF THE CASE, AND STATEMENT OF THE FACTS**

Dr. Eshelman filed this defamation action because Puma Biotechnology, Inc. ("Puma") published a defamatory investor presentation falsely accusing him of committing fraud while he was the CEO of PPD. Since the proxy contest was effectively over *before* the defamatory investor presentation was published, it appears that Puma made the false accusation not for the purpose of informing stockholders but to retaliate against Dr. Eshelman for daring to question Puma's leadership and for asking Puma's stockholders to elect him to Puma's board. When Dr. Eshelman asked Puma to correct its false accusation, Puma refused to do so and instead dispatched its attorneys to publicly threaten that they would "ensure that shareholders are aware of" undisclosed "information about [Dr. Eshelman] and [his] past activities" if Dr. Eshelman

made any "further public statements or filings about Puma, its Board, and its management." (Compl. at Ex. B.) Because of publicly available information about Dr. Eshelman and Puma's ongoing business relationship with PPD, Dr. Eshelman believes that Puma *knew* that its accusation against him was false (or, at a minimum, recklessly disregarded whether it was true). In light of the retaliatory investor presentation and threats that Puma's lawyers have made against Dr. Eshelman, there is reason to believe that Puma employees have made other statements—and conducted internet research—further evidencing Puma's rivalry, ill will, and hostility toward Dr. Eshelman.

Dr. Eshelman files this motion because Puma has failed to preserve and refused to produce electronic documents that are highly relevant to Puma's actual malice, including web browser histories, web search histories, and websites visited by those who worked on the defamatory investor presentation. In addition, Puma has objected to producing documents that it believes support its contentions and that may be offered as evidence in this litigation, and has interposed numerous unspecific general objections that make it impossible for Dr. Eshelman to know what Puma is withholding. For the above reasons, Dr. Eshelman respectfully seeks an order: (1) ordering a jury instruction regarding an adverse inference that may be drawn from Puma's failure to preserve relevant web browser histories and web search histories; (2) overruling all objections to—and compelling Puma to produce all documents responsive to—Request for Production Nos. 26, 27, 28, 33, 58, and 59; and (3) overruling all of Puma's general objections.

# ARGUMENT

## I. PUMA'S INTERNET RESEARCH ABOUT DR. ESHELMAN.

### A. Puma Failed To Preserve The Pre-Publication Web Browser Histories And Web Search Histories Of The People Who Worked On The Defamatory Investor Presentation, The Most Probative Evidence Of Puma's Actual Malice.

In this digital age, the very first step people take when they want to learn about someone is to run a Google search, to see what is posted on the internet about the person. The online searches people choose to run about a person—and the searches they choose *not* to run—speak volumes about their biases and agenda. Similarly, the websites they choose to visit—and the websites they choose to disregard—likewise reveal perhaps the most important information about their regard *or disregard* for the truth about the person they are researching. As such, in 2016, the most probative evidence of actual malice is usually contained in the web browser searches and web browser histories of a defamation defendant. Unless the user modifies the settings, Google Chrome typically retains web browser searches and web browser histories on a person's computer for a period of time, after which those electronic documents are deleted.

On January 7, 2016, Puma published a defamatory investor presentation falsely accusing Dr. Eshelman of fraud. As one would expect, Puma used the internet to review websites mentioning Dr. Eshelman before publishing the defamatory investor presentation. (Puma's Resp. to Irog. 1 (Ex. 6).)[1]

On January 20, 2016, Dr. Eshelman sent a retraction demand to Puma, putting Puma on formal written notice that it should anticipate a defamation lawsuit if it did not retract the

---

[1] All citations to exhibits refer to those exhibits attached to Plaintiff's aforementioned Motion to Compel.

defamatory investor presentation.[2]  As such, Puma reasonably anticipated litigation no later than January 20, 2016, and had an obligation on that date to "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  *Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 818-19 (E.D.N.C. 2008) (internal citations omitted).  Because the web browser searches, web browser histories, and websites visited by those who worked on the defamatory investor presentation are likely the most important evidence regarding Puma's disregard for the truth about Dr. Eshelman, Puma had an obligation—on January 20, 2016—to preserve those electronic documents by modifying its Chrome settings to suspend their routine destruction.  *Id.*  It failed to do so.

Dr. Eshelman sought the web browser histories and web search histories of those who worked on the defamatory investor presentation (*see* Ex. 1 at RFPs 26-27), but Puma's counsel has indicated that Puma failed to preserve most of the documents responsive to these requests, even though they existed on January 20, when Puma reasonably anticipated litigation.[3]  Puma's failure has resulted in the destruction of arguably the most important evidence regarding actual malice and has therefore materially prejudiced Dr. Eshelman's ability to prove his defamation

---

[2] *See* Ex. B. to Compl. ("Please let me know immediately whether Puma will set the record straight by issuing a public apology and retracting the investor presentation.  If I do not receive your response by the end of the week, I … will have no choice by to proceed with legal action.")

[3] *See* Ex. 11 at Nov. 14, 2016 Email from Paul Sampson to Megan Meier ("Dr. Eshelman's complaint was filed on February 2, 2016.  Shortly thereafter, Puma issued an internal hold notice requiring relevant individuals to preserve documents related to Dr. Eshelman's claims.  The hold notice did not identify web browser histories as among the type of "document" to be preserved.  On May 6, 2016, we received from you a letter asking Puma to collect and preserve, among other things, "web browser histories" of individuals involved in the drafting of the Investor Presentation.  This letter was sent more than 90 days after the filing of the complaint, and exactly 120 days after the publication of the Investor Presentation.  Google Chrome, the market's most popular web browser and the browser of choice at Puma, retains web browser history for only 90 days.  Accordingly, the information sought in RFPs 26-28, to the extent they call for web browser histories or searches, no longer exists and did not exist at the time of your letter, and we have been unable to retrieve it.")

claim.  Although it is not possible to fully remedy this situation, Dr. Eshelman respectfully requests a jury instruction to help mitigate the harm that Puma has caused by failing to comply with its discovery obligations.  Even if Puma did not act in bad faith, such an instruction is appropriate—and necessary—in these circumstances.  *See Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008) (finding a reversible abuse of discretion in the district court's failure to grant an adverse instruction when the defendant allowed relevant electronic documents to be destroyed because of routine internal procedures, even without a showing of bad faith); *see also Powell*, 591 F. Supp. 2d at 818-21 (finding that adverse jury instruction was appropriate for destruction of relevant documents).

   **B. Puma Refuses To Produce Web Browser Histories, Web Search Histories, Websites, And Documents Dated After The Filing Of The Complaint And Related To Puma's Other Statements About Dr. Eshelman.**

In response to RFPs 26-28, Puma has also ***refused*** to produce web browser histories, search histories, documents, and websites used by Puma in making statements about Dr. Eshelman where those documents are dated after the filing of the complaint.  (Ex. 2.)  This objection is meritless.  While actual malice is measured at the time of publication, the United States Supreme Court has explained that "***subsequent*** statements of the defendant" are relevant to the existence of actual malice.  *See Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (quoting 50 Am. Jur. 2d § 455).[4]  Indeed, "some types of evidence [] relate back and provide inferential evidence of defendant's knowing or reckless disregard of falsity at the time of publication." *Eramo v. Rolling Stone*, No. 15-cv-00023, 2016 WL 5234688, at *7 (W.D. Va. Sept. 22, 2016) (internal citation omitted).  And "[c]ircumstantial evidence showing reckless disregard may

---

[4] Emphasis added unless otherwise noted.

derive from the defendant's words or acts before, at, *or after* the time of the communication." *Id.*

In response to RFPs 26-28, Puma also objects that the phrase "Puma's other statements about Dr. Eshelman" is vague and undefined. (Ex. 2.) This objection is likewise meritless. These are plain words conveying an unambiguous meaning, and Dr. Eshelman's counsel clarified during the meet-and-confer process that the requests seek documents relating to *all statements* Puma has made about Dr. Eshelman, whether in the Investor Presentation or otherwise. In light of the false and defamatory statements that Puma published about Dr. Eshelman in the Investor Presentation, there is reason to believe that Puma has likely made other statements about Dr. Eshelman that would indicate the existence of Puma's "rivalry, ill will, or hostility" toward Dr. Eshelman. *Herbert*, 441 U.S. at 164 n.12 (quoting 50 Am. Jur. 2d § 455). Such evidence is relevant to Puma's actual malice. *Id.*

## II. ALL POTENTIAL TRIAL EXHIBITS AND OTHER RELEVANT DOCUMENTS SHOULD BE PRODUCED NOW, EVEN IF THEY NEED NOT BE SPECIFICALLY IDENTIFIED UNTIL A LATER DATE.

**RFP 58** seeks the production of "all documents, tangible materials, or demonstrative evidence that you intend to introduce or use as evidence at trial or any other hearing in this action." (Ex. 1.) Puma objected that the request "would vary the scope and timing of pretrial disclosures under the Court's rules and scheduling orders." (Ex. 2.) Puma's objection is meritless. The request does not require Puma to identify which documents it intends to use at trial. Instead, the request requires only that—if Puma has a document that Puma intends to use as a trial exhibit in its possession, custody, or control—Puma produce it. Documents that a party intends to introduce at trial are highly relevant and plainly discoverable, and federal courts have previously compelled their production in response to RFPs prior to the deadline for the identification of exhibits. *See, e.g., Wilson v. Thompson/Center Arms Co.,* No. 05-cv-6493, 2006

6
Case 7:16-cv-00018-D  Document 68  Filed 12/06/16  Page 6 of 11

WL 3524250, *1 (E.D. La. Dec. 5, 2006) (compelling the production of documents the defendants intended to introduce at trial in response to an RFP).

Puma raised similar objections in response to **RFP 33** and **RFP 59**—which seek "***documents*** that Puma contends support, establish, demonstrate, or show that Dr. Eshelman perpetrated, committed, or otherwise had culpable involvement in fraud in connection with the Ketek clinical trial" and "***documents*** containing any admission you contend any party to this lawsuit, or anyone acting on a party's behalf, made relevant to the issues raised by the claims or defenses in this action." (Ex. 2.) As with **RFP 58**, Puma's objections are meritless because the requests seek only the production of highly relevant ***documents***—not the identification or description of any contentions or admissions. Therefore, Puma's objections should be overruled and all responsive documents should be produced without further delay.

## III. ALL OF PUMA'S GENERAL OBJECTIONS SHOULD BE OVERRULED.

In responding to Dr. Eshelman's Requests for Production, Puma relies on numerous unspecific "***General*** Objections and Conditions." (Ex. 2 at 23-25.) By way of example only, Puma interposes general objections to producing documents that: (1) are equally available from third parties; (2) do not specifically refer to the events which are the subject matter of this litigation; (3) are either not relevant to the claims or defenses or the parties or the production of which would not be proportional to the needs of this case.[5] Puma also raises numerous general objections in response to Dr. Eshelman's Interrogatories. (Ex. 6.) Puma's general objections are improper. Rule 33 requires that "[t]he grounds for objecting to an interrogatory ***must*** be stated with ***specificity***." Fed. R. Civ. P. 33(b)(4). Rule 34 likewise requires that "[f]or each item or

---

[5] Puma also made general objections relating to the attorney-client privilege and the work product doctrine. Dr. Eshelman does not challenge general objections to privilege because documents and information withheld on those bases will be set forth on a privilege log as agreed by the parties in the Joint Discovery Plan.

category, the response must either state that inspection and related activities will be permitted as requested or state *with specificity* the grounds for objecting to the request" and that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2).

General objections are highly disfavored in the Fourth Circuit. *See Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238 (E.D.N.C. 2010) (mere recitation of the familiar litany that a request is overly broad, burdensome, oppressive, and irrelevant does not constitute a specific objection); *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D.W. Va. 2010) ("General objections to discovery, without more, do not satisfy the burden of the responding party under the Federal Rules of Civil Procedure to justify objections to discovery because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); *Brown v. Blue Cross & Blue Shield of Alabama*, No. 13-cv-121, 2014 WL 3519100, *6 (W.D.N.C. July 15, 2014) ("[T]he *boilerplate language used by Defendants constitutes a waiver of their objections* on the grounds asserted—that the requests were 'overly broad, burdensome, immaterial, remote in time frame, and not reasonably calculated to lead to the discovery of admissible evidence.'").

As a practical matter, Puma's boilerplate general objections make it impossible for Dr. Eshelman to know what Puma is withholding (unless those documents and information are set forth on a privilege log). For example, as long as Puma's general objections remain, there is no way for Dr. Eshelman to know what requested documents Puma is withholding because it believes they are "not relevant to the claims or defenses of the parties," or the criteria Puma is using to determine whether something is relevant. Nor can Dr. Eshelman tell what documents Puma is withholding because they are "equally available from third parties," as recited in Puma's

8
Case 7:16-cv-00018-D   Document 68   Filed 12/06/16   Page 8 of 11

general objections. Indeed, it is not appropriate for Puma to withhold responsive documents just because they are "equally available from third parties" *at all*, let alone on the basis of an unspecific general objection wholly untethered to any particular request. Similarly, there is no way for Dr. Eshelman to know whether Puma is withholding internal emails that criticize Dr. Eshelman but refer to him using a pronoun or nickname, on the basis of the general objection that such documents "do not specifically refer to the events which are the subject matter of this litigation." That is why the Federal Rules require that objections be stated with specificity and state whether any responsive materials are being withheld on the basis of each objection. Dr. Eshelman respectfully requests that the Court overrule all of Puma's general objections, except for those relating to the attorney-client privilege and the work product doctrine.

## CONCLUSION

For the reasons stated above, Dr. Eshelman seeks an order: (1) ordering a jury instruction regarding an adverse inference that may be drawn from Puma's failure to preserve relevant web browser histories and web search histories; (2) overruling all objections to—and compelling Puma to produce all documents responsive to—Request for Production Nos. 26, 27, 28, 33, 58, and 59; and (3) overruling all of Puma's general objections.

This 6th day of December 2016.  Respectfully Submitted,

/s/ Megan L. Meier
Andrew K. McVey
North Carolina State Bar No. 20217
(Local Civil Rule 83.1 Counsel)
Murchison, Taylor & Gibson PLLC
16 North Fifth Avenue
Wilmington, NC 28401-4537
Telephone: 910-763-2426
Email: amcvey@murchisontaylor.com

Thomas A. Clare (of counsel)
Elizabeth M. Locke (of counsel)
Megan L. Meier (of counsel)
CLARE LOCKE LLP
902 Prince Street
Alexandria, VA 22314
Telephone (202) 628-7400
Email: tom@clarelocke.com
Email: libby@clarelocke.com
Email: megan@clarelocke.com
*Attorneys for:*
*Dr. Fredric Eshelman*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing document was filed with the Clerk of the Court using the CM/ECF system on December 6, 2016, which will send notification of such filing to the following:

Pressly M. Millen
Womble Carlyle Sandridge & Rice, PLLC
Post Office Box 831
Raleigh, NC 27602
Telephone: (919) 755-2100
Facsimile: (919) 755-6067
Email: pmillen@wcsr.com

Brant W. Bishop, P.C.
Wilkinson, Walsh + Eskovitz LLP
1900 M Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
Fax: (202) 847-4005
Email: bbishop@wilkinsonwalsh.com

Sean Eskovitz
Wilkinson, Walsh + Eskovitz LLP
1158 26th Street, Suite 883
Santa Monica, CA 90402
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
Email: seskovitz@wilkinsonwalsh.com

Paul J. Sampson
Wilkinson, Walsh + Eskovitz LLP
1900 M Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4033
Fax: (202) 847-4005
Email: psampson@wilkinsonwalsh.com

Dated: December 6, 2016                              By: /s/ *Megan L. Meier*
                                                     Megan L. Meier