IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-18-D

| | | |
|---|---|---|
| FREDRIC N. ESHELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PUMA BIOTECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On February 2, 2016, Fredric N. Eshelman ("Eshelman") filed a complaint against Alan. H. Auerbach ("Auerbach") and Puma Biotechnology, Inc. ("Puma") alleging libel per se and libel per quod [D.E. 1, 5]. On April 4, 2016, Puma and Auerbach moved to dismiss Eshelman's complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted, moved to transfer the case, moved for relief under California's Anti-SLAPP statute [D.E. 20], and filed a memorandum in support [D.E. 21]. On May 2, 2016, Eshelman voluntarily dismissed Auerbach as a defendant [D.E. 27], responded in opposition to Puma's motion [D.E. 28], and filed a cross-motion concerning Puma's motion for relief under the Anti-SLAPP statute [D.E. 29]. On May 19, 2016, Puma replied [D.E. 31]. On November 23, 2016, with leave of the court, Eshelman responded to Puma's reply [D.E. 55, 62]. On December 7, 2016, Puma replied to Eshelman's supplemental response [D.E. 69]. As explained below, the court denies Puma's motion to dismiss for lack of personal jurisdiction, denies Puma's motion to transfer, denies Puma's motion to dismiss for failure to state a claim, denies Puma's motion for relief under California's Anti-SLAPP statute, and dismisses as moot Eshelman's cross-motion concerning the Anti-SLAPP statute.

I.

Eshelman resides in Wilmington, North Carolina. Compl. [D.E. 5] ¶ 5. Eshelman founded Pharmaceutical Product Development ("PPD"). Id. Puma is a Delaware corporation based in Los

Angeles, California. Id. ¶ 6. More than 50 Puma stockholders (including Eshelman) reside in North Carolina. See id. ¶ 10.

On November 1, 2001, PPD contracted with Aventis Pharmaceuticals ("Aventis") for research services concerning "a clinical study . . . to determine the safety and effectiveness" of the drug Ketek. Id. ¶¶ 22–23. During the Ketek trial, a clinical investigator falsified documents. Id. ¶¶ 24–25. Eshelman was the CEO of PPD when these events occurred. Id. ¶ 23.

Between May 18 and June 4, 2015, Eshelman acquired stock in Puma. [D.E. 28-1] ¶ 19. On October 28, 2015, Eshelman solicited proxy votes for a proposal to increase Puma's board of directors from five to nine directors, and proposed that Eshelman and three others be nominated to the new board positions. Compl. ¶ 29; [D.E. 20-6, 22]. On December 10, 2015, Puma responded to Eshelman's proxy solicitation by mailing a consent revocation to stockholders, including those in North Carolina, which directed stockholders to the homepage of Puma's investor-relations website for further consent-revocation materials. Compl. ¶ 10; [D.E. 20-5] 52.

On January 7, 2016, Puma posted a link on the homepage of Puma's investor-relations website to download a .pdf file of an "Investor Presentation" addressing Eshelman's proposal. Compl. ¶ 33. Three slides of the Investor Presentation were titled "Eshelman Continues to Demonstrate a Lack of Integrity." Id.; [D.E. 5-1] 13–15. One of those slides stated that "Eshelman's misrepresentations are no surprise given his history," that Eshelman was the CEO of PPD "when it managed a clinical trial during the development of the antibiotic drug Ketek," that "[f]raud was uncovered in this trial by the FDA's Office of Criminal Investigation," that "[a]s [CEO] of PPD, Eshelman was forced to testify before Congress regarding PPD's involvement in this clinical trial fraud in 2008," and that "Eshelman was replaced as CEO for PPD in 2009." Compl. ¶ 33; [D.E. 5-1] 14 (emphasis omitted). Another slide with the same title stated that "Puma's Board does not believe that someone who was involved in clinical trial fraud that was uncovered by the FDA should be on the Board of Directors of a public company; particularly a company that is in the process of seeking

FDA approval." Compl. ¶ 33; [D.E. 5-1] 15.

On January 20, 2016, Eshelman sent a letter to Puma and its board of directors, demanding that Puma apologize for and retract the statements in the Investor Presentation, which Eshelman said were defamatory. Compl. ¶¶ 34–36. On January 27, 2016, Puma posted a document titled "[a]dditional proxy soliciting materials" to their investor-relations homepage. Id. ¶¶ 36–37. In the document, Puma disclosed the contents of Eshelman's January 20th letter, stated that the Investor Presentation "included certain factual and publicly available information regarding Eshelman's background," and rejected Eshelman's demands. Id.; [D.E. 5-2] 5–10.

Puma's statements in the Investor Presentation and the January 27th rejection of Eshelman's demands harmed Eshelman's professional reputation. Compl. ¶¶ 39–45.

On February 2, 2016, Eshelman filed a complaint alleging state-law claims of libel per se and libel per quod against Puma and Auerbach. On April 4, 2016, Puma and Auerbach moved to dismiss Eshelman's complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted, moved to transfer the case, moved for relief under California's Anti-SLAPP statute [D.E. 20], and filed a memorandum in support [D.E. 21]. On May 2, 2016, Eshelman voluntarily dismissed Auerbach as a defendant [D.E. 27], responded in opposition to Puma's motion [D.E. 28], and filed a cross-motion concerning Puma's motion for relief under the Anti-SLAPP statute [D.E. 29]. On May 19, 2016, Puma replied [D.E. 31]. On November 23, 2016, with leave of court, Eshelman responded to Puma's reply [D.E. 55, 62]. On December 7, 2016, Puma replied to Eshelman's supplemental response [D.E. 69].

II.

A.

Puma moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. To defeat a Rule 12(b)(2) motion, a plaintiff typically must prove by a preponderance of the evidence that the court can exercise personal jurisdiction. See Grayson v. Anderson, 816 F.3d

3

262, 268 (4th Cir. 2016); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If a court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only establish a prima facie case. Combs, 886 F.2d at 676. When determining whether the plaintiff has met this burden, courts resolve all factual disputes and draw all reasonable inferences in the light most favorable to the plaintiff. Id.; see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). However, an evidentiary hearing need not include live testimony, but merely the opportunity for the parties to present evidence and argument on the question of jurisdiction. Grayson, 816 F.3d at 268. After the court has considered such evidence and argument, it determines whether a plaintiff have proven by a preponderance of the evidence that the court has personal jurisdiction over the defendant. Id.

A federal court may exercise personal jurisdiction over a person to the extent allowed by state law in the state where the federal court sits. See Fed. R. Civ. P. 4(e)(1), (h)(1)(A). The North Carolina long-arm statute extends personal jurisdiction over out-of-state defendants in all cases in which the Fourteenth Amendment's Due Process Clause permits. See Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630–31 (1977); Century Data Sys., Inc. v. McDonald, 109 N.C. App. 425, 427, 428 S.E.2d 190, 191 (1993). To determine whether the North Carolina long-arm statute reaches a particular defendant, courts analyze whether the defendant has sufficient minimum contacts with North Carolina such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation omitted); see Dillon, 291 N.C. at 676–80, 231 S.E.2d at 630–33.

Courts recognize two types of personal jurisdiction: general and specific. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). Initially, the court addresses Eshelman's argument that the court has specific jurisdiction.

When assessing specific jurisdiction, courts consider three factors: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the [forum]

state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–77 (1985). When analyzing the first two elements, courts consider only the defendant's activities. See Burger King, 471 U.S. at 472–78. In accordance with this principle, "[t]he substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102, 112 (1987) (plurality opinion) (citations and emphasis omitted). A defendant has engaged in sufficient, intentional contact with a forum state if "the defendant has intentionally directed his tortious conduct toward the forum state, knowing that the conduct would cause harm to a forum resident." Carefirst of Md., Inc., 334 F.3d at 397–98; see Calder v. Jones, 465 U.S. 783, 788–89 (1984); Young v. New Haven Advocate, 315 F.3d 256, 261–64 (4th Cir. 2002); PCS Phosphate Co. v. Norfolk S. Corp., 520 F. Supp. 2d 705, 712–13 (E.D.N.C. 2007), aff'd, 559 F.3d 212 (4th Cir. 2009).

Specific jurisdiction over Puma is proper because Eshelman's claims arise out of Puma's sufficient minimum contacts with North Carolina. Puma mailed consent-revocation statements concerning the proxy contest at issue in this case to stockholders residing in North Carolina. The consent-revocation letter directed stockholders in North Carolina to the homepage of Puma's investor-relations website, where Puma would later post the allegedly defamatory statements that form the basis of Eshelman's complaint. That Puma first directed stockholders to the page and later posted the allegedly defamatory statements—and not the other way around—does not change the court's jurisdictional analysis. These mailings constituted purposeful contacts with persons in North Carolina, and Puma desired that its statements would influence the decisions of those North Carolina stockholders. Therefore, the statements in the Investor Presentation may serve as the basis for specific jurisdiction for torts arising from their contents. Furthermore, the allegedly defamatory

5

statements were clearly and solely directed at Eshelman, a North Carolina resident, and he would suffer harm from the statements in North Carolina. Thus, the court has specific jurisdiction over Puma concerning Eshelman's claims arising out of the statements in the mailings directed to North Carolinians directing them to documents posted to Puma's investor-relations website. See Calder, 465 U.S. at 788–90; Carefirst of Md., Inc., 334 F.3d at 397–98; Young, 315 F.3d at 262–64.[1]

B.

As for Puma's motion to dismiss the complaint for improper venue, "if all defendants are residents of the State in which the district is located," venue is proper in "a judicial district where any defendant resides." 28 U.S.C. § 1391(b)(1). A corporation resides "in any judicial district in which [the corporation] is subject to the court's personal jurisdiction with respect to the civil action in question." Id. § 1391(c)(2). Because the court has personal jurisdiction over Puma in this action, and Puma is the only defendant, venue is proper in this court.

C.

As for Puma's motion to dismiss for failure to state a claim upon which relief can be granted, Eschelman alleges one count of libel per se and one count of libel per quod. A motion to dismiss under Rule 12(b)(6) tests the legal and factual sufficiency of the complaint. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). The court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). The court need not, however, accept as true a complaint's "legal conclusions, elements of a cause

---

[1] In light of this conclusion, the court need not address the parties' dispute concerning general jurisdiction. Compare [D.E. 62], with [D.E. 69].

6

of action, and bare assertions devoid of further factual enhancement." Id. In evaluating a motion to dismiss, the court looks to the complaint and materials attached to or incorporated into the complaint. E.I. DuPont de Nemours Co. V. Kolon Indus., 637 F.3d 435, 448 (4th Cir.2011); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

This court's subject-matter jurisdiction is based on diversity jurisdiction. Thus, the court applies state substantive principles and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). A federal court sitting in diversity applies the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 807 (4th Cir. 2013). North Carolina courts apply the law of the state where a plaintiff suffered his injury. See Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 854–55 (1988); Harco Nat'l Ins. Co. v. Grant Thornton LLP, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722–23 (2010); Ascend Health Corp. v. Wells, No. 4:12-CV-83-BR, 2013 WL 1010589, *1–2 (E.D.N.C. Mar. 14, 2013) (unpublished); Martinez v. Nat'l Union Fire Ins. Co., 911 F. Supp. 2d 331, 336 (E.D.N.C. 2012); see also Wells v. Liddy, 186 F.3d 505, 521–22 (4th Cir. 1999). Eshelman resides in North Carolina and felt the effects of any tortious damage to his reputation in North Carolina. Thus, North Carolina law applies to his libel claims.[2]

Under North Carolina law, a plaintiff asserting a defamation claim must show that a defendant made "false, defamatory statements of or concerning the plaintiff, which were published to a third person." Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897

---

[2] Because the court applies North Carolina substantive law and federal procedural law, California's "Anti-SLAPP" rule, Cal. Code Civ. P. § 425.16, does not apply. Even if it did apply, the court rejects Puma's arguments about California's "Anti-SLAPP" rule.

7

(2002); see Lewis v. Rapp, 220 N.C. App. 299, 301–02, 725 S.E.2d 597, 600 (2012). The parties do not dispute that the statements at issue concerned Eshelman or that the statements were published to the public generally and to Puma's stockholders specifically.

Whether a publication is libelous per se is a question of law. Ellis v. N. Star Co., 326 N.C. 219, 225, 388 S.E.2d 127, 130 (1990). Libel per se "is a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt, or disgrace." Boyce & Isley, PLLC, 153 N.C. App. at 29, 568 S.E.2d at 898 (quotation omitted); see Lewis, 220 N.C. App. at 302, 725 S.E.2d at 601. The defamatory nature of a statement "must be susceptible of but one meaning" when "taken in the sense which is most obvious and natural and according to the ideas that they are calculated to convey to those who see them." Flake v. Greensboro News Co., 212 N.C. 780, S.E. 55, 60 (1938). "[F]alse words imputing to a . . . business man conduct derogatory to his character and standing as a business man and tending to prejudice him in his business are actionable" as libel per se. Badame v. Lampke, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955); see Boyce & Isley, PLLC, 153 N.C. App. at 30, 568 S.E.2d at 898. If a series of statements are by themselves not false, but are presented together in such a way that a reasonable audience of ordinary people would understand the statements to convey a defamatory message, the statements constitute libel per se. See Boyce & Isley, PLLC, 153 N.C. App. at 31–32, 568 S.E.2d at 898–900.

In context, the statements in Puma's Investor Presentation plausibly constitute libel per se. Assuming without deciding that no statement was individually false, together and in context Puma's Investor Presentation conveyed to an ordinary reader the false impression that Eshelman had been culpably involved in fraud. Such statements tended to impeach Eshelman's reputation in his trade or profession.

A statement constitutes libel per quod if it is "not obviously defamatory" but becomes

8

libelous "when considered in connection with innuendo, colloquium, and explanatory circumstances." Flake, 212 N.C. at 785, 195 S.E. at 59; see Ellis, 326 N.C. at 223, 388 S.E.2d at 130; Skinner v. Reynolds, 237 N.C. App. 150, 157, 764 S.E.2d 652, 657 (2014). Even to the extent the statements in Puma's Investor Presentation were not obviously defamatory, they were by innuendo. The report made true statements about Eshelman's term as the CEO of PPD on a slide titled "Eshelman Continues to Demonstrate a Lack of Integrity," suggesting that Eshelman was personally involved with, culpable for, and fired because of instances of fraud that occurred at PPD when Eshelman was CEO. Thus, Eshelman has plausibly alleged libel per quod.

Puma also argues that Eshelman was a limited-purpose public figure because of his role in Puma's proxy contest, and therefore Eshelman must plausibly allege that Puma acted with malice. But the only North Carolina case Puma cites for this proposition discusses the libel defense of a qualified privilege, not the limited-purpose public-figure doctrine. See [D.E. 21] 21 (citing Hanton v. Gilbert, 126 N.C. App. 561, 567–68, 486 S.E.2d 432, 436–37 (1997), abrogated on other grounds by Newberne v. Dep't of Crime Control & Pub. Safety, 359 N.C. 782, 618 S.E.2d 201 (2005)). In any event, assuming without deciding that Eshelman is a limited-purpose public figure,[3] the qualified-privilege defense does not help Puma because "[w]hen a publication is libelous per se" North Carolina courts adopt "a prima facie presumption of malice." Arnold v. Sharpe, 296 N.C. 533, 537–38, 251 S.E.2d 452, 455 (1979).

III.

In sum, Puma's motion to dismiss for lack of personal jurisdiction, to transfer venue, to dismiss for failure to state a claim, and for relief under California's Anti-SLAPP statute [D.E. 20] is DENIED. Eshelman's motion pursuant to California's Anti-SLAPP statute [D.E. 29] is DENIED as moot.

---

[3] Cf. Foretich v. Capital Cities/ABC, Inc., 37 F.3d 1541, 1553–55 (4th Cir. 1994); Blue Ridge Bank v. Veribanc, Inc., 866 F.2d 681, 687–89 (4th Cir. 1989).

SO ORDERED. This 6 day of February 2017.

                                                        JAMES C. DEVER III
                                                        Chief United States District Judge