IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-18-D

| | | |
|---|---|---|
| FREDERIC N. ESHELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PUMA BIOTECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the undersigned to address Plaintiff Frederic N. Eshelman's

("Plaintiff" or "Eshelman") Motion to Compel [DE-67] and Defendant Puma Biotechnology, Inc.'s

("Defendant" or "Puma") Motion to Compel [DE-74]. Plaintiff moves pursuant to Rules 33, 34, and

37 of the Federal Rules of Civil Procedure for an order (1) permitting a jury instruction in response

to Defendant's failure to preserve certain internet web browser and search histories; (2) compelling

Puma to produce all non-privileged documents and information responsive to Plaintiff's Requests

for Production of Documents ("RFP") Nos. 26-28, 33, 58, and 59; and (3) overruling Puma's general

objections to Eshelman's written discovery requests. Pl.'s Mot. [DE-67]. Defendant moves pursuant

to Rules 26 and 37 of the Federal Rules of Civil Procedure to compel Plaintiff to produce a privilege

log. Def.'s Mot. [DE-74]. All responsive briefing is complete and the matters raised in the motions

are ripe for decision. The motions have been referred to the undersigned for purposes of disposition

pursuant to 28 U.S.C. § 636(b)(1)(A). [DE-72, -78]. On March 19, 2017, Plaintiff filed a Notice

withdrawing his opposition to Defendant's Motion to Compel, alerting the court that he had agreed

to produce a privilege log and thus rendering the motion to compel moot. [DE-102]. Accordingly,

Defendant's motion [DE-74] is denied as moot and for the reasons set forth below, Plaintiff's motion

[DE-67] is allowed in part and denied in part.

## I. BACKGROUND

On February 2, 2016, Eshelman filed a complaint against Puma and Alan H. Auerbach ("Auerbach"), Puma's chief executive officer ("CEO") and Board Chairman, asserting claims of libel *per se* and libel *per quod* related to an allegedly defamatory investor presentation. *See* [DE-1, 5].[1] Puma is biopharmaceutical company focused on acquiring, developing, and commercializing innovative cancer-care products. Compl. [DE-5] ¶ 6. Eshelman founded Pharmaceutical Product Development ("PPD"), a North Carolina-based global contract pharmaceutical research organization. *Id.* ¶¶ 5, 16. On November 1, 2001, PPD contracted with Aventis Pharmaceuticals, Inc. ("Aventis") to provide clinical research services during a clinical trial to determine the safety and effectiveness of the drug Ketek. *Id.* ¶¶ 22-23. During the Ketek trial, a clinical investigator falsified documents. *Id.* ¶¶ 24-25. Eshelman was the CEO of PPD when these events occurred. *Id.* ¶ 23.

Eshelman owns stock in Puma, and on October 28, 2015, he proposed that the board of directors be increased from five to nine members and suggested that he be elected along with three other individuals to the new board positions. *Id.* ¶ 29. Eshelman alleges that in response Auerbach set out to discredit him by falsely relaying to stockholders and the public that Eshelman had been involved in the Ketek clinical trial fraud and as a result was fired from his position as CEO of PPD. *Id.* 30-31. On January 7, 2016, Auerbach shared the allegedly defamatory investor presentation regarding Eshelman's proposal with some of Puma's stockholders and then mailed the presentation to all of the company's stockholders and published it on the company's website. *Id.* ¶¶ 1-2, 32-33.

---

[1] On February 3, 2016, Eshelman filed a text-searchable version of the complaint [DE-5], and all citations herein will be to that version. Additionally, on May 2, 2016, Eshelman voluntarily dismissed Auerbach as a defendant. [DE-27].

2

The investor presentation included statements asserting that Eshelman lacked integrity, had a history of making misrepresentations, was CEO of PPD during the Ketek trial when the Food and Drug Administration ("FDA") discovered fraud in the trial, was called to testify before Congress in 2008 about the clinical trial fraud, and was replaced as PPD's CEO in 2009. *Id.* ¶ 33. Additionally, the investor presentation stated that "Puma's Board does not believe that someone who was involved in clinical trial fraud that was uncovered by the FDA should be on the Board of Directors of a public company; particularly a company that is in the process of seeking FDA approval." *Id.*

On January 20, 2016, Eshelman sent a letter to Puma, Auerbach, and the remaining Puma board members, demanding an immediate apology and retraction of the investor presentation. *Id.* ¶ 34. In response, Puma posted several documents on its website: another solicitation document asserting that the investor presentation "included certain factual and publicly available information regarding Eshelman's background;" Eshelman's January 20th retraction request; and a letter sent by Puma to Eshelman in response asserting that

> Puma has uncovered additional, public, and true information about you and your past activities which would be relevant to your shareholder proposal and prior comments in this regard. Puma will be compelled to ensure that shareholders are aware of this information if you persist with further public statements or filings about Puma, its Board, and its management.

*Id.* ¶¶ 36-37. Eshelman then filed the complaint at issue on February 2, 2016. [DE-1].

On February 16, 2016, two weeks after the complaint was filed, Puma issued an internal litigation hold notice related to Eshelman's claims in this case. Sampson Stmt. [DE-73-1] at 2 ¶ 3; Eyler Stmt. [DE-73-2] at 2 ¶ 3. The litigation hold notice required the preservation of all documents relating to "Frederic Eshelman or Pharmaceutical Product Development, LLC" and Puma's "public statements and filings in connection with the proxy contest launched by Frederic Eshelman[.]" Feb.

16, 2016 Hold Notice [DE-73-3] at 2. The hold notice defined documents to include electronically-stored information and advised employees to err on the side of preservation if there was a question as to whether material qualified as documents, but did not explicitly reference internet browser histories, internet search histories, or internet sites visited. *Id.* at 2-4. According to Charles Eyler ("Eyler"), Puma's Treasurer and Senior Vice President of Finance and Administration, "Puma does not have a formal document retention or destruction policy. Accordingly, documents and emails remain on Puma's systems unless or until manually deleted by individual users." Eyler Stmt. [DE-73-2] at 2 ¶ 2. Moreover, Paul Sampson ("Sampson"), counsel for Puma, states that Puma uses the internet browser Google Chrome, which "automatically and by default drops internet browser history after 90 days." Sampson Stmt. [DE-73-1] at 2 ¶ 4; *see also* [DE-73-4] at 2 (instructions from Google Chrome on how to delete a user's browsing history, confirming that the browsing history is saved for 90 days).

On May 6, 2016, approximately 120 days after the publication of the investor presentation, counsel for Eshelman sent a letter to Puma's counsel "requesting that Puma preserve, among other things, the 'web browser histories' of individuals involved in the drafting of the January 7, 2016 presentation." Sampson Stmt. [DE-73-1] at 2 ¶ 5; *see also* May 6 Letter [DE-73-5]. Counsel for Eshelman advised that she assumed Puma had

already instructed all relevant people and companies to preserve and retain all documents, data, and electronically stored information relating in any way to Dr. Eshelman, [PPD], Ketek®, Dr. Eshelman's consent solicitation and Puma's conduct during the course of that consent solicitation (the "Proxy Contest"), and the researching, drafting, editing, fact checking, discussing, presenting, publishing, posting, filing, and disseminating of Puma's January 7, 2016 investor presentation
. . . .

May 6 Letter [DE-73-5] at 2. Additionally, counsel for Eshelman informed Puma that

4

[i]f you have not already done so, promptly instruct a discovery vendor (or in-house information technology professional experienced with forensic document collection) to forensically collect and preserve all electronic data (including metadata) stored in the email accounts, web browser histories, computers, smartphones, and other electronic storage devices in the possession, custody, or control of Mariann Ohanesian and all Puma employees or directors who researched, drafted, edited, commented on, fact-checked, discussed, presented, published, posted, filed, or disseminated the Presentation or contributed to the Presentation in any way.

*Id.*

Eshelman served written discovery inquiring into the process Puma undertook in preparing the investor presentation. *See* [DE-67-8]. In response, Puma stated that Auerbach and counsel for Puma reviewed the following information for inclusion in the investor presentation:

[i]nformation about Dr. Eshelman's appearance and testimony before . . . Congress, the statements by members of Congress, PPD's management of the trials for Ketek and the fraud involved in it, and Dr. Eshelman's role at PPD at and after that time were provided by Dr. Eshelman in his Congressional testimony, by others who spoke in those hearings and documents related to them, and was reviewed on the Internet, including in video clips of Dr. Eshelman testifying and transcripts of testimony before the Congressional committee . . . .

[DE-67-8] at 4.

On June 3, 2016, Eshelman served Puma with document requests seeking, in addition to other information, the web browser histories, web search histories, and all documents and websites viewed or utilized in any way in connection with preparing the investor presentation. *See* RFP Nos. 26-28 [DE-67-3] at 10-11. In a November 11, 2016 email discussing these discovery requests, counsel for Puma advised Eshelman's counsel that although Puma issued an internal litigation hold notice shortly after the complaint was filed, directing relevant individuals to preserve documents related to Eshelman's claims, the hold notice did not identify web browser histories as among the type of documents to be preserved. [DE-67-13] at 3-4. Puma's counsel acknowledged receiving the

May 6, 2016 letter from Eshelman's counsel, which asked Puma to preserve the web browser histories of individuals involved in preparing the investor preparation. *Id.* Counsel for Puma noted, however, that Puma uses Google Chrome as an internet browser, which deletes web browser history after 90 days, and accordingly, the web browser history information sought in the discovery requests no longer exists and did not exist at the time of the May 6 letter. *Id.* at 4. Puma's counsel concluded by stating that Puma has been unable to retrieve this deleted web browser history information, but Puma would produce such responsive information as could be identified while reviewing Puma's emails and other files. *Id.*

## II. DISCUSSION

### A.    Failure to Preserve Web Browser Information

Eshelman argues that Puma failed to preserve the internet web browser and search histories of individuals who worked on the investor presentation and this information is the most probative evidence of whether Puma acted with actual malice. Pl.'s Mem. [DE-68] at 3-5. Eshelman seeks a jury instruction to help mitigate the harm caused by Puma's failure to comply with its discovery obligations and preserve this information, and argues that such an instruction is appropriate even if Puma did not act in bad faith. *Id.* at 5.

As an initial matter, while Eshelman states that he seeks a jury instruction to mitigate the harm caused by Puma's failure to preserve electronically stored information ("ESI"), Eshelman does not define the particular instruction sought. Rule 37(e) of the Federal Rules of Civil Procedure governs the court's power to sanction a party for failing to preserve ESI. Rule 37(e)(2) provides for explicit relief in the form of an adverse jury instruction, but the court may also impose some form of a jury instruction under Rule 37(e)(1) to the extent necessary to cure prejudice caused by the loss

of the ESI. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (approving of measures necessary to cure prejudice pursuant to Rule 37(e)(1) such as "permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies."). Accordingly, the court must consider whether Eshelman has made a showing for relief under either Rule 37(e)(1) or 37(e)(2).

Spoliation of evidence is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (further citation omitted)). One's responsibility to "preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* at 591 (citation omitted). "Once a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a litigation hold to ensure the preservation of relevant documents." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009) (internal quotation marks and citation omitted).

Courts have great discretion to fashion sanctions for spoliation, however "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (quoting *West*, 167 F.3d at 779). A sanction in response to spoliation should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence . . . ." *West*,

7

167 F.3d at 779 (internal quotation marks and citations omitted).

Rule 37(e) was amended effective December 1, 2015, and compared to the previous version

of the rule, the amended version "significantly limits a court's discretion to impose sanctions for the

loss or destruction of ESI[.]" *Jenkins v. Woody*, No. 3:15-CV-355, 2017 WL 362475, at \*12 (E.D.

Va. Jan. 21, 2017) (citation omitted). As amended, Rule 37(e) provides as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored
> information that should have been preserved in the anticipation or conduct of
> litigation is lost because a party failed to take reasonable steps to preserve it, and it
> cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may
> > order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another
> > party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was
> > > unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Accordingly, before a court may impose sanctions pursuant to Rule 37(e), four threshold

requirements must be established: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss

was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be

restored or replaced through additional discovery. *In re: Ethicon, Inc.*, No. 2:12-CV-00497, 2016

WL 5869448, at \*3 (S.D.W. Va. Oct. 6, 2016). After these threshold elements are satisfied, "Rule

37(e) next establishes two different avenues parties can take to demonstrate that sanctions are

warranted . . . ." *Id.* "The first avenue, Rule 37(e)(1), requires a court to make a finding of prejudice

8

before sanctions may be warranted. The second avenue, Rule 37(e)(2), requires a court to make a finding that a party acted with the *intent* to deprive the opposing party" of the ESI prior to imposing sanctions. *Id.*

According to Eshelman, the January 20, 2016 letter demanding that Puma retract the investor presentation placed Puma on notice that it could anticipate a defamation lawsuit if it did not retract the investor presentation. Pl.'s Mem. [DE-68] at 3-4. Eshelman argues that accordingly, as of January 20, 2016, Puma had an obligation to "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Id.* at 4 (quoting *Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 818-19 (E.D.N.C. 2008)). Eshelman contends that Puma's failure to retain this information "has resulted in the destruction of arguably the most important evidence regarding actual malice and has therefore materially prejudiced Dr. Eshelman's ability to prove his defamation claim[,]" and argues that in this situation, sanctions in the form of a jury instruction are warranted even if Puma did not act in bad faith. *Id.* at 4-5 (citing *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008) & *Powell*, 591 F. Supp. 2d at 818-21). In response, Puma contends that sanctions pursuant to Rule 37(e) are unwarranted because Eshelman has failed to demonstrate prejudice or the inability to discover the same information through other means, such as deposing those who prepared the investor presentation; Eshelman makes no argument that Puma acted with the intent to deprive him of the use of the ESI; and Eshelman relies on case law that predates the 2015 revision to Rule 37(e). Def.'s Mem. [DE-73] at 3-6.

As an initial matter, Eshelman has not established one of the threshold elements of Rule 37(e)—namely, that the lost ESI "cannot be restored or replaced through additional discovery . . . ." Here, while the internet browser search information was automatically deleted and cannot be

9

restored, other avenues of discovery are likely to reveal information about the searches performed in advance of the investor presentation. For example, Eshelman could seek information about the internet searches performed by the individuals who prepared the investor presentation through deposition testimony. *Cf. Keim v. ADF Midatlantic, LLC*, No. 12-CV-80577, 2016 WL 7048835, at \*6 (S.D. Fla. Dec. 5, 2016) (holding, in a Rule 37(e) threshold analysis, that lost text messages could not be restored or replaced through additional discovery where the cell phone provider was unable to provide the content of the text messages, the plaintiff testified that he did not recall the content of the text messages, and the alleged author of the text messages was deceased); *see also Jenkins*, 2017 WL 362475, at \*9, 16 (holding in a deliberate indifference case involving the death of a pretrial detainee that lost video recordings of the decedent shortly before her death could not be restored or replaced through additional discovery and noting that the deputy who was responsible for monitoring the decedent had given multiple inconsistent accounts of what happened in the hours leading up to the decedent's death); *Mcqueen v. Aramark Corp.*, No. 2:15-CV-492-DAK-PMW, 2016 WL 6988820, at \*4 (D. Utah Nov. 29, 2016) (holding that the testimony of two individuals could not replace destroyed work orders, noting that the individuals would be unlikely to recall "the specific contents of each destroyed work order" and the deposition testimony of one of the individuals "demonstrate[d] that he does not remember specific work orders or how many times electrical work was performed, or receptacles replaced at the marina between August 2014 and November 2015.").

However, even assuming the threshold elements of Rule 37(e) have been met, Eshelman has failed to make a sufficient showing of prejudice to support relief under Rule 37(e)(1). In order to impose a sanction under Rule 37(e)(1), the court must have some evidence regarding the particular

10

nature of the missing ESI in order to evaluate the prejudice it is being requested to mitigate. *See In re: Ethicon*, 2016 WL 5869448, at \*4 (while accepting that the plaintiff was burdened by the loss of ESI, noting that the particular evidence at issue was "useful in enhancing a case, but is generally not necessary to prove" plaintiff's claim, and determining that "[t]he plaintiff has not provided the court with any concrete evidence of prejudice to her case as a whole."); *see also Hoai Thanh v. Ngo*, No. PJM-11-1992, 2015 WL 2227916, at \*20 n.16 (D. Md. May 8, 2015) ("Some extrinsic evidence of the content of the spoliated evidence is necessary for the trier of fact to be able to determine in what respect and to what extent it would have been detrimental.") (citation omitted); *Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 104 (D. Colo. 1996) ("The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination that access to the lost material would have produced evidence favorable to his cause.") (internal quotation marks, citation, and alteration omitted). Here, Eshelman simply argues in a cursory fashion that "the web browser searches, web browser histories, and websites visited by those who worked on the defamatory investor presentation are likely the most important evidence regarding Puma's disregard for the truth about Dr. Eshelman . . . ." Pl.'s Mem. [DE-68] at 4. Based on what has been presented to the court at this point, it is difficult to gauge the amount of prejudice to Eshelman due to the lost ESI and what type of remedy would be no greater than necessary to cure that prejudice. Similar to other cases, further discovery may inform the extent of the prejudice if any. *See Jenkins*, 2017 WL 362475, at \*9-10 (observing the known contents of the lost video data in light of other information obtained through discovery in evaluating the extent of the prejudice under Rule 37(e)(1)). Accordingly, Eshelman is not entitled to a sanction pursuant to Rule 37(e)(1).

Again, assuming the threshold elements of Rule 37(e) have been met, Eshelman has also

11

failed to show that Puma acted with the requisite intent to deprive him of the ESI in order to support the imposition of an adverse jury instruction under Rule 37(e)(2). Eshelman makes no argument as to how Puma "acted with the intent to deprive another party of the information's use in the litigation[,]" as required by Rule 37(e)(2), and the circumstances presented do not support such a finding. Puma did not have a document retention/destruction policy to suspend, and it was unaware of the 90-day default retention measures of its internet browser history. Two weeks after the complaint was filed, Puma issued an internal litigation hold, but that notice did not specifically reference browser search information. Accordingly, by the time Eshelman's counsel sent the May 6, 2016 letter requesting preservation of internet browser history, this information that predated the filing of the complaint had already been deleted. Upon the record presently before the court, Puma's failure to issue a litigation hold to include internet browser history upon receipt of Eshelman's January 20, 2016 retraction demand does not rise to the level of intentional conduct required by Rule 37(e)(2). At most, the circumstances indicate the ESI was lost due to Puma's negligence, but do not suggest the presence of intentional conduct. Negligence, however, will not support an award of sanctions under Rule 37(e)(2). *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference."); *accord Living Color Enters. v. New Era Aquaculture, Ltd.*, No. 14-CV-62216, 2016 WL 1105297, at *6 (S.D. Fla. Mar. 22, 2016). Accordingly, under the circumstances presented, Eshelman is not entitled to an adverse jury instruction as a sanction pursuant to Rule 37(e)(2).

12

**B.    Post-Complaint Web Browser Histories, Web Search Histories, Websites, and Documents**

On June 3, 2016, Eshelman served Puma with the following document requests:

REQUEST FOR PRODUCTION NO. 26. The web browser histories (reflecting all websites visited) from May 18, 2015 through the present on the computer(s) and smart phone(s) of every person who had any role in researching, drafting, fact-checking, editing, commenting on, or advising with respect to the Investor Presentation or Puma's other statements about Dr. Eshelman.

REQUEST FOR PRODUCTION NO. 27. The web search histories (reflecting all searches conducted and search terms employed) from May 18, 2015 through the present on the computer(s) and smart phone(s) of every person who had any role in researching, drafting, fact-checking, editing, commenting on, or advising with respect to the Investor Presentation or Puma's other statements about Dr. Eshelman.

REQUEST FOR PRODUCTION NO. 28. All documents and websites viewed, reviewed, relied upon, printed and/or utilized by Puma in drafting, substantiating, assessing, analyzing, examining, investigating, scrutinizing, exploring, probing, confirming, or evaluating the truth, falsity, accuracy, or inaccuracy of Puma's statements about Dr. Eshelman and/or PPD in the Investor Presentation or Puma's other statements about Dr. Eshelman.

[DE-67-3] at 11-12.

Puma objected to RFP Nos. 26 and 27 on the grounds that the phrase "Puma's other statements about Dr. Eshelman" is vague and undefined, and also objected to the extent the requests "call[] for information that is not relevant to the parties' claims and defenses and is disproportional to the needs of the case, including the lack of any relevant limitation of website histories to websites related to any issue in this case." [DE-67-4] at 11-12. Puma also objected on relevance grounds to producing any website histories dated after the complaint was filed on February 2, 2016. *Id.* Nonetheless, subject to these objections, Puma agreed to produce any relevant and non-privileged documents dated between May 18, 2015, and February 2, 2016 "relating to the matters at issue in

this litigation." *Id.* Puma objected to RFP No. 28 asserting that it was duplicative of Request Nos. 26 and 27 and incorporated its responses to the earlier requests.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the general rule regarding the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (internal quotation marks, alterations, and citations omitted); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (further citations omitted)).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory under Rule 33 or fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that

the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more

14

convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted).

Eshelman argues that Puma's objection that the phrase "Puma's other statements about Dr. Eshelman" is vague and undefined lacks merit, particularly where Eshelman's counsel clarified that it refers to all statements made by Puma about Eshelman, whether in the investor presentation or otherwise, and also argues that documents dated after the filing of the complaint can still be relevant to show actual malice at the time of the publication of the investor presentation. Pl.'s Mem. [DE-68] at 5-6 (citing *Herbert v. Lando*, 441 U.S. 153 (1979); *Eramo v. Rolling Stone*, No. 15-CV-00023, 2016 WL 5234688 (W.D. Va. Sept. 22, 2016)). In response, Puma contends that internet browser histories are not statements for purposes of the case law cited by Eshelman; actual malice must be shown at the time of publication; and the text of the RFPs at issue relates to the internet browser histories that informed the January 7, 2016 investor presentation. Def.'s Mem. [DE-73] at 6-8.

A plain reading of the requests at issue demonstrates that Eshelman seeks web browser histories, search histories, documents, and websites used by Puma in relation to the investor presentation and any other statements about Eshelman or his company, PPD. Puma's objection as

to vagueness lacks merit; however, Puma validly objected due to the lack of limitation to the issues in this case. As to the timing aspect, Puma correctly points out that actual malice in a defamation claim must be measured at the time of publication. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) (requiring clear and convincing evidence of actual malice at the time of publication). Even so, evidence that post-dates publication may still bear upon the existence of actual malice at the time of publication. *See Herbert*, 441 U.S. at 164 n.12 ("The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including . . . subsequent statements of the defendant . . . .") (quoting Am. Jur. 2d, Libel and Slander § 260 (1955)). Indeed, at least one district court within the Fourth Circuit has allowed for the possibility that post-publication evidence could be relevant in a defamation case, noting that

> [a] jury could determine that this evidence also supports a finding of actual malice. *See* David Elder, *Defamation: A Lawyer's Guide* § 7.7 (July 2016) (discussing how "some types of evidence [] relate back and provide inferential evidence of defendant's knowing or reckless disregard of falsity at the time of publication"); *Franco v. Cronfel*, 311 S.W.3d 600, 607 (Tex. App. 2010) ("Circumstantial evidence showing reckless disregard may derive from the defendant's words or acts before, at, or after the time of the communication") (quoting *Clark v. Jenkins*, 248 S.W.3d 418, 435 (Tex. App. 2008)). Conversely, the post-publication process could speak to defendants' good faith in publishing the original article. Elder, *supra* § 7.7; *Hoffman v. Washington Post Co.*, 433 F. Supp 600, 605 (D.D.C. 1997), *aff'd*, 578 F.2d 422 (D.C. Cir. 1978) (suggesting that a prompt retraction can negate an inference of actual malice).

*Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 874 (W.D. Va. 2016), *reconsideration granted on other grounds*, 2016 WL 5942328 (Oct. 11, 2016). Furthermore, to the extent Puma objects that the information Eshelman seeks does not constitute "statements" as referred to by the case law upon

16

which Eshelman relies, this objection is without merit.

Accordingly, considering the broad construction afforded to relevance under the discovery rules, the possible relevance of post-publication evidence on the existence of actual malice at the time of publication, and the district court's discretion in ruling on motions to compel discovery, Eshelman's motion to compel is granted in part as follows: Puma shall respond to RFP Nos. 26, 27, and 28 and provide Eshelman with all relevant, non-privileged documents dated between May 18, 2015 and May 2, 2016, relating to the matters at issue in this litigation by no later than **June 28, 2017**.

### C. Discovery of Trial Exhibits

Eshelman also seeks to compel Puma to respond to the following discovery requests:

REQUEST FOR PRODUCTION NO. 33. All documents that Puma contends support, establish, demonstrate, or show that Dr. Eshelman perpetrated, committed, or otherwise had culpable involvement in fraud in connection with the Ketek clinical trial.

. . . .

REQUEST FOR PRODUCTION NO. 58. All documents, tangible materials, or demonstrative evidence that you intend to introduce or use as evidence at trial or any other hearing in this action.

REQUEST FOR PRODUCTION NO. 59. All documents containing any admission you contend any party to this lawsuit, or anyone acting on a party's behalf, made relevant to the issues raised by the claims or defenses in this action.

[DE-67-3] at 13, 16.

Puma objected to these discovery requests by arguing that they varied "the scope and timing of pretrial disclosures under the Court's rules and scheduling orders." [DE-67-4] at 14, 23. As to RFP No. 33, Puma objected that this request was duplicative of other discovery requests and referred

17

Eshelman to its responses to those requests. *Id.* at 14. And in responding to RFP Nos. 58 and 59, Puma agreed to produce responsive documents not already produced "on the timing established by the court or applicable rules and to the extent required under rules governing pretrial disclosures." *Id.* at 23.

In support of the motion to compel, Eshelman argues that RFP No. 58 does not require identification of trial exhibits, merely production of the underlying documents Puma intends to use at trial. Pl.'s Mem. [DE-68] at 6-7 (citing *Wilson v. Thompson/Ctr. Arms Co.*, No. 05-6493-KDE-SS, 2006 WL 3524250 (E.D. La. Dec. 5, 2006)). As to RFP Nos. 33 and 59, Eshelman also argues that these requests seek production of documents, "not the identification or description of any contentions or admissions." *Id.* at 7. In response, Puma argues that "these RFPs purport to require Puma and its counsel to perform and disclose affirmative work product—like identifying documents Puma intends to use at trial—as opposed to merely identifying documents that are responsive to topics at issue in the case. As such, they are overbroad and inappropriate." Def.'s Mem. [DE-73] at 8 (citing *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 42 (D. Md. 2000)). However, Puma also states that it is not objecting to producing "information that is responsive to other discovery requests simply by virtue of it being (potentially) evidence that Puma will use at trial, that supports Puma's contentions, or that reflects Dr. Eshelman's admissions on relevant topics . . . . But Puma should not be required now to identify documents *as its trial evidence*" both because it is premature and because that decision reflects attorney strategy. *Id.* at 8-9.

Rule 26(a)(3) governs the exchange of pretrial disclosures between the parties and provides that in addition to the information included in the Rule 26(a)(1) initial disclosures and Rule 26(a)(2) expert disclosures, a party must provide information about the evidence that it may present at trial,

18

including "an identification of each document or other exhibit . . . ." Fed. R. Civ. P. 26(a)(3)(A)(iii).
Rule 26(a)(3)(B) sets a time for providing pretrial disclosures unless otherwise ordered by the court,
and the Local Rules of this district provide that the Rule 26(a)(3) pretrial disclosures must be
exchanged "[a]t least 28 days before the pretrial conference . . . ." Local Civ. R. 16.1(b). The
Scheduling Order in this case provided that the pretrial disclosures would be provided at least 20
days before the final pretrial conference. [DE-54] at 1 ¶ 5.

The decision of the district court in *Marens* is helpful in resolving Eshelman's motion to
compel Puma's response to RFP No. 58, which seeks discovery of "documents, tangible materials,
or demonstrative evidence" Puma intends to use as evidence at trial or other hearings. In that case,
the plaintiff sought to compel the defendant to comply with interrogatories requesting a list of each
exhibit the defendant intended to introduce at trial, along with information about the location of
those exhibits, and a list of each witness the defendant intended to introduce at trial and a summary
of the facts to which each witness would likely testify. *Marens*, 196 F.R.D. at 42. Additionally, the
plaintiff sought to compel the defendant to respond to RFPs seeking records and documents to be
identified in the responses to the interrogatories. *Id.* In denying the motion to compel as to these
requests, the court stated as follows:

> [w]hile a strong argument can be made that certain of the foregoing discovery
> requests are improper because they seek attorney opinion work product, there is a
> more practical reason why they are objectionable. As contemplated by Rule 26(b)(2),
> the Court has discretion to delay requested discovery, or order that facts sought by
> one discovery device be obtained by another. Rule 26(a)(3) requires the disclosure
> of the names and addresses of trial witnesses, as well as a listing of all trial exhibits.
> The Rule 26(a)(3) disclosures are required to be made in the pretrial order, Local
> Rule 106.4.c. Given the breadth of the plaintiff's other discovery requests, there is
> no compelling reason why he should have the information regarding witnesses and
> exhibits any earlier than they would be required by Rule 26(a)(3) and Local Rule 106.
> Accordingly, defendant will not be required to provide the identity and addresses of

19

> witnesses, or the identity of documents, until the pretrial order is submitted in
> accordance with Local Rule 106.

*Id.* (footnote omitted). Not only is the court's reasoning persuasive, this court has cited the *Marens* decision favorably for other propositions in previous cases. *See, e.g.*, *Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 2:13-CV-00018-D, 2014 WL 1652562 (E.D.N.C. Apr. 23, 2014); *United States v. Gordon*, No. 4:07-CV-156-D, 2008 WL 1766753 (E.D.N.C. Apr. 17, 2008).

Thus, as the time for exchanging pretrial disclosures has not yet occurred and considering the breadth of Eshelman's other discovery requests, Puma's objection to RFP 58 is sustained and the motion to compel is denied as to this request. As to RFP Nos. 33 and 59, the court does not find that Puma has demonstrated the information sought by these requests intrudes into material covered by the Rule 26(a)(3) pretrial disclosures. Accordingly, Puma's objection to these requests is denied and Puma shall respond to these requests by no later than **June 28, 2017**.

## D. Puma's General Objections

Eshelman requests that this court overrule all of Puma's general objections (other than those relating to attorney-client privilege and the work product doctrine) to Eshelman's requests for production and interrogatories. Pl.'s Mem. [DE-68] at 7-9. Eshelman argues that such objections are disfavored in the Fourth Circuit, and they make it impossible to know what information is being withheld on the basis of those objections. *Id.* In response, Puma states that it did not withhold information on the basis of the general objections alone. Def.'s Mem. [DE-73] at 9-10. As no evidence was withheld on the basis of the general objections alone, Eshelman's motion to compel is denied as to this point.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel [DE-67] is ALLOWED IN PART and DENIED IN PART and Defendant's Motion to Compel [DE-74] is DENIED AS MOOT. Defendant shall provide the information identified above to Plaintiff by no later than **June 28, 2017**.

So ordered the 7th day of June 2017.

Robert B. Jones, Jr.
United States Magistrate Judge