IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-18-D

FREDRIC N. ESHELMAN,                    )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )         **ORDER**
                                        )
PUMA BIOTECHNOLOGY, INC.,               )
                                        )
            Defendant.                  )

On February 2, 2016, Fredric N. Eshelman ("Eshelman") filed a complaint against Puma

Biotechnology, Inc., ("Puma") alleging libel per se and libel per quod [D.E. 1, 5]. On February 6,

2017, the court denied Puma's motion to dismiss for lack of personal jurisdiction, to dismiss for

failure to state a claim, to transfer the case, and for relief under California's Anti-SLAPP statute

[D.E. 77]. On February 21, 2017, Puma answered Eshelman's complaint and asserted counterclaims

of libel per se and libel per quod [D.E. 86].

On March 14, 2017, Eshelman moved to dismiss Puma's counterclaims pursuant to Federal

Rule of Civil Procedure 12(b)(6) and to strike Puma's counterclaims under California's Anti-SLAPP

statute [D.E. 100] and filed a memorandum in support [D.E. 101]. On March 29, 2017, Puma

responded in opposition to Eshelman's motion to dismiss [D.E. 104]. On April 18, 2017, Eshelman

replied [D.E. 109]. As explained below, the court grants Eshelman's motion to dismiss.

I.

The court discussed the details of Eshelman's factual allegations and his claims against Puma

in detail in this court's order denying Puma's motion to dismiss for lack of personal jurisdiction, to

transfer the case, and for relief under California's Anti-SLAPP statute. See [D.E. 77] 1–3.

Essentially, Eshelman alleged that on January 7, 2016, in the course of a proxy contest Eshelman

initiated, Puma posted a link on its investor-relations website to download an "Investor Presentation"

that falsely stated or gave the impression that Eshelman had been personally and culpably involved in clinical-trial fraud, when in fact Eshelman's company had been the victim of such fraud. See id.; Compl. [D.E. 5] ¶¶ 46–82. One of Puma's allegedly libelous statements in the Investor Presentation was that "Eshelman's misrepresentations are no surprise given his history." Compl. ¶¶ 50, 70. Eshelman did not claim that this statement was libelous because it falsely gave the impression that Eshelman had made "misrepresentations." Rather, the basis of Eshelman's libel claims was Puma's suggestion that Eshelman's "history" included personal, culpable involvement in clinical-trial fraud. Id. ¶¶ 46–82.

Puma's asserts counterclaims of libel per se and libel per quod on the basis of statements Eshelman made on November 30, 2015, and January 4, 2016, during the same proxy contest. See Ans. [D.E. 86] ¶¶ 25–73. Puma counterclaims that Eshelman misrepresented the experience of members of Puma's board of directors and falsely accused Puma of making false and misleading statements to investors in violation of securities law. Puma alleges that in a November 30, 2015, presentation Eshelman libeled Puma by falsely asserting that the "current board has limited public company corporate governance and oversight experience," that the board's "Drug Development and Regulatory" experience was limited to the experience of one board member, that the board's experience with mergers and acquisitions was limited to one board member, that "the current board members have limited oncology background," and that "only one current board member ha[d] significant experience" with "[i]nvestment." Id. ¶¶ 32, 57. Puma also alleges that, in a January 4, 2016, presentation, Eshelman falsely asserted or suggested that Puma had lied to shareholders and concealed information by contrasting statements Puma made on July 22, 2014, with statements Puma made on November 30, 2015, and claiming the statements were inconsistent. Id. ¶¶ 26–31, 47–52.

II.

Eshelman moves to dismiss Puma's counterclaims as time-barred, or in the alternative for failure to state a claim. This court has subject-matter jurisdiction based on diversity jurisdiction.

2

Thus, the court applies state substantive principles and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) tests the legal and factual sufficiency of the complaint. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). The court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). The court need not, however, accept as true a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd., 591 F.3d at 255. Moreover, this court can consider documents relied on by the parties in their briefing if they are integral to and explicitly relied on in the complaint, and their authenticity is undisputed. See Occupy Columbia v. Haley, 738 F.3d 107, 117 n.7 (4th Cir. 2013).

A motion to dismiss under Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Nevertheless, a district court may reach the merits of an affirmative defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." Id. (emphasis omitted). "A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading, rendering dismissal appropriate." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996) (quotation omitted). Thus, failure to comply with the statute of limitations is "a recognized basis for dismissal" under Rule 12(b)(6). Evans v. Trinity Indus., Inc., 137 F. Supp. 3d 877, 881 (E.D. Va. 2015); see Brooks, 85 F.3d at 181; West v. ITT Cont'l Baking Co., 683 F.2d

845, 846 (4th Cir. 1982).

Eshelman's motion to dismiss requires the court to consider the parties' state-law claims, counterclaims, and defenses. Accordingly, the court must predict how the Supreme Court of the state in question would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of that state's highest court. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the highest court of the relevant state, this court "may consider lower court opinions[,] . . . treatises, and the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[1] In doing so, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 397–98.

## III.

To determine which state's limitations period applies to a state-law claim, a federal district court exercising diversity jurisdiction applies the choice-of-law rules of the forum state, in this case North Carolina. See Guaranty Tr. Co. v. York, 326 U.S. 99, 110 (1945); MedCap Corp. v. Betsy Johnson Health Care Sys., Inc., 16 F. App'x 180, 182 (4th Cir. 2001) (per curiam) (unpublished); Sokolowski v. Flanzer, 769 F.2d 975, 977 (4th Cir. 1985). Under North Carolina's choice-of-law rules, North Carolina's procedural rules apply to actions brought in North Carolina, and a statute of limitations is considered a procedural rule. See Boudreau v. Baughman, 322 N.C. 331, 340, 368

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

S.E.2d 849, 857 (1988). In determining whether a rule is substantive or procedural under this analysis, "the federal district court accepts the characterization placed on the involved rule by the [forum] state court." Sokolowski, 769 F.2d at 978; see Thornton v. Cessna Aircraft Co., 886 F.2d 85, 88 (4th Cir. 1989). When a federal court is sitting in diversity and the forum state would consider a statute of limitations to be a procedural rule and would therefore apply its own statute of limitations, the federal court also applies the forum state's statute of limitations. Sokolowski, 769 F.2d at 978.

In North Carolina, libel suits must be filed within one year of the libelous statement's publication. See Henderson v. Town of Hope Mills, No. 5:13-CV-635-FL, 2013 WL 5954816, at *4 (E.D.N.C. Nov. 6, 2013) (unpublished), aff'd, 549 F. App'x 195 (4th Cir. 2015) (per curiam) (unpublished); Gordon v. Fredle, 206 N.C. 734, 734, 175 S.E. 126, 126 (1934); Philips v. Pitt Cty. Mem. Hosp., Inc., 222 N.C. App. 511, 526, 731 S.E.2d 462, 472 (2012); N.C. Gen. Stat. § 1-54(3). A one-year statute of limitations also applies in California. See Perfect 10, Inc. v. Visa Int'l Serv., Ass'n, 494 F.3d 788, 810 (9th Cir. 2007); Shively v. Bozanich, 31 Cal. 4th 1230, 1246, 80 P.3d 676, 685 (Cal. 2003); Cal. Code Civ. Proc. § 340(c). Puma filed its counterclaims on February 21, 2017, alleging that Eshelman published libelous statements on November 30, 2015, and January 4, 2016. See [D.E. 86] ¶¶ 25–73. Therefore, Puma's claims are time-barred because Puma asserted them over a year after Eshelman's statements were published.

In opposition to this conclusion, Puma contends that its claims are not time-barred because they are compulsory counterclaims and thus relate back to the date Eshelman's complaint was filed. Federal Rule of Civil Procedure 13 defines two types of counterclaims: permissive and compulsory. A compulsory counterclaim is a claim that "that the pleader has against an opposing party" that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A claim is not a compulsory counterclaim, however, if the court lacked personal

5

jurisdiction over the opposing party's initial claim against the counterclaimant. Fed. R. Civ. P. 13(a)(2). Any counterclaim that is not compulsory is permissive. Fed. R. Civ. P. 13(b). Compulsory counterclaims "relate[] back to the time of the filing of the plaintiff's complaint." Kirkpatrick v. Lenoir Cty. Bd. of Educ., 216 F.3d 380, 388 (4th Cir. 2000); see Burlington Indus. v. Milliken & Co., 690 F.2d 380, 389 (4th Cir. 1982). Whether a claim brought pursuant to a district court's diversity jurisdiction relates back to an earlier filing is determined according to federal procedural rules. See Davis v. Piper Aircraft Corp, 615 F.2d 606, 611–12 (4th Cir. 1980). Eshelman filed his complaint on February 2, 2016 [D.E. 1, 5]. Therefore, if Puma's counterclaims related back to the initial filing of Eshelman's complaint, they are not time-barred.

The Fourth Circuit has not announced a clear rule for determining whether a counterclaim is compulsory or permissive. Rather, the Fourth Circuit has considered numerous tests to determine whether a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Sue & Sam Mfg. Co. v. B-L-S Const. Co., 538 F.2d 1048, 1051 (4th Cir. 1976). To determine whether a claim and counterclaim arose out of the same transaction or occurrence, the Fourth Circuit asks: (1) whether issues of law and fact raised by the claim and the counterclaim are largely the same; (2) whether res judicata would bar a subsequent suit on the counterclaim, absent the compulsory counterclaim rule; (3) whether "substantially the same evidence support[s] or refute[s]" both the claim and counterclaim; and (4) whether "there [is] any logical relation between [the] claim and [the] counterclaim[]." Id. at 1051–53; see Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988); Whigham v. Beneficial Fin. Co. of Fayetteville, Inc., 599 F.2d 1322, 1323 (4th Cir. 1979). "[T]he res judicata test cannot be the controlling one." Painter, 863 F.2d at 333. "These questions help focus the inquiry, but the court 'need not answer all these question in the affirmative for the counterclaim to be compulsory.'" O'Fay v. Sessoms & Rogers, P.A., No. 5:08-CV-615-D, 2010 WL 9478988, at *3 (E.D.N.C. Feb. 9, 2010) (unpublished) (quoting Painter, 863 F.2d at 331). Rather, a court should interpret the Rule "flexibl[y]" and "realistic[ally]" to

6

achieve the Rule's purpose. Sue & Sam Mfg. Co., 538 F.2d at 1051.

As for the first question, there are few common issues of law or fact raised by the claims and counterclaims. The claims and counterclaims present no common question of law except that they both involve the elements of libel per se and libel per quod. As for common questions of fact, the claims and counterclaims involve statements made on different dates, concerning different subject matters. Eshelman alleges that Puma's statements published on January 7, 2016, were defamatory because they conveyed to the audience that Eshelman had been culpably and personally involved in clinical trial fraud. Puma alleges that Eshelman's statements published on November 30, 2015, and January 4, 2016, were defamatory because they misrepresented the qualifications of Puma's board of directors and accused Puma of misrepresenting facts to shareholders. Although both Eshelman's claims and Puma's counterclaims involve statements made and published during the same proxy contest, the claims and counterclaims themselves concern statements that allegedly are defamatory whether or not they are considered in the context of a proxy contest. The proxy contest may have provided the parties' motivation for making the statements at issue, but the proxy contest is not material for the ultimate questions in either the claims or counterclaims.

Puma also argues that there is a common question of fact regarding the truthfulness of Eshelman's statements on January 4, 2017. One of Puma's allegedly defamatory statements that forms the basis of Eshelman's complaint said that "Eshelman's misrepresentations are no surprise given his history." Compl. ¶¶ 50, 70.[2] Puma argues that the misrepresentations referenced in that statement were Eshelman's statements on January 4, 2017, that Puma had lied to shareholders. Therefore, Puma argues, Eshelman's January 4, 2017, statements will be discussed in Eshelman's

_____

[2] Puma also argues that Eshelman based his libel claims in part on Puma's statement in the investor presentation that "Eshelman has made and continues to make misrepresentations in connection with his consent solicitation." [D.E. 105] 9 (quoting [D.E. 1-1] 13). But that statement is not the basis for any of Eshelman's claims, and is not mentioned in Eshelman's complaint. Therefore, Eshelman has not made a libel claim based on that statement.

case when Puma raises the defense of truth, creating a substantial overlap of factual issues. Puma's argument mischaracterizes Eshelman's claims. Eshelman does not claim that Puma's statement was defamatory because it falsely accused him of lying on January 4, 2017, when in fact he had told the truth. Rather, Eshelman claims that the presentation conveyed to its audience that Eshelman's "history" involved a culpable role in clinical-trial fraud. Therefore, any discussion of the January 4, 2017, statements in connection with Eshelman's claims would not be substantial. Because there are no substantial common questions of law or fact, the answer to the first question suggests that Puma's counterclaims are permissive, not compulsory.

As for the second question, whether res judicata would bar a subsequent suit on the counterclaim, Puma argues that it could be subject to res judicata because its counterclaim that Eshelman's January 4, 2017, presentation falsely accused Puma of lying to shareholders would be identical to its defense of truth to Eshelman's claim that Puma defamed him by saying that he had lied.[3] As discussed, however, Eshelman has brought no such claim. Because res judicata would not bar a subsequent suit on Puma's counterclaims, the answer to the second question suggests that Puma's counterclaims are permissive, not compulsory.

As for the third question, whether substantially the same evidence will support or refute the claims and counterclaims, this analysis essentially replicates the analysis for the first question. Puma argues that a substantial amount of evidence for both Eshelman's claims and Puma's counterclaims would concern "the purpose and mechanics of the proxy contest, what the parties knew and how they obtained their knowledge when they made their allegedly defamatory statements, and the damage

---

[3] Res judicata bars a subsequent claim when a court has previously entered (1) a valid final judgment on the merits (2) on the same cause of action (3) and involving the same parties. See Pension Ben. Guar. Corp. v. Beverley, 404 F.3d 243, 248 (4th Cir. 2005); Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991). "[N]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Pension Ben. Guar. Corp., 404 F.3d at 248 (quotation omitted).

purportedly caused by each party's statements." [D.E. 105] 11. Any information about the proxy contest would be mere background information, setting the stage for the parties' relationship and explaining the parties' motivations, but it would not be necessary to prove any claim, counterclaim, or affirmative defense. The facts concerning what a party knew or how the party gathered information would be different for each party. Evidence concerning Puma's knowledge of Eshelman's involvement or lack thereof in clinical-trial fraud would support or refute Eshelman's claims. Evidence concerning Eshelman's knowledge of the experience of Puma's board of directors, and whether Puma lied in an investor presentation, would support or refute Puma's counterclaims. Likewise, Puma has not forecast any common evidence regarding damages. Because Puma has not shown that substantially the same evidence would support or refute the claims and counterclaims, the answer to the third question suggests that Puma's counterclaims are permissive, not compulsory.

As for the fourth question, whether a logical relationship connects the claims and counterclaims, only a weak logical relationship exists. The logical relationship, if any, arises because the claims and counterclaims involve the same parties—as is the case with every claim and counterclaim—and because both accrued during the same proxy contest. The proxy contest was the reason the parties were talking about each other, but this fact merely provides background to the parties' relationship. Eshelman did not claim that his damages from Puma's libel include the loss of the proxy contest. Merely because two parties have a relationship, and the claims and counterclaims exist because of that relationship, does not show a logical relationship between the claims and counterclaims. Because only a weak logical relationship connects the claims and counterclaims, the answer to the fourth question suggests that Puma's counterclaims are permissive, not compulsory.

Having considered the four relevant questions and concluded that none support holding that Puma's counterclaims are compulsory, the court holds that Puma's counterclaims do not arise out of the same transaction or occurrence as Eshelman's claims. Accordingly, interpreting Rule 13(a)

9

"flexibl[y]" and "realistic[ally]," the counterclaims do not relate back to the filing of Eshelman's initial complaint, and are time-barred under both North Carolina's and California's statute of limitations. See Sue & Sam Mfg. Co., 538 F.2d at 1051

Next, Puma argues that its counterclaims may still proceed as "setoff" or "recoupment" claims even if its counterclaims are not compulsory counterclaims and are therefore time-barred. The parties dispute whether California's setoff law or North Carolina's setoff or recoupment law applies to Puma's counterclaims. The court need not reach that issue, however, because under either state's law, the law of setoffs or recoupments cannot save Puma's counterclaims.

California Code of Civil Procedure § 431.70 provides:

> Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party.

A defendant may use this "setoff" rule only "defensively to defeat the plaintiff's claim in whole or in part," not offensively as an independent basis for relief. Constr. Prot. Servs., Inc. v. TIG Specialty Ins. Co., 29 Cal.4th 189, 197–98, 57 P.3d 372, 377 (Cal. 2002). "[T]o the extent a defendant seeks affirmative relief, the applicable statute of limitations applies to the defendant's [setoff] claim, just as it would if the defendant were asserting its claim in an independent action." Id. The case on which Puma relies, Safine v. Sinnott, 15 Cal. App. 4th 614 (Cal. Ct. App. 1993), does not support Puma's position. Rather, in Safine California's Court of Appeals noted that a counterclaimaint could use setoffs as an affirmative defense to reduce the plaintiff's recovery but "could not maintain an independent action to recover [the counterclaimaint's] money damages from" the plaintiff. Id. at 619.

10

Puma did not plead its counterclaims as a setoff or recoupment claim, nor did it plead the affirmative defense of a setoff or recoupment. Puma may not amend its answer in its brief in opposition to Eshelman's motion to dismiss. See Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 652 (E.D.N.C. 2014) (collecting cases). To the extent Puma has any right to a setoff under California law, that would be an affirmative defense to Eshelman's claims and could not save Puma's counterclaims from dismissal for failure to comply with the statute of limitations. See Constr. Prot. Servs., Inc., 29 Cal. 4th at 198, 57 P.3d at 377; Safine, 15 Cal. App. 4th at 619.

North Carolina's appellate courts have published few cases discussing claims for setoff or recoupment. North Carolina's Business Court has distinguished between "set-off" claims and "recoupment" claims, following the definitions of those terms in Black's Law Dictionary. See Crescent Foods, Inc. v. Evanson Pharmacies, Inc., 15 CVS 1852, 2016 WL 6270257, at *5–6 (N.C. Super. Ct. Oct. 5, 2016) (unpublished); In re Se. Eye Ctr.-Pending Matters, 15 CVS 1648, 2016 WL 4163928, at *7 (N.C. Super. Ct. July 22, 2016) (unpublished). "Set-off is defined as 'a defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim.'" In re Se. Eye Ctr.-Pending Matters, 2016 WL 4163928, at *7 (alteration and emphasis omitted) (quoting Setoff, Black's Law Dictionary (10th ed. 2014)). Setoff claims are subject to the applicable statute of limitations. See Perry v. First Citizens Bank & Tr. Co., 223 N.C. 642, 644, 27 S.E.2d 636, 637 (1943); In re Se. Eye Ctr.-Pending Matters, 2016 WL 4163928, at *7; cf. Mikels v. Unique Tool & Mfg. Co., Inc., No. 5:06CV32, 2007 WL 4284727, at *23–25 (W.D.N.C. Dec. 3, 2007) (unpublished) (noting that Perry's holding regarding the statute of limitations as applied to setoff claims had been neither followed nor rejected by any North Carolina appellate court, and that other jurisdictions had rejected Perry's rule). By contrast, claims for "recoupment" are claims for "a 'reduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction.'" In re Se. Eye Ctr.-Pending Matters, 2016 WL 4163928, at *7 (alteration and emphasis omitted) (quoting Recoupment, Black's Law Dictionary

11

(10th ed. 2014)); see RL REGI N.C., LLC v. Lightouse Cove, LLC, 229 N.C. App. 71, 78–79, 748 S.E.2d 723, 728 (2013) (acknowledging, but not adopting, the First Circuit's rule that recoupment is an affirmative defense to claims under the federal Equal Credit Opportunity Act which allows a defendant to reduce the plaintiff's recovery on the basis of a claim that arose from "the same transaction," and that recoupment counterclaims are not subject to the statute of limitations), rev'd on other grounds 367 N.C. 425, 762 S.E.2d 188 (2014). Claims for recoupment are not subject to the statute of limitations. See Crescent Foods, Inc., 2016 WL 6270257, at *6.[4]

Puma argues that its counterclaims are recoupment claims and therefore are not subject to the statute of limitations. But Puma's counterclaims do not arise from the same transaction as Eshelman's claims. Puma's counterclaims involve statements made on different days by different speakers regarding different subject matter, and are related only by the fact that they took place during the course of—and were perhaps motivated by—the same proxy contest. For the same reasons that Puma's counterclaims do not pass the "same transaction or occurrence" test used for compulsory counterclaims, Puma's counterclaims cannot pass the "same transaction" test used for recoupment claims.

Puma's counterclaims do not relate back to Eshelman's initial complaint because they are not compulsory counterclaims. Moreover, under either North Carolina law or California law, the doctrines of setoffs or recoupments do not save Puma's time-barred counterclaims. Therefore, Puma's counterclaims are time-barred and Puma has failed to state a claim upon which relief may be granted. See West, 683 F.2d at 846; Evans, 137 F. Supp. 3d at 881. Because Puma's

---

[4] Puma also cites Ken-Lu Enters., Inc. v. Neal, 29 N.C. App. 78, 81, 223 S.E.2d 831, 833 (1976), for the proposition that North Carolina waives the statute of limitations for recoupment claims. Ken-Lu analyzed N.C. Gen. Stat. § 1–47(2), which provides a specific exception to the statute of limitations for counterclaims when the initial claim is an "action on a sealed instrument." Id. In Ken-Lu, the North Carolina Court of Appeals held that, regardless of section 1–47(2), a counterclaimaint sued on a debt could bring an action under the Federal Truth in Lending Act. Id. Neither statute applies in this case.

counterclaims are time-barred, the court declines to address whether they state claims upon which relief may be granted, or whether they must be stricken pursuant to California's Anti-SLAPP statute.

III.

In sum, the court GRANTS Eshelman's motion to dismiss for failure to state a claim upon which relief can be granted [D.E. 100], and DENIES as moot Eshelman's motion for relief under California's anti-SLAPP statute.

SO ORDERED. This **12** day of June 2017.

JAMES C. DEVER III
Chief United States District Judge