IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-18-D

| | | |
|---|---|---|
| FREDRIC N. ESHELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| PUMA BIOTECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Puma Biotechnology Inc. ("Puma") moves the court to compel Plaintiff Fredric N. Eshelman ("Eshelman") to produce a privilege log for documents withheld on the basis of attorney-client privilege and/or work product doctrine. [DE-117]. Eshelman opposes the motion. [DE-118]. The motion has been referred for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons stated below, Puma's motion is denied.

## I. BACKGROUND

On February 2, 2016, Eshelman filed a complaint against Puma and Alan H. Auerbach ("Auerbach"), Puma's chief executive officer ("CEO") and Board Chairman,[1] asserting claims of libel *per se* and libel *per quod* related to an allegedly defamatory investor presentation. *See* [DE-1, -5]. Puma is a biopharmaceutical company focused on acquiring, developing, and commercializing innovative cancer-care products. Compl. [DE-5] ¶ 6. Eshelman founded Pharmaceutical Product Development ("PPD"), a North Carolina-based global contract pharmaceutical research organization. *Id.* ¶¶ 5, 16.

On November 1, 2001, PPD contracted with Aventis Pharmaceuticals, Inc. ("Aventis") to

---

[1] Eshelman later voluntarily dismissed Auerbach. [DE-27].

provide clinical research services during a clinical trial to determine the safety and effectiveness of the drug Ketek. *Id.* ¶¶ 22–23. During the Ketek trial, which occurred while Eshelman was CEO of PPD, a clinical investigator falsified documents. *Id.* ¶¶ 23–25. Eshelman alleges that in the course of a proxy contest, Puma posted a link on its investor-relations website to download an "Investor Presentation" that falsely stated or gave the impression that Eshelman had been personally and culpably involved in the Ketek clinical-trial fraud, when in fact PPD had been the victim of the fraud. *Id.* ¶¶ 46–82.

On January 12, 2017, Puma moved the court to compel Eshelman to produce a privilege log corresponding to documents withheld from production on the basis of attorney-client privilege in response to Puma's Requests for Production of Documents ("RFPs") 19, 20, 22–30 and 40. [DE-74]; Ex. A [DE-74-1] at 8–13; Ex. B [DE-74-2] at 2–3. According to Puma, the RFPs at issue seek documents related to the proxy contest and are crucial to Puma's defense that its response to Eshelman's proxy contest was appropriate and accurate. [DE-75]. Eshelman responded in opposition to Puma's motion, asserting that he raised valid objections to the RFPs at issue and, consequently, pursuant to the parties' agreement memorialized in their Joint Discovery Plan [DE-37], no privilege log was required. [DE-76] at 1.

On February 21, 2017, Puma answered Eshelman's complaint and asserted counterclaims of libel *per se* and libel *per quod* against Eshelman on the basis of statements he made on November 30, 2015 and January 4, 2016, during the proxy contest. [DE-86] ¶¶ 25–73. On March 19, 2017, Eshelman withdrew his opposition to Puma's motion to compel a privilege log, explaining that the scope of discovery had changed in light of Puma's counterclaims and that Eshelman would produce a privilege log to Puma, thereby mooting Puma's motion. [DE-102]. On June 7, 2017, in the court's

2

order on other disputed discovery matters, Puma's motion to compel was denied as moot. [DE-115].

On June 12, 2017, the court dismissed Puma's counterclaims against Eshelman as time-barred, [DE-116] at 9–10, 12–13, and on June 16, 2017, Puma filed the instant motion renewing its motion to compel Eshelman to produce a privilege log [DE-117]. According to Puma, Eshelman never produced a privilege log as previously agreed. *Id.*; Ex. E [DE-74-5]. Eshelman objects to the renewed motion on the grounds that the dismissal of Puma's counterclaims places the requested documents beyond the appropriate and proportional scope of discovery. [DE-118].

## II. DISCUSSION

Puma contends the RFPs at issue seek documents related to the proxy contest by Eshelman and are central to Puma's defense that its "Investor Presentation accurately exposed Eshelman's misstatements and mischaracterizations during the proxy contest, thus providing necessary context to the statements made in the January 7, 2016 Investor Presentation regarding the Ketek clinical trials, which Dr. Eshelman claims are defamatory." [DE-75] at 2–3. Puma argues further that Eshelman's agreement to produce non-privileged documents related to the proxy contest, regardless of whether they also relate to the Ketek trial, evidences the unfounded nature of his objection to producing a privilege log. *Id.* at 3–4; Ex. C [DE-74-3]. Finally, Puma concludes that Eshelman's failure to produce a privilege log impedes its ability to assess the validity of Eshelman's privilege claims. [DE-75] at 4–5.

Pursuant to Rule 34, a party asserting an objection to a document request "must specify the part [to which it objects] and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). When a privilege objection is asserted, the party "must expressly assert it in response to the particular discovery request involved and serve with its discovery responses a privilege log in conformance

3

with Fed. R. Civ. P. 26(b)(5)(A)." *Spring v. Bd. of Trs. of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 1389957, at *2 (E.D.N.C. Apr. 7, 2016). A proper privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Failure to timely serve a privilege log meeting the requirements of Rule 26(b)(5)(A) may be deemed a waiver of the privilege. *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 577 (D. Md. 2010) ("Absent consent of the adverse party, or a Court order, a privilege log . . . must accompany a written response to a Rule 34 document production request, and a failure to do so may constitute a forfeiture of any claims of privilege.") (citations omitted); *PCS Phosphate Co., Inc. v. Am. Home Assurance Co.*, No. 5:14-CV-99-D, 2015 WL 8490976, at *3 (E.D.N.C. Dec. 10, 2015).

The parties in their Joint Discovery Plan agreed to the following exceptions to their obligation to produce a privilege log:

> Privilege Logs. **Except as ordered by the Court for good cause shown, the parties agree that they will not produce or prepare privilege logs with respect to:** (a) documents prepared by the below counsel of record in this litigation in anticipation of this litigation; (b) emails or other communications exchanged with the below counsel of record in this litigation; or **(c) documents or information withheld on the basis of an objection other than privilege or protection of the attorney work product doctrine.**

[DE-37] at 2 (emphasis added). The court approved the parties' Joint Discovery Plan, with modifications regarding matters not at issue here, in the September 16, 2016 Scheduling Order. [DE-54]. Under Rule 29(b), the parties' stipulations in the Joint Discovery Plan are effective unless otherwise ordered by the court. Fed. R. Civ. P. 29(b) ("Unless the court orders otherwise, the parties may stipulate that . . . procedures governing or limiting discovery be modified . . . ."). Other courts

4

have observed that, pursuant to Rule 29, the parties' stipulation should be followed so long as it does not run afoul of the local rules or the judge's preferences. *See e.g.*, *Stroup v. United Airlines, Inc.*, 2016 WL 7176717, at *4 n.11 (D. Col. Sept. 16, 2016) ("Unless a stipulated protective order runs afoul of or purports to supersede [a local rule] or the presiding judge's individual practice standards, the court has little reason to override the parties' agreement [and] can properly assume that [the agreement] was the product of serious discussion between counsel and reflects the collective interests of the parties.") (citations omitted).

Puma served several RFPs for documents relating to the proxy contest. *See* RFPs 19, 20, 22–30, 40 [DE-74-1] at 8–14 & [DE-74-2] at 2-3. Eshelman objected to those RFPs on various grounds including, in relevant part, that they (1) seek documents that do not relate to the Ketek clinical trial or Puma's defamatory investor presentation; (2) are overly broad, unduly burdensome, seek irrelevant documents, and are not reasonably calculated to lead to the discovery of admissible evidence; and/or (3) seek documents that are protected by the attorney-client privilege or work product doctrine. *Id.* Notwithstanding these objections, with respect to 10 of the requests, Eshelman responded that he would produce copies of any responsive non-privileged documents to the extent they are related to the Ketek clinical trial or Puma's defamatory investor presentation. *Id.* In response to RFPs 28 and 29, however, Eshelman declined to produce any documents. Subsequently after negotiations between counsel for the parties, counsel for Eshelman "reluctantly agreed to produce documents relating to the proxy contest, regardless of whether they also relate to the Ketek trials or the Investor Presentation, but steadfastly refused to create or produce privilege logs for these documents . . . ." Def.'s Mem. [DE-75] at 1. Eshelman only agreed to produce a privilege log for the proxy-contest documents after Puma filed its counterclaims, because Eshelman believed the

counterclaims "broadened the scope of discovery considerably" and the proxy-contest documents were "potentially relevant to Puma's counterclaims, even though they were not relevant to Dr. Eshelman's defamation claim or any cognizable defenses to that claim." Pl.'s Supp. Br. [DE-118] at 2. Ultimately, however, Eshelman did not produce the privilege log, maintaining his previously-asserted objections. *Id.*

The court addressed the relevance of the proxy contest in its June 12, 2017 order dismissing Puma's counterclaims. *See* [DE-116] at 4 ("Eshelman's motion to dismiss requires the court to consider the parties' state-law claims, counterclaims, and defenses."). In analyzing whether Puma's counterclaims were permissive or compulsory for purposes of relating back to the initial filing of Eshelman's complaint, the court explained as follows:

> Although both Eshelman's claims and Puma's counterclaims involve statements made and published during the same proxy contest, the claims and counterclaims themselves concern statements that allegedly are defamatory whether or not they are considered in the context of a proxy contest. The proxy contest may have provided the parties' motivation for making the statements at issue, but the proxy contest is not material for the ultimate questions in either the claims or counterclaims.

[DE-116] at 7. The court rejected Puma's argument that "a substantial amount of evidence for both Eshelman's claims and Puma's counterclaims would concern 'the purpose and mechanics of the proxy contest, what the parties knew and how they obtained their knowledge when they made their allegedly defamatory statements, and the damage purportedly caused by each party's statements.'" *Id.* at 8–9 (quoting [DE-105] at 11). In doing so, the court characterized information about the proxy contest as "mere background information, setting the stage for the parties' relationship and explaining the parties' motivations, but . . . [un]necessary to prove any claim, counterclaim, or affirmative defense." *Id.* at 9. In light of the court's finding that "the proxy contest is not material

6

for the ultimate questions" in this case, Eshelman's objection to producing a privilege log for the proxy-contest documents unrelated to the Ketek clinical trial or investor presentation is justified. Because Eshelman asserted valid objections other than privilege to producing these documents, the parties' Joint Discovery Plan, approved in the court's Scheduling Order, relieves him of the obligation to produce a privilege log. *See* [DE-37] at 2; Sept. 16, 2016 Scheduling Order [DE-54].

Puma makes no argument, beyond the purported relevancy of the documents, as to why the terms of the Joint Discovery Plan should not be enforced. The court assumes the agreement was the product of serious discussion and contemplation by two counseled parties and that it reflects the interests of the parties. *See Stroup*, 2016 WL 7176717, at *4 n.11. Moreover, it is not evident on its face that the agreed-to plan runs afoul of or purports to supersede the local rules of practice or the presiding judge's individual practice preferences and Puma has not argued that is does. Therefore, the court finds no reason to override the parties' agreement. *See Turner Constr. Co. v. Tig Ins. Co.*, No. 1:15-CV-83, 2016 WL 6426391, at *2 (N.D.W. Va. Oct. 31, 2016) (finding no clear error in magistrate judge's decision declining to order a party to produce a privilege log where the parties' Rule 26(f) report reflected agreement that the parties are not required to provide a privilege log for communications between client and counsel in response to any discovery request); *In re Acceptance Ins Cos. Sec. Litig.*, 2002 WL 32793423, at *4 (D. Neb. Aug. 2, 2002) (requiring materials be itemized on a privilege log and noting that the parties had not filed a stipulation under Rule 29 governing the issue). Accordingly, pursuant to the parties' agreement, Eshelman is not required to produce a privilege log for documents withheld on the basis of privilege in response to RFPs 19, 20, 22–30, and 40.

## III. CONCLUSION

For the reasons set forth above, Puma's Renewed Motion to Compel [DE-117] is denied.

SO ORDERED, the 13th day of July 2017.

Robert B. Jones, Jr.
United States Magistrate Judge