IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:16-CV-18-D

FREDRIC N. ESHELMAN,                     )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )        O R D E R
                                          )
PUMA BIOTECHNOLOGY, INC.,                 )
                                          )
            Defendant.                    )

Plaintiff Fredric N. Eshelman ("Eshelman") moves the court to compel Defendant Puma

Biotechnology, Inc. ("Puma") to produce the calendars of two of its corporate officers. [DE-149].

Puma opposes the motion. [DE-152]. For the reasons set forth below, Eshelman's motion is denied.

## I. BACKGROUND

On February 2, 2016, Eshelman filed a complaint against Puma and Alan H. Auerbach

("Auerbach"), Puma's chief executive officer and Board Chairman, asserting claims of libel *per se*

and libel *per quod* related to statements contained in an allegedly defamatory investor presentation.[1]

*See* [DE-1, -5]. Specifically, Eshelman alleges that in the course of a proxy contest, Puma posted

a link on its investor-relations website to download an "Investor Presentation" that contained

defamatory statements about Eshelman. Compl. [DE-5] ¶¶ 46–82.

On June 3, 2016, Eshelman served upon Puma his First Request for Production of

Documents, in which Eshelman sought "[a]ll documents relating to the Proxy Contest." Pl.'s Mem.

[DE-150] at 2; Req. for Produc. of Docs. No. 10 [DE-44-1] at 9. The instructions provided within

the discovery requests defined the term "document" to include a "calendar." [DE-44-1] at 4–5 ¶ 12.

---

[1] Eshelman voluntarily dismissed Auerbach on May 2, 2016. [DE-27].

The term "relating to" was defined as "relating to, reflecting, concerning, referring to, constituting, embodying, connected to, in connection with, comprising, regarding, evidencing, describing, identifying, stating, analyzing, containing information concerning, and/or in any way pertaining to the subject matter of this action." *Id.* at 5 ¶ 13. "Proxy Contest" was defined as "Dr. Eshelman's October 28, 2015 proposals to Puma's shareholders and all actions undertaken in response to or relating to those proposals." *Id.* at 4 ¶ 7. In response to the document request, Puma produced the relevant and non-privileged individual calendar entries for Auerbach and Senior Investor Director Mariann Ohanesian ("Ohanesian") from July 2015 through February 2016, which "relate on their face to the topics in Eshelman's discovery requests." [DE-152] at 2, 6.

Eshelman concedes Puma produced calendar entries that on their face specifically reference either Eshelman or the proxy contest, but contend this is insufficient to satisfy Puma's discovery obligations. [DE-150] at 2. Eshelman takes the position that Puma must produce Auerbach's and Ohanesian's entire calendars for the period in question, reasoning there may be relevant calendar entries that do not expressly reference the proxy contest or Eshelman. *Id.* Eshelman seeks to use the calendars as part of his deposition questioning of Auerbach and Ohanesian in order to "jog their memories" as to relevant topics that may have been discussed at meetings but that Auerbach and Ohanesian simply do not remember based on the "vaguely-titled" calendar entries. *Id.* at 3. Eshelman contends that when aided by contemporaneous emails and calendars, Auerbach and Ohanesian may remember the relevance of a meeting that was otherwise not apparent. *Id.*

Puma asserts that it did not limit its review to documents that explicitly mention the proxy contest or Eshelman, but rather reviewed the calendar entries in context to determine if they could reasonably be said to relate to the topics identified in Eshelman's request. [DE-152] at 2; [DE-152-

2

1] at 1–2; [DE-152-2] at 5–8. Puma contends that it has produced all responsive and non-privileged documents, discharging its duty to respond to the discovery request, and that producing the calendars in their entirety would necessarily result in the production of entries that are confidential, personal, and unrelated to the claims and defenses in this case. [DE-152] at 3–4, 6.

## II. DISCUSSION

### A. Standard of Review

Rule 26 of the Federal Rules of Civil Procedure provides the general rule regarding the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (internal quotation marks, alterations, and citations omitted); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (further citations omitted)). However, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1); *see Sheffield Fin. LLC*, 2007 WL 1726560, at *3 (citing Fed. R. Civ. P. 26(c)); *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 249 (E.D.N.C. 2005) ("The court has the discretion to protect a party from "oppression" or "undue burden or expense."). "When the discovery sought appears relevant . . . the party resisting

3

the discovery has the burden to establish the lack of relevance by demonstrating that the requested

discovery (1) does not come within the broad scope of relevance as defined under . . . Fed. R. Civ.

P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery

would outweigh the ordinary presumption in favor of broad disclosure." *Sheffield Fin. LLC*, 2007

WL 1726560, at *3 (quoting *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, at *2 (D.

Kan. Jan. 31, 2002)). The district court has broad discretion in determining relevance for discovery

purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

**B.    Analysis**

In support of his motion, Eshelman argues that Auerbach and Ohanesian have communicated

with numerous people about Eshelman verbally and by email. [DE-150] at 1. According to

Eshelman, Puma claimed that Auerbach and Ohanesian were unable to recall whether Eshelman was

discussed during meetings for which the calendar entries do not expressly mention Eshelman. *Id.*

at 3. Eshelman argues that this confirms there are "almost certainly calendar entries with vague titles

that reflect meetings during which Dr. Eshelman was discussed, but which Puma has refused to

produce." *Id.* Eshelman contends further that "witnesses typically have great difficulty remembering

the details of conversations . . . that occurred several years ago" if their memories are not refreshed

with contemporaneous emails or calendars. *Id.* Eshelman reasons that he should therefore be

permitted to "jog their memories" by putting the entire calendar before Auerbach and Ohanesian and

match "vaguely-titled calendar entries with their emails about Eshelman." *Id.* Finally, Eshelman

asserts that "[b]ased on Auerbach's and Ohanesian's hostile and vulgar written comments about

Eshelman, there is ample reason to believe [they] had numerous conversations and meetings during

which they expressed their spite and hostility toward Dr. Eshelman," which Eshelman claims is

relevant to demonstrate Puma's actual malice. *Id.* (emphasis omitted).

The relevant documents at issue are the calendar entries related to the proxy context. Puma's response satisfies Eshelman's discovery request for documents related to a specific topic, where Eshelman did not request entire calendars for a defined period. Based on Puma's description that Auerbach and Ohanesian cannot recall whether Eshelman was discussed outside of specific calendar entries, Eshelman speculates that there are calendar entries that would jog their memories of information responsive to the discovery request. Indeed, based on the circumstances described by the parties, there may be no entries at all. However, Puma has indicated that it reviewed the calendars in context and that there are no calendar entries not produced that Puma believes relate to the proxy contest. Puma's response satisfies its burden to produce responsive discovery. *See Benjamin v. Sparks*, No. 4:14-CV-186-D, 2017 WL 1497930, at *4 (E.D.N.C. April 26, 2017) (holding that request seeking production of all diaries, journals or calendars was overbroad and sought irrelevant information, whereas all diary, journal and calendar entries concerning the allegations in the amended complaint were more appropriate in scope). Additionally, where Eshelman appears to have also received in discovery emails related to Eshelman or the proxy contest about which he seeks to examine Auerbach and Ohanesian, the marginal value of producing the calendars in their entirety is outweighed by the overbreadth of such a production, which would include matters of a confidential, personal, and otherwise irrelevant nature. *See Sheffield Fin.*, 2007 WL 1726560, at *3. Accordingly, the court finds that Puma sufficiently responded to Eshelman's request for calendars relating to the proxy contest.

## III. CONCLUSION

For the reasons set forth above, Eshelman's motion to compel [DE-149] is denied.

SO ORDERED, the 14 day of September 2017.

Robert B. Jones, Jr.
United States Magistrate Judge