IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-18-D

FREDRIC N. ESHELMAN,            )
                                )
            Plaintiff,          )
                                )
     v.                         )            O R D E R
                                )
PUMA BIOTECHNOLOGY, INC.,       )
                                )
            Defendant.          )

This matter is before the court on the motion of non-party movant Pharmaceutical Product

Development, LLC ("PPD") to quash or, in the alternative, to enter a protective order limiting the

scope of information PPD is required to produce in response to: (1) a subpoena to testify at a

deposition in a civil action issued by Defendant Puma Biotechnology, Inc. ("Defendant"); (2) a

subpoena to testify at a deposition in a civil action issued by Plaintiff Fredric N. Eshelman

("Plaintiff"); and (3) a subpoena duces tecum issued by Defendant. [DE-125]. Plaintiff and

Defendant have responded separately in opposition to the motion [DE-135, -136] and the matter

is ripe for disposition. For the following reasons, PPD's motion to quash or for entry of a protective

order [DE-125] is ALLOWED in part and DENIED in part.

## I. BACKGROUND

### A. Ketek Clinical Trial

On November 1, 2001, Aventis Pharmaceuticals, Inc. ("Aventis") entered into a contract

with PPD, under which PPD was to perform clinical research services in connection with a clinical

study to determine the safety and effectiveness of Ketek, a drug developed to treat respiratory tract

infections. Compl. [DE-1] ¶¶ 22, 23. Plaintiff was the CEO of PPD at the time of the contract's

execution and subsequently during the Ketek clinical trial. *Id.* ¶ 23. According to Plaintiff, Aventis retained the responsibility for quality assurance under the contract, and PPD was to report to Aventis any physician serving as a clinical investigator who did not comply with the study plan. *Id.* Plaintiff contends that, pursuant to the contract, PPD did not have the authority to end a clinical investigator's participation in the study or to report a clinical investigator's conduct to the FDA. *Id.*

On November 5, 2001, Aventis, through PPD, entered into a contract with Dr. Maria Anne Kirkman-Campbell ("Kirkman-Campbell"), under which Kirkman-Campbell was to participate in the Ketek clinical trial as a clinical investigator. *Id.* ¶ 24. Under the terms of the contract, Kirkman-Campbell agreed to conduct the study in strict compliance with the criteria set forth in the study protocol. *Id.* Kirkman-Campbell disregarded her obligations under the contract by submitting false documentation to PPD and Aventis concerning the Ketek clinical trial. *Id.* at ¶ 25.

According to the complaint, after discovering "red flags" relating to Kirkman-Campbell, PPD personnel notified Aventis and recommended that Aventis exclude the Kirkman-Campbell data from the Ketek clinical trial. *Id.* ¶ 26. Plaintiff contends that once he was "generally apprised" of what was known at the time about the situation, he instructed PPD's head of quality assurance to place a call directly to Aventis' head of quality assurance. *Id.* Plaintiff also cooperated in bringing Kirkman-Campbell's misconduct to light. *Id.* According to Plaintiff, at no time did he participate in, authorize, or condone Kirkman-Campbell's fraud, nor was he involved in her fraud in any way. *Id.* ¶ 27.

Ann Marie Cisneros ("Cisneros"), a former PPD Senior Clinical Research Associate, assisted in monitoring the Ketek clinical trial. Pl.'s Mem. Opp'n. Ex. 3 [DE-135-3] at 6. Cisneros

testified before the United States House of Representatives about her observations and what she learned monitoring Kirkman-Campbell, as well as her discussions about Kirkman-Campbell with PPD and Aventis. *Id.* at 6–7. Plaintiff also testified before Congress regarding PPD's role in the Ketek clinical trial. Pl.'s Mem. Opp. [DE-135] at 3.

## B. Plaintiff's Claims of Defamation

In October 2015, Plaintiff, a stockholder of Defendant, proposed that Defendant increase the size of its board from five to nine directors and elect Plaintiff and three other nominees to the board. Compl. [DE-1] ¶ 29; [DE-20-6]. Defendant responded to Plaintiff's solicitation by mailing a consent revocation to stockholders which directed stockholders to the homepage of Defendant's investor-relations website for further consent revocation materials. Compl. ¶ 10; [DE-20-5]. Plaintiff alleges that Alan H. Auerbach ("Auerbach"), Defendant's CEO, defamed him in an investor presentation to stockholders charging Plaintiff with committing scientific fraud in the Ketek clinical trial. Compl. ¶¶ 1, 33. In particular, Plaintiff alleges the following statements contained in the investor presentation falsely charge him with scientific fraud in the clinical trial of Ketek and falsely allege that such fraud resulted in him being replaced as the CEO of PPD:

> "Eshelman Continues to Demonstrate a Lack of Integrity"

> "Eshelman's misrepresentations are no surprise given his history"

> "Eshelman was Chief Executive Officer (CEO) of Pharmaceutical Product Development (PPD) when it managed a clinical trial during the development of the antibiotic drug Ketek . . . Fraud was uncovered in this trial by the FDA's Office of Criminal Investigation."

> "As Chief Executive Officer of PPD, Eshelman was forced to testify before Congress regarding PPD's involvement in this clinical trial fraud in 2008"

> "Eshelman was replaced as CEO of PPD in 2009"

> "Puma's Board does not believe that someone who was involved in clinical trial fraud that was uncovered by the FDA should be on the Board of Directors of a public company; particularly a company that is in the process of seeking FDA approval"

3

*Id.* ¶ 33; Ex. A [DE-1-1] at 14–15.

On January 20, 2016, by letter to Defendant, Plaintiff demanded an apology and retraction of these statements, asserting that it is known and well-documented in the public record that PPD discovered and reported the fraud under Plaintiff's leadership. Compl. [DE-1] ¶ 35. He contended that these actions by PPD led to criminal charges being filed against Kirkman-Campbell and that the United States Attorney subsequently identified PPD as a victim of the fraud committed by Kirkman-Campbell in the criminal indictment filed July 24, 2008. *Id.* On January 27, 2016, Defendant responded to Plaintiff's letter by refusing to correct and/or retract its original statements and by threatening to reveal additional information about Plaintiff to the shareholders. *Id.* ¶ 37.

In his complaint, Plaintiff asserts claims of libel per se and libel per quod with respect to the statements *supra* issued by Defendant regarding Plaintiff's role in the Ketek clinical trial. On February 21, 2017, Defendant answered the complaint and asserted counterclaims of libel per se and libel per quod against Plaintiff on the basis of statements he made on November 30, 2015, and January 4, 2016, during the proxy contest. Answer [DE-86]. Defendant also asserted ten defenses, primarily challenging Plaintiff's claims based on the elements required to prove libel (i.e., truth, malice, publication). *Id.* at 20–21. On June 12, 2017, the court dismissed Defendant's counterclaims as time-barred. [DE-116] at 9–10, 12–13.

## C. Third-Party Subpoenas to PPD

On June 1, 2017, Defendant caused to be issued upon PPD a subpoena to testify at deposition and a notice to take the deposition pursuant to Fed. R. Civ. P. 30(b)(6). PPD Mot. Ex. A [DE-125-1]. Defendant designated the following matters for examination:

1. PPD's code of ethics, employee handbook, and all policies, procedures and training materials relating to honesty, integrity, or ethics that were in effect during the Ketek Trial.

2. Fraud, irregularities, or investigative inquiries into the Ketek Trial, including:

    a. PPD's role in the Ketek Trial;

b. Any communications with Dr. Eshelman regarding the Ketek Trial, including but not limited to electronic or other correspondence on which he was copied;

c. Any communications with Ann Marie Cisneros regarding the Ketek Trial, Sanofi, Aventis, or Sanofi-Aventis, or Maria Anne Kirkman-Campbell, including but not limited to electronic or other correspondence on which she was copied;

d. Dr. Eshelman's actions, or actions taken on his behalf, with respect to any fraud or misconduct uncovered during the Ketek Trial;

e. PPD's Board of Director meetings and materials relating to the Ketek Trial, and any Board actions, or action taken on its behalf, with respect to any fraud or misconduct uncovered during the Ketek Trial;

f. Financial and/or reputational changes to PPD as a result of any fraud or misconduct uncovered during the Ketek Trial.

3. Any investigation by the Food and Drug Administration or any state or federal law enforcement agency of PPD with regard to the Ketek Trial during the period in which Dr. Eshelman was Chief Executive Officer.

4. All litigation related to the fraud uncovered in the Ketek Trial, including:

a. Number of lawsuits filed, and their location;

b. The underlying claims brought;

c. Settlement offers and amounts.

5. The reasons for Dr. Eshelman's resignation as CEO of PPD, and his duties and powers before and after resignation as CEO.

6. David L. Grange's appointment as CEO of PPD and reasons for his subsequent retirement from his position as CEO of PPD.

7. Raymond Hill's appointment as CEO of PPD and reasons for his subsequent retirement as CEO of PPD.

PPD Mot. Ex. A [DE-125-1] at 7–8.

On June 21, 2017, Plaintiff caused to be issued upon PPD a subpoena to testify at deposition and a notice to take the deposition pursuant to Fed. R. Civ. P. 30(b)(6). PPD Mot. Ex. B [DE-125-2]. Plaintiff designated the following matters for examination:

1. The responses, electronic records, and documents produced by PPD in response to Dr. Eshelman's February 2, 2017 subpoena and/or Puma's February 10, 2017 subpoena.

2. PPD's codes of ethics, codes of conduct, training materials, employee handbooks, compliance policies, compliance procedures, compliance videos, operating procedures, and internal ethics standards that were operative during the Ketek clinical trial.

3. Contracts and the contractual relationship between PPD and Aventis related to the Ketek clinical trial.

4. Contracts and the contractual relationship between PPD and Dr. Kirkman-Campbell related to the Ketek clinical trial.

5. PPD's efforts to protect the integrity of the Ketek clinical trial or to report, investigate, and/or correct any potential concerns relating to the Ketek clinical trial.

6. PPD's cooperation with any investigations relating to the Ketek clinical trial.

7. Ann Marie Cisneros's departure from PPD.

8. Dr. Eshelman's change of position from CEO to Executive Chairman of the Board and David Grange's appointment as CEO of PPD.

9. PPD's relationship with Puma, including how and when that relationship began; the goods or services rendered; the years of that relationship; the approximate revenue accrued on account of that relationship per year and total to date; the identity of the individuals at Puma with whom they have communicated, and the approximate frequency, subject matter, and methods of their communications with Puma; the date, location, and subject matter of any meetings with Puma in North Carolina.

10. PPD's verbal, written, and electronic communications with Puma about Dr. Eshelman or the Ketek clinical trial.

PPD Mot. Ex. B [DE-125-2] at 8–9.

Finally, on June 22, 2017, Defendant caused to be issued upon PPD a subpoena duces tecum for (1) all documents PPD produced in all Ketek civil lawsuits (Request for Production No. 16), (2) all documents produced to PPD in all Ketek civil lawsuits (Request for Production No. 17), and (3) all deposition transcripts, including exhibits, and deposition video recordings, from the Ketek civil lawsuits (Request for Production No. 18). PPD Mot. Ex. C [DE-125-3] at 9.

## II. STANDARD OF REVIEW

Subpoenas issued to nonparties are governed by Rule 45 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). "In response to such a subpoena, a non-party may either file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45 (d)(3)(A), move for a protective order pursuant to Fed. R. Civ. P. 26(c), or oppose a

motion to compel production of the subpoenaed documents pursuant to Fed. R. Civ. P. 45(d)

(2)(B)." *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002)).

"Rule 45 adopts the standard codified in Rule 26" in determining what is discoverable.

*Schaaf*, 233 F.R.D. at 453. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given a broad and

liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*,

No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. Sept. 27, 2000). While Rule 26 does

not define what is deemed relevant for purposes of the rule, relevance has been "broadly construed

to encompass 'any possibility that the information sought may be relevant to the claim or defense

of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3

(M.D.N.C. June 13, 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex.

2005)). The district court has broad discretion in determining relevance for discovery purposes.

*Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

The court is also authorized to impose appropriate limitations on discovery. Rule 26

provides that the "court may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Such orders may, among other measures, "forbid the disclosure or discovery" or "forbid inquiry

into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id.*

26(c)(1)(A), (c)(1)(D). When considering the propriety of enforcing a subpoena, a trial court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Schaaf*, 233 F.R.D. at 453 (quoting *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(iv). "In the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" *Schaaf*, 233 F.R.D. at 453 (quoting *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)). The determination of the reasonableness of a subpoena requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, weighing the benefits and burdens, considering whether the information is necessary and whether it is available from another source. *See* 9A Wright & Miller, *Fed. Practice & Procedure* § 2463.1 (3d ed.) (collecting cases); *see Spring v. Bd. of Trustees of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 4204153, at *1 (E.D.N.C. Aug. 8, 2016) ("Undue burden may be found where a subpoena is directed at information held by a non-party and the information is available from another source.") (citing *In re Subpoena of Daniel Drasin*, No. 13-CV-304, 2014 WL 585814, at *6 (D. Md. Feb. 12, 2014)). "A party moving for a protective order has the burden of making a particularized showing of why discovery should be denied, and conclusory or generalized statements in the motion fail to meet this burden." *Martin v. Bimbo Foods Bakeries Distribution, LLC*, 313 F.R.D. 1, 6 (E.D.N.C. 2016).

# III. DISCUSSION

## A.     Defendant's Subpoena to Testify Pursuant to Fed. R. Civ. P. 30(b)(6)

PPD moves the court to quash the subpoena ordering the deposition of designated representative(s) to testify on PPD's behalf regarding the information contained in Exhibit A of the subpoena. PPD Mot. Ex. A [DE-125-1] at 7–8. The nine topics contained in Defendant's subpoena may be divided into four broad categories of information: (1) PPD's internal policies and procedures in effect during the Ketek clinical trial; (2) the investigation(s) into the Ketek clinical trial, including communications by and among key individuals; (3) the subsequent litigation involving PPD with respect to the Ketek clinical trial; and (4) personnel decisions by PPD following the Ketek clinical trial. PPD contends that the subpoena to testify is unduly burdensome, and therefore moves that it be quashed pursuant to Rule 45(d)(3)(A)(iv). Specifically, PPD argues that (1) the subpoena is overbroad, (2) it would be unduly burdensome to prepare a witness to testify regarding dozens of closed cases, the records of which are contained in approximately 265 banker's boxes and stored off-site, many of which may be subject to confidentiality agreements related to litigation, (3) the broad categories of information contained in the subpoena have little relevance to the main dispute in this case, and (4) none of the key employees involved in the Ketek clinical trial has been employed by PPD for years, making the designation of a qualified witness virtually impossible. PPD Mem. [DE-126] at 8–9, n.2.

Defendant argues that the topics for testimony are relevant and that such testimony is necessary in order for Defendant to develop its defense. Def.'s Opp'n. [DE-135] at 5–9. In particular, Defendant posits that the information garnished at a deposition would be relevant regarding the extent of Plaintiff's knowledge of or involvement in the Ketek clinical trial fraud and therefore germane to Defendant's defense that its statements about Plaintiff are truthful. *See,*

*e.g., Martin Marietta Corp. v. Wake Stone Corp.*, 111 N.C. App. 269, 276, 432 S.E.2d 428, 433 (1993) (holding truth as a defense to a libel claim), *aff'd per curiam*, 339 N.C. 602, 453 S.E.2d 146 (1995).

The court must conduct a balancing test, weighing the burdensomeness of preparation against the necessity of the information, to determine what limitation on the subpoena is appropriate, if any. With respect to the burden placed on PPD, a non-party in this lawsuit, the court considers the following: the applicable time period of the discovery sought, the breadth of information requested, the dozens of closed cases related to the Ketek clinical trial, the volume of relevant documents related to the prior cases, the off-site storage of those documents, and the purported lack of any current PPD employees who had key roles during the Ketek clinical trial. With respect to the necessity of the information, the court considers that a showing of truth regarding an alleged defamatory statement is an absolute defense to libel. Because the alleged defamatory statements pertain to Plaintiff's role at PPD during the Ketek clinical trial, it logically follows that the information from PPD with regard to Plaintiff and his role in the Ketek clinical trial would be highly relevant. Additionally, while PPD is not a party to this lawsuit, it would seem that responsive testimony as it relates to these relevant topics would most likely be in its possession more readily, if not exclusively, than from other sources. The court also notes that, while PPD contends that it has previously produced responsive information in discovery, Defendant states that such compliance with previous document subpoenas was only partial, and it is altogether unclear to what extent PPD's earlier production overlaps with the present request. PPD Mem. [DE-126] at 7; Def.'s Opp'n [DE-135] at 4.

PPD fundamentally argues that the subpoena causes undue burden because it is overbroad. PPD Mem. [DE-126] at 7. "A subpoena imposes an undue burden on a party when a subpoena is

overbroad." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). "A subpoena is overbroad if it does not limit the documents requested to subject matter relevant to the claims or defenses." *Id.* PPD contends that the topics enumerated in the subpoena to testify are irrelevant to the main dispute in this case. The court largely disagrees. The scope of testimony requested by Defendant is limited to subjects related to the Ketek clinical trial—internal policies and procedures during the time of the Ketek clinical trial, and the investigations related to the Ketek clinical trial. Accordingly, topics (1), (2) and (3) of Defendant's subpoena as set out in Exhibit A are relevant to the main dispute. However, Defendant also seeks testimony regarding litigation against PPD following the Ketek clinical trial. After review of the parties' briefing, the court finds this request too expansive and that it would include matters wholly unrelated to issues in dispute here. To the extent the request seeks relevant matters, they are likely to be duplicative of the information in topics (1) – (3). Weighing such request with the need in this case and its demand on a non-party, the court finds topic (4) to be overbroad and unduly burdensome. Accordingly, the court sustains PPD's objection to topic (4). Additionally, Defendant requests testimony with respect to personnel decisions surrounding three specific employees—Plaintiff, David L. Grange ("Grange"), and Raymond Hill ("Hill"). Plaintiff has alleged that Defendant's statements against him being replaced as CEO of PPD are false and, accordingly, information related to the reasons for Plaintiff's resignation, and his duties and powers before and after his resignation as CEO, are relevant to the claims in this case. However, information related to the personnel decisions surrounding Grange and Hill do not appear relevant to the claims alleged in this case. Accordingly, the court finds topic (5) to be relevant, but topics (6) and (7) not relevant.

With respect to the breadth of information requested, PPD may designate more than one agent or representative to testify as to the various topics. PPD Mot. Ex. A [DE-125-1] at 5

("Defendant . . . shall take the deposition upon oral examination of Pharmaceutical Product Development, LLC ("PPD") through *one or more of its agents, or other representatives*, who shall be designated to testify on PPD's behalf regarding all information *known or reasonably available to PPD*") (emphasis added); Fed. R. Evid. 30(b)(6) ("The named organization must then designate one or more officers, . . . who consent to testify on its behalf; and it may set out the matters on which each person designated will testify"). Accordingly, the court disagrees with PPD's characterization that preparation of "*a* witness" to testify regarding a wide array of information is unduly burdensome because it is allowed to designate multiple witnesses to testify to as few or as many of the provided topics as they choose. PPD Mem. [DE-126] at 9 ("would purport to require PPD to prepare *a witness* to testify on broad categories of information") (emphasis added).

The court also rejects PPD's contention that the subpoena is unduly burdensome because the key employees in the Ketek clinical trial have not been employed by PPD for some years and thus "finding a corporate witness with personal knowledge of the information sought is essentially impossible." PPD Mem. [DE-126] at 9 n.2. PPD mistakes the demands of Rule 30(b)(6) and this objection is overruled. *See U.S. v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996) (holding that, while "[k]nowledgeable people have died" and "memories have faded" in the long-pending case, the company still had a duty to designate and prepare a witness pursuant to Fed. R. Civ. P. 30(b)(6)). It is established that "[i]f the designated witness does not have personal knowledge of the deposition topics, the corporation must prepare the witness to give 'knowledgeable and binding answers for the corporation.'" *Beach Mart, Inc. v. L&L Wings, Inc.*, 302 F.R.D. 396, 406 (E.D.N.C. 2014) (quoting *Taylor*, 166 F.R.D. at 361). Thus, a Rule 30(b)(6) witness must be prepared to testify beyond matters in which the witness was personally involved. *Id.*

PPD cites the dozens of cases involving PPD with regard to the Ketek clinical trial and the over 265 banker's boxes of documents related to those cases to support its contention that preparation for deposition would be unduly burdensome. However, the voluminous amount of information that has already been sorted and compiled should, in fact, make preparing a witness or witnesses easier than if none of this information had been sought out previously. In other words, the relevant documents for review have already been pulled and organized, and therefore the court does not find that these facts necessarily show undue burden.

In sum, PPD's motion to quash with respect to topics (4), (6) and (7) in Defendant's subpoena to testify is allowed. Accordingly, Defendant's subpoena to testify shall be amended to contain only the items listed in topics (1), (2), (3), and (5).

## B.     Plaintiff's Subpoena to Testify Pursuant to Fed. R. Civ. P. 30(b)(6)

PPD moves the court to quash the subpoena ordering the deposition of designated representative(s) to testify on PPD's behalf regarding the information contained in Exhibit A of the subpoena. PPD Mot. Ex. B [DE-125-2] at 8–9. The general topics for testimony with respect to topics (1)–(6) are similar in relevant part to the topics enumerated in Defendant's subpoena, namely (1) PPD's internal policies and procedures in effect during the Ketek clinical trial; and (2) the investigation(s) into the Ketek clinical trial. The key difference regarding these general topics in Plaintiff's subpoena is a focus on PPD's "integrity" and "cooperation" with respect to the investigations into the Ketek clinical trial. Accordingly, PPD's motion to quash with respect to topics (1)–(6) in Plaintiff's subpoena to testify is denied, for the reasons stated above.

Topics (7) and (8) of Plaintiff's subpoena contemplate certain PPD personnel decisions, namely regarding Cisneros' departure, Plaintiff's change of position, and Grange's appointment as CEO of PPD. The court finds that information related to Cisneros' departure from PPD is

relevant to the claims at issue here because Cisneros appears to have been a key figure in the Ketek clinical trial and ultimately testified before Congress with respect to her role in the trial. Her testimony, however, has not been provided to the court for the court to determine whether the request should be denied on grounds that the relevant information is available elsewhere. Accordingly, PPD's motion to quash with respect to topic (7) is denied. Topic (8) contains two separate requests related to Plaintiff and Grange. For purposes of clarity, the court will refer to the first request contained in topic (8) related to Plaintiff as topic (8a) and the second request contained in topic (8) related to Grange as topic (8b). The court similarly finds that information related to Plaintiff's change of position from CEO to Executive Chairman of the Board at PPD is relevant to the claims at issue here. However, any information related to Grange's appointment as CEO of PPD is irrelevant, as discussed above. Accordingly, PPD's motion to quash with respect to topic (8a) is denied and PPD's motion to quash with respect to topic (8b) is allowed.

Plaintiff additionally requests testimony related to PPD's relationship with Defendant and any verbal, written, and electronic communications between PPD and Defendant regarding Plaintiff or the Ketek clinical trial. Plaintiff contends that these requests are relevant with respect to actual malice, arguing that Defendant's ongoing business relationship with PPD is circumstantial evidence that Defendant did not actually believe that PPD or Plaintiff had been involved in the fraud. Pl.'s Opp'n [DE-136] at 4. The court disagrees and finds these requests are irrelevant to the issues presented in this case, which involve statements made by Defendant with respect to Plaintiff's role as CEO of PPD during the Ketek clinical trial. The case does not, however, concern PPD's relationship with Defendant. Therefore, PPD's motion to quash with respect to topics (9) and (10) in Plaintiff's subpoena to testify is allowed. Accordingly, Plaintiff's subpoena to testify shall be amended to contain only the items listed in topics (1)–(8a).

## C. Defendant's Subpoena Duces Tecum

Defendant seeks all documents PPD produced in all Ketek civil lawsuits (Request No. 16), all documents produced to PPD in all Ketek civil lawsuits (Request No. 17), and all deposition transcripts, including exhibits, and deposition video recordings, from the Ketek civil lawsuits (Request No. 18). PPD Mot. [DE-125-3] at 9. PPD objects to the subpoena on the grounds it is overly broad and thus unduly burdensome because it would require PPD to review approximately 265 banker's boxes of documents relating to dozens of lawsuits, all of which concluded over eight years ago, and are stored offsite, some of which may be subject to protective orders entered in the various litigation. PPD Mem. [DE-126] at 6. PPD anticipates that production of such documents would require a significant amount of time and money because each document would need to be reviewed to determine if it is subject to a protective order. *Id.* at 6–7. Additionally, PPD argues that it is reasonable to conclude that the majority of the documents would have no bearing on the issues of this case and therefore are irrelevant. *Id.* at 8. Defendant, however, contends that the documents are relevant, as they could yield information regarding Plaintiff's role in the Ketek clinical trial. Def.'s Opp'n. [DE-135] at 6–7. Additionally, Defendant is agreeable to excluding from production any documents that relate *only* to individual plaintiffs' damages. *Id.* at 7. Defendant also highlights for the court that, while document review is almost always required, Defendant specifically tailored its requests to documents that have already been produced in the litigation, and therefore have been previously reviewed. *Id.* at 8. Lastly, Defendant is also agreeable to accepting the terms of any outstanding protective and confidentiality orders as it pertains to the production of these documents. *Id.* at 8–9.

"A subpoena imposes an undue burden on a party when a subpoena is overbroad." *AOL, Inc.*, 550 F. Supp. 2d at 612. "A subpoena is overbroad if it 'does not limit the documents requested

to subject matter relevant to the claims or defenses." *Yates v. Ford Motor Company*, No. 5:12-CV-752-FL, 2015 WL 12851583, at *5 (E.D.N.C. June 16, 2015) (quoting *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 382 (D. Md. 2014)). Accordingly, courts in the Fourth Circuit have concluded that a subpoena for an entire file constitutes an overbroad request where that file likely contains both relevant and irrelevant information. *Champion Pro Consulting, Inc. v. Impact Sports Football, LLC*, No. 1:12-CV-27, 2014 WL 6686727, at *4 (M.D.N.C. Nov. 26, 2014) (citing *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (noting that, in context of rule governing subpoenas in criminal cases, "[c]ourts have held that requests for an entire file are evidence of an impermissible fishing expedition")); *see Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (quashing a subpoena as imposing an undue burden where a defendant requested a plaintiff's complete employment file, because that file also contained personal information not relevant to the case); *James Madison Project v. C.I.A.*, No. 1:08-CV-1323 (GBL), 2009 WL 2777961, at *4 (E.D. Va. Aug. 31, 2009) ("a request for all documents relating to a subject is usually subject to criticism as overbroad since . . . all documents relate to others in some remote fashion. Such a request unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request.").

The court finds that Requests for Production Nos. 16, 17, and 18 are overbroad because they do not limit the documents to the subject matter relevant to the claims at issue in this case. Rather, the subpoena requests all documents both produced to PPD and by PPD in all previous Ketek civil lawsuits. These requests are not tailored to the claims at issue here, namely, Plaintiff's role as CEO of PPD during the Ketek clinical trial. Instead, the court equates the subpoena to a fishing expedition, and finds that it is probable that wholly irrelevant documents could be produced

if the subpoena is not quashed. Defendant responds that the request should be enforced because at its core it calls for relevant evidence and Defendant has no objection to PPD excluding documents relating to damages. What sounds like a tacit admission by Defendant to the requests' overbreadth ignores the undue burden placed on PPD, a non-party. Requiring PPD to review documents in the first place to whittle its production in a way that is not overly broad runs afoul of the balanced attention the court must afford a non-party's response to the subpoena. Similarly, requesting all depositions and deposition materials from the previous Ketek civil lawsuits is also facially overbroad. It is equally probable that these depositions address issues or deponents that are entirely irrelevant to the claims at issue here, and therefore the requests are not narrowly-tailored. Accordingly, PPD's motion to quash Defendant's subpoena duces tecum is ALLOWED.

## IV. CONCLUSION

For the foregoing reasons, the motion to quash or for protective order filed by PPD is ALLOWED in part and DENIED in part as follows: PPD's motion to quash Defendant's subpoena to testify pursuant to Rule 30(b)(6) is DENIED for topics (1), (2), (3), and (5), and ALLOWED for topics (4), (6), and (7); PPD's motion to quash Plaintiff's subpoena to testify pursuant to Rule 30(b)(6) is DENIED for topics (1)–(8a), and ALLOWED for topics (8b)–(10); and PPD's motion to quash Defendant's subpoena duces tecum is ALLOWED.

So ordered, the 30 day of November 2017.

Robert B. Jones, Jr.
United States Magistrate Judge