IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-18-D

FREDRIC N. ESHELMAN, )
 )
    Plaintiff, )
 )
v. ) ORDER
 )
PUMA BIOTECHNOLOGY, INC., )
 )
    Defendant. )

Defendant Puma Biotechnology, Inc. ("Defendant") moves the court to compel Plaintiff Fredric N. Eshelman ("Plaintiff") to produce complete interrogatory responses and document production. [DE-167]. Plaintiff opposes the motion. [DE-208]. A hearing was conducted on January 24, 2018, after which the parties submitted supplemental briefing. [DE-265, -272]. For the reasons stated below, Defendant's motion is allowed in part and denied in part.

## I. BACKGROUND

Plaintiff has asserted claims of libel *per se* and libel *per quod* against Defendant related to statements Defendant made in a presentation to investors. *See* [DE-1, -5]. Specifically, Plaintiff alleges that in the course of a proxy contest, Defendant posted a link on its investor-relations website to download an "Investor Presentation" that allegedly contained defamatory statements about Plaintiff. Compl. [DE-5] ¶¶ 46–82.

On August 21, 2017, Defendant served Plaintiff with its Third Request for Production of Documents ("Third RFP"), the following of which are at issue here:

    45.    All documents relating to the amount of capital available to Plaintiff for investment in business opportunities from June 2015 to the present.

46. All documents relating to the value, or change in value, of Plaintiff's portfolio companies from June 2014 to the present.

47. All documents relating to any additional financing sought, or funding received, for Plaintiff's portfolio companies from June 2014 to the present.

48. To the extent they are not encompassed by RFP Nos. 45–47, all documents relating to Plaintiff's financial status from June 2015 to the present, including but not limited to, tax returns, financial statements, assets under management, and valuations of portfolio companies.

50. All documents supporting claims that Plaintiff's reputation was harmed, his relationships have been undermined, and confidence in his integrity and fitness has been undermined by Defendant's statements, as alleged in ¶¶ 44, 60, 61, 62, 77, 78, and 79 of his Complaint.

Def.'s Mot. [DE-167]; Def's Mot. Ex. 4 [DE-167-4] at 1–4. On August 21, 2017, Defendant served Plaintiff with its Third Set of Interrogatories ("Third Interrogatories"), the following of which are at issue here:

11. Identify Plaintiff's current assets under management.

12. Identify the amount of capital available to Plaintiff for investment in business opportunities on a quarterly basis from June 2015 to the present.

13. Identify the value, and change in value, of Plaintiff's portfolio companies on a quarterly basis from June 2015 to the present.

14. Identify any additional financing sought, and funding received, for Plaintiff's portfolio companies from June 2014 to the present.

18. Identify every fact that supports Plaintiff's claims that his reputation was harmed, his relationships have been undermined, and confidence in his integrity and fitness has been undermined by Defendant's statements, as alleged in ¶¶ 44, 60, 61, 62, 77, 78, and 79 of his Complaint, including but not limited to:

    (a) Each person or organization in whose estimation or with whom Plaintiff's reputation, relationships, integrity, and fitness have been so harmed or undermined;

    (b) The factual basis for Plaintiff's claims with respect to each persons or organizations;

    (c) The time and place in which such events occurred; and

(d)     Any communications or interactions through which Plaintiff learned of such events.

Def.'s Mot. [DE-167]; Def.'s Mot. Ex. 1 [DE-167-1] at 2–3. On September 20, 2017, Plaintiff responded to both the Third RFP and Third Interrogatories, objecting to the above-listed items on the general grounds of vagueness, confusion, ambiguity, relevancy, burden, disproportionality, and equal accessibility through third-party discovery. Def.'s Mot. Ex. 3 & 4 [DE-167-3, -4].

The parties conferred for nearly a month, both in person and by email, regarding the Third RFP and the Third Interrogatories. Def.'s Mem. [DE-168] at 4. Based on Defendant's representations, the primary issue that prevented the parties from reaching a consensus was Plaintiff's contention that he had "narrowed his damages claim" to only seek general damages, and therefore financial information that addressed special damages was no longer relevant. *Id.* Defendant contended that, because the complaint avers special damages, and has not been amended to exclude special damages, Defendant is entitled to discovery of financial information. *Id.* In his opposition, Plaintiff argues that (1) Defendant's requests for financial documents are not relevant because Plaintiff is now only pursuing general damages, as opposed to special damages; and (2) the RFPs at issue are duplicative of Defendant's First and Second Set of RFPs from 2016, to which Plaintiff produced over 1,000 pages of responsive documents. Pl.'s Opp'n [DE-208] at 5, 7.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the general rule regarding the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't*

3

*Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted). Accordingly, it is Plaintiff's burden to show why discovery should be denied.

The court must first address the timeliness of Defendant's motion. Rule 37(a) governing motions to compel does not specify a temporal requirement for the filing of such motions. "Generally, absent a specific directive in the scheduling order, motions to compel discovery filed prior to the discovery deadline have been held timely." *PCS Phosphate Co. v. Norfolk S. Corp.*, 238 F.R.D. 555, 558 (E.D.N.C. 2006). Whether to grant or deny a motion to compel is generally left within the district court's "substantial discretion in managing discovery." *Lone Star Steakhouse*, 43 F.3d at 929.

Defendant's motion to compel is essentially an implicit request to reopen fact discovery, as the discovery deadline has passed. "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "'[T]he touchstone of 'good cause' under Rule 16(b) is diligence.' In other words, the focus of the 'good cause' inquiry is 'on the diligence of the party seeking modification of the scheduling order.'" *Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09-CV-352-F, 2011 WL 238605, at *2 (E.D.N.C. Jan. 24, 2011) (quoting *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997)). "Rule 16(b)(4) expressly limits modification of scheduling orders to good cause and thus does not permit alteration of deadlines based upon a showing of extraordinary circumstances or in the interest of justice." *Id.* (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 268 F.R.D. 264, 273 (M.D.N.C. 2010)). "Thus, a court may 'modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment).

Here, discovery closed on September 22, 2017. [DE-54]. Defendant served its Third RFP and Third Interrogatories electronically on August 21, 2017, [DE-167-1, -167-2], responses to

5

which were due thirty days later on September 20, 2017, Fed. R. Civ. P 33(b)(2), 34(b)(2) (providing that a responding party has thirty days to provide a written response after being served with a request for production or an interrogatory). Plaintiff served his responses on September 20, 2017. [DE-167-3, -167-4]. Defendant filed the instant motion to compel on October 27, 2017. Def.'s Mot. [DE-167]. While the motion to compel was filed after the discovery deadline, the court finds Defendant nonetheless acted diligently in bringing the motion to compel, as evidenced by numerous emails and letters exchanged between counsel spanning from September 25–October 27, 2017, attempting to resolve the disputes presented in the motion. Def.'s Mot. Exs. 5–11 [DE-167-5–11]. *See, e.g., Patrick v. Teays Valley Trustees, LLC*, 297 F.R.D. 248, 255 (N.D. W. Va. 2013) (finding delay in filing motion to compel excusable when facts show an effort by counsel to resolve their dispute prior to filing the motion to compel). Thus, given Defendant's diligence in attempting to resolve the issues prior to filing the instant motion, the court determines that Defendant has shown good cause and will turn to the merits of the motion.

Plaintiff proffers two reasons why Defendant's motion should be denied: (1) Defendant's requests for financial documents are not relevant because Plaintiff is only pursuing general damages, as opposed to special damages; and (2) the RFPs and interrogatories at issue are duplicative of Defendant's First Set of RFPs from 2016, to which Plaintiff produced over 1,000 pages of responsive documents. Pl.'s Opp'n [DE-208] at 5, 7. The court will address these arguments in turn.

## A. Plaintiff's Damages Claim

First, Plaintiff argues that Defendant's discovery requests seeking disclosure of Plaintiff's financial information are irrelevant because Plaintiff has effectively disclaimed any intent to pursue special damages in this case. Pl.'s Opp'n [DE-208] at 3. Plaintiff has represented to the

6

court, both during the January 24, 2018 hearing and in the briefing, that he does not intend to seek special damages pursuant to a claim of libel *per quod*, and will only pursue general damages pursuant to a claim of libel *per se*. *Id.* Plaintiff argues that, by only pursuing the libel *per se* claim, he is not required to prove damages by evidence "since [damages] arise by inference of law," and therefore Plaintiff's financial information is no longer relevant. Pl.'s Suppl. Br. [DE-265] at 3 (quoting *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 316 (1984)). Defendant contends that the complaint dictates the scope of discovery, and because Plaintiff has alleged damage to his business in his complaint and has failed to amend the complaint, Defendant may discover information related to Plaintiff's finances. Def.'s Suppl. Br. [DE-272] at 2. Further, Defendant argues that Plaintiff is seeking a sum certain of damages ($7,500,000.00) and therefore, Defendant should be able to discover financial information in order to refute that damage calculation. *Id.* at 3.

In his sworn complaint, Plaintiff alleged libel *per se* and pleaded that, "as a result of the false and defamatory accusations published by Defendant[]," his "reputation has been impugned," his "relationships with other members of the pharmaceutical profession, other directors with whom [Plaintiff] serves, investors, potential investors, portfolio companies, potential portfolio companies, and others have been undermined," his "integrity and fitness as a member of the pharmaceutical profession and as a director, leader, and investor in healthcare and the pharmaceutical sector has been undermined," his "business and investments have been adversely affected in an amount yet to be determined," and he "has been forced to make an expenditure of money to remedy the defamation." Compl. [DE-1] at 11–16. Plaintiff concludes his discussion of libel *per se* by pleading that he is "entitled to actual, presumed, *and* punitive damages in an amount to be specifically determined at trial." *Id.* at 16 (emphasis added).

7

Plaintiff requests that the court accept his subsequent representations that he no longer elects to seek actual damages in this case, therefore ignoring what was sworn to in the complaint, and deem any discovery of Plaintiff's actual harm irrelevant. The court denies his request. Plaintiff had the opportunity to seek leave of the court to amend his complaint and exclude those allegations of specific, actual harm suffered as a result of the alleged defamatory statements made by Defendant. It is not sufficient that Plaintiff seemingly renounced his allegations of actual harm in his fourth amended initial disclosures, where his computation of damages was amended to include only reputational damage. Pl.'s Fourth Initial Disclosure [DE-182-24] at 9. Because the complaint and its claims determine relevancy with respect to discovery, and Plaintiff pleaded pecuniary harm with specificity, the court finds that discovery related to Plaintiff's financial information is relevant. *See, e.g., United States v. Pritchett*, No. 5:09-CV-322-F, 2010 WL 4484647 (E.D.N.C. Oct. 29, 2010) (finding certain requests for discovery within the scope of discovery based on the allegations in the complaint). Accordingly, by specifically pleading damage with respect to his business and investments, the court finds that discovery related to Plaintiff's financial information is relevant as it relates to his libel *per se* claim.

A plaintiff who succeeds on a claim of libel *per se* is entitled to presumed damages without proof of actual damages. N.C.P.I.—Civ. 806.81 (June 2008) (citing *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1139 (7th Cir. 1987)). While damages are presumed, however, the plaintiff still maintains an evidentiary burden to demonstrate that the amount of damages sought "is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Mann v. Swiggett*, No. 5:10-CV-172-D, 2012 WL 5507255, at *6 (E.D.N.C. Oct. 9, 2012). Indeed, "[i]t is a well-established principle of law that proof of damages must be made with reasonable certainty." *Weyerhaeuser v. Supply Co., Inc.*, 292 N.C.

552, 234 S.E.2d 605 (1977); *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 546, 356 S.E.2d 578, 585 (1987); *see Mann*, 2012 WL 5507255, at \*6 (quoting *Olivetti*, 319 N.C. at 547-48, 356 S.E.2d at 586). Further, the North Carolina Pattern Jury Instruction for libel *per se* states that a jury may award a plaintiff presumed damages in a nominal amount, or, in the exercise of good judgment and common sense, in an amount that will compensate a plaintiff for injury that is a direct and natural consequence of the libel. N.C.P.I.—Civ. 806.81 (June 2008) (citing *Tobacco v. North Atlantic Trading*, 381 F.3d 717, 734 (7th Cir. 2004) ("Presumed damages serve a compensatory function—when such an award is given in a substantial amount to a party who has not demonstrated evidence of concrete loss, it becomes questionable whether the award is serving a different purpose.")). Accordingly, the court rejects Plaintiff's argument that Defendant's discovery requests are irrelevant by virtue of Plaintiff's decision to proceed solely with a claim of libel *per se* where it is apparent that the law of libel *per se* does not necessarily preclude evidence of Plaintiff's financial information.

## B. Objections to Discovery

Second, Plaintiff argues that the RFPs are duplicative of prior RFPs, in response to which Plaintiff produced over 1,000 pages of financial documents. Specifically, Plaintiff identifies RFP Nos. 31, 34, 36, 37, 38, and 43, all of which sought documents relating to Plaintiff's financial status and investment opportunities. Pl.'s Opp'n [DE-208] at 2. In particular, Plaintiff identifies by Bates-stamp number the specific documents Plaintiff produced, including: (1) emails from Plaintiff's financial advisor at the close of trading detailing daily and/or weekly performance of Plaintiff's stock portfolios; (2) documents evidencing Plaintiff's net worth, including the value of Plaintiff's stocks and equity in private companies, investment and brokerage accounts, cash-on-hand, and real estate holdings; (3) financial documents from Plaintiff's investment holdings

9

company, Eshelman Ventures, LLC, which include profit and loss statements, valuations, performance analyses, investor reports, and detailed financial statements for the company's portfolio companies; and (4) Plaintiff's 2015 and 2016 tax returns along with more than 600 pages of additional documents related to Plaintiff's tax filings. *Id.* at 2–4. On January 24, 2018, the court received an unsolicited copy of these documents in connection with this motion. However, the court did not consider these documents in rendering its decision. In his supplemental briefing, Plaintiff seemingly narrowed his argument to contend that the two years of tax returns, totaling 600 pages, is sufficient to "establish that [Plaintiff] has not determined any monetary loss that he has suffered as a result of [Defendant]'s defamatory statements." Pl.'s Suppl. Br. [DE-265] at 5.

In the original motion and memorandum, Defendant did not address any previously produced financial documents, instead stating, "[Plaintiff] has refused to produce entire swaths of relevant information including *any* document or information relating to his financial status *before or after* [Defendant]'s allegedly defamatory presentation." Def.'s Mem. [DE-168] at 1 (emphasis added). In the supplemental briefing, Defendant argues that any previously produced financial documents are insufficient because they are "completely devoid of any relevant information," Plaintiff produced "virtually no documents about his business and financial experience after [the] presentation," and "that documents [Plaintiff] produced that are arguably financial in nature were redacted of information that did not specifically mention Puma."[1] Def.'s Suppl. Br. [DE-272] at 7–8. The court notes that Defendant did not previously file motions to compel with respect to any of the prior RFPs cited by Plaintiff as duplicative of the current RFPs at issue.

---

[1] In the supplemental briefing, Defendant requested, for the first time, that the court compel unredacted copies of any documents that were previously produced and redacted for reasons other than privilege. *Id.* at 8. First, the court deems it improper for this request to be made in supplemental briefing where it was not raised in Defendant's original motion. Second, the request is in stark contradiction of Defendant's original position that Plaintiff had refused to produce *any* relevant financial documents. Accordingly, the court disregards this request.

10

The court now addresses each discovery request in dispute.

**RFP No. 45**. All documents relating to the amount of capital available to You for investment in business opportunities from June 2015 to the present.

In response to this request, Plaintiff objected on the basis that it is "vague and ambiguous to the extent that it purports to require [Plaintiff] to identify capital the [Plaintiff] could have hypothetically invested during the identified time period." Pl.'s Third RFP Resp. [DE-167-4] at 2. Further, Plaintiff argued that "the amount of capital available to [him] is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence" and "even if identifying this information were possible, the burden of doing so would be substantially disproportionate to the needs of this case." *Id.* Plaintiff argues further that this request calls for the same information he provided in response to RFP Nos. 31 and 34.[2] Pl.'s Opp'n [DE-208] at 5. Plaintiff responded to the requests by stating he would "produce copies of the non-privileged documents in his investment opportunity files." Pl.'s First RFP Resp. [DE-265-2] at 13, 15. Defendant did not move to compel Plaintiff to respond to these earlier requests and the court finds the earlier RFPs to be inclusive of the documents sought in RFP No. 45. Accordingly, the request is cumulative and the motion is denied with respect to RFP No. 45.

**RFP No. 46**. All documents relating to the value, or change in value, of Your portfolio companies from June 2014 to the present.

In response to this request, Plaintiff objected on the basis that the information is equally accessible to Defendant through documents and financial statements that have been filed with the Securities and Exchange Commission and other public entities. Pl.'s Third RFP Resp. [DE-167-

---

[2] RFP No. 31 requested "[a]ll documents related to any investment prospect or opportunity for You prior to January 6, 2016, regardless of whether such prospect or opportunity was consummated, negotiated, offered, withdrawn, refused, evaluated, pursued or abandoned." Def.'s First RFP [DE-208-1] at 13. RFP No. 34 requested "[a]ll documents relating to and/or regarding any investment prospect or opportunity for You after January 6, 2016, regardless of whether such prospect or opportunity was consummated, negotiated, offered, withdrawn, refused, pursued or abandoned." Def.'s First RFP [DE-208-1] at 14.

11

4] at 2. Further, Plaintiff objected that the term "value" is subjective, vague, and ambiguous, and that the associated burden of production "would be substantially disproportionate to the needs of this case." *Id.* Plaintiff does not specifically account for RFP No. 46 in his opposition to the motion. As discussed above, the court finds that, because Plaintiff asserted in his complaint that his businesses and investments were adversely affected as a result of Defendant's presentation, documents related to Plaintiff's businesses and investments are relevant. However, courts do not typically order discovery of public records which are equally accessible to all parties. *Taylor v. McGill Envtl. Sys. of N.C., Inc.*, No. 7:13-CV-270-D, 2015 WL 1125108, at *10 (E.D.N.C. Mar. 12, 2015) (citing *S.E.C. v. Strauss*, No. 09-CIV.-4150-RMB/HBP, 2009 WL 3459204, at *11 (S.D.N.Y. Oct. 28, 2009) ("Courts have declined to compel production of documents in the hands of one party when the material is equally available to the other party from another source.")); *Krause v. Buffalo & Erie Cty. Workforce Develop. Consortium*, 425 F. Supp. 2d 352, 374–75 (W.D.N.Y. 2006) (citing *Securities & Exchange Commission v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973)). It is unclear to the court from the parties' submissions whether all of Plaintiff's portfolio companies are public entities that are required to publicly disclose financial statements. Accordingly, to the extent the request extends beyond public entities that are required to publicly disclose this financial information, Defendant's motion is allowed.

**RFP No. 47.** All documents relating to any additional financing sought, or funding received, for Your portfolio companies from June 2014 to the present.

In response to this request, Plaintiff objected on the basis that the request was "confusing, vague, and ambiguous because it does not define 'additional financing sought.'" Pl.'s Third RFP Resp. [DE-167-4] at 3. Further, Plaintiff objected to the extent that the request sought information that is possessed by third parties and is equally accessible to Defendant through discovery of said individuals and entities. *Id.* Finally, Plaintiff objected on the basis that the request sought

12

irrelevant information that is overly broad and unduly burdensome. *Id.* Plaintiff does not specifically account for RFP No. 47 in his opposition to Defendant's motion. Because Plaintiff specifically pleaded in the complaint that he suffered reputational harm, as well as harm to his business and investments, the court finds that discovery related to financing sought or funding received by Plaintiff is relevant. The court does not find Plaintiff's remaining boilerplate objections persuasive. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir 2003); *Mainstreet Collection*, 270 F.R.D. at 240 (recognizing that boilerplate objections are not proper). Accordingly, Defendant's motion is allowed, and Plaintiff is compelled to produce documents responsive to RFP No. 47, or specifically identify any previously produced documents that are responsive to RFP No. 47.

> **RFP No. 48.** To the extent they are not encompassed by Request Nos. 45–47, all documents relating to Your financial status from June 2015 to the present, including but not limited to, tax returns, financial statements, assets under management, and valuations of portfolio companies.

In response to this request, Plaintiff objected on the bases of attorney-client privilege and work product doctrine. Pl.'s Third RFP Resp. [DE-167-4] at 3. However, Plaintiff has not made that objection in his opposition to the motion, or in his supplemental briefing. Accordingly, this objection is overruled. *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) ("The burden is on the proponent of the attorney-client privilege to demonstrate its applicability.") (citation omitted); *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) ("As in the case of attorney-client privilege, the party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine.") (citations omitted); *Cain v. Wal-Mart Stores, Inc.*, No. 5:16-CV-221-D, 2018 WL 1434819, at *5 (E.D.N.C. Mar. 22, 2018) ("Mere boilerplate assertions of privilege are insufficient to establish applicability.") (citation omitted). . Further, Plaintiff contended the request was vague and ambiguous because "financial status,"

13

"assets under management," and "valuations" were not defined, and that the request sought irrelevant information, was overly broad, and unduly burdensome. Pl.'s Third RFP Resp. [DE-167-4] at 3. However, in opposition to the motion, Plaintiff argues that RFP No. 48 is duplicative of the information responsive to RFP No. 43,[3] and identifies, by Bates-stamp number, produced documents—profit and loss statements from Eshelman Ventures, balance sheets and periodic reports from portfolio companies in which Plaintiff had invested, correspondence with Plaintiff's financial advisor describing his holdings, close-of-market reports containing analyses of Plaintiff's stock portfolios, valuations of Plaintiff's real estate holdings and accountings of his net worth, and Plaintiff's tax returns from 2015 and 2016—that Plaintiff contends are responsive to this request. Pl.'s Opp'n [DE-208] at 5–6. Plaintiff also argues that, on October 10, 2017, during the parties' meet-and-confer, defense counsel offered to "forgo its request for other financial documents in response to RFP No. 48 if Dr. Eshelman will produce his tax returns from 2015 to present." *Id.* at 4 (citing [DE-167-8 at 3]). Therefore, Plaintiff contends, because he produced his 2015 and 2016 tax returns, Defendant should be held to its good faith offer, and forgo any further documents with respect to RFP No. 48. Defendant, instead, argues that, "[t]he two years of tax returns that Dr. Eshelman belatedly produced in response to RFP [No.] 48—only *after* Puma filed its motion to compel—are just a beginning to investigating Dr. Eshelman's alleged damages and the supposed harms he swore under oath were the basis for all his claims." Def.'s Suppl. Br. [DE-272] at 6. The court will not endeavor to interpret email correspondence between the parties during their meet-and-confer to determine what was agreed upon with respect to this request. Rather, the court finds such financial information is relevant, and, while the information called for in RFP No. 48 may comprise of the information requested in RFP No. 43, it is not entirely inclusive of such

---

[3] RFP No. 43 requested "[a]ny and all documents related to or reflecting Your income from any source or assets of any kind, since January 1, 2005." Def.'s Second RFP [DE-208-1] at 19.

14

documents. Further, the court does not find Plaintiff's remaining boilerplate objections persuasive. *See Carefirst of Md., Inc.*, 334 F.3d at 402–03. Accordingly, Defendant's motion is allowed, and Plaintiff is compelled to produce documents responsive to RFP No. 48, or specifically identify any previously produced documents that are responsive to RFP No. 48.

> **RFP No. 50.** All documents supporting your claims that your reputation was harmed, your relationships have been undermined, and confidence in your integrity and fitness has been undermined by Puma's statements, as alleged in Paragraphs 44, 60, 61, 62, 77, 78, and 79 of your Complaint.

In response to this request, Plaintiff objected on the basis of attorney-client privilege or work product doctrine. Pl.'s Third RFP Resp. [DE-167-4] at 4. However, Plaintiff has not made that objection in his opposition to the motion, or in his supplemental briefing. Accordingly, this objection is overruled. *See Hawkins*, 148 F.3d at 383 ("The burden is on the proponent of the attorney-client privilege to demonstrate its applicability."); *Cain*, 2018 WL 1434819 at *5. Plaintiff argues instead in his opposition that RFP No. 50 calls for the same information Plaintiff previously provided in response to RFP No. 38.[4] Plaintiff responded to this request by stating he would "produce any non-privileged documents that may be responsive to this request." Pl.'s First RFPs Resp. [DE-265-2] at 16. With respect to the duplicative nature of the request, the court agrees with Plaintiff that RFP No. 38 is inclusive of the documents sought in RFP No. 50. While the language of RFP No. 50 is more expansive than that of RFP No. 38, it cannot be denied that whether one's relationships have been undermined or whether confidence in one's integrity and fitness has been undermined all relate to one's general reputation. Therefore, it follows that any responses with respect to these additional examples of reputational harm would fall under the general category of "damage to your reputation," as requested in RFP No. 38. Plaintiff specifically

---

[4] RFP No. 38 requested "[a]ll documents related to any damage to your reputation as a result of the Investor Presentation." Def.'s First RFP [DE-208-1] at 14.

responded that any non-privileged documents responsive to RFP No. 38 would be produced, and Defendant has not refuted this assertion, nor moved to compel documents with respect to RFP No. 38. Accordingly, Defendant's motion is denied with respect to RFP No. 50 for being duplicative.

**Interrogatory No. 11**. Identify Your current assets under management.

In response to this interrogatory, Plaintiff objected on the basis that it is "confusing, vague, and ambiguous because it does not define 'assets under management.'" Pl.'s Interrog. Resp. [DE-167-3] at 2. He further objected on the bases of relevancy, overly broad, and unduly burdensome. *Id.* Plaintiff does not address Interrogatory No. 11 in either his opposition to Defendant's motion, or in his supplemental briefing. The party seeking the court's protection from responding to discovery must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law. *See Carefirst of Md., Inc.*, 334 F.3d at 402–03; *Mainstreet Collection*, 270 F.R.D. at 240 (recognizing that boilerplate objections are not proper). The court finds that Plaintiff's objections are boilerplate, and without more, the boilerplate objections are insufficient. Therefore, Plaintiff has failed to meet his burden of making a particularized showing of why discovery should be denied. Accordingly, Defendant's motion is allowed with respect to Interrogatory No. 11.

**Interrogatory No. 12**. Identify the amount of capital available to You for investment in business opportunities on a quarterly basis from June 2015 to the present.

In response to this interrogatory, Plaintiff objected on the basis that it is "vague and ambiguous to the extent that it purports to require Dr. Eshelman to identify capital that [he] could have hypothetically invested during the identified period." Pl.'s Interrog. Resp. [DE-167-3] at 2–3. Further, Plaintiff objected that the request is irrelevant, and unduly burdensome. *Id.* Plaintiff does not address Interrogatory No. 12 in either his opposition to Defendant's motion, or in his supplemental briefing. The court does not interpret the scope of the interrogatory to include

16

hypothetical capital, but rather actual capital available to Plaintiff. Accordingly, the court finds that the request is not "vague and ambiguous," and further finds that the remaining objections are boilerplate and unsubstantiated. *See Carefirst of Md., Inc.*, 334 F.3d at 402–03. Therefore, Plaintiff has failed to meet his burden of making a particularized showing of why discovery should be denied. Accordingly, Defendant's motion is allowed with respect to Interrogatory No. 12.

**Interrogatory No. 13.** Identify the value, and change in value, of Your portfolio companies on a quarterly basis from June 2015 to the present.

In response to this interrogatory, Plaintiff objected on the basis that such information is equally accessible through documents and financial statements that have been filed with the Securities and Exchange Commission and other public entities. Pl.'s Interrog. Resp. [DE-167-3] at 3. Plaintiff also objected that the term "value" is "subjective, vague, and ambiguous" and that responding to the request would be unduly burdensome. *Id.* Plaintiff does not address Interrogatory No. 13 in either his opposition to Defendant's motion, or in his supplemental briefing. First, the court does not find "value" to be "subjective, vague, and ambiguous." Notwithstanding, courts do not typically order discovery of public records which are equally accessible to all parties. *Taylor*, 2015 WL 1125108, at *10; *Krause*, 425 F. Supp. 2d at 374–75. It is unclear to the court from the parties' submissions whether all of Plaintiff's portfolio companies are public entities that are required to file financial statements with the Securities and Exchange Commission and other public entities. Accordingly, to the extent the request extends beyond public entities that are required to publicly disclose their financial information, Defendant's motion is allowed.

**Interrogatory No. 14.** Identify any additional financing sought, and funding received, for Your portfolio companies from June 2014 to the present.

In response to this interrogatory, Plaintiff objected on the basis that it is "confusing, vague, and ambiguous because it does not define 'additional financing sought,'" as well as on the grounds that the information is equally accessible through a third party. Pl.'s Interrog. Resp. [DE-167-3] at 3–4. Further, Plaintiff objected that the interrogatory seeks irrelevant information, is overly broad, and unduly burdensome. *Id.* at 4. Plaintiff does not address Interrogatory No. 14 in either his opposition to Defendant's motion, or in his supplemental briefing. Because Plaintiff specifically pleaded in the complaint that he suffered reputational harm, as well as harm to his business and investments, the court finds that discovery related to financing sought or funding received by Plaintiff is relevant. The court finds the remaining objections are boilerplate and unsubstantiated, and therefore Plaintiff has failed to meet his burden of making a particularized showing of why discovery should be denied. *See Carefirst of Md., Inc.*, 334 F.3d at 402–03. Accordingly, Defendant's motion is allowed with respect to Interrogatory No. 14.

> **Interrogatory No. 18.** Identify every fact that supports your claims that your reputation was harmed, your relationships have been undermined, and confidence in your integrity and fitness has been undermined by Puma's statements, as alleged in Paragraphs 44, 60, 61, 62, 77, 78, and 79 of your Complaint, including but not limited to:
> (a) each person or organization in whose estimation or with whom your reputation, relationships, integrity, and fitness have been so harmed or undermined;
> (b) the factual basis for your claims with respect to such persons or organizations;
> (c) the time and place in which such events occurred; and
> (d) any communications or interactions through which you learned of such events.

In response to this interrogatory, Plaintiff objected on the basis that it is "confusing, vague, and ambiguous because it contains multiple clauses and subparts," "because there is no way he [Plaintiff] could practically identify every relationship that has been negatively impacted as a result of Puma's defamatory accusations," and "it would be unduly burdensome and disproportional to the needs of this case to ascertain the level of detail requested." Pl.'s Interrog. Resp. [DE-167-3] at 5–6. Plaintiff goes on to state that his "standing in the community has been impaired, his social

18

relationships have suffered and/or been lost, and his mental anguish, suffering, inconvenience, and loss of enjoyment are such that they cannot readily be quantified." *Id.* at 6. Further, Plaintiff maintained that he previously "enjoyed an unblemished reputation in the pharmaceutical industry," but since the defamatory comments, his peers now view him "in a negative light because he was accused of being 'involved with' clinical trial fraud." *Id.* Lastly, Plaintiff stated that, "[b]ecause these individuals have not specifically notified Plaintiff, it is difficult—if not impossible—for [him] to identify each and every individual who has become aware of the defamatory allegations at issue and subsequently lowered their esteem of Dr. Eshelman." *Id.* However, Plaintiff has incorporated by reference the recitation of damages and the list of witnesses set forth in his Third Amended Initial Disclosures dated August 4, 2017, in an effort to respond to the interrogatory. *Id.* Federal Rule of Civil Procedure 33(b)(3) requires that "each interrogatory be answered 'separately and fully'" and "this requirement has been interpreted to exclude answering by reference to other documents such as pleadings, depositions, or other discovery responses." *Patten v. Hall*, No. 5:15-CT-3118-FL, 2017 WL 6062258, at \*3 (E.D.N.C. Dec. 7, 2017) (citing *Anderson v. Caldwell Cty. Sheriff's Office*, No. 1:09cv423, 2011 WL 2414140, at \*4 (W.D.N.C. June 10, 2011)). Therefore, Plaintiff's response to Interrogatory No. 18 is incomplete where it refers to the content of another document. Further, the court finds that, because Plaintiff was able to identify in his Third Amended Initial Disclosures specific people that may testify regarding Plaintiff's reputation, it is reasonable to expect that Plaintiff can provide Defendant with the remaining information sought—namely, the factual basis for the witnesses' claims, any relevant times and places, and any communications relevant to their testimony. Accordingly, Defendant's motion to compel with respect to Interrogatory No. 18 is allowed.

19

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Complete Interrogatory Responses and Document Production [DE-167] is ALLOWED in part and DENIED in part. Plaintiff is ordered to comply with this order within fourteen (14) days.

So ordered, the 6th day of April 2018.

Robert B. Jones, Jr.
United States Magistrate Judge