UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

_____ )
FREDRIC N. ESHELMAN,            )
                                )
                Plaintiff,      )
                                )
        vs.                     )
                                )   7:16-CV-00018-D
PUMA BIOTECHNOLOGY, INC.,       )
                                )
                Defendant,      )
_____ )

MARCH 1, 2019
PRETRIAL MOTIONS
BEFORE THE HONORABLE JAMES C. DEVER, III
UNITED STATES DISTRICT JUDGE

APPEARANCES LISTED ON PAGE 2

Wanda B. Constantino, CVR-CM-M
WordServices, Inc.
1102 Driftwood Drive
Siler City, North Carolina  27344
919.548.4914
wanda@mywordservices.com
Stenomask with computer-aided transcription

<u>APPEARANCES</u>

<u>On behalf of the Plaintiff:</u>

THOMAS A. CLARE, ESQ.
MEGAN L. MEIER, ESQ.
DANIEL P. WATKINS, ESQ.
Clare Locke LLP
10 Prince Street
Alexandria, Virginia 22314
tom@clarelocke.com
megan@clarelocke.com
daniel@clarelocke.com


ANDREW KENT McVEY, ESQ.
Murchison, Taylor & Gibson, PLLC
16 North Fifth Avenue
Wilmington, North Carolina  28401-4537
amcvey@murchisontaylor.com

<u>On behalf of the Defendant:</u>

DAVID L. LEVY, ESQ.
DEVLIN K. HORTON, ESQ.
Hedrick, Gardner, Kincheloe & Garofalo, LLP
6000 Fairview Road
Suite 1000
Charlotte, North Carolina  28210
dlevy@hedrickgardner.com
dhorton@hedrickgardner.com

1          (Friday, March 1, 2019, commencing at 1:00 p.m.)

2          THE COURT:  Good afternoon, and welcome to the United

3     States District Court for the Eastern District of North

4     Carolina.  We're here today for the pretrial conference in the

5     *Eshelman* case.  If I could have counsel introduce themselves,

6     starting with the Plaintiff's counsel.

7          MR. TOM CLARE:  Good afternoon, Your Honor.  My name

8     is Tom Clare.  I'm from the law firm of Clare Locke, L.L.P.,

9     from Alexandria, Virginia.  With me I have my partner, Megan

10    Meier, and Daniel Watkins, as well as our counsel, Andy McVey,

11    here representing the Plaintiff.  It's our privilege to be

12    here, and thank you for having us.

13         THE COURT:  Thank you.

14         MR. DAVID LEVY:  Judge, good afternoon.  Dave Levy,

15    along with Devlin Horton, with the Hedrick Gardner law firm

16    here in North Carolina.

17         THE COURT:  Okay.  Thank you.  Good to have y'all

18    here.  I wanted to obviously go through some things, and then I

19    will tell you that we are going to get back together again next

20    Friday at 2:00.  We're going to get through some of our

21    materials today, and we're going to get through the rest of the

22    materials next Friday.

23         And I have reviewed the joint pretrial order.  I have

24    -- I added a signature line and an approval line at the end of

25    that, and that will be made part of the record.  I did want to

1   say with respect to the -- as I understand it, the highlighted

2   portions were objected to by Puma based on relevance.  Is that

3   right?

4            MR. LEVY:  That's correct, Judge.

5            THE COURT:  Okay.  But they -- but those are all --

6   they're stipulated facts, but y'all just object to those.  Is

7   that right?

8            MR. LEVY:  That's correct.

9            THE COURT:  Okay.  All right.  Well, I have gone

10  through them, and I overrule a relevance objection except as to

11  paragraph 21, which I think has to do with Dr. Eshelman being a

12  philanthropist or something to that effect.

13           So 1 -- so basically on the stipulations, paragraphs

14  1 through 147 are going to be admitted as stipulations.  I

15  stopped at 147, the -- and then -- and I didn't include 148

16  through 152, which is -- basically it's going to end with

17  Dr. Eshelman filing the defamation lawsuit.

18           So -- and what I would like and what I think is --

19  and I'm going to read those stipulations to the jury at the

20  beginning of the case, but I think what's most useful -- when I

21  have just a few stipulations, I will include them in the jury

22  instructions and just -- you know, if I have ten stipulations

23  or even 20 or 30.

24           But if I have this many, I think it's most efficient

25  to have a separate exhibit created so that if -- and I'd ask

1    Mr. Clare, if you could take the lead on that, just -- and just

2    whatever exhibit number it is, that I'll -- then in the

3    instructions I will cross-reference that, that the parties have

4    stipulated in exhibit -- Plaintiff's Exhibit Number whatever.

5    And I will obviously have told them what a stipulation is when

6    I -- at the beginning of the trial and then in my final charge,

7    but I think that's more efficient than me reading those to them

8    more than that first time.

9            I'm going to read those, and I appreciate y'all

10   working through that, 'cause I think it helps orient them to

11   kind of what we're all here about.

12           And so if you could just break those out, 1 through

13   147, but not paragraph 21, and then that will also be an

14   exhibit.

15           I'm going to go through the pretrial order here in a

16   moment.  The motion to bifurcate at docket entry 354 and the

17   Plaintiff's response, I will grant that.  We'll deal with the

18   issue of liability and compensatory damages and then deal with

19   punitive damages if we need to.

20           And in terms of just timing of how I think things

21   will play out during the week of the trial -- and I'll hear

22   from y'all, but I anticipate obviously we're going to pick the

23   jury Monday.  That won't take too long.  And I would anticipate

24   or my goal is that we get the case to the jury on the issue of

25   liability and compensatory damages by the end of the day

Thursday, which means I have to finish my charge. I want them
to be deliberating. And if I charge sort of to the end of the
day, and that's kind of what I'm thinking, then they have
Friday and, you know, there's no time limit on their
deliberations. But if they had a verdict that day, then I
would anticipate dealing with punitives on Monday.

And so kind of working back, I can just tell you --
and these are rough estimates that I want to give you, but I
try a lot of cases, and especially -- well, just because of how
many cases we have here -- I think this is my fifth trial this
year, and I'll have 13 more before the end of August. And so
trial time is at a premium around here.

And I have absolutely no problem and I would -- I'll
just tell you, if there are legal issues we need to talk about,
we will talk about them early in the morning. We will talk
about them when the jury is eating lunch. We will talk about
them late into the night if we have to. But when the jurors
are in this building, they will either be eating at a break or
listening to witnesses.

And so you'll find that the schedule that I -- you
know, the first day we'll bring them up here at 10. We'll get
through the jury selection process. That's a little bit of a
-- and I give them some preliminary instructions after we get
them picked, but I certainly think, say, by 1:00, we'll be
working up until 5:00. Some of our jurors have to drive quite

a distance to get here, so I always let them know that I'm
letting them go home by 5.

But once we get sort of -- when I think about
Tuesday, Wednesday, Thursday, the schedule that I follow is we
start at 9, we bring them in at 9.  We go to 10:30.  We take a
15-minute break.  We come back at 10:45 and we will go till
12:15.  We will have lunch brought in for them.  They will eat
from 12:15 to 1:00.  We will come back in the courtroom and we
will hear evidence until 2:45.  We will take a break from 2:45
to 3:00.  We will work from 3:00 until 4:45.  Then I will let
them go home.

And my own math on timing, as I think about it, when
we think about -- and I have to build in time for me to give
preliminary instructions and me to give the charge on the back
end, but my own rough estimate with -- for purposes of the
liability phase of the trial is that each of y'all get 11
hours, as I do the math.

And what -- and how I count it -- again, it's your
time and you can be a steward of your own time.  I'm confident
that none of you are going to get up and give an opening of ten
hours, but if you did, you'd have one hour left for the rest of
your case.  I would not tell you to sit down.  I let the
lawyers figure out how they want to use their time.  I keep the
time myself so that -- and the way I keep it is if you're
crossing a witness, that's your time, right?  So that it'd be

1    -- your direct, that's -- whoever called that witness, that's

2    your time, and then I just sort of -- and I try and give the

3    lawyers an estimate at the end of the day about kind of where I

4    think we are.

5            And I've done this in a lot of civil trials, and it

6    really helps people focus instead of just sort of a limitless

7    time, which we just don't have that.  And then I also find that

8    it helps then make -- when there are objections about hundreds

9    of documents, people really get to focus.

10           And y'all are good lawyers and you know the documents

11   you're going to talk about, and you know the documents that

12   you've listed in the pretrial order that, yeah, you don't need;

13   they're not going to be the documents you talk about, the last

14   document you talk about.  Y'all know the documents that are the

15   key documents for your case.  I know you do.

16           And, again, it just helps you take -- stay focused.

17   So that's kind of where --

18           And then on the -- when I think about the Monday, if

19   we get that -- if the jury returns a verdict for Dr. Eshelman,

20   I would think there we'd be looking at two and a half hours

21   each for y'all.  And that gives me time to give them a charge

22   and maybe even have them have a little chance to deliberate

23   that day and then on into Tuesday.  I don't put time limits --

24   and, again, if they're still deliberating on Monday, then

25   obviously we just wait for them.  But that's -- I just wanted

1    y'all to get a sense of that.  And so the clock really

2    doesn't --

3              I mean, the jury selection, again, I can tell you how

4    I do it.  I realize different judges do it differently.  We'll

5    put 18 people in the box.  We actually add chairs toward the

6    end of the box.  Each of y'all get three peremptories.  If we

7    don't have any cause challenges, we'll have 12 right then.  I

8    know particularly in civil cases, each side wants to get a

9    perfect jury for their perspective.  I'm interested in getting

10   a fair jury.  So the questions -- I'll read the questions that

11   y'all had submitted and think about asking those, but I have

12   some fairly standard ones that I ask in civil cases.

13             And then I'll call y'all to the bench.  I will hear

14   anybody that wants to talk about cause just so that you know

15   before exercising your peremptories whether I'm taking somebody

16   out for cause.  And then if -- let's assume I don't take anyone

17   out for cause.  Then I just have y'all go back and I tell the

18   jury about the history of our court -- a little bit of the

19   history of our court.  You look up when you're ready to come

20   back up here.

21             And then I go one each.  So, you know, Plaintiff's

22   counsel, who would you like to excuse.  So they don't know

23   who's excusing.  I don't have you do it from the bench -- I

24   mean, from where you're seated.  I'll just keep track of those,

25   and it's just one, one, one, one.  Assuming that each of you

1  use your three, then we'll end up with 12 in there.  We'll see.

2  I mean, on the issue of just anticipating.  I know some judges

3  are insistent on 12, even though the rules don't require that.

4  We'll see where we are.  If we ended up taking one out for

5  cause and we were able to just go with an 11-person jury, I've

6  certainly done that in a lot of cases and I'm comfortable doing

7  that.  I mean, I know I have some colleagues who are 12 only,

8  and I have some colleagues who are very comfortable starting

9  with six.  I've never started with six because things happen

10  and it just can result in us not being good stewards of time.

11          So that's -- are there any questions about that

12  process from the Plaintiff?

13          MR. CLARE:  No, Your Honor.

14          THE COURT:  Okay.  Any from the defense?

15          MR. LEVY:  Judge, just very briefly on the issue of

16  time allocation just --

17          THE COURT:  Right.

18          MR. LEVY:  -- so that we're clear.  I understand the

19  11 hours on the liability phase is inclusive of opening --

20          THE COURT:  Right.

21          MR. LEVY:  -- statements and closing argument.  If

22  there is an adverse witness called by Plaintiff, for example,

23  during their case in chief, is that still inclusive of their 11

24  hours, or does that start the clock as it pertains to

25  defendants?

1          THE COURT:  Well, I mean, I would look at that as

2     still if the -- you know, if the plaintiff calls Mr. Auerbach,

3     for example, in its case or in his case, I'm confident that

4     there would not be open-ended questions asked of that witness.

5     And so, again, in terms of encouraging lawyers to be efficient

6     with their time and to be good stewards of their own time, then

7     if you call the witness, then it's your time.

8          Now, if I get the impression that some witness is

9     playing games and not being a good steward of time, I will let

10    that witness know, and that will stop.  And I will let that

11    witness know in front of the jury, and it will stop.  So that

12    basically that's sort of how I do it.

13         If, say, you've called -- if like, just again, to use

14    that example, if the Plaintiff calls Mr. Auerbach in its case

15    -- his case, then when he's examining him, it's coming out of

16    Plaintiff's time.  But again, it's been my experience those

17    types of things -- it goes efficiently 'cause they're just

18    leading, and they know what they want to ask him.  And then any

19    cross would come out of your time.

20         All right.  So let's go through -- I'm going to go

21    through all of the motions in limine today except for the one

22    that has to do with the defense expert.  I've read through all

23    the materials and I'm still thinking about it, and that's one

24    of the things we're going to talk about at 2:00 next week.  I

25    mean, I know Plaintiff asked for a hearing on that.  You're

1   going to get a hearing on that.  And so I'll hear argument and

2   whatnot about that, and I'll make a decision on Friday, too, so

3   that y'all know going in whether that witness is going to

4   testify or not.

5           I'll also -- it's my -- I also anticipate, although

6   some of my rulings today in connection with the motions in

7   limine will touch on some of the exhibits that y'all have

8   mentioned in the motions, it's my typical practice in civil

9   cases to try and go through the exhibits and at least look at

10  them, look at the objections and see if I can make a ruling

11  'cause sometimes the document may not really make sense to me

12  until I'm kind of in trial.

13          So I would anticipate also next week -- I know that

14  the defense filed a document at -- my memory says it's docket

15  entry 310, but I didn't write it down -- that had some of the

16  objections.  I know the Plaintiff has objections.

17          I'll go through those with y'all to the extent we're

18  sort of not covered on that today.  I'll also try and go

19  through the deposition testimony just so that you know if I'm

20  -- and in some cases I may end up sort of just carving this out

21  and just put O or S, you know, overruled or sustained, just so

22  that you know and that you -- we have a record of whatever my

23  ruling is so that if you're trying to figure out what part of a

24  deposition or something is -- I'm allowing or whether I'm

25  letting in some document.  We will talk about that next Friday,

1    too.  But I realize today's rulings on some of the motions in

2    limine are going to touch on at least some of these exhibits.

3         I did on -- sort of going to page 116 of the pretrial

4    order, the defense -- and then I'll hear from you, Mr. Levy,

5    but I was surprised that there was designations of all

6    pleadings, all written discovery, all depositions, and then

7    there's not designations.  That's just not compliant with our

8    rules.  And so I think the objections there are well-taken, and

9    you're not going to have any of those things.  So those --

10   those objections are sustained.  And I will -- like I said,

11   next week we'll talk about these other ones, the designations

12   that have been made by the Plaintiff and then the objections

13   that are in the pretrial order or in that document at docket

14   entry 310.

15        So on to the motions in limine.  The first motion is

16   a motion by Puma at docket entry 311 to exclude character

17   evidence regarding Alan Auerbach.  The Plaintiff responded at

18   docket entry 352.  And here I think the Plaintiff has the

19   better of the argument.  At least what I've -- what I could

20   glean from reading the motion in limine is -- the basic point

21   is the evidence that Plaintiff is talking about with respect to

22   Mr. Auerbach isn't character evidence.

23        And issues associated with the proxy context, you

24   know, putting that in context for the jury, all that seems to

25   me to be relevant, and I just don't see it being -- evidence

1  being offered for him to act in conformity with some trait for

2  dishonesty or something like that, so that motion is denied.

3           The second motion is Puma's motion in limine to

4  exclude evidence of a reference to liability insurance, and the

5  Plaintiff responded to that that it didn't intend to do so

6  during the liability phase of the trial, and so I grant it as

7  to that. Now, the Plaintiff also said that it thought it could

8  be admitted during the punitive phase, and I would -- I'm

9  certainly willing to read cases. I've read a lot of them

10  already. Happy to read more. Read for a living. But you're

11  going to need to show me a case. I'm not -- I'm not aware --

12           I've never tried a case even where there was

13  insurance, even where the punitive damages were at issue that

14  insurance came in in the punitive damages phase. It's

15  certainly not consistent with the standard instruction that we

16  use in our state dealing with punitives. It doesn't reference

17  a defendant or a defendant's insurance. It talks about a

18  defendant's net worth. So, I mean, if you have a case, I'll

19  consider it, but tentatively, if we get to the punitive damages

20  phase, y'all should not expect to get insurance in, even at

21  that phase.

22           But I'm -- and really, with respect to all these, I'm

23  willing to read things. So -- but I would really need to see a

24  case -- and I'm not aware of one from a North Carolina

25  appellate court that says insurance comes in in the punitive

1    phase.

2            Docket -- so that motion is -- we'll characterize it,

3    for purpose of the docket, as granted in part, and I'll wait to

4    see if there's any follow-up on the issue of the punitive part

5    of this case.

6            The next one is docket entry 13, Puma's motion to

7    exclude evidence of Puma's corporate and/or financial

8    performance.  There's a relevance objection and a 403

9    objection.  Dr. Eshelman's response is at docket entry 347,

10   basically stating there's not a specification of the evidence

11   that we're really even talking about.  But as with respect to

12   ruling on the stipulations, I mean, I think all that's

13   relevant.  I mean, it's certainly -- the events leading up to

14   the preparation of the alleged libelous documents are relevant,

15   and then even some of the events afterwards as reflected in the

16   stipulations are -- I think that that evidence meets the

17   threshold under 401.

18           And having done the balancing under 403, I'm going to

19   admit it.  And like -- and that also includes, to the extent

20   that the motion was trying to sort of exclude, you know, that

21   Puma dealt with PPD, that -- that's in the stipulations.  It's

22   relevant.  Not keeping it out under 403.  So that motion at

23   docket entry 313 is denied.

24           The next motion by Puma is at docket entry 315 to

25   preclude Plaintiff from seeking to elicit opinion testimony

1    from lay witnesses and testimony not permissible under Rule

2    401, 402, and 403.  The response of Dr. Eshelman is at docket

3    entry 349, which I largely agree with, no response.

4            So here's how that's going to play out.  Certainly

5    Dr. Eshelman can testify as to his emotional distress.  I would

6    be surprised and I wouldn't let him sort of opine that the

7    alleged libel caused him to get some medical disease or

8    something like that.  I'm confident that he's not going to do

9    that, but to the extent a witness tried to do that, "Not only

10   was I upset and hurt and angry, I got cancer because of it."

11   It's like, no, I'm not going to allow that.

12           So -- and likewise, with respect to issue of

13   information that was out and available with respect to Puma,

14   what Puma could have investigated, I think, again, that's

15   relevant and admissible under 403.  I think time limits have

16   their own way of getting lawyers to focus and not waste time,

17   but I'm going to allow that.

18           Special Agent Woods' testimony:  You know, again, I'm

19   going to have to sort of hear the specifics of it, but -- but

20   generally him testifying about the investigation that he did in

21   the -- in terms of the factual component and to the extent that

22   he has some opinion about that, I'm going to allow that.  I

23   think it's relevant.  I'm not going to keep it out under 403,

24   but I'll -- but my ears will be perked up during that portion

25   of the testimony.

1          As to docket entry 316, the motion to exclude

2    evidence of other litigation against Puma and Auerbach, the --

3    again, there was a response from Dr. Eshelman that I largely

4    agreed with.  I'm going to allow that.  I obviously anticipate

5    Mr. Auerbach testifying, and it's in the stipulations, but I

6    certainly would anticipate that he would be crossed about the

7    2019 civil liability for securities fraud.  It's 608.

8          So -- but sort of keeping out -- I don't know if --

9    my sense is that that's sort of the focus.  And, again

10   Mr. Clare, you can clarify for me, but the whole issue with

11   respect to the drug and then the spike in the stock price and

12   then resulting litigation, that's what we're talking about,

13   right?

14         MR. CLARE:  Yeah.  That's correct, Your Honor.

15         THE COURT:  Okay.  Right.  That's -- I'm going to

16   let that in.  So that motion to exclude that evidence is denied

17   at docket entry 316.

18         Puma's motion at docket entry 317 to exclude

19   characterization of the statements at issue as defamatory.  The

20   response of Dr. Eshelman is at docket entry 350, and the issue

21   in this case is falsity and actual malice, so I'm going to deny

22   the motion.  The first three elements, I'm going to tell the

23   jury that those have -- they're established.

24         And, again, just for purposes of orienting y'all, I'm

25   still working on the charge, and I appreciate y'all's

1   submissions, but I can tell you I'm pretty comfortable -- and

2   that's sort of another thing.  We haven't all collectively

3   tried a case together.  I will, obviously, during the week of

4   the trial give you a copy of the instructions and the verdict

5   form, probably -- certainly not -- certainly not later than

6   Wednesday night.  And we'll have the charge conference probably

7   at 8:15 on Thursday morning.

8           But I would anticipate, just so that y'all would

9   know, that I think for purposes of the verdict form that the

10  Plaintiff's proposed verdict form is -- more appropriately

11  captures and states what's at issue in this case, that in terms

12  of what the jury has to think about is, when read in the

13  context of the entire presentation, were Puma's statements that

14  Plaintiff, Fredric N. Eshelman was, quote, replaced as CEO of

15  PPD after being, quote, involved in clinical trial fraud, end

16  quote, false.  And then they're going to have to reach the same

17  issue as to actual malice with respect to those statements.

18  And then issue 3 would be what amount of compensatory damages

19  is Fredric N. Eshelman entitled to recover from the Defendant?

20          That's at least -- I can tell you where I am now.  I

21  think that that's what this case is about, those two issues on

22  falsity and actual malice, particularly in light of the summary

23  judgment ruling.

24          So for purposes of the clarity of the docket, docket

25  entry 317 is denied.

1          Docket entry 318 is Puma's motion to exclude any

2     evidence of Dr. Eshelman's intention to donate damages.  The --

3     I would not anticipate this trial being about Dr. Eshelman's

4     wealth or some argument about, you know, don't hold this

5     defendant liable because it's an altruistic company trying to

6     help people with breast cancer.  I just couldn't imagine that

7     any lawyer would argue that.

8          Likewise -- and so this -- I mean, so at the end of

9     the day, I'm not -- and I also don't see whatever Dr. Eshelman

10    might or might not do with the damages being relevant at all.

11    It's just not relevant.  And so I know that -- I know the

12    Plaintiff's response, you know, characterized it, "Well, we're

13    -- you know, if there's an opening of the door to this, then we

14    want to be able to potentially bring this up."

15         Well, you can approach the -- you can approach me if

16    you think the door's been opened, but I don't expect -- I don't

17    expect this to devolve into something about an altruistic

18    company trying to help people with breast cancer and -- and

19    some other -- and the Plaintiff, who just wants to get some

20    kind of damages so he can donate it to charity.  That's not

21    what this case is about.

22         I think that's all the motions in limine from the

23    defense.  Now, for the motions in limine from the Plaintiff.

24    The first one is at docket entry 320, plaintiff's motion to

25    exclude -- it just characterizes heavily redacted document, but

1    then the focus seemed to be on Puma's Exhibit 63.  And I did

2    read -- I did read that exhibit, and it is heavily redacted.

3    And it was confusing to me upon reading it, I can tell you, in

4    terms of -- there were so many redactions, it was unclear at

5    all what it meant.

6            I know the response was -- of the defense was --

7    well, to the extent that the agent who investigated this

8    testifies, you want to be able to cross-examine him about his

9    investigation.  You certainly can cross-examine him about it,

10   but I think that that document -- and I assume that's just how

11   y'all have gotten it and whoever had it, but I think it's so

12   confusing and a waste of time that I -- I'm -- I don't see

13   letting that document in as an exhibit.

14           But now if you want to use that to refresh

15   recollection or something, that's fine.  But it -- but I don't

16   see, given the extensive nature of the redactions, I just think

17   it's confusing and I would keep it out under 403 in light of

18   the multitude of redactions in it.

19           The next one is at docket entry 322, the motion to

20   exclude proposed testimony on hearsay grounds, and then there's

21   a discussion of deposition testimony of Dr. Eshelman, which I

22   don't anticipate there being any of that because you're going

23   to call him live and there weren't proper designations by the

24   defense, so I don't think there's going to be an issue about

25   his deposition.

1      But I'm going to go through the transcripts that

2  y'all have submitted, but we're going to observe the hearsay

3  rule.  I can just tell you that.  So to the extent that as I go

4  through it I think something's hearsay, I'll keep it out.  So I

5  would anticipate granting that.  To the extent there's hearsay

6  to keep out, I'll keep the hearsay out.

7      I also realize in this kind of trial, in particular,

8  there can be issues where it's not being offered for the truth,

9  and I'll be attuned to those issues and I'll listen to whatever

10  y'all might have to say about that with respect to evidence

11  that's being offered that you're saying is not being offered

12  for the truth.

13      The next motion is the motion to exclude evidence

14  concerning a case in New Jersey called *Princeton Opthalmic,*

15  *LLC, versus Corinthian Opthalmic* on the grounds that the

16  evidence is hearsay or unfairly prejudicial.  Puma didn't

17  respond in opposition.  I think as reflected in the motion,

18  those -- that type of complaint is inadmissible hearsay.  It

19  was dismissed.  I don't see how it's admissible under any sort

20  of theory that I'm aware of, so I grant the motion to exclude

21  evidence concerning that *Princeton Opthamalic* case at docket

22  entry 324.

23      The next one is a motion to exclude Puma's exhibits

24  concerning unrelated civil litigation against PPD at docket

25  entry 337, and the discussion in the motions have to do with

1   docket -- Defense Exhibits 50, 52, 54, and 58.  Those

2   documents, I think, are irrelevant under 401, and I think

3   they're a waste of time under Rule 403, so Im going to exclude

4   those, so I grant that motion.

5            The next one is a motion to exclude newspaper

6   articles and other media concerning the Ketek fraud at docket

7   entry 331.  The discussion, at least in the papers, had to do

8   with Defense Exhibits 64, 65, and 66.  I have read those.

9            Mr. Levy, do you have a witness who's going to say

10  that they read these before they prepared the presentation?

11           MR. LEVY:  No, Judge.  The identification of those --

12           THE COURT:  Okay.

13           MR. LEVY:  To the extent the Court would like to hear

14  anything further, the identification of those articles was

15  simply from a standpoint that it is anticipated that Plaintiff

16  will argue, as they have in their papers to the Court, that

17  Dr. -- I should Mr. Auerbach could have, for example, consulted

18  with other sources prior to publishing the statements that are

19  at issue.  So by contrast, these are also additional materials

20  that he could have consulted with that would have corroborated

21  what he wrote.

22           MS. MEIER:  Your Honor, may I respond?

23           THE COURT:  You may.

24           MS. MEIER:  None of the articles at issue mention

25  Dr. Eshelman.

1          THE COURT:  Okay.  You kind of anticipated, 'cause I

2    was trying to remember.  I had read them and I didn't remember

3    him -- 'cause that's the -- the sort of the whole -- part of

4    the whole case is this sort of clumping -- well, clumping PPD

5    with Dr. Eshelman.  So -- and a separate corporation, in fact.

6    But I grant the motion to exclude those Defense Exhibits at 64,

7    65, and 66, especially in light of the admission that they --

8    they had -- they weren't read by anybody who prepared the

9    documents.  I think they're hearsay.  I also think they've got

10   a 403 issue because they don't mention Dr. Eshelman.

11          The next one is docket entry 333 to exclude evidence

12   concerning Dr. Eshelman's political affiliation.  Puma didn't

13   respond to that.  Just like as well, I don't see that as being

14   relevant.  And I gather your response was basically 'cause

15   you're -- you didn't respond because you weren't going to offer

16   evidence about that.

17          MR. LEVY:  That's correct, Judge.

18          THE COURT:  Okay.  Okay.  All right.  Well, I -- for

19   purposes of completeness, I grant the motion at docket entry

20   333.

21          The next one is the motion to exclude the expert

22   testimony of Dr. Shivdasani at docket entry 335, and we'll take

23   that up at 2:00 next Friday.

24          I think that's all the motions in limine.

25          MR. LEVY:  Judge, very briefly on the motion

 1 pertaining to Dr. Shivdasani.  I simply wanted to inform the

 2 Court that I conducted a for-trial deposition of Dr. Shivdasani

 3 yesterday --

 4             THE COURT:  Okay.

 5             MR. LEVY:  -- which was attended by counsel for

 6 Plaintiff.  To the extent that the Court would like a copy of

 7 the transcript from that deposition, I'm happy to file it.

 8             THE COURT:  That would be helpful for me to -- I'll

 9 read it before we get back together.

10             MR. MEIER:  Your Honor?

11             THE COURT:  Yes.

12             MS. MEIER:  May I respond to one issue?

13             THE COURT:  Sure.

14             MS. MEIER:  Docket entry 315, which was Puma's motion

15 in limine regarding lay witness testimony --

16             THE COURT:  Right.

17             MS. MEIER:  -- there was one piece of that motion

18 that I don't think I heard a ruling on.

19             THE COURT:  Okay.

20             MS. MEIER:  There -- one of the things they sought to

21 exclude was testimony from lay witnesses about how they

22 understood the presentation -- the presentation at issue, and I

23 don't think we had a ruling from you on that piece of that

24 motion.

25             THE COURT:  I think that's admissible lay opinion

1  testimony, so that will be allowed.

2            MS. MEIER:  Thank you, Your Honor.

3            THE COURT:  Uh-huh.

4       (Pause.)

5            THE COURT:  I think I've covered what I wanted to

6  cover with y'all.  Is there anything else, Mr. Clare, that you

7  think we need to talk about today?  Or any of y'all?

8            MR. CLARE:  No, Your Honor.  I think the rulings that

9  you've made are very helpful.  As I hope you can see from the

10 stipulations, that we've worked very well with Mr. Levy, and I

11 anticipate no difficulty translating Your Honor's rulings

12 into --

13            THE COURT:  Okay.

14            MR. CLARE:  -- understandings about exhibits, and it

15 will help us to streamline the presentation of evidence, so we

16 thank you for taking --

17            THE COURT:  Okay.

18            MR. CLARE:  -- the time to do that, and we'll make --

19 I promise you we'll make good use of the week between now and

20 next Friday to make progress and make sure we've narrowed the

21 issues, if any, that we need to bring up then.

22            THE COURT:  Okay.  Right.

23            MR. CLARE:  But from Plaintiff's perspective, we're

24 -- we appreciate it, and I think we have everything we expected

25 to cover today.

1    THE COURT:  Okay.  And this is for all of you as

2 lawyers appearing in this court, particularly in the well of

3 this court.  None of you are visitors.  So I know our CSOs like

4 everyone to have a visitor's badge when they're in the court

5 building anywhere, but in here, you are not visitors, and so

6 you do not have to keep your visitor's badge on.

7    (Laughter.)

8    THE COURT:  And, again, I think that's really

9 important with -- I don't want jurors to ever think that any

10 lawyer who appears in the well of this court is a visitor.

11 This is where you perform your roles as advocates and live the

12 vocation that you've chosen, so you're not visitors here.

13    But I will tell you if you don't have your badge on

14 outside, the CSOs will talk to you.

15    (Laughter.)

16    THE COURT:  Anything else from the defense?

17    MR. LEVY:  Judge, just one point of clarification --

18    THE COURT:  Sure.

19    MR. LEVY:  -- with respect to Your Honor's rulings.

20 I  understand and, of course, defer to the Court and its ruling

21 as it pertains to deposition designations from the defense.

22 However, to the extent that a witness is called and offers

23 testimony inconsistent with something that they've said in the

24 deposition, are we still permitted from an impeachment

25 standpoint --

```
1              THE COURT:  Yes.

2              MR. LEVY:  -- to present --

3              THE COURT:  -- you are.  And that's a good question.

4    That's a -- yes, you can, of course.

5              MR. LEVY:  Okay.

6              THE COURT:  Right, yeah.

7              MR. LEVY:  And that's probably the confusion there,

8    but that was the only matter in which we envisioned using

9    those.

10             THE COURT:  Okay.  No.  Again, that's a good

11   question, but I think from the perspective of people trying to

12   affirmatively introduce deposition testimony in their own case,

13   then that's partly why we have the local rules the way we have

14   them is say designate so I can see if somebody objects, so then

15   I can then make a ruling so that we can -- all of the rules are

16   designed to be good stewards of everyone's time, and especially

17   the jury's time.

18             So yeah, you absolutely can use a deposition if you

19   think somebody's giving testimony inconsistent with prior

20   deposition testimony.

21             I do thank y'all for all the work that you've put in.

22   It's clear that you have spent a lot of time and have had to

23   work together, too, and I will continue to work on the jury

24   instructions, and I thank you for your joint submission in

25   connection with those, and I look forward to seeing y'all next
```

1    Friday at 2:00.

2              And if there's anything else you need from me between

3    now and then, I'll be here.

4              We'll be in recess until 3:00.

5        (Proceedings concluded at 1:43 p.m.)

6    _____

7                          (END OF TRANSCRIPT.)

8    _____

NORTH CAROLINA - CHATHAM COUNTY

                          CERTIFICATION OF REPORTER

      I, Wanda B. Constantino, CVR-CM-M, contract court reporter
for the United States District Court for the Eastern District
of North Carolina, do hereby certify that pursuant to Section
753, Title 28, United States Code, that the forgoing is a true
and correct transcript of the proceedings held in the above-
entitled matter;

      That the proceedings were reported by me using the voice-
writing (Stenomask) method; and

      That the transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.

      Dated this 10th day of March, 2019.




                          Wanda B. Constantino, CVR-CM-M
                          Contract Court Reporter