IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-18-D

| | | |
|---|---|---|
| FREDRIC N. ESHELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PUMA BIOTECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On March 15, 2019, a jury awarded plaintiff Fredric N. Eshelman ("Eshelman" or "plaintiff") $15.85 million in compensatory damages and $6.5 million in punitive damages against defendant Puma Biotechnology, Inc. ("Puma" or "defendant") for defamation [D.E. 388, 389]. On June 23, 2021, the United States Court of Appeals for the Fourth Circuit affirmed that Puma defamed Eshelman but vacated the jury's damages awards and remanded for a new trial on damages. See Eshelman v. Puma Biotechnology, Inc., 2 F.4th 276, 280–86 (4th Cir.), cert. denied, 142 S. Ct. 714 (2021). On April 26, 2022, Eshelman moved for discovery and filed a memorandum and exhibits in support [D.E. 482, 483]. On May 10, 2022, Puma responded in opposition and filed exhibits in support [D.E. 484, 485]. On May 19, 2022, the court held a hearing [D.E. 486]. As explained below, the court grants in part Eshelman's motion for discovery.

I.

The district court has broad discretion to control and manage trials. When the proceeding is a retrial, the court's discretion extends "on remand to all areas not covered by the higher court's mandate." Cleveland ex rel. Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1449 (10th Cir.

1993), abrogated on other grounds as stated in US Airways, Inc. v. O'Donnell, 627 F.3d 1318 (10th Cir. 2010); see Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939) ("While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues."). After all, as to new issues arising for a retrial, "the district court is in the best position to control all aspects of trial, including further motions, discovery and court time." Habecker v. Clark Equip. Co., 36 F.3d 278, 288 (3d Cir. 1994).

The parties dispute whether the court should apply a "good cause" or a "manifest injustice" standard to requests for new discovery in preparation for a retrial. See [D.E. 483] 3; [D.E. 484] 3. A court's scheduling order typically governs the timing of discovery in a civil action, and under Rule 16(b)(4), a court may modify its scheduling order only "for good cause." Fed. R. Civ. P. 16(b)(4). But once the court issues its final pretrial order, that order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). A court can modify a final pretrial order only "to prevent manifest injustice." Fed. R. Civ. P. 16(e). The final pretrial order, at a minimum, supersedes the pleadings and controls the action going forward. See Bryant Real Estate, Inc. v. Toll Brothers, Inc., 106 F. App'x 182, 187 n.8 (4th Cir. 2004) (per curiam) (unpublished). Although allowing new discovery for a retrial requires setting a discovery schedule, it also potentially requires modifying the final pretrial order from the first trial to include any new witnesses or exhibits. Categorically precluding parties from amending the final pretrial order from the first trial to disclose new witnesses and evidence "would greatly hobble the parties from meaningfully relitigating an issue which [a] court has decided required retrial." Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1357 (Fed. Cir. 1998).

When deciding whether to admit additional evidence in a new trial, a court considers "fairness and justice to all parties." 11 Charles A. Wright & Arthur R. Miller, et al., Federal Practice

2

& Procedure § 2803 (3d ed., Apr. 2022 Update); see Cleveland, 985 F.2d at 1449 (stating a court's rulings "nevertheless must be balanced with constitutional fairness so as not to prejudice the basic rights of the parties"). Applying this fairness principle,

> if the trial court perceives in limiting evidentiary proof in a new trial, a manifest injustice, to one side or the other, the court must retain broad latitude and may with proper notice allow additional witnesses and relevant proof. In this regard, if a party makes a timely motion to produce new and material evidence which was not otherwise readily accessible or known, the court should, within the exercise of discretion, consider whether denial of the new evidence would create manifest injustice. . . . [T]he court should allow sufficient leeway for the parties to produce new evidence, without undue prejudice to their interest. . . . [C]ommon sense should control.

Cleveland, 985 F.2d at 1450; see, e.g., CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 499 F.3d 184, 188 n.2 (3d Cir. 2007); Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co., 195 F.3d 765, 775 (5th Cir. 1999); Washington v. Kellwood Co., No. 05-CV-10034 (SN), 2016 WL 5680374, at *7–8 (S.D.N.Y. Sept. 30, 2016) (unpublished), aff'd, 714 F. App'x 35 (2d Cir. 2017) (unpublished); Little v. City of Richmond, No. 13-cv-02067-JSC, 2015 WL 798544, at *1–2 (N.D. Cal. Feb. 23, 2015) (unpublished); MyGallons LLC v. U.S. Bancorp, No. 7:09-CV-057-BR, 2013 WL 12291484, at *1–2 (E.D.N.C. Aug. 9, 2013) (unpublished); Fresno Rock Taco, LLC v. Nat'l Sur. Corp., No. 1:11-cv-00845-SKO, 2013 WL 3803911, at *1 (E.D. Cal. July 19, 2013) (unpublished); Total Containment, Inc. v. Dayco Prods., Inc., 177 F. Supp. 2d 332, 338 (E.D. Pa. 2001). Thus, the court applies a "manifest injustice" standard to requests for additional discovery in advance of a retrial.

To evaluate whether a "manifest injustice" would result from amending or denying amendment of the final pretrial order, the court considers four factors: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the

3

party seeking to modify the order." Cunningham v. LeGrand, Civil Action No. 2:11-0142, 2012 WL 3028015, at *2 (S.D.W. Va. July 24, 2012) (unpublished) (quotation omitted); see Koch v. Koch Indus., Inc., 203 F.3d 1202, 1222–23 (10th Cir. 2000); Adams v. Trs. of Univ. of N.C.-Wilmington, No. 7:07-CV-64-H, 2014 WL 12626268, at *1 (E.D.N.C. Mar. 10, 2014) (unpublished); Bistro of Kansas City, Mo., LLC v. Kansas City Live Block 125 Retail, LLC, Civil Action No. ELH-10-2726, 2013 WL 4431292, at *20 (D. Md. Aug. 16, 2013) (unpublished).

In addition to examining whether denial of new discovery would result in a manifest injustice, the court also considers the general discovery standard in Rule 26. Rule 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(e) requires a party to supplement or correct its disclosures or responses. See Fed. R. Civ. P. 26(e).

II.

Eshelman seeks to (1) disclose a new expert witness, (2) disclose two previously unavailable percipient witnesses, and (3) serve four requests for production. See [D.E. 482] 1. Puma seeks to depose witnesses from the first trial concerning new testimony and evidence, an exchange of new documents, and up to five interrogatories. See [D.E. 484] 8. Puma also requests an order "directing that no new witnesses that have not already been disclosed may testify at trial." Id. The new trial date is November 7, 2022, and neither Eshelman nor Puma entirely opposes some new, limited discovery in preparation for the retrial. The parties are litigating these new discovery issues far in

4

advance of the retrial and thus there is no surprise to either party from allowing some new, limited discovery. Moreover, allowing some new, limited discovery will facilitate an orderly and efficient retrial on damages. See Koch, 203 F.3d at 1222–23.

A.

The court grants Eshelman's request to disclose a new expert. Eshelman may retain one new expert witness to analyze and testify regarding the reach of Puma's defamatory presentation. Defendant may retain one new expert witness to rebut plaintiff's new expert witness. The parties may depose each of these new expert witnesses.

The Fourth Circuit explained when it vacated the jury's damages award that "North Carolina law 'presumes that general damages actually, proximately, and necessarily result' from defamation per se." Eshelman, 2 F.4th at 283 (quoting Flake v. Greensboro News Co., 212 N.C. 780, 785, 195 S.E. 55, 59 (1938)). Thus, "'no proof is required' to support the precise amount of a damages award." Id. (quoting Flake, 212 N.C. at 785, 195 S.E. at 59). However, even when a jury is properly instructed that evaluating the "direct and natural consequences of the libel" inherently requires "an element of speculation" concerning "the probable extent of actual harm," the jury "cannot faithfully complete [its] task when there is no evidence whatsoever of actual harm sufficient to support the damages award." Id. at 284 (quotations omitted). The Fourth Circuit clarified the governing legal standard in Eshelman and defined the "proof" required for a substantial damages award in a defamation per se case to be "evidence of widespread circulation or comparable harm" and "some evidence of its effect on [the plaintiff's] reputation." Id. at 284–85.

The court and the parties now have the benefit of the Fourth Circuit's clarification. The court concludes it would be manifestly unjust for the parties to be unable to prepare evidence for a jury trial on damages that accounts for the Fourth Circuit's ruling. Evidence of widespread circulation

5

or comparable harm (or lack thereof) could include, for example, expert testimony concerning the reach of the defamatory presentation. See id. (discussing the reach of the presentation as a relevant consideration). Allowing two new experts does not insert a new issue into this case but instead will facilitate the presentation of evidence concerning damages. See, e.g., Hoffman v. Tonnemacher, No. CIV F 04-5714 AWI DLB, 2007 WL 2318099, at *3 (E.D. Cal. Aug. 10, 2007) (unpublished) (allowing new experts for retrial when, among other considerations, allowing the experts would "not change the issues or complexity of the case").

Of course, a new trial is not "an invitation to reopen discovery for newly retained expert witnesses and to enlarge trial time unnecessarily through the addition of totally new exhibits and testimony." Cleveland, 985 F.2d at 1449; Total Containment, Inc., 177 F. Supp. 2d at 339 (stating a party at its original trial "omits evidence necessary to sustain its damage award at its peril"). But here, allowing limited discovery of two new experts in light of the Fourth Circuit's legal determinations in this case will not unnecessarily enlarge the trial time.

In opposition, Puma cites MyGallons LLC v. U.S. Bancorp, in which the trial court denied the plaintiff's request to disclose a new expert in advance of a new trial on damages in a defamation case. See, e.g., [D.E. 484] 4. MyGallons does not help Puma. In MyGallons, the Fourth Circuit held that the trial court should have excluded certain expert testimony at the first trial. See MyGallons LLC v. U.S. Bancorp, 521 F. App'x 297, 306–07 (4th Cir. 2013) (unpublished). The expert testimony that the trial court should have excluded supported the jury's special damages award. See id. The Fourth Circuit vacated the entire damages award and remanded for a new trial on damages because it was impossible to tell from the jury's general verdict what portion of the award was general damages and what portion was special damages. See id. On remand to the trial court, the plaintiff sought to substitute a new expert for the expert the Fourth Circuit excluded. See

6

MyGallons, 2013 WL 12291484, at *1. The trial court concluded no manifest injustice would result from denying the new expert. Had the trial court excluded the expert before the first trial, it would have been too late for the plaintiff to substitute a new expert in time for that trial. See id. at *2. Denying the motion to designate an additional expert for the retrial left the parties "in the same position they would have been had this court excluded" the expert originally. Id.

So too here. If the parties had known the Fourth Circuit's interpretation of North Carolina law (i.e., that proof of widespread circulation, effect on reputation, and other comparable harm is required to sustain a large damages award for defamation per se under North Carolina's "presumed damages" regime), Eshelman would have noticed an expert concerning the reach of the defamatory presentation at the first trial and Puma would have retained a rebuttal expert. As in MyGallons, allowing the parties to retain one expert each for the retrial and depose them is responsive to the Fourth Circuit's ruling. Moreover, the benefit of allowing two additional experts outweighs the burden or expense, is not privileged, would give the parties equal access to information, is accessible to both parties in terms of the parties' resources, and the proposed testimony goes directly to the relevant damages issues in the new trial. See Fed. R. Civ. P. 26(b)(1).

Eshelman may retain one new expert witness to analyze and testify regarding the reach of Puma's defamatory presentation. Defendant may retain one new expert witness to rebut plaintiff's new expert witness. The parties may depose each of these new expert witnesses.

B.

Eshelman seeks to call as witnesses Puma's two former defense lawyers in the first trial—David Levy ("Levy") and Devlin K. Horton ("Horton")—to testify about their knowledge of "Puma's continuation of its wrongful conduct during and after the first trial." [D.E. 483] 5. Eshelman makes this unusual request, in part, because after the first trial, Puma sued its defense

7

lawyers from the first trial and alleged legal malpractice. See [D.E. 482-5] (complaint against Levy and his law firm, Hedrick Gardner Kincheloe & Garofalo, L.L.P.); [D.E. 482-6] (answer to the complaint).

Initially, Eshelman and Puma dispute whether Puma's on-going legal malpractice suit against Levy and his law firm waives attorney-client privilege. See [D.E. 483] 5 n.3; [D.E. 484] 5–6. Merely filing a malpractice suit, however, does not immediately waive the attorney-client privilege as to third parties in a separate action that concerns the same subject matter as the attorney malpractice action. See Indus. Clearinghouse Inc. v. Browning Mfg. Div. of Emerson Elec. Co., 953 F.2d 1004, 1007 (5th Cir. 1992). The question is whether any confidential communications have been revealed during the course of the malpractice suit that would waive the privilege as to third parties and the subject matter of those communications. See id.; accord Sheet Metal Workers Int'l Ass'n v. Sweeney, 29 F.3d 120, 125 (4th Cir. 1994). The analysis focuses on each communication. Thus, the existence of the malpractice suit alone does not categorically waive the privilege concerning Puma's communications with Levy and Horton. Moreover, the examples of possible testimony that Eshelman proffers, see [D.E. 483] 5, do not appear to be privileged because the alleged communications were not necessarily directed at Levy and Horton, were apparently not made to secure legal assistance, and were made in public. See NLRB v. Interbake Foods, LLC, 637 F.3d 492, 501–02 (4th Cir. 2011); State v. Farook, No. 457PA20, 2022 WL 1437660, at *9 (N.C. May 6, 2022).

In any event, the court denies the addition of Levy and Horton as new witnesses because no manifest injustice would occur from excluding them. Except for a conclusory argument, Eshelman has not shown that the two attorneys could testify concerning the dissemination of Puma's defamatory presentation, the effect on Eshelman's reputation, or some other comparable harm that

8

would support compensatory damages. Cf. Jury Instrs. [D.E. 386] 21–22. Instead, Eshelman apparently wants the lawyers to testify regarding topics that might support Eshelman's arguments for punitive damages. The proposed testimony is not relevant to punitive damages. See Jury Instrs. [D.E. 387] 12–13; N.C. Gen. Stat. § 1D-35. Moreover, even if relevant, adding these two new witnesses is unduly prejudicial, manifestly unjust, and not proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1); cf. Fed. R. Evid. 403. Thus, the court denies the request.

C.

Eshelman seeks production of four categories of documents. See [D.E. 482-2] 7–8. First, Eshelman seeks all communications from September 20, 2017, to the present sent or received by Alan Auerbach, Mariann Ohanesian, or any member of Puma's board relating to or referring to Eshelman or this litigation (Request for Production No. 118). See id. at 7. Second, Eshelman seeks discovery of all agendas, minutes, presentations, notes, transcripts, recordings, or other materials relating to any Puma board meeting (or any meeting of any committee of Puma's board) that occurred from September 20, 2017, to the present, during which Eshelman or this litigation was mentioned, referenced, or discussed (Request for Production No. 119). See id. at 8. Third, Eshelman seeks discovery of documents sufficient to show Puma's revenue expectations and projections for each quarter of the 2022 calendar year, including any information, models, charts, and forecasts that demonstrate how Puma derived such expectations and projections (Request for Production No. 120). See id. Finally, Eshelman seeks all documents produced in Puma's malpractice suit against Levy and his law firm (Request for Production No. 121). See id. Puma objects to these requests. See [D.E. 484] 6–8.

Under Federal Rule of Civil Procedure 26(e)(1), parties must supplement any Rule 26(a) disclosure or response to an interrogatory, request for production, or request for admission. See Fed.

9

R. Civ. P. 26(e). The duty to supplement does not ordinarily encompass non-expert deposition testimony. See Fed. R. Civ. P. 26, advisory committee notes to 1993 amendment. The duty to supplement is triggered when a "party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The obligation continues after discovery closes. See Covil Corp. ex rel. Protopapas v. U.S. Fid. & Guar. Co., 544 F. Supp. 3d 588, 595–96 (M.D.N.C. 2021); Weare v. Bennett Brothers Yachts, Inc., No. 7:17-CV-155-FL, 2019 WL 12267845, at *3 (E.D.N.C. June 12, 2019) (unpublished). Additionally, the court may order the parties to supplement their responses. See Fed. R. Civ. P. 26(e)(1)(B); 8A Wright & Miller, Federal Practice & Procedure § 2049.1 ("The rule also authorizes the court to direct supplementation or correction beyond what the rule itself commands.").

The court assumes the parties met their obligations under Rule 26(e)(1) before the first trial. The court orders the parties to supplement their discovery responses up to the current date and, ultimately, up to the date of the second trial. See Fed. R. Civ. P. 26(e)(1)(B).

As for Eshelman's Requests for Production No. 118, No. 119, and No. 120, these requests presumably encompass documents Eshelman requested during discovery before the first trial. To the extent these documents are, in fact, covered by Eshelman's requests for production during discovery before the first trial, the court orders Puma to supplement its responses and produce responsive documents encompassed within Eshelman's Requests for Production No. 118, No. 119, and No. 120. To the extent that Eshelman's Requests for Production No. 118, No. 119, and No. 120 are not already covered by earlier requests, the court finds that the requested documents go to the heart of the relevant damages issues, are proportional to the needs of the case, and are needed to avoid manifest injustice. Thus, Puma shall produce the requested documents.

10

The court denies Eshelman's Request for Production No. 121, which seeks documents produced in Puma's malpractice suit against Levy and his law firm. Except for a conclusory argument, see [D.E. 483] 6, Eshelman has not demonstrated these documents contain relevant information concerning his compensatory or punitive damages. And even if the documents could marginally support Eshelman's compensatory or punitive damages arguments, Eshelman has not demonstrated a manifest injustice would result if the court denies discovery of these documents.

D.

Puma requests that new discovery include "depositions of trial witnesses concerning any new testimony concerning post-trial events, exchange of new documents, and no more than five interrogatories." [D.E. 484] 8. Puma also requests an order "directing that no new witnesses that have not already been disclosed may testify at trial." Id. The court grants Puma's requests in part.

In its response to Eshelman's motion for discovery, Puma requested an order "directing that no new witnesses that have not already been disclosed may testify at trial." [D.E. 484] 8. At the hearing, Puma expanded its request and sought to exclude any witness who did not testify at the first trial, regardless of whether a party had previously disclosed that witness. The court denies Puma's request. Witnesses who were previously disclosed may testify at the retrial, regardless of whether a party previously deposed that witness. To the extent a party did not depose an "already disclosed" witness, each party must live with that choice. Either side could have deposed an already disclosed witness and decided not to do so. It is not manifestly unjust to deny Puma's request to depose those witnesses, and deposing those witnesses at this stage is not proportional to the needs of the case.

Puma also seeks to depose "trial witnesses [from the first trial] concerning any new testimony concerning post-trial events." Id. The court finds that supplementation under Rule 26(e) obviates the need for new depositions of these witnesses. As the court stated at the hearing, if information

11

arises concerning a particular witness that would be relevant to the court's decision concerning whether to allow a deposition of that particular witness, the parties may meet and confer and bring it to the court's attention, if court intervention is needed.

As for Puma's request to require the parties to exchange new documents regarding post-trial events, the court grants the request in the form of the supplementation order. As discussed, the court orders the parties under Rule 26(e) to supplement their previous discovery responses. See Fed. R. Civ. P. 26(e)(1)(B). The court finds that the parties' Rule 26(e) supplements will satisfy Puma's request.

As for Puma's request that the parties each propound up to five new interrogatories, the court denies the request. The parties' Rule 26(e) supplements will provide the parties with updated information and documents relevant to the retrial on damages. As the court stated at the hearing, to the extent the documents produced in the parties' Rule 26(e) supplements give rise to the need for new interrogatories, the parties may meet and confer and bring that to the court's attention, if court intervention is needed.

III.

In sum, the court GRANTS IN PART plaintiff's motion for discovery [D.E. 482]. Plaintiff may retain one new expert witness to analyze and testify regarding the reach of Puma's defamatory presentation. Defendant may retain one new expert witness to rebut plaintiff's new expert witness. The parties may depose each of these new expert witnesses. The parties SHALL supplement their previous discovery responses pursuant to Rule 26(e). As part of the supplementation, defendant SHALL respond to plaintiff's Requests for Production No. 118, No. 119, and No. 120. The court DENIES all other requests in plaintiff's motion for discovery. The court DENIES defendant's request to exclude any witness who did not testify at the first trial, request to depose previously

12

disclosed witnesses and witnesses who testified at the first trial, and request to propound up to five new interrogatories. The court is entering a Case Management Order that sets specific deadlines and governs future proceedings in this case.

SO ORDERED. This 19 day of May, 2022.

JAMES C. DEVER III
United States District Judge

13

Case 7:16-cv-00018-D   Document 487   Filed 05/19/22   Page 13 of 13