# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
### Case No. 7:16-cv-00018-D

FREDRIC N. ESHELMAN,                )
                                    )
    *Plaintiff,*                  )
                                    )
    v.                            )          **PRETRIAL ORDER**
                                    )
PUMA BIOTECHNOLOGY, INC.,           )
                                    )
    *Defendant.*                  )
                                    )

     The parties were unable to agree concerning the contents of the proposed pretrial order, despite good faith attempts to resolve their dispute. Defendant Puma Biotechnology, Inc. contends that the parties' stipulations contained in the original pretrial order and reflected in D.E. 370-1 should not be included in the proposed pretrial order. Dr. Eshelman, by contrast, understands that the local rules require that the parties' stipulations should be set forth in Section I of the proposed pretrial order. LCvR 16.1(c)(1).

Date of Pre-Trial Conference: Oct. 24, 2022

<u>Counsel for Plaintiff Dr. Fredric Eshelman</u>

Thomas A. Clare, Elizabeth M. Locke, Megan L. Meier, Daniel P. Watkins, Amy M. Roller, Steven J. Harrison, Alexandria, Virginia; Andrew K. McVey, Wilmington, North Carolina

<u>Counsel for Defendant Puma Biotechnology, Inc.</u>

Andrew B. Clubok, Roman Martinez, Washington, D.C.; Colleen C. Smith, San Diego, California; Meryn C. N. Grant, Los Angeles, California; Michele D. Johnson, Costa Mesa, California; Natalie M. Pita, New York, New York; Shannon S. Frankel, and Angela F. Craddock, Raleigh, North Carolina.

1. **STIPULATIONS.**[1]

**SECTION ONE**: The parties stipulated to the following matters on February 20, 2019. The Court entered those stipulations into the record on March 9, 2019. (D.E. 370-1.)

> A. All parties are properly before the Court.
>
> B. The Court has jurisdiction of the parties and of the subject matter.
>
> C. All parties have been correctly designated.
>
> D. There is no question as to misjoinder or nonjoinder of parties.
>
> E. Facts: The parties previously stipulated that the facts set forth below are undisputed. The Court previously entered these stipulations. (D.E. 370-1 at ¶¶ 1–146.)

### *Puma Biotechnology, Inc.*

1. Defendant Puma Biotechnology, Inc. ("Puma") is a publicly-traded for-profit biopharmaceutical corporation incorporated in Delaware with its principal place of business in Los Angeles, California.

2. Puma's lead product is neratinib (branded as NERLYNX), which is for the extended adjuvant treatment of early stage, HER2-positive breast cancer.

3. Since founding Puma in 2010, Alan Auerbach has been Puma's President, Chief Executive Officer ("CEO"), Secretary, and Chairman of its Board of Directors.

4. From 2012 to 2014, Puma paid Mr. Auerbach compensation valued at more than $52 million.

5. From 2012 to 2017, Puma paid Mr. Auerbach compensation valued at more than $73 million.

6. In 2018, Mr. Auerbach received base pay of $757,260.

---

[1] In its Motion *in Limine* 4, Puma objects to the following previously agreed upon stipulations: 4–14, 22–45, 47–49, 51, 59, 132, 134, 136, and 140–42. (D.E. 512.)

7. Between 2011 and 2013, Mr. Auerbach recommended that Puma shareholders elect Jay Moyes and Troy Wilson to Puma's Board of Directors.

8. Before he recommended that Puma's shareholders elect Mr. Moyes to the Board, Mr. Auerbach and Mr. Moyes had been good friends for years, and it was Mr. Auerbach who first asked Mr. Moyes if he was interested in joining Puma's Board.

9. Mr. Auerbach introduced Troy Wilson to Puma's Board of Directors in October 2013, and Mr. Wilson was approved to join Puma as a director shortly thereafter.

10. In April 2015, Adrian Senderowicz joined Puma's Board at Mr. Auerbach's request.

11. In September 2015, Frank Zavrl joined Puma's Board at Mr. Auerbach's request.

12. Before joining Puma's board, Mr. Zavrl had been a partner at Adage Capital Management ("Adage Capital"), Puma's largest initial stockholder.

13. Mariann Ohanesian has been the senior director of investment relations for Puma since November 2011.

14. Charles Eyler has been the senior vice president and finance, administration, and corporate treasurer for Puma Biotechnology, Inc. since September 2011.

### *Dr. Fredric Eshelman*

15. Plaintiff Dr. Fredric Eshelman is a resident of, and is domiciled in, Wilmington, North Carolina.

16. Dr. Eshelman has spent more than forty years working in the pharmaceutical profession, developing medicines and bringing them to market, monitoring clinical trials, and investing in new pharmaceutical products.

17. In 1985, Dr. Eshelman founded Pharmaceutical Product Development ("PPD"), a North Carolina based contract research organization ("CRO"). A "CRO" is a group that helps

3

companies run clinical trials or preclinical trials.

18. From 1990 to 2009, Dr. Eshelman served as CEO of PPD.

19. Dr. Eshelman served as the Executive Chairman of PPD's board of directors from 2009-2011, when PPD was sold to two private equity firms.

20. Dr. Eshelman was the founding chairman of Furiex Pharmaceuticals, Inc. ("Furiex"), and served as the Chairman of the board of directors of Furiex from 2009 to 2014.

21. In 2014, Dr. Eshelman founded Eshelman Ventures, LLC, a company focused on investing in healthcare companies.

### Puma's Dealings With Dr. Eshelman and Other Stockholders

22. Puma reported in its March 3, 2014 10-K, "We believe that there are approximately 36,000 patients in the United States and 34,000 patients in the European Union, or EU, with newly diagnosed HER2-positive breast cancer, representing an estimated total market opportunity between $1 billion and $2 billion."

23. On August 11, 2014, Puma announced that it expected to file a New Drug Application ("NDA") with the United States Food and Drug Administration ("FDA") for neratinib during 2015.

24. On November 10, 2014, Puma announced that it would increase its research and development budget to support the development of neratinib and preparation of its NDA.

25. On December 2, 2014, Puma announced that it intended to "delay its proposed timeline for filing the NDA [for neratinib] until the first quarter of 2016."

26. After the "first quarter of 2016" arrived and passed Puma announced that it "anticipate[d] submitting a New Drug Application (NDA) to the FDA in mid-2016."

27. Puma did not submit its NDA for neratinib to the FDA until July 21, 2016.

4

28. On July 21, 2014, Puma's stock price was less than $60 per share.

29. On July 22, 2014, Puma and Mr. Auerbach represented that the drug and placebo disease-free survival rates were "in line" with prior Herceptin Adjuvant Studies, *i.e.*, clinical trials for an FDA approved early-stage breast cancer treatment.

30. On July 23, 2014, Puma's stock price exceeded $230 per share.

31. On July 23, 2014, the value of Adage Capital's investment in Puma increased by approximately $950 million.

32. Mr. Zavrl remembers July 23, 2014 "[k]ind of like the birth of [his] children" because he was out on a fishing trip with his son and "came back $100 million richer" as a result of his stockholdings in Puma.

33. On July 30, 2014, *Forbes* reported that Puma's and Auerbach's July 22, 2014 announcement had caused Puma's stock price to increase significantly, making Mr. Auerbach an "Overnight Billionaire," in an article for which Mr. Auerbach was interviewed and did not dispute the reported numbers.

34. Between May 18 and 19, 2015, Dr. Fredric Eshelman invested nearly $9 million in Puma.

35. On June 1, 2015, two weeks after Dr. Eshelman purchased Puma's shares, the American Society of Clinical Oncology ("ASCO") held a conference. During the conference, it was revealed that the disease-free survival rates for neratinib were far inferior to the Herceptin Adjuvant Studies, rather than "in line" with them, as Mr. Auerbach had previously claimed.

36. An investor blog later reported:

> Puma has a reputation of being very selective with data releases and allegedly denied attendance to an investor event taking place around the time of ASCO to those that were not bulls on the stock. The company additionally allegedly selectively released data to a

5

number of sell-side analysts after a negative reaction to an ASCO abstract release as a way to provide support to the company's poor-performing stock . . . these seem to me to display a pattern of secrecy that makes an investor question if management is being fully honest with shareholders and disclosing all information (including negative clinical information) when it should. Some in the investment community would note that this reputation is one thing that makes them especially concerned about the data from the NSABP FB-7 trial that Puma had originally stated it would release to investors back in Q4 2013. These investors would suggest that Puma has avoided releasing this data, as it is poor.

37. On June 1, 2015, when Puma announced the clinical data related to the "extent of the benefit for ExteNET in the trial" at the ASCO conference, investors were disappointed with the results.

38. Mr. Gross, the founder of Puma's then-largest stockholder, Adage Capital, was disappointed with the June 1, 2015 ASCO conference data release, which had wiped out $250 million of the value of Adage Capital's investment in Puma. But when he asked to speak with Mr. Auerbach at the ASCO conference, Mr. Auerbach said, "you have 30 seconds" and then "started to count, one, two, three." That was "a very, very difficult conversation," and Adage Capital was "very, very frustrated with Alan."

39. When confronted with Mr. Gross's video testimony about Mr. Auerbach counting "one, two, three" at the ASCO conference, Mr. Auerbach yelled, "**FALSE! FALSE! FALSE!**" while the video of Mr. Gross's testimony played on.

40. Mr. Gross explained that, with Puma, "it happens quite frequently that, the company sets expectations, and they're disappointed – investors are disappointed by the actual results. It happens all the time." Mr. Gross testified that "this was a recurring pattern with Alan Auerbach, in his . . . disclosures to investors, and then the actual results when we saw them."

41. Adage Capital offered to restrict its stock (remove its ability to trade its shares in order to gain access to nonpublic information) so that it could review Mr. Auerbach's slide decks prior

6

to presenting them to the public to help Mr. Auerbach better manage investors' expectations, but Mr. Auerbach "want[ed] no part of that."

42. Frustrated with Puma's stock price and Mr. Auerbach's mismanagement, Dr. Eshelman began speaking about Puma to Mr. Gross, whom he had previously met because of Dr. Eshelman's positions as the CEO of Furiex Pharmaceuticals, Inc. and as a director for The Medicines Company.

43. Mr. Gross, who understood Dr. Eshelman to have a reputation for caring "more about shareholders getting a good return on their investment than he cares about management remaining entrenched and in charge of the company," spoke with Dr. Eshelman several times about Puma.

44. Beginning in June 2015, Puma and Mr. Auerbach were repeatedly sued for securities fraud in publicly-filed complaints alleging that they had "made false and/or misleading statements" regarding the clinical trial for their flagship drug, neratinib, on July 22, 2014.

45. On February 4, 2019, a unanimous jury found that Puma and Mr. Auerbach had committed securities fraud on July 22, 2014 by knowingly misleading the public about the effectiveness of neratinib.

## *The Consent Solicitation*

46. On July 16, 2015, Dr. Eshelman sent a stockholder's "books and records" request to Puma pursuant to Delaware Code section 220.

47. Puma's outside counsel, Latham & Watkins, advised Puma regarding Dr. Eshelman's books and records request.

48. By October 22, 2015, Dr. Eshelman had invested considerable money to purchase shares of Puma.

49. As of October 28, 2015, Dr. Eshelman had served as the Non-Executive Chairman of

7

the Medicines Company and on the Boards of the following companies: AeroMD Inc.; Cellective Biotherapy, Inc.; Dignify Therapeutics, Inc.; Eyenovia, Inc.; GI Therapeutics, Inc.; Innocrin Pharmaceuticals, Inc.; Medikidz USA, Inc.; Meryx, Inc. and Neoantigenics LLC. As of October 28, 2015, Dr. Eshelman also served on the advisory Board of Auven Therapeutics.

50. On October 28, 2015, Dr. Eshelman filed a Preliminary Consent Statement with the United States Securities and Exchange Commission ("SEC"), proposing that Puma's stockholders vote to increase the size of Puma's Board from five to nine directors and elect Dr. Eshelman, James Daly, Seth Rudnick, and Ken Lee to fill the proposed additional four director seats (the "Consent Solicitation").

51. Mr. Auerbach expressed his frustrations, to both Puma's Board and Charles Eyler that Dr. Eshelman's Consent Solicitation was "a major distraction," and "utterly ridiculous."

52. In early November 2015, Ms. Ohanesian asked Benjamin Matone of NASDAQ Corporate Solutions to obtain "sell-side notes" (industry research) to gather information on Dr. Eshelman and PPD.

53. On November 12, 2015, Ms. Ohanesian sent an email calling Dr. Eshelman "quite annoying."

54. On November 17, 2015, Ms. Ohanesian sent an email calling Dr. Eshelman a "fool."

55. Puma's outside counsel, Latham & Watkins, advised Puma regarding Puma's response to Dr. Eshelman's Consent Solicitation.

56. On December 23, 2015, Institutional Shareholder Services ("ISS") issued its recommendation against Dr. Eshelman's Consent Solicitation, while acknowledging that "[m]uch of [Puma's] stock price volatility driving the consent solicitation appears to have resulted from two specific events: Puma's stock shot up nearly 300 percent in July 23, 2014, following the

8

company's announcement that trial results 'demonstrated that treatment with neratinib resulted in 33% disease-free survival versus placebo,' and in the first week of June 2015, Puma stock dropped nearly 30% following the presentation of neratinib data at the American Society of Clinical Oncology (ASCO) Annual Meeting. Since then the company's stock price has continued a gradual decline." The ISS report also acknowledged that Dr. Eshelman's "assertion that Puma's board composition is still not optimal may hold some truth."

57. After ISS issued its recommendation, Mr. Gross texted Mr. Zavrl: "We finally had contact [with ISS] yesterday, hence you see their recommendation today .... "

### *Puma's Research Regarding and Publication of the Presentation*

58. On January 7, 2016 Puma published an investor presentation entitled, "Continued Focus on Developing Shareholder Value" ("Presentation"), which included the following slides:

## Eshelman Continues to Demonstrate a Lack of Integrity (cont'd)

*Eshelman's misrepresentations are no surprise given his history*

- Eshelman was Chief Executive Officer (CEO) of Pharmaceutical Product Development (PPD) when it managed a clinical trial during the development of the antibiotic drug Ketek for the treatment of outpatient upper respiratory infections and pneumonia

  - Fraud was uncovered in this trial by the FDA's Office of Criminal Investigation

- Fraud with the trial included:

  - Fabrication of data at one clinical site (investigator convicted of fraud)

  - Manipulation of data at another site (investigator had medical license suspended)

  - Fraud occurred at highest enrolling site

- As Chief Executive Officer of PPD, Eshelman was forced to testify before Congress regarding PPD's involvement in this clinical trial fraud in 2008

  - Eshelman was replaced as CEO of PPD in 2009

12

10

**Eshelman Continues to Demonstrate a Lack of Integrity (cont'd)**

- A whistleblower from PPD, Ann Marie Cisneros – a clinical trial associate for PPD – testified that she sent evidence of fraud to PPD management, which was ignored

  - "[b]ased upon what I observed and learned in monitoring the Kirkman-Campbell site, Dr. Kirkman-Campbell indeed had engaged in fraud . . . I knew it, PPD knew it"

  - Cisneros' Testimony: http://www.circare.org/foia5/cisneros_testimony_20070213.pdf*

- Eshelman denied before Congress that fraud had occurred at the time despite Cisneros' e-mail to PPD management summarizing fraudulent practices and "red flags"

  - Eshelman's Video Testimony:
    - Part 1: https://www.youtube.com/watch?v=mzOBlX7hLMs*
    - Part 2: https://www.youtube.com/watch?v=GeM9ZDMBc0M*
    - Part 3: https://www.youtube.com/watch?v=FhEOyN8ceAE*

  - Eshelman's Statement and Testimony:
    - https://www.gpo.gov/fdsys/pkg/CHRG-110hhrg48587/html/CHRG-110hhrg48587.htm*

- Puma's Board does not believe that someone who was involved in clinical trial fraud that was uncovered by the FDA should be on the Board of Directors of a public company; particularly a company that is in the process of seeking FDA approval

*Please paste the links above into your browser to view the content.

13

59. The drafting of the Presentation was done by Mr. Auerbach with consultation and advice from Latham & Watkins.

60. No member of the Board of Directors of Puma or anyone else from Puma asked any questions about the statements that Mr. Auerbach had made about Dr. Eshelman and the Ketek clinical trial in the Presentation.

### *The Ketek Clinical Trial*

61. On November 1, 2001, Aventis Pharmaceuticals Inc. ("Aventis") hired PPD to monitor Study 3014, a clinical trial of Ketek, an antibiotic that Aventis had developed for the treatment of upper-respiratory tract infections.

62. The Ketek clinical trial had approximately 25,000 study subjects enrolled by nearly

2,000 physicians who were the principal investigators ("PIs") for the trial.

63. Dr. Kirkman-Campbell was one of the PIs on the Ketek clinical trial.

64. At the time she was a PI on the Ketek clinical trial, Dr. Kirkman-Campbell was not on a blacklist maintained by the FDA, the Institutional Review Board, or anyone else. All of the PIs on the Ketek clinical trial, including Dr. Kirkman-Campbell, were required to attend training for the Ketek clinical trial.

65. An "Institutional Review Board" or "IRB" is a group of people who monitor a clinical trial.

66. Dr. John Reynolds, a pharmacovigilance and drug safety professional who worked for PPD, was in charge of analyzing and reviewing lab values for the Ketek clinical trial.

67. On February 13, 2002, PPD's Dr. Reynolds emailed Aventis's Study Manager Nadine Grethe and voiced his concern that Dr. Kirkman-Campbell had not actually recruited the number of patients into the study that she had reported.

68. Dr. Reynolds spoke with Ann Marie Cisneros (a PPD employee and clinical research associate ("CRA")) and Abby Wear (a PPD employee and site management CRA) to discuss potential issues with Dr. Kirkman-Campbell's site and to help prepare Ms. Cisneros for an upcoming site review at Dr. Kirkman-Campbell's office.

69. On February 18, 2002, Ms. Cisneros conducted a site review at Dr. Kirkman-Campbell's office. She reported various issues she identified at the site to the IRB.

70. On Wednesday, February 20, 2002, Dr. Reynolds analyzed data from Dr. Kirkman-Campbell's site, which led him to believe that Dr. Kirkman-Campbell may have been engaging in "blood splitting," *i.e.*, assigning certain blood samples to multiple patients. He reported his concerns to Aventis's Nadine Grethe via email the next Monday.

12

71. On February 27, 2002, PPD employee Jessica Lasley sent an email titled "Teleconference to discuss findings from monitoring Kirkman-Campbell" to Aventis employees Nadine Grethe and Ranjan Khosla, copying PPD personnel Ann Marie Cisneros, John Reynolds, Robert McCormick, Cathy Tropmann, Teresa Dunlap, Melinda Edwards, and Mary Price. The email stated: "We would like to hold a teleconference with you to review some of the information that is of concern to us. . . . Ann Marie [Cisneros] and John [Reynolds] had assembled some examples of this information that we can share with you. Let us know when it would be possible to discuss this with you. We have attached a summary of Ann Marie's findings during her visit." A summary of Ann Marie Cisneros's findings was attached to the email.

72. PPD held a teleconference with Aventis on March 4, 2002 to discuss PPD's concerns about Dr. Kirkman-Campbell's trial site. On behalf of PPD, the participants on the teleconference were Dr. John Reynolds, Ann Marie Cisneros, Abby Wear, and Robert McCormick. The Aventis representatives on the teleconference were Nadine Grethe, William Stager, M. Shoemaker, M. Aschenbrenner, and Rajan Khosla. During the teleconference, Dr. Reynolds and Ms. Cisneros elaborated on the issues and concerns that PPD had previously reported to Aventis via email. After the teleconference, a written "Investigative Plan" was developed in which Aventis was to perform a statistical analysis of the lab data; to ensure that a follow-up letter was sent to the Dr. Kirkman-Campbell site asking for a written explanation of issues; and to review the follow-up letter before it was sent to ensure that all outstanding issues had been addressed and appropriate follow up was requested.

73. Ms. Cisneros left PPD shortly after the March 4, 2002 teleconference and has no knowledge of what took place at PPD or Aventis after that teleconference.

74. Data from the Ketek clinical trial was submitted to the FDA.

13

75. Beginning in 2002, Special Agent Robert West of the FDA's Office of Criminal Investigations led an investigation into the Ketek clinical trial.

76. Special Agent West began his career as a criminal investigator in the U.S. Army, where he served by conducting criminal investigations for more than twenty-one years. After retiring from the Army in 1996, he was hired by the FDA's Office of Criminal Investigations, where he served for another twenty years, received multiple promotions, and handled criminal investigations into clinical trial fraud and other matters.

77. Over the course of his forty-one-year career, Special Agent West has conducted close to ten thousand investigations, at least half of which he led.

78. Special Agent West describes himself as "very detail-oriented" and, in conducting investigations, he follows the trail as it leads him, interviewing everyone who needs to be interviewed. Special Agent West tries, to the best of his ability, to conduct his investigations objectively, ethically, and thoroughly.

79. Special Agent West's investigation into the Ketek clinical trial was conducted by a team of approximately twenty-five federal agents who spent between 20,000 and 30,000 hours working on the case, reviewing close to one million documents, and interviewing Dr. Kirkman-Campbell's staff and patients, PPD employees, and Aventis employees.

80. Special Agent West prepared written reports and memoranda of interviews in connection with his investigation of the Ketek clinical trial.

81. Special Agent West personally interviewed Aventis personnel including Nadine Grethe and Ranjan Khosla.

82. Special Agent West personally interviewed PPD personnel including Ann Marie Cisneros, Dr. John Reynolds, Cathy Tropmann, and Robert McCormick.

14

83. Special Agent West obtained a search warrant to search Dr. Kirkman-Campbell's clinic and home. Through use of that search warrant, he found in Dr. Kirkman-Campbell's home a record that had been missing from her clinic, as well as some medication for the Ketek study.

84. The Office of Criminal Investigations accepted Special Agent West's recommendation and later opened an investigation into Aventis; that investigation was led by Special Agent Douglas Loveland.

85. The FDA did not rely on the data from Study 3014 in approving Ketek.

86. Ketek remained on the market until March 11, 2016 when it was discontinued for business reasons.

### *Congressional Testimony About the Ketek Clinical Trial*

87. On February 13, 2007, Ann Marie Cisneros testified before a Congressional committee about the Ketek clinical trial.

88. Ms. Cisneros also submitted a statement, dated February 13, 2007, in which she wrote, "what brings me here today is my disbelief at Aventis's statements that it did not know that fraud was being committed. Mr. Chairman, I knew it, PPD knew it, and Aventis knew it."

89. On February 12, 2008, Ms. Cisneros, Special Agent West, Special Agent Loveland, and Dr. Eshelman testified before a Congressional committee about the Ketek clinical trial. Their testimony was included in a hearing transcript titled, "Ketek Clinical Study Fraud: What Did Aventis Know?"

90. The 2008 Congressional hearing transcript indicated that Ms. Cisneros had previously testified in a Congressional hearing.

91. The 2008 Congressional hearing transcript indicated that on the Ketek clinical trial, Aventis was the drug sponsor, PPD was the CRO, and Copernicus was the IRB.

15

92. The 2008 Congressional hearing transcript included the following testimony from Ms. Cisneros:

> While at the site, I was so concerned about patient safety, I called Copernicus Independent Review Board or IRB to express my concerns and seek guidance. An IRB, which is under contract to the drug sponsor, has as its primary purpose patient advocacy. It is allowed to contact patients directly and is duty-bound to report to the FDA any unanticipated problems involving risk to subjects and serious noncompliance with regulations.

93. The 2008 Congressional hearing transcript included the following testimony from Ms. Cisneros:

> I e-mailed a summary of my site visit findings to Robert McCormick, head of quality assurance at PPD, and copied Aventis personnel. I also participated in a teleconference between PPD and Aventis, at which I discussed issues identified in my site visit.
>
> At some point after that, I understand that Aventis took site management responsibilities away from PPD because Dr. Campbell would not cooperate with anyone but the sponsor.

94. The 2008 Congressional hearing transcript included the following:

> MR. WALDEN.  Thank you, Mr. Chairman. Ms. Cisneros, you participated in that conference call with Aventis in March of 2002 to discuss concerns with Dr. Kirkman-Campbell's site, correct?
>
> MS. CISNEROS.  Correct.
>
> MR. WALDEN.  And what follow-up did Aventis decide to do to address PPD's concerns?
>
> MS. CISNEROS.  Well, unfortunately, I left PPD shortly after that teleconference, so I am not quite sure what took place after that teleconference.

### Before Publishing the Presentation, Puma Knew About the Congressional Testimony Regarding the Ketek Clinical Trial

95. Before publishing the Presentation, Mr. Auerbach read Ms. Cisneros's February 13, 2007 statement.

96. Before publishing the Presentation, Mr. Auerbach read the entire transcript of the February 12, 2008 Congressional hearing titled "Ketek Clinical Study Fraud: What Did Aventis

16

Know?"

97. Mr. Auerbach "assumed that the work done by the FDA" was both factual and accurate.

## *Puma Has a Multi-Million Dollar Multi-Year Contract with PPD and Multiple Points of Contact at PPD, But Never Asked Anyone at PPD About Dr. Eshelman*

98. Puma has "been working with contract research organizations" from the day it was founded.

99. Mr. Auerbach is "knowledgeable about the relationship between a drug sponsor and a contract research organization on clinical trials."

100. Puma hired PPD as a CRO on the clinical trial of Puma's flagship drug, neratinib.

101. In the beginning of their contractual relationship—from 2012-2014—Puma hired PPD to provide regulatory strategy and overall clinical trial management related to the development and subsequent FDA approval of neratinib.

102. To date, Puma has received CRO services worth roughly $16 million from PPD.

103. Puma entered into a "MASTER CONTRACT SERVICES AGREEMENT" with PPD, on September 25, 2012, and Puma renewed its contract with PPD on April 25, 2014 and September 28, 2016.

104. Mr. Auerbach signed the amendments that extended Puma's contract with PPD.

105. Puma maintains that its Master Contract Services Agreement with PPD is confidential and should be concealed from the public.

106. Paragraph 2.4 of the Master Contract Services Agreement between PPD and Puma—entitled Regulatory Contacts—states:

> Puma will be solely responsible for all contacts and communications
> (including submissions of information) with any regulatory
> authorities with respect to matters relating to Services.

17

Unless required by applicable law, Service Provider will have no contact or communication with any regulatory authority regarding Services without the prior written consent of Puma, which consent will not be unreasonably withheld.

Unless prohibited by applicable law, Service Provider will consult with Puma regarding the response to any inquiry or observations from any regulatory authority relating in any way to Services and will allow Puma at its discretion to participate and, to the extent such inquiry is directly related to the Services, control, any further contacts or communications relating to Services.

107.    Puma's contract with PPD provides that it "will expire on the later of (a) six years from the Effective Date or (b) the completion of all Services under all Statements of Work executed by the parties prior to the sixth anniversary of the Effective Date."

108.    The earliest the Master Contract Services Agreement between PPD and Puma could end is six years after September 28, 2016.

109.    Beginning in 2014, as Puma commenced Phase II pivotal trial of neratinib, Puma became "disenchanted with the CRO that was managing the trial in the U.S., Latin America, and [the] Pacific Rim, and [Puma] changed CROs and employed PPD to manage said trial."

110.    In 2014, representatives from Puma traveled to North Carolina and conducted a quality audit of PPD.

111.    Puma's quality assurance audits typically last for several days.

112.    Since 2014, Puma and PPD have conducted bi-weekly teleconferences.

113.    Puma has more than 600 pages of business records relating to its relationship with PPD.

114.    Representatives from Puma and PPD held several face-to-face meetings in North Carolina between 2014 and 2016.

115.    Puma has ongoing business communications with PPD representatives in North Carolina.

18

116.     Puma had six or eight points of contact with PPD who were located in North Carolina.

117.     Puma was introduced to PPD through Richard Phillips, who was an employee of PPD before becoming an employee of Puma. Puma never asked Mr. Phillips about Dr. Eshelman before January 2016.

118.     No one from Puma ever asked anyone from PPD about Dr. Eshelman before January 2016.

### *Puma Did Not Ask Any of Its North Carolina Contacts About Dr. Eshelman*

119.     Puma has contracted with Biologics, Inc., a North Carolina corporation, for clinical research services. No one at Puma reached out to Puma's North Carolina contacts at Biologics, Inc. to ask whether they knew anything about Dr. Eshelman before January 2016.

120.     Puma has contracted with Rho, Inc., a North Carolina corporation, for biostatistical analysis. Puma's points of contact at Rho, Inc. were located in North Carolina. No one at Puma reached out to Puma's North Carolina contacts at Rho, Inc. to ask whether they knew anything about Dr. Eshelman before January 2016.

121.     Puma has contracted with Cato Research, a company headquartered in North Carolina. Puma's points of contact at Cato Research were located in North Carolina. No one at Puma reached out to Puma's North Carolina contacts at Cato Research to ask whether they knew anything about Dr. Eshelman before January 2016.

122.     Puma has contracted with Personalized Medicines Partners, a North Carolina Company, for consulting services. No one at Puma reached out to their points of contact at Personalized Medicine Partners in North Carolina about Dr. Eshelman before January 2016.

19

## Puma Purposefully Avoided Numerous Sources
## That Would Have Rebutted Its Accusations About Dr. Eshelman

123. No one at Puma reached out to Ann Marie Cisneros or Special Agent Robert West before Puma published the Presentation.

124. Mr. Auerbach never asked Mr. Gross if he knew Dr. Eshelman, if he had ever heard of Dr. Eshelman, if Dr. Eshelman had been involved in fraud, or anything else about Dr. Eshelman.

125. Mr. Auerbach never bothered to look for Dr. Kirkman-Campbell's indictment, even though it is publicly available, and Mr. Auerbach's staff would have pulled it for him if he had asked.

126. While drafting the Presentation, Mr. Auerbach reviewed Ms. Cisneros's February 13, 2007 Congressional statement that says: "In my eight years in clinical research work, this is the only instance I've come across of such bad behavior by a drug sponsor. I feel I can speak for those who agonized over this situation when I say we are pleased that Dr. Kirkman-Campbell is serving prison time for her actions. But what brings me here today is my disbelief at Aventis's statements that it did not know that fraud was being committed. Mr. Chairman, I knew it, PPD knew it, and Aventis knew it."

127. A draft of the Presentation from 1:04 a.m. on January 6, 2016 stated:

> o A whistleblower from PPD, Ann Marie Cisneros, testified that she sent evidence of fraud to the head of quality assurance at PPD and to personnel at Aventis, which was ignored by both organizations.

128. Mr. Auerbach revised that paragraph to read as follows: "A whistleblower from PPD, Ann Marie Cisneros – a clinical trial associate for PPD – testified that she sent evidence of fraud to PPD management, which was ignored.

> • o A whistleblower from PPD, Ann Marie Cisneros, – a clinical trial associate for PPD – testified that she sent evidence of fraud to the head-of-quality-assurance-at-PPD and-to-personnel-at-Aventis management, which was ignored-by both-organizations.

129.    The final version of the Presentation that Puma published contains no references to Aventis and omits all details of PPD's numerous reports to Aventis.

### Scope of Publication

130.    Puma published the Presentation on its website at the "Consent Revocation" portion of Puma's website at the following URL: http://investor.pumabiotechnology.com/consent-revocation.

131.    From January 7, 2016 through February 2, 2016, there were 85-page views of the "Consent Revocation" portion of Puma's website located at investor.pumabiotechnology.com/consent-revocation. Those page views included users from: (1) Janus, an institutional investor; (2) UBS, a brokerage firm; (3) Comerica, a bank; (4) CSFB, Credit Suisse First Boston; (5) Amgen, a large biotechnology company; and (6) RBCCM, a bank. Those page views included users in New York City, El Monte, Los Angeles, San Francisco, Denver, Washington, D.C., Hong Kong, Atlanta, Madrid, Mumbai, and Portland. Puma's page view data does not include views of its website that may have occurred after February 2, 2016 or views of the Presentation on the SEC's website.

132.    Between January 7, 2016 and July 11, 2017,[2] there were 198-page views of the "Consent Revocation" portion of Puma's website located at investor.pumabiotechnology.com/consent-revocation. Those page views included users in New York City, Washington, D.C., Los Angeles, Raleigh, Durham, Chicago, and Milwaukee.

133.    Puma also published the Presentation at the "SEC Filings" portion of Puma's website at the following URL: http://investor.pumabiotechnology.com/sec-filings. The

---

[2] The original paragraph 132 in D.E. 370-1 contained a scrivener's error, which has been corrected here.

Presentation was available for download at this location.

134.    Puma posted the "Consent Revocation" and "SEC Filings" URLs under the "Investors" tab on its website. From January 7, 2016 through February 2, 2016, there were 436 views of the "Investors" tab on Puma's website. Those page views included users located in California, New York, Massachusetts, Maryland, Texas, Florida, Illinois, Arizona, North Carolina, Virginia, and England.

135.    Puma filed the Presentation with the SEC on January 7, 2016.

136.    Puma's page view data does not include how many times the Presentation may have been downloaded and distributed from either of the locations from which it was available on Puma's website or how many times the Presentation may have been downloaded and distributed from the SEC's website.

137.    At Puma's direction, Revocation Cards and Revocation Statements were mailed to Puma's shareholders, including shareholders in North Carolina; those materials directed Puma's stockholders to the "Investors" tab of Puma's website where Puma posted the Presentation.

138.    Puma also published its Revocation Statement under the "Consent Revocation" portion of its website.

139.    At the request of Mr. Auerbach, Puma sent the Presentation to Vanguard—an investment manager—on January 13, 2016.

140.    When asked what he understood Puma to be saying in the Presentation, Mr. Gross testified that, "They believe that his associates at PPD and PPD's association with Ketek made [Dr. Eshelman] a party to fraud."

> [I]t's a very spurious relationship anyways, just because he's CEO of the company, and that company – if you know how PPD works, it's a contract research organization. So anybody inside the company can commit fraud. You know, they could go out and steal

22

– the could shoplift. It doesn't make the CEO responsible for that. So even when I read this back then, this is, you know, ridiculous.

...

Well, Puma's board is making the connection between, again, the CEO of a company, the conduct of that company, of somebody inside that company, not necessarily systematically, and, therefore, it's a spurious connection, but they've chosen to decide to connect the two, which I would say the same thing I said on the other one. Anybody who is . . . practiced in . . . the business wouldn't necessarily blame the CEO for the conduct of a single trial or a single . . . person or . . . clinical trial, especially if it's a contract research organization.

141. Mr. Gross would "absolutely not" support someone who had been involved in fraud to be a director on the board of one of the companies in which Adage Capital invests. When evaluating whether Adage Capital should invest in a company, the fact that one of the company's directors had been involved in fraud would absolutely impact whether he chose to invest in the company.

142. Puma's Presentation is publicly available on the internet where it can easily be reviewed, re-published, and called up in electronic searches.

143. On January 20, 2016, Dr. Eshelman sent Puma a retraction demand, requesting an apology and retraction of Puma's defamatory Presentation.

144. On January 26, 2016, Mr. Auerbach emailed Puma's Board:

On Friday we received a letter from our good buddy Fred Eshelman where he has asked that we retract all of the negative statements that we have made about him in our Investor Presentations and issue an apology to him. If we do not, he is threatening to sue us. Note that his letter (attached) did not come from an attorney, like his other letters did, but instead directly from him. As you can see in our attached response to him, all of our comments were based on publicly available information, hence we have done nothing wrong. We will be filing this 14A tomorrow after the market close with his letter and o[u]r response to it.

145. On January 27, 2016, Puma filed a Form 14A with the SEC. The filing attached a letter from Puma's outside counsel, Latham &Watkins, to Dr. Eshelman, and published the

23

following statements to a global internet audience:

LATHAM & WATKINS LLP

...

Dear Mr. Eshelman:

As you know, our firm represents Puma Biotechnology, Inc. ("Puma"). Your January 20, 2016 letter to Mr. Alan Auerbach of Puma has been referred to our attention for handling.

Your demands that Puma retract its investor presentation filed with the U.S. Securities and Exchange Commission on January 7, 2016 (the "Investor Presentation") and issue an apology are rejected. Puma stands by the truth of the statements contained in the Investor Presentation.

...

In addition, Puma has uncovered additional, public, and true information about you and your past activities which would be relevant to your shareholder proposal and prior comments in this regard. Puma will be compelled to ensure that shareholders are aware of this information if you persist with further public statements or filings about Puma, its Board, and its management.

146.    On February 3, 2016, Dr. Eshelman filed this defamation lawsuit against Puma.

\*\*\*

24

## II.    CONTENTS

### A.    Dr. Eshelman's Contentions

1.  Facts:

### *The Ketek Clinical Trial*

(a)    In a February 27, 2002 email to Aventis and during a March 4, 2002 teleconference with Aventis, PPD personnel including Ann Marie Cisneros reported issues they had discovered at Dr. Kirkman-Campbell's trial site.

(b)    Ms. Cisneros was a PPD employee and acted on behalf of PPD when she monitored Dr. Kirkman-Campbell's site, when she reported the issues she identified at Dr. Kirkman-Campbell's site to the IRB, and when she reported those issues to Aventis via email and teleconference.

(c)    An IRB is a group of people who monitor a clinical trial and have the authority to suspend the clinical trial.

(d)    Aventis submitted the data from Ketek clinical trial to the FDA.

(e)    PPD employees wrote "memos to file" describing certain discrepancies at Dr. Kirkman-Campbell's site.    "Memos to files" are written by CROs and sponsors, and they are designed "to explain certain discrepancies . . . so that the FDA will have access" to the information.

(f)    Ms. Cisneros never had any interactions with Dr. Eshelman, never attended a meeting with Dr. Eshelman, and never had any substantive communications of any kind with Dr. Eshelman.

(g)    Nowhere in any of her Congressional testimony did Ms. Cisneros mention Dr. Eshelman's name or claim that she had communicated with him in any way about Dr. Kirkman-Campbell, the Ketek clinical trial, or otherwise.

(h)    PPD employees cooperated voluntarily with Special Agent West's investigation and participated in interviews with Special Agent West without lawyers present, even though they had not been subpoenaed.

(i)    Special Agent West had no issues with PPD throughout the entire investigation.

(j)    PPD voluntarily provided all the information Special Agent West needed, including the February 27, 2002 email in which PPD reported to Aventis the issues that Ann Marie Cisneros and Dr. John Reynolds had identified at Dr. Kirkman-Campbell's site.    Special Agent West characterized that email as "a minor red flag," but he did not consider it to be "hardcore proof" or "solid

25

evidence that there was fraud," which is why his team "went out and interviewed."

(k)    Unlike Special Agent West and his team of federal investigators, PPD did not have the authority to interview Dr. Kirkman-Campbell's patients or employees or to show up at Dr. Kirkman-Campbell's house with a search warrant.

(l)    According to Special Agent West, it was "difficult to tell what [ was] going on" at Dr. Kirkman-Campbell's site from the documentation alone.

(m)    Although it was not required, PPD's "Dr. Reynolds took it upon himself to analyze the blood and come up with some statistical analysis of...blood-swapping" and provided that information to the FDA, which the FDA "would not have learned...except for PPD," thereby helping Special Agent West determine that Dr. Kirkman-Campbell had committed fraud. Special Agent West credited PPD as "the main reason why Kirkman-Campbell pled guilty."

(n)    When conducting the investigation of Dr. Kirkman-Campbell, Special Agent West kept his eyes open for whether any other companies or other doctors should also be investigated for fraud.

(o)    In the course of his investigation into the Ketek clinical trial, Special Agent West never heard of Dr. Eshelman and never saw any documents that had Dr. Eshelman's name on them.

(p)    Special Agent West's investigation did not uncover any evidence showing that Dr. Eshelman had been involved in clinical trial fraud, and never recommended any action by the FDA's Office of Criminal Investigation against Dr. Eshelman.

(q)    Special Agent West recommended that the Office of Criminal Investigation open an investigation into Aventis—but not PPD—because PPD:

> [D]id exactly what they were supposed to do . . . [t]here was no indication whatsoever that PPD committed any violations of the Food, Drug, and Cosmetic Act or any violations of any other title. They reported the information to Aventis. Aventis is the ones [sic] that took it upon themselves to submit the data to the FDA. It wasn't PPD. It was Aventis. They're the sponsors. They're the ones in charge. So no, we – there was no – throughout the entire investigation, there was no indication that PPD was complicit with anyone and there was no need for—to conduct a criminal investigation on PPD.

(r)    As a result of his investigation, Special Agent West determined that "PPD didn't disregard any information. They took it and provided it to Aventis."

26

(s)     Special Agent West concluded that "PPD behaved appropriately on the Ketek study" because:

> [T]hey were given a task by Aventis. They performed the task. When they had issues, they raised them to Aventis, which they were supposed to do. Aventis is the ones that made the decisions on whether or not to keep Campbell in the clinical trial. And they – they did. Aventis made that decision. They didn't withdraw Campbell's data . . . even though there was suspicious activity. Maybe – PPD is not there to uncover fraud. They're not criminal investigators. But they reported the information to Aventis. Aventis decided not to withdraw her data. They submitted to the FDA. And then we came in and determined that it was actually fraud, with the help of PPD, and we prosecuted. So I think—there's no other word except that they—they acted appropriately.

(t)     Special Agent West concluded that "PPD conducted themselves appropriately during the entire clinical trial. Not just with Kirkman-Campbell, but with the entire clinical trial of all 1900, 2000 PIs."

(u)     Special Agent West testified: "If I had evidence that PPD was involved or complicit with Campbell or any other PI, I would have nailed them to the cross."

(v)     In Special Agent West's professional opinion, from his experience, "PPD was not involved in any fraud."

(w)     The reason why Special Agent West never stated or implied to Congress that PPD or Dr. Eshelman had been involved in fraud was because: "they weren't involved."

(x)     Dr. Eshelman was not subpoenaed to testify at the February 12, 2008 Congressional hearing but did so voluntarily.

### *Dr. Eshelman's Promotion*

(y)     In 2009, Dr. Eshelman was promoted from CEO and Vice Chairman of PPD's board to Executive Chairman of PPD's board, where he was responsible for supervising PPD's new CEO, who reported to Dr. Eshelman.

### *Puma's Actual Malice*

(z)     By October 22, 2015, Dr. Eshelman had invested $23.7 million to purchase shares of Puma. Dr. Eshelman's attorney, Martin Seidel, made a mistake in the calculation of Dr. Eshelman's shares, calculating them to be 3% of Puma's shares, rather than .3% of Puma's shares. On a teleconference between Mr. Seidel and one of Puma's attorneys from Latham and Watkins (in which Dr. Eshelman

27

did not participate), Mr. Seidel mistakenly overstated Dr. Eshelman's shares because of the math error. Dr. Eshelman provided accurate copies of the documents reflecting his stock purchases to Mr. Seidel; Dr. Eshelman never told anyone that he owned 3% of Puma's shares.

(aa) By October 28, 2015—three months after Dr. Eshelman's books and records request—Puma had not provided any documents responsive to Dr. Eshelman's books and records request.

(bb) On or around October 28, 2015, Mr. Auerbach received and read Dr. Eshelman's preliminary consent solicitation statement, notifying him that Dr. Eshelman: (1) had been appointed as the Non-Executive Chairman of The Medicines Company (a publicly traded company) on August 28, 2015; (2) then served on the boards of nine private companies; (3) was the Chairman of the Board of Furiex from 2009 to 2014; and (4) was the Executive Chairman of PPD from 2009 to 2011.

(cc) On November 2, 2015, Ms. Ohanesian received an email from Robert Flamm—an employee of the Public Relations Firm Russo Partners—which contained three articles concerning Dr. Eshelman. The three articles included in Mr. Flamm's email were: (1) an October 18, 2011 article regarding the buyout of PPD referring to "Executive Chairman Fredric Eshelman"; (2) a December 13, 2011 article stating that PPD's then-CEO Raymond Hill had resigned as CEO and that "Founder Fred Eshelman has also agreed to serve as senior advisor to the new board of directors through next year;" and (3) a July 7, 2014 article stating that Dr. Eshelman had served as PPD's "Executive Chairman from July 2009 until its sale to private equity in 2011." Ms. Ohanesian sent those articles to Alan Auerbach.

(dd) On November 12, 2015, Puma's Board of Directors and Mr. Auerbach learned that Dr. Eshelman had been the CEO of Pharmaceutical Product Development, Inc. ("PPD") from July 1990 until July 2009, and that Dr. Eshelman had been the executive chairman of PPD from July 2009 until PPD's acquisition in December 2011.

(ee) During a meeting of Puma's Board of Directors on November 12, 2015, Puma's outside counsel, Charles K. Ruck of Latham & Watkins, reviewed a PowerPoint presentation with Puma's Board, highlighting, among other things, the "key events leading up to the Consent Solicitation, Eshelman's proposals, including his proposal to increase the size of the Board and to appoint Eshelman and three other nominees selected by Eshelman to the Board." One of the "key events leading up to the Consent Solicitation" that outside counsel presented to Mr. Auerbach and Puma's Board of Directors was that Dr. Eshelman had been the Executive Chair of PPD from July of 2009 until PPD's acquisition in 2011. Mr. Auerbach testified unequivocally that "Latham & Watkins, Puma's outside counsel, told the board of directors in th[e November 12, 2015] presentation that Dr. Eshelman was the executive chairman of Pharmaceutical Product

28

Development, Inc., PPD, from July 2009 until its acquisition in December 2011[.]"

(ff)  Before publishing the Presentation, Mr. Auerbach read an article published by WilmingtonBiz, titled "CEO Shift Helps PPD Globalize." The article contains the following statements:

> Fred Eshelman, PPD founder and chief executive officer for the past two decades, turned more than a few heads May 19, when he announced he would step down as CEO on July 1. He named retired Brig. Gen. David L. Grange as his replacement. Grange, a member of PPD's board of directors since 2003, recently served as the CEO of the McCormick Foundation in suburban Chicago.

> Eshelman said that he and Ernest Mario, PPD's non-executive board chairman, looked no further in selecting a replacement as both were impressed with Grange's grasp of the nature of PPD's global business, his knowledge of the company's managers as well as the market for the company's products.

> As he answered a somewhat pointed question during a video conference after the announcement, Eshelman joked that he didn't think he had been fired. "This is not a deletion, but an addition to our talent pool," Eshelman said. He was echoed by Mario, who responded, that Eshelman has been "a fabulous CEO" and their "partnership and relationship has been terrific since 1993."

> "We as board and with Fred for several years talked about when he would step down as CEO," Mario said. "It's been a thoughtful process, transparent and open." Mario, who will become the lead independent director of the board, said that since he and Eshelman are both changing positions, there was a need to "bring in the type of talent to expand the talent we have ... preparing the way down the road for the next transition."

(gg)  Puma's Board, Mr. Auerbach, Ms. Ohanesian, and Mr. Eyler were frustrated with Dr. Eshelman and his Consent Solicitation.

(hh)  In November 2015, Ms. Ohanesian "reached out to Mr. Matone in order to obtain information on PPD so that Mr. Auerbach and the management team could have as much information as possible in order to oppose [Dr. Eshelman's] solicitation."

(ii)  On November 19, 2015, Puma published a Form 14A, claiming that "Holder [Dr. Eshelman] misrepresented his ownership position in the Company as more

29

than 3% and less than 5% in an effort to bully the Company into accepting his demands for material non-public information."

(jj) On November 23, 2015, Puma published a Form 14A claiming that "Eshelman had claimed to own at least 3% of Puma."

(kk) On December 4, 2015, Puma published a Form 14A, claiming that Dr. Eshelman "[m]isleads shareholders," that his approach was "[u]ntruthful," and that "Eshelman and his counsel repeatedly misrepresent his stock ownership (3%-5% which would have represented approximately 1.0-15 million shares) in an attempt to gain access to confidential Company documents."

(ll) Mr. Eyler referred to Dr. Eshelman as "part of the horse that went over the fence last" which he admitted one could interpret as referring to Dr. Eshelman as "a horse's ass."

(mm) Ms. Ohanesian wrote "Esh" as shorthand for "Dr. Eshelman" in her Day-Timer. When Ms. Ohanesian looked back at her reference to Dr. Eshelman as "Esh" in her Day-Timer, she laughed because in Armenian (a language she is familiar with), "Esh" means "donkey" and is used colloquially to mean "jackass." Ms. Ohanesian shared her notation referring to Dr. Eshelman as "Esh" (meaning "jackass") with Mr. Auerbach and Mr. Eyler because she thought they would find it humorous. Mr. Auerbach and Mr. Eyler found it humorous that Ms. Ohanesian had referred to Dr. Eshelman by a word that means "jackass."

(nn) Mr. Auerbach used profanity when discussing Dr. Eshelman, verbally expressing the sentiment that he wanted to "F*** him up."

(oo) Puma's Board had a meeting in the fourth quarter of 2015 during which the Board discussed Dr. Eshelman's Consent Solicitation. Puma's outside counsel, Latham & Watkins, was also in attendance. Mr. Auerbach was the only person who presented any information regarding Dr. Eshelman. Mr. Auerbach told Puma's Board that Dr. Eshelman was "not a major shareholder." "[T]here was no discussion about the possibility of supporting Dr. Eshelman's consent solicitation."

(pp) Puma's Board claimed that Dr. Eshelman's consent solicitation was an "unnecessary waste of time and a complete distraction of the company."

(qq) During Dr. Eshelman's Consent Solicitation, Mr. Auerbach yelled at Adage Capital's Mr. Gross "THERE WILL BE NOTHING LEFT OF THE COMPANY!" if Dr. Eshelman was elected to Puma's Board.

(rr) On December 21, 2015, Mr. Zavrl texted Mr. Gross and asked him to tell Institutional Shareholder Services, Inc. ("ISS") that Adage Capital would not vote in favor of Dr. Eshelman's Consent Solicitation. Mr. Gross obliged Mr. Zavrl's request and contacted ISS on December 22, 2015.

(ss)     On December 23, 2015, Mr. Auerbach wrote an email to two Bank of America analysts, Ivan Farman and Bradley Wolff: "Im just getting warmed up. I'm gonna f*** this Eshelman guy up. Bad."

(tt)     On December 26, 2015, Mr. Auerbach wrote, "I never received my consent from Eshelman for his proxy. I am guessing that he sent it via snail mail with a snail that just got run over by a truck but is still limping along."

(uu)     The 2008 Congressional hearing transcript that Mr. Auerbach read before writing the defamatory investor Presentation included testimony from Dr. Eshelman that PPD had "turned up the suspicion of blood splitting," that "Dr. Reynolds reviewed all of these cases, and I believe that Dr. Reynolds talked to someone at Aventis. I can't swear to that, but I believe that is true. I do know that the issue of blood splitting was discussed between the two companies."

(vv)     The 2008 Congressional hearing transcript that Mr. Auerbach read before writing the defamatory investor Presentation included testimony from Special Agent West that when he "approached Dr. Campbell at her clinic and asked to speak with her, the first thing that came out of her mouth was I will not speak with you unless I speak with Aventis personnel first."

(ww)    The 2008 Congressional hearing transcript that Mr. Auerbach read before writing the defamatory investor Presentation included the following:

> MR. LOVELAND. The decision-making process that Aventis used to evaluate the warnings that Mrs. Cisneros and other PPD folks raised was illogical, ineffective.

(xx)     The 2008 Congressional hearing transcript that Mr. Auerbach read before writing the defamatory investor Presentation included the following:

> DR. BURGESS. But surely a big company like Aventis that is in the practice of doing these types of investigations, if there is a graphite titration, they should be able to pick that up, correct?
>
> MR. LOVELAND. They hire PPD to pick it up, and PPD picked it up. PPD sent signals to Aventis. They were loud signals, they were bright signals, and they were repetitive signals. Aventis should have known.

(yy)     The 2008 Congressional hearing transcript that Mr. Auerbach read before writing the defamatory investor Presentation included testimony from Special Agent West that he was convinced that Aventis should be criminally investigated "based on what I was observing, not only in Kirkman-Campbell's clinical trial, but also my interviews of PPD personnel, along with Aventis personnel. And I felt at the time that it was sort of like blatant disregard for information that they were receiving from the field and providing to the FDA."

31

(zz)     In the 2007 Congressional hearing that Mr. Auerbach was aware of before writing the defamatory investor Presentation, Ms. Cisneros identified the PPD employees who had diligently reported Dr. Kirkman-Campbell's fraud or were otherwise on notice of Dr. Kirkman-Campbell's fraud. She did not identify or mention Dr. Eshelman.

(aaa)    In her February 13, 2007 written statement to Congress, Ms. Cisneros underlined the word "Aventis" in the following sentence: "what brings me here today is my disbelief at Aventis's statements that it did not know that fraud was being committed. Mr. Chairman, I knew it, PPD knew it, and Aventis knew it."

---

In my eight years in clinical research work, this is the only instance I've come across of such bad behavior by a drug sponsor. I feel I can speak for those who agonized over this situation when I say we are pleased that Dr. Kirkman-Campbell is serving prison time for her actions. But what brings me here today is my disbelief at Aventis's statements that it did not know that fraud was being committed. Mr. Chairman, I knew it, PPD knew it, and <u>Aventis</u> knew it.

---

(bbb)    In the Presentation, Mr. Auerbach edited Ms. Cisneros's statement to omit the reference to Aventis:

---

• A whistleblower from PPD, Ann Marie Cisneros – a clinical trial associate for PPD – testified that she sent evidence of fraud to PPD management, which was ignored

  • "[b]ased upon what I observed and learned in monitoring the Kirkman-Campbell site, Dr. Kirkman-Campbell indeed had engaged in fraud . . . I knew it, PPD knew it"

---

(ccc)    Although Ms. Cisneros had identified the specific employees of PPD who "diligently reported the fraud" or were otherwise on notice of the fraud and never mentioned Dr. Eshelman, in the Presentation, Puma identified only a single member of *PPD management*—Dr. Eshelman—and then claimed that "[Dr.] Eshelman denied . . . that fraud had occurred . . . despite Cisneros' e-mail to *PPD management* summarizing fraudulent practices and 'red flags,'" while omitting the names of the individuals Ms. Cisneros had identified to Congress.

(ddd)    Although Mr. Auerbach knew that Ms. Cisneros had left PPD shortly after the March 2002 teleconference with Aventis and had no knowledge of what

happened after the teleconference with Aventis, Mr. Auerbach likewise omitted that information from the Presentation.

(eee)    The final version of the Presentation that Puma published contains no references or hyperlinks to any of the various articles (that were in Mr. Auerbach's possession before the Presentation was published) regarding Dr. Eshelman's promotion from CEO of PPD to Executive Chair of PPD's Board in 2009.

(fff)    The final version of the Presentation that Puma published does not disclose that Puma itself hired PPD to provide services related to regulatory compliance and pharmaceutical development—the same type of services that PPD rendered to Aventis during the Ketek clinical trial.

(ggg)   In the slides leading up to Slide 12 where Puma asserted that "Eshelman Continues to Demonstrate a Lack of Integrity" and "Eshelman's misrepresentations are no surprise given his history," Puma claimed that "[t]hroughout this process, Eshelman has been . . . misleading in his interactions with us, including by misrepresenting his stock ownership" and that "Eshelman represented to Puma that he owned more than 3% and less than 5% . . . of Puma stock. When he filed his consent solicitation statement, it was revealed that this was not even close to the truth[.]" Before publishing these statements, Puma knew that an attorney—not Dr. Eshelman—had "made a mistake in the calculation" of Dr. Eshelman's shares "and it was not 3 to 5 percent; it was .3 percent" and that Dr. Eshelman himself had never personally made any representations to Puma about his shares.

(hhh)   By January 6, 2016, Puma learned that shareholders owning more than 80% of Puma's stock had revoked consents or affirmatively withheld consent to Dr. Eshelman's Consent Solicitation.

(iii)    When asked, "In researching the statements in the investor presentation, did you find any sources that said Dr. Eshelman was replaced as CEO of PPD because he had been forced to testify before Congress regarding PPD's involvement in the clinical trial?", Mr. Auerbach testified under oath as Puma's corporate representative, "That wasn't the point we were making" and did not identify a single source that said Dr. Eshelman was replaced as CEO of PPD because he had been forced to testify before Congress regarding PPD's involvement in the clinical trial.

(jjj)    During his deposition as Puma's corporate representative, Mr. Auerbach was asked: "In the course of working on the investor presentation, did you find any sources saying that Dr. Eshelman had been involved in clinical trial fraud?" He responded, "We weren't looking for any sources. That wasn't our point."

(kkk)   While testifying as a corporate representative of Puma, Mr. Auerbach claimed: "If we were trying to say that Dr. Eshelman committed fraud we would have written in the presentation Dr. Eshelman committed fraud."

33

(lll)  On January 8, 2016, Mr. Auerbach emailed the defamatory Presentation to Bank of America analysts Ivan Farman and Bradley Wolff, writing, "I am not sure if you guys saw the presentation that we filed with the SEC yesterday as our updated investor presentation regarding the Eshelman matter. It is quite interesting reading especially the discussion on Eshelman that starts on slide 11." Mr. Wolff replied to Mr. Auerbach's email: "Don't mess with the the [sic] bull if you can't take the horns." Mr. Auerbach replied:

> The guy was involved in a clinical trial fraud. For the antibiotic Ketek one of the sites fabricated patient data. Yes[,] that's right[,] they fabricated the data. There were no patients. Eshelman ran PPD who was the CRO involved in the trial. FDA's Criminal Investigation office found out about it and Eshelman had to testify in front of Congress regarding the fraud. He denied any knowledge of it. The whistleblower in the case, who was a former PPD employee, said that not only did they know about the fraud but that they ignored her when she brought up her concerns. Seriously? This guy wants to be involved with public companies? Now you know why he [w]as fired as CEO of PPD and why he disappeared for 6 years.

(mmm)  While testifying as a corporate representative of Puma, Mr. Auerbach claimed that the only thing intended to be conveyed in the Presentation by pairing the bullet regarding Dr. Eshelman being "forced" to testify in 2008 about PPD's involvement in clinical trial and a sub-bullet saying that Dr. Eshelman had been "replaced" as CEO of PPD in 2009 was "a timeline" and that "[w]e were not trying to make a point that Eshelman was fired from PPD because of what happened with Ketek."

(nnn)  In his January 20, 2016 letter to Puma, Dr. Eshelman expressly notified Puma that a United States Attorney had identified PPD as a victim of Dr. Kirkman-Campbell's fraud in the criminal indictment filed on July 24, 2008.

(ooo)  The indictment of Dr. Kirkman-Campbell is publicly available online via PACER. That indictment alleges that Dr. Kirkman-Campbell "devised a scheme and artifice to defraud Aventis and PPD, and to obtain money and property from Aventis and PPD by means of false and fraudulent pretenses and representations."

### *A Jury Found That Puma And Auerbach Misled and Defrauded Investors Regarding Its Drug – And Their Response Was To Declare Victory*

(ppp)  Shortly after Dr. Eshelman invested in Puma, Puma and Alan Auerbach were sued in class action litigation, alleging that Puma and Alan Auerbach had committed securities fraud.

(qqq)  On February 2, 2019, after a 12-day trial, a unanimous jury in the case Hsu v. Puma Biotechnology, Inc., No. SACV 15-0865 AG (C.D. Cal. 2014) determined

that Mr. Auerbach and Puma had knowingly misled investors about the clinical trial results of Puma's drug, neratinib.

(rrr)    After the jury reached its verdict, Puma and Mr. Auerbach's attorneys, Latham & Watkins, issued a press release that claimed that the verdict was "in favor of Latham client Puma Biotechnology," ignoring the fact that the jury found that Puma and Mr. Auerbach had knowingly misled investors.

(sss)    The Latham press release also claimed that jury "f[ound] minimal damages."

(ttt)    On October 29, 2021, the court in the Hsu litigation entered judgment on the jury's verdict and directed that the plaintiffs in the litigation were entitled to $54,248,374.00 in damages from Mr. Auerbach and Puma.

(uuu)    After the court entered judgment, Puma entered into a settlement agreement with the plaintiffs, agreeing to pay the plaintiffs the full value of the judgment.

(vvv)    As of October 11, 2022, Puma's stock price was $2.39, which represents a greater than 99 percent decrease from its high in September of 2014.

## *Puma's Defamatory Accusations Harmed Dr. Eshelman and Dr. Eshelman Re-Doubled His Efforts to Mitigate the Harm Those Accusations Caused*

(www)    Puma's defamatory accusations harmed Dr. Eshelman and Dr. Eshelman re-doubled his efforts to mitigate the harm those accusations caused.

(xxx)    Since Puma's Presentation was published, Dr. Eshelman has been embarrassed and humiliated, in part because the Presentation is publicly available in a permanent forum.

(yyy)    Dr. Eshelman's relationships with acquaintances have suffered as a result of Dr. Eshelman's anxiety and mental anguish related to the negative sentiment others may have about him after reading the Presentation.

(zzz)    Beginning in mid-January 2016—shortly after the Presentation—Dr. Eshelman has taken many affirmative steps to strengthen his reputation among his peers. Specifically, Dr. Eshelman agreed to join the board of directors at Valeant Pharmaceuticals, Inc., on which he served until 2018, to mitigate the harm caused by Puma's defamatory statements in the Presentation.

(aaaa)    Prior to the Presentation, Dr. Eshelman intended to step back from his role as a director at GI Therapeutics, Inc., but, to mitigate the harm caused by Puma's defamatory statements in the Presentation, he decided to remain active with GI Therapeutics, Inc. until 2019 to strengthen his personal brand and bolster his reputation in the pharmaceutical community.

(bbbb)    In addition, since 2019, Dr. Eshelman joined the boards of directors of Incyclix and Aravive.

35

(cccc)    Though he has worked for more than forty years, Dr. Eshelman has redoubled his professional efforts and worked harder—going to work in his office typically early in the morning—in order to mitigate the harm caused by Puma's defamatory statements in the Presentation.

(dddd)    Dr. Eshelman believes that the reputational harm that he has sustained following Puma's defamatory accusations is approximately $100 million.

(eeee)    Because Dr. Eshelman's reputation and legacy is incredibly important to him, Dr. Eshelman had invested millions of dollars in out-of-pocket costs on this litigation to restore his reputation and to set the record straight.

## Puma and Mr. Auerbach are Found Liable in the Hsu Securities Fraud Litigation and Agree to Pay the Plaintiffs Over $50 Million

(ffff)    On February 2, 2019, after a 12-day trial, a unanimous jury in the case Hsu v. Puma Biotechnology, Inc., No. SACV 15-0865 AG (C.D. Cal. 2014) determined that Alan Auerbach and Puma had knowingly misled investors about the clinical trial results of Puma's drug, neratinib.

(gggg)    On October 29, 2021, the court in the Hsu litigation entered judgment on the jury's verdict and ordered that the plaintiffs in the litigation were entitled to $54,248,374.00 in damages from Mr. Auerbach and Puma.

(hhhh)    After the court entered judgment, Puma entered into a settlement agreement with the plaintiffs, agreeing to pay the plaintiffs the full value of the judgment.

(iiii)    Pursuant to the settlement agreement, the court dismissed the case with prejudice on August 3, 2022.

### Puma's Current Executive Compensation Practices and Revenue

(jjjj)    In 2019, Puma paid Alan Auerbach an annual salary in excess of $779,000.

(kkkk)    In 2019, Puma reported that it paid Alan Auerbach compensation valued at more than $3.7 million.

(llll)    In 2020, Puma paid Alan Auerbach an annual salary in excess of $834,000.

(mmmm)In 2020, Puma reported that it paid Alan Auerbach compensation valued at more than $4.4 million.

(nnnn)    In 2021, Puma paid Alan Auerbach an annual salary in excess of $827,000.

(oooo)    In 2021, Puma reported that it paid Alan Auerbach compensation valued at more than $18.4 million.

(pppp)    For 2022, Alan Auerbach's annual base salary is in excess of $852,000.

36

(qqqq)   Puma's annual revenue for 2020 was in excess of $225 million.

(rrrr)   Puma's annual revenue for 2021 was in excess of $253 million.

(ssss)   Puma's revenue from January 1, 2022, to September 30, 2022, was $92 million.

2. Factual Issues:

(a)   What is the total amount of compensatory damages to be awarded to Dr. Eshelman?

(b)   What is the total amount of punitive damages to be awarded to Dr. Eshelman?

(c)   Was Puma's defense of Dr. Eshelman's punitive damages claim frivolous or malicious?

## B.   Puma's Contentions

### 1.   Facts

(a)   Dr. Eshelman was the CEO of PPD when it managed a clinical trial during the development of the antibiotic drug Ketek for the treatment of outpatient upper respiratory infections and pneumonia.

(b)   PPD received approximate compensation from Aventis Pharmaceuticals, Inc. in excess of $20 million associated with its work in connection with the Ketek trial.

(c)   Fraud was uncovered in the Ketek clinical trials by the FDA Office of Criminal Investigation, including fabrication and/or manipulation of data

(d)   In the process of his consent solicitation (or "proxy contest"), Dr. Eshelman, through his counsel, represented that he owned 3 to 5% of Puma's outstanding shares, but in reality he owned approximately 0.3%.

(e)   Dr. Eshelman's consent solicitation was intended to take-over control of Puma, and eventually replace its CEO, Alan Auerbach.

(f)   The proxy contest occurred while Puma was preparing to file for FDA approval for its drug neratinib (now sold as nerlynx) for the extended adjuvant treatment of HER2+ breast cancer.

(g)   During the proxy contest, Dr. Eshelman made public filings attacking Puma and its board of directors, including false claims that Puma and its board were "destroying" shareholder value and had a "track record of delays, lack of transparency and mismanaging of expectations."

37

(h)     During the proxy contest, Dr. Eshelman falsely represented to various Puma investors that he had the support of Puma's largest institutional shareholder, Adage Capital.

(i)     In December 2015, independent proxy advisory firms, including ISS and Glass Lewis, issued recommendations that shareholders reject Eshelman's consent solicitation and vote in favor of Puma's current board.

(j)     The proxy contest required Puma's Board and management to devote significant resources in response to unfounded attacks on the Board and management, and was an unnecessary distraction to Puma Biotechnology, at a critical juncture for the Company and its investors.

(k)     Puma's Board and management believed that the proxy contest was harmful to Puma and its investors.

(l)     Puma's Board and management believed that it was necessary to respond to Dr. Eshelman's attacks and misrepresentations in order to protect its investors and the future of the Company.

(m)     On January 7, 2016, Puma published a second Investor Presentation to respond to Dr. Eshelman's misleading and false allegations and to correct his false claim that Puma's largest institutional shareholder, Adage Capital, was supporting Dr. Eshelman's proposals.

(n)     On January 8, 2016, Puma announced that over 80% of outstanding shares had already voted against Dr. Eshelman's proposal.

(o)     As of January 7, 2016, there was publicly available information regarding the statements about Dr. Eshelman and his tenure at PPD that investors could have researched and viewed along with the Investor Presentation, including information regarding Dr. Eshelman stepping down as CEO of PPD, and testifying before congress regarding the Ketek clinical trial.

(p)     Dr. Eshelman's proxy contest with Puma ended on February 15, 2016. Out of approximately 32.4 million shares, only 159,000 went in favor of Dr. Eshelman, of which 150,000 were shares owned by Dr. Eshelman.

(q)     Dr. Eshelman is not entitled to compensatory damages.

(r)     It is likely that sophisticated or institutional investors in Puma would have conducted due diligence on Dr. Eshelman during the proxy contest.

(s)     After Puma published Dr. Eshelman's retraction demand on January 27, 2016, investors reading Puma's SEC filings would have no doubt that Dr. Eshelman disputed the accuracy of the statements in the Investor Presentation.

38

(t)     Based on Puma's repeated disclosures after the proxy contest and Dr. Eshelman's publicly filed lawsuit, individuals who read proxy contest materials, or otherwise conducted due diligence on Dr. Eshelman and read proxy contest materials would have no doubt that Dr. Eshelman disputed the statements in the Investor Presentation.

(u)     After the proxy contest was over, investors would not be interested in reading proxy contest materials.

(v)     Dr. Eshelman has not identified any person who read the statements found to be defamatory and changed their opinion of him.

(w)     The Investor Presentation was not widely circulated, distributed or read.

(x)     The Investor Presentation is not easily located in a search of the SEC's website for "eshelman."

(y)     The January 7, 2016 Investor Presentation is difficult to find on google—it does not appear in the first several pages of results for a current Google search for Fred Eshelman.

(z)     It is likely that individuals or entities contemplating doing business with or nominating Dr. Eshelman to a Board of directors would conduct due diligence on him, and consider all relevant information regarding his activities and reputation.

(aa)    After the Fourth Circuit issued its opinion affirming the jury's liability verdict in the first trial, Mr. Auerbach repeatedly asked the SEC to remove the statements found to be defamatory from the January 7, 2016 Investor Presentation, but the SEC would not do so.

(bb)    Dr. Eshelman cannot identify anyone whose opinion of him changed as a result of the Investor Presentation.

(cc)    Dr. Eshelman cannot identify any business relationships of his that were undermined as a result of the Investor Presentation.

(dd)    Dr. Eshelman cannot identify any business opportunities that he or the companies with which he is affiliated lost as a result of the Investor Presentation.

(ee)    Dr. Eshelman is a well-known public figure who generates news coverage for many reasons that have nothing to do with this lawsuit or Puma's Investor Presentation.

(ff)    There are many other events and activities that Dr. Eshelman has engaged in after the Investor Presentation was published that have affected his reputation.

(gg)    Dr. Eshelman's political activities, and litigation related thereto, have been widely publicized and affected his reputation.

39

(hh)      Dr. Eshelman's filing of several lawsuits, including a lawsuit related to a "corner crossing" by hunters at Dr. Eshelman's Wyoming ranch, have been widely publicized and affected his reputation.

(ii)      If Dr. Eshelman has suffered harm to his reputation during or after the proxy contest, that harm is not a direct and natural consequence of the statements in the Investor Presentation found to be defamatory.

(jj)      Dr. Eshelman has continued to serve on numerous boards of directors after the publication of the Investor Presentation, and cannot identify any board service opportunity he has lost as a result of the Investor Presentation.

(kk)      Dr. Eshelman has received numerous awards and other community recognition after the publication of the Investor Presentation.

(ll)      Dr. Eshelman has not made any effort to quantify the value of his reputation or determine the monetary losses he claims to have suffered as a result of the Investor Presentation.

(mm)      Dr. Eshelman has not suffered any actual harm as a direct and natural consequence of the publication of the statements found to be defamatory in the Investor Presentation.

(nn)      Dr. Eshelman is not entitled to punitive damages.

(oo)      Neither Puma nor Mr. Auerbach intended to defame Dr. Eshelman.

(pp)      Neither Puma nor Mr. Auerbach's motives or conduct was reprehensible.

(qq)      There was no likelihood of serious harm at the time Puma published the Investor Presentation.

(rr)      Neither Puma nor Mr. Auerbach were aware of any probability of consequences or harm to Dr. Eshelman as a result of the Investor Presentation.

(ss)      Puma's conduct was of limited duration, and in no event did it outlast the proxy contest.

(tt)      Dr. Eshelman has not suffered any actual damages.

(uu)      Neither Puma nor Mr. Auerbach has concealed any facts or consequences related to the Investor Presentation.

(vv)      Neither Puma nor Mr. Auerbach has engaged in any similar past conduct.

(ww)      Neither Puma nor Mr. Auerbach profited from the Investor Presentation.

(xx)      In 2021, Puma had a net loss of $29.1 million and spent $71.9 million on research and development.

40

(yy)     In 2020, Puma had a net loss of $60 million and spent $97.7 million on research and development.

(zz)     In 2019, Puma had a net loss of $75.6 million and spent $132.9 million on research and development.

## 2.    Legal Issues

(a)      Whether the compensatory and punitive damages phases of the trial should be bifurcated such that only evidence that is relevant to the probable extent of Dr. Eshelman's harm is included in the compensatory phase, and evidence that is only relevant to punitive damages is excluded. The latter category includes evidence pertaining to (1) Puma's, Alan Auerbach's, or any other Puma Director's state of mind, intent, knowledge, motives, or views regarding Eshelman; (2) Puma's stock price and its statements regarding neratinib; (3) the securities case against Puma; or (4) Puma's financial condition or executive compensation. Exclusion of such evidence is critical to effectuating the purposes of bifurcation, and such evidence is irrelevant to compensatory damages and would be unduly prejudicial and should therefore be excluded under Federal Rules of Evidence 401, 402, and 403. (DE 508, Puma MIL No. 1).

(b)      Whether any argument or testimony referencing Dr. Eshelman's speculation that the damage to his reputation is $100 million, or any other purported damages figure or fact supporting his purported damages that he did not disclose as required in discovery, should be excluded. (DE 510, Puma MIL No. 2).

(c)      Whether Dr. Eshelman, his counsel, and his witnesses should be precluded from entering any evidence, or eliciting testimony regarding the unrelated securities litigation (Hsu v. Puma Biotechnology, Inc., No. SACV 15-0865 AG (JCGx)) or associated derivative actions, including the nature of the allegations or the outcome of the lawsuit. (DE 513, Puma MIL No. 3).

(d)      Whether all stipulated facts from the first trial should be excluded as irrelevant, prejudicial or both, or, in the alternative, whether stipulated facts numbers 4–14, 22–45, 47–49, 51, 59, 132, 134, 136, and 140–42 should be excluded. (DE 515, Puma MIL No. 4).

(e)      Whether all evidence, argument, and testimony regarding compensation paid or equity awards granted to Mr. Auerbach should be excluded from trial, as such information is misleading, prejudicial, and likely to confuse the jury. (DE 517, Puma MIL No. 5).

(f)      Whether Dr. Eshelman's expert, Dr. Norman Harrison, should be excluded from testifying at trial under Federal Rule of Evidence 702, Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and/or Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), because his testimony is irrelevant and unreliable. (DE 520, Puma's Daubert Motion).

41

(g)     Whether Dr. Eshelman should be precluded from introducing any previously undisclosed facts as evidence of harm at trial, per Federal Rule of Civil Procedure 37. (DE 504, Puma's Brief on Contested Issues of Law, Evidentiary Questions, and Admissibility of Evidence).

(h)     Whether the Court should include an additional jury instruction to clarify the standard for presumed compensatory damages, which is that Dr. Eshelman must provide "evidence of widespread circulation or comparable harm" and "some evidence of [the defamation's] effect on [the plaintiff's reputation." (DE 504, Puma's Brief on Contested Issues of Law, Evidentiary Questions, and Admissibility of Evidence).

### 3.     Factual Issues

(a)     What amount of compensatory damages, if any, is Dr. Eshelman entitled to recover from defendant Puma Biotechnology, Inc.?

(b)     Did Dr. Eshelman suffer any actual harm as a direct and natural consequence of the statements in Puma's Investor Presentation?

(c)     Is there any evidence of widespread circulation or other comparable harm of the statements in Puma's Investor Presentation?

(d)     Is there any evidence that the statements in Puma's Investor Presentation had any effect on Dr. Eshelman's reputation?

(e)     Is Dr. Eshelman entitled to punitive damages?

## III.     EXHIBITS[3]

### A.     Dr. Eshelman's Proposed Exhibits

Before the first trial, Puma filed the following motions *in limine* on February 13, 2019:

1. Motion *in Limine* No. 1 To Exclude Character Evidence Regarding Alan Auerbach. (D.E. 311, denied at D.E. 360.)

2. Motion *in Limine* No. 2 To Exclude Evidence Of Or Reference To Liability Insurance. (D.E. 312, 314, granted in part at D.E. 360.)

---

[3] The parties disagree concerning redactions. Puma proposes redacting—on relevance grounds—SEC filings to omit some of its statements concerning the first trial and the jury's verdict, the *Hsu* litigation, and Puma's stock price. Dr. Eshelman's position is that the only redactions that should be made are references to the Fourth Circuit's decision to remand the case for a retrial on damages and the reasoning behind the Fourth Circuit's opinion. (See, e.g., DX-1 at 2.)

3. Motion *in Limine* No. 3 To Exclude Evidence Regarding Puma Biotechnology's Corporate Performance Or Financial Standing, And/Or Alan Auerbach's Financial Matters Or Standing. (D.E. 313, denied at D.E. 360.)

4. Motion *in Limine* No. 4 To Exclude Plaintiff From Seeking To Elicit Opinion Testimony From Lay Witnesses And Testimony Not Permissible Under Rule 401, 402, And 403. (D.E. 315, denied at D.E. 360.)

5. Motion *in Limine* No. 5 To Exclude Evidence Of, Or Reference To, Other Unrelated Lawsuits Involving Puma Biotechnology, Inc. And/Or Alan Auerbach. (D.E. 316, denied at D.E. 360.)

6. Motion *in Limine* No. 6 To Exclude Plaintiff And Plaintiff's Counsel From Referring To And/Or Introducing Evidence Opining As To Any And All Ultimate Legal Issues In This Lawsuit. (D.E. 317, denied at D.E. 360.)

7. Motion *in Limine* No. 7 To Exclude Plaintiff From Mentioning Plaintiff's Intentions And/Or Plans For Any Potential Damage Award. (D.E. 318, granted at D.E. 360.)

In addition to the below objections to Dr. Eshelman's proposed exhibits, Puma filed the

following motions *in limine* on September 23, 2022:

1. Motion *in Limine* No. 1 Regarding Bifurcation and to Exclude Irrelevant and Prejudicial Evidence From Compensatory Damages Phase. (D.E. 507, 508 ("MIL No. 1").)

2. Motion *in Limine* No. 2 to Exclude Argument or Testimony Regarding Dr. Eshelman's Unsupported $100 Damages Figure or Any Damages Figure or Fact That He Did Not Disclose in Discovery. (D.E. 509, 510 ("MIL No. 2").)

3. Motion *in Limine* No. 3 to Exclude Evidence, Questions, or Testimony Regarding Prior Securities Litigation Matter. (D.E. 512, 513 ("MIL No. 3").)

4. Motion *in Limine* No. 4 to Exclude False, Irrelevant, or Misleading Stipulated Facts (D.E. 514, 515. ("MIL No. 4").)

5. Motion *in Limine* No. 5 to Exclude Evidence, Argument, or Testimony Regarding Alan Auerbach's Compensation. (D.E. 516, 517 ("MIL No. 5").)

Exhibits that were admitted in the previous trial have been marked with an asterisk.

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|------------|-------|------------------------------|-------------------|--|
| Exhibit 1 | DX-224 | Indictment of | Expects to | FRE 401/402: Irrelevant to | overruled |

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|---|---|---|---|---|---|
| | | Dr. Kirkman-Campbell | offer | compensatory damages<br>**FRE 403:** Likely to confuse the issues and waste time | |
| Exhibit 2 | DX-219 | Agreement for Clinical Services | May offer | **FRE 401/402:** Irrelevant as to compensatory damages<br>**FRE 403:** Likely to confuse the issues and waste time | overruled |
| Exhibit 4 | DX-221 | Email Jlasley to Ngethe | May offer | **FRE 401/402:** Irrelevant as to compensatory damages<br>**FRE 403:** Likely to confuse the issues and waste time | overruled |
| Exhibit 15* | DX-226 | Congressional Hearing Transcript | Expects to offer | No objection | |
| Exhibit 20* | | Puma Stock Price Chart | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages<br>**FRE 403:** Unfairly prejudicial and likely to confuse the issues as to compensatory damages; cumulative | overruled |
| Exhibit 37* | | ISS Recommendation | Expects to offer | No objection | |
| Exhibit 39 | | Email from Pgross to Aauerbach | May offer | **FRE 401/402:** Irrelevant as to compensatory damages | overruled |
| Exhibit 42* | | Defamatory Investor Presentation | Expects to offer | No objection | |
| Exhibit 81 | | SEC Filing | May offer | **FRE 401/402:** Irrelevant as to compensatory damages | overruled |
| Exhibit 100 | DX-049 | UBS Financial Services Confirmation | May offer | **FRE 401/402:** Irrelevant as to compensatory damages<br>**FRE 403:** Likely to confuse jury and waste time | overruled |
| Exhibit 101 | | UBS Financial Services Confirmation | May offer | **FRE 401/402:** Irrelevant as to compensatory damages<br>**FRE 403:** Likely to confuse jury | overruled |

44

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|---|---|---|---|---|---|
| | | | | and waste time; cumulative | |
| Exhibit 102 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 103 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 104 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 105 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 106 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 107 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 108 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 109 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 110 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 111 | | UBS Financial Services | May offer | **FRE 401/402**: Irrelevant as to compensatory damages | overruled |

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|-----------|-------|------------------------------|-------------------|---|
| | | Confirmation | | **FRE 403**: Likely to confuse jury and waste time; cumulative | |
| Exhibit 112 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages **FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 113 | | UBS Financial Services Confirmation | May offer | **FRE 401/402**: Irrelevant as to compensatory damages **FRE 403**: Likely to confuse jury and waste time; cumulative | overruled |
| Exhibit 135 | | Congressional Hearing Transcript | Expects to offer | No objection | |
| Exhibit 149 | | SEC Filing | May offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages[4] **FRE 403**: Unfairly prejudicial, likely to confuse issues MIL No. 3 | |
| Exhibit 150* | | Puma-PPD Master Services Agreement | Expects to offer | **FRE 401/402**: Irrelevant as to compensatory damages **FRE 403**: Likely to confuse the issues and waste time as to compensatory damages | overruled |
| Exhibit 151 | | SEC Filing | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages **FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury MIL No. 5 | overruled |
| Exhibit 152 | | Puma's Press Release | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages **FRE 403**: Unfairly prejudicial; likely to confuse the issues and waste time | overruled |

---

[4] Puma's contention is that the only relevant portion of this exhibit is the disclosure of the litigation filed by Eshelman and the finding of liability.

46

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|---|---|---|---|---|---|
| Exhibit 154 | DX-193 | FEshelman's books and records request | Expects to offer | **FRE 401/402**: Irrelevant as to compensatory damages | overruled |
| Exhibit 157* | | Email Mohanesian to Aauerbach | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Unfairly prejudicial, likely to confuse the issues and waste time as to compensatory damages | overruled |
| Exhibit 159 | | Email Mohanesian to Aauerbach | May offer | No objection | |
| Exhibit 160 | | Email Mohanesian to Aauerbach | May offer | No objection | |
| Exhibit 161 | | Email Mohanesian to Aauerbach | May offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Unfairly prejudicial, likely to confuse the issues and waste time as to compensatory damages | overruled |
| Exhibit 162 | | SEC Filing | Expects to offer | No objection | |
| Exhibit 163 | | Email from Mohanesian | May offer | No objection | |
| Exhibit 164 | | Email Awong to Aauerbach | May offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages **FRE 403:** Unfairly prejudicial, likely to confuse jury, waste of time **FRE 801:** Hearsay **MIL No. 3** | overruled |
| Exhibit 165 | | Email Awong to Aauerbach | May offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages **FRE 403:** Unfairly prejudicial, likely to confuse jury, waste of time **FRE 801:** Hearsay | overruled |

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|-----------|-------|------------------------------|-------------------|---|
| | | | | **MIL No. 3** | |
| Exhibit 172 | | Email Aauerbach to Puma BOD | May offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Cumulative | overruled |
| Exhibit 173 | | Email Twilson to Aauerbach | May offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Cumulative | overruled |
| Exhibit 174 | | Email Aauerbach to Puma BOD | May offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Cumulative | overruled |
| Exhibit 175 | | Email Asenderowicz to Aauerbach | May offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Cumulative | overruled |
| Exhibit 176 | | SEC Filing | May offer | No objection | |
| Exhibit 177 | | Email Ssimeonidis to Aauerbach | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Unfairly prejudicial, cumulative | overruled |
| Exhibit 178 | | Email Jmoyes to Aauerbach | May offer | **FRE 401/402:** Irrelevant as to compensatory damages | overruled |
| Exhibit 179 | | Email Mohanesian to Aauerbach | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Unfairly prejudicial, cumulative | overruled |
| Exhibit 180* | | Email Aauerbach to Swinter | Expects to offer | **FRE 401/402:** Inconsequential and irrelevant as to compensatory damages | overruled |
| Exhibit 181* | DX-216 | Email Aauerbach to Ifarman and Bwolff | Expects to offer | **FRE 401/402:** Inconsequential and irrelevant as to compensatory damages **FRE 403:** Unfairly prejudicial | overruled |
| Exhibit 182 | | Email Aauerbach to Ifarman and Bwolff | Expects to offer | No objection | |
| Exhibit 183* | DX-207 | Email Aaurebach to Bwolff | Expects to offer | No objection | |

48

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|-----------|-------|------------------------------|-------------------|---|
| Exhibit 184 | DX-033 | Email Lmiller to Aauerbach | Expects to offer | No objection | |
| Exhibit 185* | | Feshelman's Retraction Demand | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Cumulative | overruled |
| Exhibit 187 | | Email Asenderowicz to Aauerbach | May offer | **FRE 401/402:** Irrelevant as to compensatory damages | overruled |
| Exhibit 188* | | Email Aauerbach to Board of Directors | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory damages | overruled |
| Exhibit 189* | | Puma's Response to Feshelman's Retraction Demand | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory damages | overruled |
| Exhibit 193* | | Congressional Testimony | Expects to offer | No objection | |
| Exhibit 194 | | Congressional Hearing Transcript | Expects to offer | No objection | |
| Exhibit 195* | DX-210 | Wilmington Biz Article | Expects to offer | No objection | |
| Exhibit 196 | DX-209 | StarNews Article | Expects to offer | No objection | |
| Exhibit 197 | DX-208 | CenterWatch Article | Expects to offer | No objection | |
| Exhibit 199 | | Draft Defamatory Presentation | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Unfairly prejudicial as to compensatory damages | overruled |
| Exhibit 200 | | Draft Defamatory Presentation | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Unfairly prejudicial as to compensatory damages | overruled |
| Exhibit 201 | | Draft Defamatory Presentation | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Unfairly prejudicial as | overruled |

49

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|---|---|---|---|---|---|
| | | | | to compensatory damages | |
| Exhibit 202 | | Draft Defamatory Presentation | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages. **FRE 403:** Unfairly prejudicial as to compensatory damages | overruled |
| Exhibit 203 | | Draft Defamatory Presentation | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Unfairly prejudicial as to compensatory damages | overruled |
| Exhibit 204 | | Draft Defamatory Presentation | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Unfairly prejudicial as to compensatory damages | overruled |
| Exhibit 205* | | Email Fzavrl to Aauerbach | Expects to offer | No objection | |
| Exhibit 206 | | SEC Filing | Expects to offer | **FRE 403:** Cumulative | overruled |
| Exhibit 207 | | Email Aauerbach to Board of Directors | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages | overruled |
| Exhibit 208 | | Email Aauerbach to Board of Directors | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages | overruled |
| Exhibit 209* | | Email Twilson to Aauerbach | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative | overruled |
| Exhibit 210 | | Email Rkim to Aauerbach | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative | overruled |
| Exhibit 212 | PX-212 includes: DX-37 (Tab-3) DX-246 (Tab-5), DX-38 (Tab-6), | Binder of Proxy Filings | May offer | **FRE 401/402:** Irrelevant as to compensatory damages **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL Nos. 3, 5** | |

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections |
|--------|-----------|-------|------------------------------|-------------------|
| | DX-39 (Tab-7), DX-247 (Tab-8), DX-40 (Tab-9), DX-42 (Tab-12), DX-43 (Tab-13), DX-248 (Tab-15), DX-44 (Tab-18), DX-249 (Tab-20), DX-252 (Tab-24) | | | |
| Exhibit 214 | DX-211 | Email from Bmatone to Mohanesian | May offer | **FRE 401/402**: Irrelevant to compensatory damages |
| Exhibit 215 | DX-212 | Email from Bmatone to Mohanesian | May offer | **FRE 401/402**: Irrelevant to compensatory damages |
| Exhibit 216 | DX-213 | Email from Bmatone to Mohanesian | May offer | **FRE 401/402**: Irrelevant to compensatory damages |
| Exhibit 217* | | Email from Rflamm to Mohanesian | Expects to offer | **FRE 401/402**: Irrelevant to compensatory damages |
| Exhibit 221 | | Mohanesian's notes | Expects to offer | **FRE 401/402**: Irrelevant to compensatory damages |
| Exhibit 222 | | Email Mohanesian to Sslaviero | Expects to offer | **FRE 401/402**: Irrelevant to compensatory damages |
| Exhibit 223 | | Email Mohanesian to Sslaviero | Expects to offer | **FRE 401/402**: Irrelevant to compensatory damages |
| Exhibit 233 | | Email Puma to Mohanesian | Expects to offer | **FRE 403**: Likely to confuse the issues and waste time, cumulative |

Handwritten annotations in right margin next to rows:
- Exhibit 214: overruled
- Exhibit 215: overruled
- Exhibit 216: overruled
- Exhibit 217*: overruled
- Exhibit 221: overruled
- Exhibit 222: overruled
- Exhibit 223: overruled
- Exhibit 233: overruled

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|-----------|-------|------------------------------|-------------------|---|
| Exhibit 237 | DX-034 | Email from Erodgers to Aauerbach | Expects to offer | No objection | |
| Exhibit 240 | | Email Gmincin to Mohanesian | Expects to offer | **FRE 403:** Likely to confuse the issues and waste time | overruled |
| Exhibit 241 | | Shareholder List | Expects to offer | **FRE 403:** Likely to confuse the issues and waste time | overruled |
| Exhibit 242 | | Shareholder List | Expects to offer | **FRE 403:** Likely to confuse the issues and waste time | overruled |
| Exhibit 243 | | Security Position Reports | Expects to offer | **FRE 403:** Likely to confuse the issues and waste time | overruled |
| Exhibit 247 | | Defamatory Presentation | Expects to offer | **FRE 403:** Cumulative, duplicative | overruled |
| Exhibit 248 | | Email Mohanesian to Bheath | Expects to offer | No objection | |
| Exhibit 249 | | Puma's website | Expects to offer | No objection | |
| Exhibit 250 | | Defamatory Investor Presentation | Expects to offer | **FRE 403:** Cumulative, duplicative | overruled |
| Exhibit 251 | | Proxy Materials | Expects to offer | No objection | |
| Exhibit 252 | | Puma Investor Presentation | Expects to offer | No objection | |
| Exhibit 253 | | Puma's website | Expects to offer | No objection | |
| Exhibit 254 | | Google Analytics Report | Expects to offer | No objection | |
| Exhibit 255 | | Google Analytics Report | Expects to offer | No objection | |
| Exhibit 256 | | Email Lmiller to Aauerbach | Expects to offer | No objection | |
| Exhibit 261 | | PPD Business Records | Expects to offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive | overruled |

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|---|---|---|---|---|---|
| | | | | damages **FRE 403:** Likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | |
| Exhibit 268 | | Financial Summary | Expects to offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages **FRE 403:** Likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 269 | | Financial Summary | Expects to offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages **FRE 403:** Likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 270 | | Summary of Meetings | Expects to offer | **FRE 401/402:** Irrelevant to both compensatory and punitive damages | overruled |
| Exhibit 292 | DX-220 | Clinical Study Agreement | May offer | **FRE 401/402:** Irrelevant to compensatory damages | overruled |
| Exhibit 294 | DX-230 | PPD Board Materials | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages | overruled |
| Exhibit 295 | | Puma Board Meeting Minutes | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative, likely to confuse the issues and waste time | overruled |
| Exhibit 296 | | Puma Board Meeting Minutes | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative, likely to confuse the issues and waste time | overruled |
| Exhibit 297 | | Presentation to Puma's Board | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 298 | | Puma Board Meeting Minutes | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative, likely to | overruled |

Case 7:16-cv-00018-D   Document 555   Filed 11/02/22   Page 53 of 137

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|-----------|-------|------------------------------|-------------------|---|
| | | | | confuse the issues and waste time | |
| Exhibit 299 | | Presentation to Puma's Board | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 300 | | Puma Board Meeting Minutes | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative, likely to confuse the issues and waste time | overruled |
| Exhibit 301 | | Presentation to Puma's Board | May offer | **FRE 401/402:** irrelevant to compensatory damages, **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 302 | | Puma Board Meeting Minutes | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative, likely to confuse the issues and waste time | overruled |
| Exhibit 303 | | Presentation to Puma's Board | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 305 | | Puma Board Meeting Minutes | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative, likely to confuse the issues and waste time | overruled |
| Exhibit 306 | | Presentation to Puma's Board | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 307 | | Puma Board Meeting Minutes | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative, likely to | overruled |

54

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|-----------|-------|------------------------------|-------------------|---|
| | | | | confuse the issues and waste time | |
| Exhibit 308 | | Presentation to Puma's Board | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 309 | | Puma Board Meeting Minutes | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative, likely to confuse the issues and waste time | overruled |
| Exhibit 310 | | Presentation to Puma's Board | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 312 | | Presentation to Puma's Board | May offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 314* | | Latham & Watkins Presentation | Expects to offer | **FRE 401/402:** Irrelevant to compensatory damages **FRE 403:** Cumulative; likely to confuse the issues, waste time, and mislead the jury; unfairly prejudicial | overruled |
| Exhibit 315 | | Letter Cchristie to Dloveland | May offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages | overruled |
| Exhibit 316 | | Email Rwest to Dbourne | May offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages | overruled |
| Exhibit 318 | DX-006 | SEC Filing | May offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste | |

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|---|---|---|---|---|---|
| | | | | time, and mislead the jury **MIL Nos. 3, 5** | |
| Exhibit 319 | | SEC Filing | May offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages[5] **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL No. 5** | |
| Exhibit 320 | | Proxy Materials | Expects to offer | No objection | |
| Exhibit 321 | | Stockholder Letter | Expects to offer | **FRE 403:** Cumulative | overruled |
| Exhibit 322 | | Puma's Stock Price Report | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages **FRE 403:** Unfairly prejudicial and likely to confuse the issues; cumulative | overruled |
| Exhibit 326 | | SEC Filing | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages[6] **FRE 403:** Unfairly prejudicial and likely to confuse the issues; cumulative | |
| Exhibit 327 | | SEC Filing | Expects to offer | No objection | |
| Exhibit 328 | | Puma Press Release | Expects to offer | **FRE 401/402:** Irrelevant as to both compensatory damages **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury | overruled |
| Exhibit 329 | | OptumRx Report | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory damages | overruled |

---

[5] Puma's contention is that the only relevant portion of this exhibit is the disclosure of the litigation filed by Eshelman and the finding of liability.

[6] Puma's contention is that the only relevant portion of this exhibit is the disclosure of the litigation filed by Dr. Eshelman and the finding of liability.

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|-----------|-------|------------------------------|-------------------|---|
| Exhibit 330 | | Puma Press Release | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial as to compensatory damages; likely to confuse the issues, waste time, and mislead the jury | |
| Exhibit 331 | | Puma Press Release | Expects to offer | **FRE 401/402**: Irrelevant as to compensatory damages | overruled |
| Exhibit 338 | | SEC Filing | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL No. 5** | overruled |
| Exhibit 339 | | SEC Filing | Expects to offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL No. 5** | overruled |
| Exhibit 340 | | SEC Filing | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL No. 5** | overruled |
| Exhibit 342 | | Affidavit | May offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages | overruled' |
| Exhibit 344* | | Securities Fraud Verdict | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial; likely to confuse the jury, waste time<br>**MIL No. 3** | overruled |
| Exhibit 345* | | Puma Press | Expects to | **FRE 401/402**: Irrelevant as to | overruled |

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|--------|-----------|-------|------------------------------|-------------------|---|
| | | Release | offer | both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial<br>**MIL No. 3** | |
| Exhibit 346 | | Phone Call Transcript | May offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL No. 3** | overruled |
| Exhibit 351* | | SEC Filing | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** | |
| Exhibit 352* | | Litigation Settlement Approval | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial<br>**MIL No. 3** | |
| Exhibit 370 | | SEC.gov, EDGAR Log File Data Sets | Expects to offer | **Daubert Motion (DE 519)** | overruled |
| Exhibit 377 | | SEC 14A landing page | Expects to offer | No objection | |
| Exhibit 378 | | Slide 12 of defamatory investor presentation | Expects to offer | **FRE 106:** Incomplete—exhibit is only one slide from a slide deck | |
| Exhibit 379 | | Email from Mohanesian to Bheath | May offer | No objection | |
| Exhibit 380 | | Email from Aauerbach to Pgross | May offer | No objection | |
| Exhibit 381 | | Email from Tdavis to | May offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive | overruled |

58

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections |
|---|---|---|---|---|
| | | Aauerbach | | damages<br>**FRE 403**: Unfairly prejudicial; like to confuse the issue and waste time |
| Exhibit 382 | | Email from Mohanesian to Hkuo | May offer | No objection |
| Exhibit 383 | | Eml Aauerbach to SEC | Expects to offer | **FRE 106**: Exhibit is incomplete because it is missing attachment |
| Exhibit 384 | | Puma Q2 forecast | Expects to offer | **FRE 401/402**: Irrelevant as to compensatory damages |
| Exhibit 385 | DX-008 | SEC Filings (Puma 20200228 10K) | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages[7]<br>**FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** |
| Exhibit 386 | DX-009 | SEC Filings (Puma 20210301 10K) | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages<br>**FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** |
| Exhibit 387 | DX-010 | SEC Filings (Puma 20220303 10K) | Expects to offer | **FRE 401/402**: Irrelevant as to compensatory damages<br>**FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** |
| Exhibit 388 | DX-020 | SEC Filings | Expects to | **FRE 401/402**: Irrelevant as to |

[7] For Plaintiff's exhibits numbered between 385 and 402, Puma notes that the only relevant portions of those exhibits are the disclosure of this litigation and the finding of liability—not the previously overturned damages award—which are relevant to compensatory and punitive damages, and Puma's most recent disclosure of revenues or net revenues in PX-404, which is relevant to punitive damages. It therefore objects to the admission of these exhibits in their entirety.

Case 7:16-cv-00018-D Document 555 Filed 11/02/22 Page 59 of 137

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections |
|--------|-----------|-------|------------------------------|-------------------|
| | | (Puma 20190510 10Q) | offer | compensatory and punitive damages **FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL Nos. 3, 5** |
| Exhibit 389 | | Sec Filings (Puma 20190809 10Q Ex. 10) | Expects to offer | **FRE 401/402:** Irrelevant as to both compensatory and punitive damages **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL Nos. 3, 5** |
| Exhibit 391 | DX-021 | SEC Filings (Puma 20190809 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL Nos. 3, 5** |
| Exhibit 393 | DX-022 | SEC Filings (Puma 20191107 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL Nos. 3, 5** |
| Exhibit 394 | DX-023 | SEC Filings (Puma 20200507 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory damages and punitive damages **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL Nos. 3, 5** |
| Exhibit 395 | DX-024 | SEC Filings (Puma 20200806 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages **FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL Nos. 3, 5** |

60

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections |
|---|---|---|---|---|
| Exhibit 396 | DX-025 | SEC Filings (Puma 20201105 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages<br>**FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** |
| Exhibit 397 | DX-026 | SEC Filings (Puma 20210506 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages<br>**FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** |
| Exhibit 398 | DX-027 | SEC Filings (Puma 20210805 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages<br>**FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** |
| Exhibit 399 | DX-028 | SEC Filings (Puma 20211104 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages<br>**FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** |
| Exhibit 400 | | SEC Filings (Puma 20211104 10Q Ex. 10) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages<br>**FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury<br>**MIL Nos. 3, 5** |
| Exhibit 401 | DX-029 | SEC Filings (Puma 20220505 10Q) | Expects to offer | **FRE 401/402:** Irrelevant as to compensatory and punitive damages<br>**FRE 403:** Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury |

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections | |
|---|---|---|---|---|---|
| | | | | **MIL Nos. 3, 5** | |
| Exhibit 402 | DX-030 | SEC Filings (Puma 20220804 10Q) | Expects to offer | **FRE 401/402**: Irrelevant as to compensatory damages **FRE 403**: Unfairly prejudicial; likely to confuse the issues, waste time, and mislead the jury **MIL Nos. 3, 5** | |
| Exhibit 404 | | SEC Filings (Puma 20220804 8K Ex. 99) | | **FRE 401/402**: Irrelevant as to compensatory damages | |
| Exhibit 405 | DX-001 | SEC Filings (Puma 20220810 8K) | Expects to offer | No objection | |
| Exhibit 406 | | Email from Aauerbach to Mohanesian | Expects to offer | **FRE 401/402**: Previous damages award is irrelevant as to both compensatory and punitive damages **FRE 403**: Unfairly prejudicial, cumulative | Sustain |
| Exhibit 407 | | Email from Aauerbach to Mohanesian | | No objection. | |
| Exhibit 408 | | Email from Aauerbach to Mohanesian | | No objection. | |
| Exhibit 409 | DX-170 | Triangle Business Journal article | Expects to offer | No objection | |
| Exhibit 410 | | Norton Rose Fulbright Blog | Expects to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages **FRE 702**: Improper expert opinion **FRE 403**: Unfairly prejudicial, likely to mislead the jury, confuse the issues, and waste time | Sustain |
| Exhibit 411 | | Puma's Current Stock | Expect to offer | **FRE 401/402**: Irrelevant as to both compensatory and punitive damages | Overrule |

Case 7:16-cv-00018-D   Document 555   Filed 11/02/22   Page 62 of 137

| Number | Def.'s Ex. | Title | Expects to offer / May offer | Puma's Objections |
|--------|-----------|-------|------------------------------|-------------------|
| | | Price Chart[8] | | **FRE 403**: Unfairly prejudicial and likely to confuse the issues as to compensatory damages; cumulative |

Dr. Eshelman also reserves the right to use any exhibit designated by Defendant.

**B.    Puma's Proposed Exhibits[9]**

In addition to the below objections to Puma's proposed exhibits, Dr. Eshelman filed the

following motions *in limine* on February 13, 2019 (Nos. 1–6), and September 23, 2022 (No. 8):

1.  Motion *in Limine* No. 1 to Exclude Heavily Redacted Investigation Documents. (D.E. 320, 321 ("Pl.'s Motion in *Limine* No. 1").)

2.  Motion *in Limine* No. 2 to Exclude Hearsay About What Undisclosed Witnesses Purportedly Said.  (D.E. 322, 323 ("Pl.'s Motion in *Limine* No. 2").)

3.  Motion *in Limine* No. 3 to Exclude Evidence and Argument About the Corinthian Opthalmic Litigation.  (D.E. 324, 325 ("Pl.'s Motion in *Limine* No. 3").)

4.  Motion *in Limine* No. 4 to Exclude Evidence and Argument About the Ketek Litigation (and related sealing documents).  (D.E. 326, 327, 328, 329, 330 ("Pl.'s Motion in *Limine* No. 4").)

5.  Motion *in Limine* No. 5 to Exclude Hearsay Articles About Ketek.  (D.E. 331, 332 ("Pl.'s Motion in *Limine* No. 5").)

6.  Motion *in Limine* No. 6 to Exclude Evidence and Argument About Dr. Eshelman's Political Affiliation.  (D.E. 333, 334 ("Pl.'s Motion in *Limine* No. 6").)

7.  Motion in *Limine* No. 8 to Exclude Previously Undisclosed Exhibits.  (D.E. 532 ("Pl.'s Motion in *Limine* No. 8").)

---

[8] Dr. Eshelman reserves the right to update the Stock Price Chart to reflect the up-to-date performance of PBYI's stock.

[9] Defendant failed to comply with Local Rule 16.1(c)(3) regarding the numbering of exhibits. Rather than retain the original numbering of exhibits, Puma renumbered each of their exhibits, including those that were admitted in the first trial.

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| DX-1 | PX-405 | Puma Biotechnology, Inc., SEC Form 8-K, filed Aug. 10, 2022. | No Objection |
| DX-2 | | Email from A. Auerbach to EDGARFilingCorrections@SEC. GOV re: "Puma Biotechnology, Inc. (CIK#0001401667)," dated June 2, 2022 (PUMA22_00005282). | No Objection |
| DX-3 | | Email and attachment from A. Auerbach to J. Hickman re: "Puma Biotechnology, Inc. (CIK#0001401667)," dated June 2, 2022 (PUMA22_00004980). | No Objection |
| DX-4 | | Puma Biotechnology, Inc., SEC Form 10-K, filed Feb. 29, 2016 (full version and version redacted for relevance). | No Objection |
| DX-5 | | Puma Biotechnology, Inc., SEC Form 10-K, filed Mar. 1, 2017 (full version and version redacted for relevance). | No Objection |
| DX-6 | PX-318 | Puma Biotechnology, Inc., SEC Form 10-K, filed Mar. 9, 2018 (full version and version redacted for relevance). | No Objection |
| DX-7 | | Puma Biotechnology, Inc., SEC Form 10-K, filed Mar. 1, 2019 (full version and version redacted for relevance). | No Objection |
| DX-8 | PX-385 | ıma Biotechnology, Inc., SEC Form 10-K, filed Feb 28, 2020, (full version and version redacted for relevance). | No Objection |
| DX-9 | PX-386 | Puma Biotechnology, Inc., SEC Form 10-K, filed Mar. 1, 2021 | No Objection |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|--------------------------|
|         |           | (full version and version redacted for relevance). | |
| DX-10 | PX-387 | Puma Biotechnology, Inc., SEC Form 10-K, filed Mar. 3, 2022 (full version and version redacted for relevance). | No Objection |
| DX-11 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed May 10, 2016 (full version and version redacted for relevance). | No Objection |
| DX-12 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed Aug. 9, 2016 (full version and version redacted for relevance). | No Objection |
| DX-13 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed Nov. 9, 2016 (full version and version redacted for relevance). | No Objection |
| DX-14 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed May 10, 2017 (full version and version redacted for relevance). | No Objection |
| DX-15 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed Aug. 9, 2017 (full version and version redacted for relevance). | No Objection |
| DX-16 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed Nov. 9, 2017 (full version and version redacted for relevance). | No Objection |
| DX-17 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed May 10, 2018 (full version and version redacted for relevance). | No Objection |
| DX-18 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed Aug. 9, 2018 | No Objection |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|--------------------------|
| | | (full version and version redacted for relevance). | |
| DX-19 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed Nov. 5, 2018 (full version and version redacted for relevance). | No Objection |
| DX-20 | PX-388 | Puma Biotechnology, Inc., SEC Form 10-Q, filed May 10, 2019 (full version and version redacted for relevance). | No Objection |
| DX-21 | PX-391 | Puma Biotechnology, Inc., SEC Form 10-Q, filed Aug. 9, 2019 (full version and version redacted for relevance). | No Objection |
| DX-22 | PX-393 | Puma Biotechnology, Inc., SEC Form 10-Q, filed Nov. 7, 2019 (full version and version redacted for relevance). | No Objection |
| DX-23 | PX-394 | Puma Biotechnology, Inc., SEC Form 10-Q, filed May 7, 2020 (full version and version redacted for relevance). | No Objection |
| DX-24 | PX-395 | Puma Biotechnology, Inc., SEC Form 10-Q, filed Aug. 6, 2020 (full version and version redacted for relevance). | No Objection |
| DX-25 | PX-396 | Puma Biotechnology, Inc., SEC Form 10-Q, filed Nov. 5, 2020 (full version and version redacted for relevance). | No Objection |
| DX-26 | PX-397 | Puma Biotechnology, Inc., SEC Form 10-Q, filed May 6, 2021 (full version and version redacted for relevance). | No Objection |
| DX-27 | PX-398 | Puma Biotechnology, Inc., SEC Form 10-Q, filed Aug. 5, 2021 | No Objection |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | (full version and version redacted for relevance). | |
| DX-28 | PX-399 | Puma Biotechnology, Inc., SEC Form 10-Q, filed Nov. 4, 2021 (full version and version redacted for relevance). | No Objection |
| DX-29 | PX-401 | Puma Biotechnology, Inc., SEC Form 10-Q, filed May 5, 2022 (full version and version redacted for relevance). | No Objection |
| DX-30 | PX-402 | Puma Biotechnology, Inc., SEC Form 10-Q, filed Aug. 4, 2022 (full version and version redacted for relevance). | No Objection |
| DX-31 | | ISS Vote Recommendation (Dec. 22, 2015). | No Objection |
| DX-32 | | Glass Lewis Vote Recommendation (Dec. 23, 2015). | No Objection |
| DX-33 | PX-184 | Email chain between A. Auerbach, L. Miller, E. Rogers, and others re: "PBYI - Call with Vanguard," dated Jan. 6, 2016 to Jan 13., 2016, with attachment (PUMA00053311). | No Objection |
| DX-34 | PX-237 | Email and attachment from E. Rogers to A. Auerbach, M. Ohanesian, and others re: "Puma -- current tabulation summary," dated Dec. 31, 2015 (PUMA00445355). | No Objection |
| DX-35 | | Email chain between L. Miller, E. Rogers, and other re: "Contest Vote - PUMA BIOTECHNOLOGY, INC.," dated Jan. 6, 2016 (PUMA_FRANKL_0000713). | No Objection |

67

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| DX-36 | | Schedule 14A by F. Eshelman, filed Oct. 27, 2015. | No Objection |
| DX-37 | This Exhibit appears at Tab-3 of PX-212 | Schedule 14A by F. Eshelman, filed Oct. 28, 2015. | No Objection |
| DX-38 | This Exhibit appears at Tab-6 of PX-212 | Schedule 14A by F. Eshelman, filed Nov. 3, 2015. | No Objection |
| DX-39 | This Exhibit appears at Tab-7 of PX-212 | Schedule 14A by F. Eshelman, filed Nov. 10, 2015. | No Objection |
| DX-40 | This Exhibit appears at Tab-9 of PX-212 | Schedule 14A by F. Eshelman, filed Nov. 18, 2015. | No Objection |
| DX-41 | | Schedule 14A by Puma, filed Dec. 23, 2015. | No Objection |
| DX-42 (prev. admitted as DX-30) | This Exhibit appears at Tab-12 of PX-212 | Schedule 14A by F. Eshelman, filed Nov. 30, 2015. | No Objection |
| DX-43 | This Exhibit appears at Tab-13 of PX-212 | Schedule 14A by Puma, filed Dec. 4, 2015. | No Objection |
| DX-44 | This Exhibit appears at Tab-18 of PX-212 | Schedule 14A by F. Eshelman, filed Dec. 10, 2015. | No Objection |
| DX-45 | | Puma, SEC Form 10-K, filed Dec. 31, 2015. | No Objection |
| DX-46 | | Schedule 14A by F. Eshelman, | No Objection |

68

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | filed Jan. 4, 2016. | | |
| DX-47 | PX-042 | Schedule 14A by Puma, filed Jan. 7, 2016. | No Objection | |
| DX-48 | PX-189 | Schedule 14A by Puma, filed Jan. 27, 2016. | No Objection | |
| DX-49 | PX-100 | UBS Financial Services, Inc. Stock Purchase Receipt for F. Eshelman, dated May 18, 2015. | No Objection | |
| DX-50 | | Email from S. Rudnick to K. Lee re: "New board with Fred Eshelman," dated Oct. 27, 2015 (RDK00000717). | No Objection | |
| DX-51 | | Email chain between S. Rudnick and F. Eshelman re: "Saks," dated Oct. 27, 2015 (ESH00002108). | FRE 401/402: Irrelevant | overruled |
| DX-52 | | Email chain between K. Lee and employees at Hatteras Partners re: "Confidential," dated Oct. 28, 2015 (LEE00002045). | FRE 401/402: Irrelevant | overruled |
| DX-53 | | Email chain from F. Eshelman to J. Daly, S. Rudnick, and K. Lee re: "FW: Revised deck," dated Nov. 21, 2015 (LEE 00003201). | FRE 401/402: Irrelevant | overruled |
| DX-54 | | Email chain between K. Lee, F. Eshelman, J. Daly, S. Rudnick, R. Brand, and K. Carney re: "PBYI - Roden," dated Dec. 1, 2015 (ESH00018725). | FRE 401/402: Irrelevant | overruled |
| DX-55 | | Email from K. Lee to K. Carney, S. Rudnick, J. Daly, and F. Eshelman re: "Rebuttals," dated Dec. 11, 2015 (LEE00001965). | FRE 401: Irrelevant<br><br>FRE 106: Incomplete document—the email is a portion of a longer email chain that does not contain attachments present in original correspondence | sustained |

69

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | This document was excluded by the Court during its March 8, 2019 Hearing (Tr. at 55:17-21, excluded as DX-39) | |
| DX-56 (prev. admitted as DX-36) | | Press Release, Puma Biotechnology Announces the Conclusion and Final Results of Eshelman's Consent Solicitation (Feb. 16, 2016) (PUMA00445059). | No Objection | |
| DX-57 | | "PPD Boss Eshelman Joins Aton Board," Triangle Business Journal (Feb. 25, 2008). | FRE 801/802: Inadmissible hearsay<br><br>FRE 901(a): Exhibit not authenticated | Sustained |
| DX-58 | | Ben Steelman, "Eshelman, PPD Founder, Still Pushes Bounds of Research," StarNews (Dec. 12, 2008). | FRE 801/802: Inadmissible hearsay<br><br>FRE 901(a): Exhibit not authenticated | Sustained |
| DX-59 | | Xori Corp., SEC Form D (May 15, 2015). | FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay | Sustained |
| DX-60 | | Corinthian Opthalmic, Inc., Form D (Dec. 19, 2011). | FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay | Sustained |
| DX-61 | | Lauren K. Ohnesorge, "Raleigh's Corinthian Ophthalmic Nets $1.6M for Eye Device," Triangle Business Journal (Mar. 22, 2013). | FRE 801/802: Inadmissible hearsay<br><br>FRE 901(a): Exhibit not authenticated | Sustained |
| DX-62 | | Lauren K. Ohnesorge, "Furiex's Eshelman: Life Is Good," Triangle Business Journal (Apr. 5, 2013). | FRE 801/802: Inadmissible hearsay<br><br>FRE 901(a): Exhibit not authenticated | Sustained |

70

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| DX-63 | | Katia Savchuk, "Pharma Multi-Millionaire Gives $100 Million to University of North Carolina," Forbes (Dec. 3, 2014). | FRE 801, 802: Inadmissible hearsay<br><br>FRE 901(a): Document not authenticated<br><br>This document was excluded by the Court during its March 8, 2019 Hearing (Tr. at 54:4-5, excluded as DX-20) | Sustained |
| DX-64 | | Leoneda Inge, "UNC Pharmacy School Gets $100 Million Gift," North Carolina Public Radio (Jan 23, 2015). | No Objection | |
| DX-65 | | Jason deBruyn, "UNC Receives $100M Gift from Fred Eshelman, Largest in School History," Triangle Business Journal (Dec. 3, 2014). | FRE 801, 802: Inadmissible hearsay<br><br>FRE 901(a): Document not authenticated<br><br>This document was excluded by the Court during its March 8, 2019 Hearing (Tr. at 54:4-5, excluded as DX-21) | Sustained |
| DX-66 | | "CEO Partners & Advisors," Hudson Executive Capital, https://www.hudsonexecutive.com/ceo-partners/. | FRE 901(a): Document not authenticated<br><br>FRE 801, 802: Inadmissible hearsay | |
| DX-67 | | Jason deBruyn, "Eshelman Helps UNC Hit Record Fundraising Year," Triangle Business Journal (Aug. 13, 2015). | No Objection | |
| DX-68 | | "2015 Blue Ribbon Gala: An Evening Full of Inspiration, Hope," UNC Lineberger Comprehensive Cancer Center (Sept. 28, 2015). | No Objection | |
| DX-69 | | Email correspondence between F. Eshelman and Ben Yerxa, dated Jan. 20, 2016 (ESH00013145). | FRE 401/402: Irrelevant | overruled |

71

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| DX-70 | | "Fred Eshelman to Receive CED's Life Science Leadership Award," WRAL TechWire (Jan. 25, 2016). | FRE 801, 802: Inadmissible hearsay<br><br>FRE 901(a): Document not authenticated | Sustained |
| DX-71 | | Email correspondence between F. Eshelman and T. Allen, dated Feb. 18, 2016 (ESH00018937). | FRE 401/402: Irrelevant | Overruled |
| DX-72 | | Email from W. Hoos to F. Eshelman re: "NQ Oncology Update and CED Event," dated Feb. 26, 2016 (ESH00002683). | FRE 801/802: Inadmissible hearsay<br><br>FRE 401/402: Irrelevant | |
| DX-73 | | Email chain between F. Eshelman and S. Rudnick re: "heads up," dated Mar. 4, 2016 (ESH00013213). | FRE 401/402: Irrelevant | Overruled |
| DX-74 | | Email chain between F. Eshelman and B. Kappel re: "Sapience follow up," dated Mar. 8–11, 2016 (ESH00016078). | FRE 401/402: Irrelevant | Overruled |
| DX-75 | | "Valeant Pharmaceuticals Announces the Addition of Three New Independent Directors to Its Board," Valeant Pharmaceuticals, Inc. (Mar. 9, 2016). | FRE 901(a): Document not authenticated<br><br>FRE 801, 802: Inadmissible hearsay<br><br>This document was excluded by the Court during its March 8, 2019 Hearing (Tr. at 54:21-22, excluded as DX-22) | Sustained |
| DX-76 | | Email from S. Rudnick to F. Eshelman re: "Press Release," dated Mar. 9, 2016 (ESH00013261). | FRE 401/402: Irrelevant | Overruled |
| DX-77 | | Email and attachment from F. Eshelman to A. Eshelman re: "FW: Press Release," dated Mar. 9, 2016 (ESH00007517). | FRE 401/402: Irrelevant | Overruled |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| DX-78 | | Email from S. Rudnick to F. Eshelman re: "Couple of things, hope all is well," dated Mar. 10, 2016 (ESH00012910). | FRE 401/402: Irrelevant | Overruled |
| DX-79 | | Email from N. Howard to F. Eshelman re: "FW: Cloud Pharmaceuticals," dated Apr. 15, 2016 (ESH00015448). | FRE 401/402: Inadmissible | Overruled |
| DX-80 | | Email from K. Lee to F. Eshelman re: "FW: Thanks," dated Apr. 22, 2016 (ESH00004988). | FRE 801/802: Inadmissible hearsay  FRE 401: Irrelevant | |
| DX-81 | | Email from N. Howard to F. Eshelman re: "FW: G1 Therapeutics - Series C Financing," dated Apr. 25, 2016 (ESH00006785). | FRE 401/402: Irrelevant | Overruled |
| DX-82 | | Jason deBruyn, "Fred Eshelman: The Man Who Starts Companies Worth Billions of Dollars," Triangle Business Journal (May 20, 2016). | FRE 801, 802: Inadmissible hearsay  FRE 901(a): Document not authenticated | Sustained |
| DX-83 | | Email from K. Lee to F. Eshelman re: "FW: In this issue: Fred Eshelman: The man who starts companies worth billions of dollars," dated May 20, 2016 (ESH00002861). | FRE 801, 802: Inadmissible hearsay  FRE 901(a): Document not authenticated | Sustained |
| DX-84 | | Email and attachment from K. Lee to F. Eshelman with no subject line, dated May 20, 2016 (ESH00002870). | FRE 801, 802: Inadmissible hearsay  FRE 901(a): Document not authenticated | Sustained |
| DX-85 | | Email and attachment from F. Eshelman to A. Eshelman re: "FW: Confirmation and outline for discussion on Monday 23 May," dated May 21, 2016 | FRE 401/402: Irrelevant | Overruled |

73

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | (ESH00006590). | | |
| DX-86 | | Email chain between F. Eshelman and B. Batten re: "TBJ," with attachments, dated May 24–25, 2016 (ESH00002900). | FRE 801, 802: Inadmissible hearsay<br><br>FRE 901(a): Document not authenticated | |
| DX-87 | | Email from S. Siler to F. Eshelman re: "Greetings, Sean Siler update, and an investment opportunity to evaluate," dated Aug. 2. 2016 (ESH00013661). | No Objection | |
| DX-88 | | "Innocrin Pharmaceuticals Appoints Fred Eshelman, PharmD as CEO," Business Wire (Apr. 6, 2017). | FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay<br><br>This document was excluded by the Court during its March 8, 2019 Hearing (Tr. at 54:21-22, excluded as DX-24) | Sustained |
| DX-89 | | The Medicines Company, Form DEF 14A (Apr. 26, 2017) (full version and version redacted for relevance). | FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay<br><br>This document was excluded by the Court during its March 8, 2019 Hearing (Tr. at 54:21-22, excluded as DX-23) | Sustained |
| DX-90 | | Sougata Mukherjee, "2017 CEO of the Year Awards: Fred Eshelman (Video)," Triangle Business Journal (May 18, 2017). | FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay | Sustained |
| DX-91 | | Grayson Mendenhall, "Eshelman Awarded Honorary Degree by UNC," UNC Eshelman School of Pharmacy, June 8, 2017. | No Objection | |
| DX-92 | | Ben Steelman, "Shining Stars," | FRE 901(a): Exhibit not | Sustained |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---|---|---|---|---|
| | | StarNews (Dec. 13, 2018). | authenticated | |
| | | | FRE 801/802: Inadmissible hearsay | |
| | | | This document was excluded by the Court during its March 8, 2019 Hearing (Tr. at 59:13-25, excluded as DX-92) | |
| DX-93 | | "2019 Power 100," Business North Carolina, Feb. 2019. | FRE 901(a): Exhibit not authenticated | Sustained |
| | | | FRE 801/802: Inadmissible hearsay | |
| DX-94 | | Amplitude Healthcare Acquisition Corp. Form S-1, filed Oct. 25, 2019. | FRE 901(a): Exhibit not authenticated | Sustained |
| | | | FRE 801/802: Inadmissible hearsay | |
| DX-95 | | "2020 Power 100," Business North Carolina, Feb. 2020. | FRE 901(a): Exhibit not authenticated | Sustained |
| | | | FRE 801/802: Inadmissible hearsay | |
| DX-96 | | "Aravive Announces Board Composition and Executive Management Transitions," Aravive, Inc. (Apr. 9, 2020). | FRE 901(a): Exhibit not authenticated | Sustained |
| | | | FRE 801/802: Inadmissible hearsay | |
| DX-97 | | "About Us," Incyclix Biopharmaceuticals, https://incyclixbio.com/about-us/#leadership. | FRE 901(a): Exhibit not authenticated | Sustained |
| | | | FRE 801/802: Inadmissible hearsay | |
| DX-98 | | "ARC Therapeutics Launches to Develop Novel CDK Inhibitors for the Treatment of Advanced and Resistant Cancers," Business Wire (Aug. 5, 2020). | FRE 401/402: Irrelevant | Sustained |
| | | | FRE 801/802: Inadmissible hearsay | |
| | | | FRE 901(a): Document not authenticated | |
| DX-99 | | Sarah de Crrescenzo, "G1 Vets Launch Arc Therapeutics to Take | FRE 901(a): Exhibit not authenticated | Sustained |

75

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | on New Cancer Target," Xconomy (Aug. 6, 2020). | FRE 801/802: Inadmissible hearsay |
| DX-100 | | "Aravive Announces \$21.0 Million Registered Direct Offering with Eshelman Ventures, LLC Priced At-The-Market," Aravive, Inc. (Feb. 16, 2021). | FRE 901(a): Exhibit not authenticated FRE 801/802: Inadmissible hearsay |
| DX-101 | | Zac Ezzone, "RTP Startup Backed by Eshelman Raises \$30M ahead of Clinical Trials for Cancer Treatment," Triangle Business Journal (Mar. 31, 2022). | FRE 901(a): Exhibit not authenticated FRE 801/802: Inadmissible hearsay |
| DX-102 | | Frederic N. Eshelman's Responses and Objections to Puma's First Set of Requests for Production (Nos. 1–39), served Aug. 17, 2016. | No Objection |
| DX-103 | | Frederic N. Eshelman's Responses and Objections to Puma's First Set of Requests for Production (Nos. 40 –43), served Aug. 17, 2016. | No Objection |
| DX-104 | | Frederic N. Eshelman's Responses and Objections to Puma's First Set of Interrogatories (Nos. 1–8), served Aug. 17, 2016. | No Objection |
| DX-105 | | Frederic N. Eshelman's Responses and Objections to Puma's Second Set of Interrogatories (No. 9), served Aug. 17, 2016. | No Objection |
| DX-106 | | Frederic N. Eshelman's Amended Responses to Puma's Interrogatories No. 11–14 and 18, served Apr 20, 2018. | No Objection |
| DX-107 | | Frederic N. Eshelman's Supplemental Responses to Puma's Interrogatories Nos. 6, 7, 11, 14, 17, and 18, served June 20, 2022. | No Objection |

*Handwritten annotation beside DX-100:* Sustained

*Handwritten annotation beside DX-101:* Sustained

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| DX-108 | | Frederic N. Eshelman's Initial Disclosures, dated July 15, 2016. | No Objection |
| DX-109 | | Frederic N. Eshelman's Amended Initial Disclosures, dated September 19, 2016. | No Objection |
| DX-110 | | Frederic N. Eshelman's Second Amended Initial Disclosures, dated June 19, 2017. | No Objection |
| DX-111 | | Frederic N. Eshelman's Third Amended Initial Disclosures, dated Aug. 4, 2017. | No Objection |
| DX-112 | | Frederic N. Eshelman's Fourth Amended Initial Disclosures, dated Sept. 22, 2017. | No Objection |
| DX-113 | | Frederic N. Eshelman's Fifth Amended Initial Disclosures, dated June 20, 2022. | No Objection |
| DX-114 | | Complaint, ECF No. 1 (Feb. 2, 2016). | No Objection |
| DX-117 | | Pharmaceutical Product Development, SEC Schedule 14A (1996) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-118 | | Pharmaceutical Product Development, SEC Schedule 14A (1997) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-119 | | Pharmaceutical Product Development, SEC Schedule 14A | FRE 401/402: Irrelevant |

77

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| | | (1998) (full version and version redacted for relevance). | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-120 | | Pharmaceutical Product Development, SEC Schedule 14A (1999) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-121 | | Pharmaceutical Product Development, SEC Schedule 14A (2000) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-122 | | Pharmaceutical Product Development, SEC Schedule 14A (2001) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-123 | | Pharmaceutical Product Development, SEC Schedule 14A (2002) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-124 | | Pharmaceutical Product Development, SEC Schedule 14A (2003) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |

78

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| | | | FRE 801/802: Inadmissible hearsay |
| DX-125 | | Pharmaceutical Product Development, SEC Schedule 14A (2004) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-126 | | Pharmaceutical Product Development, SEC Schedule 14A (2005) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-127 | | Pharmaceutical Product Development, SEC Schedule 14A (2006) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-128 | | Pharmaceutical Product Development, SEC Schedule 14A (2007) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-129 | | Pharmaceutical Product Development, SEC Schedule 14A (2008) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| DX-130 | | Pharmaceutical Product Development, SEC Schedule 14A (2009) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-131 | | Pharmaceutical Product Development, SEC Schedule 14A (2010) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-132 | | Furiex Pharmaceuticals, Inc. SEC Schedule 14A (2010) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-133 | | Furiex Pharmaceuticals, Inc. SEC Schedule 14A (2011) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-134 | | Furiex Pharmaceuticals, Inc. SEC Schedule 14A (2012) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-135 | | Furiex Pharmaceuticals, Inc. SEC Schedule 14A (2013) (full version and version redacted for | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | relevance). | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-138 | | The Medicines Company, SEC Schedule 14A (2015) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-139 | | Valeant Pharmaceuticals International, Inc., SEC Schedule 14A (2016) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-140 | | The Medicines Company, SEC Schedule 14A (2016) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-141 | | Eyenovia, Inc., SEC Schedule 14A (2017) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-142 | | G1 Therapeutics, Inc., SEC Schedule 14A (2017) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | | hearsay |
| DX-143 | | The Medicines Company, SEC Schedule 14A (2017) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br>FRE 403: Waste of time<br>FRE 901(a): Exhibit not authenticated<br>FRE 801/802: Inadmissible hearsay |
| DX-144 | | Valeant Pharmaceuticals International, Inc., SEC Schedule 14A (2017) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br>FRE 403: Waste of time<br>FRE 901(a): Exhibit not authenticated<br>FRE 801/802: Inadmissible hearsay |
| DX-145 | | Eyenovia, Inc., SEC Schedule 14A (2018) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br>FRE 403: Waste of time<br>FRE 901(a): Exhibit not authenticated<br>FRE 801/802: Inadmissible hearsay |
| DX-146 | | G1 Therapeutics, Inc., SEC Schedule 14A (2018) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br>FRE 403: Waste of time<br>FRE 901(a): Exhibit not authenticated<br>FRE 801/802: Inadmissible hearsay |
| DX-147 | | Valeant Pharmaceuticals International, Inc., SEC Schedule 14A (2017) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br>FRE 403: Waste of time<br>FRE 901(a): Exhibit not authenticated<br>FRE 801/802: Inadmissible hearsay |
| DX-148 | | Eyenovia, Inc., SEC Schedule 14A (2019) (full version and version | FRE 401/402: Irrelevant |

82

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | redacted for relevance). | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-149 | | G1 Therapeutics, Inc., SEC Schedule 14A (2019) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-150 | | Aravive, Inc., SEC Schedule 14A (2020) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-151 | | Eyenovia, Inc., SEC Schedule 14A (2020) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-152 | | G1 Therapeutics, Inc., SEC Schedule 14A (2020) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |
| | | | FRE 801/802: Inadmissible hearsay |
| DX-153 | | Aravive, Inc., SEC Schedule 14A (2021) (full version and version redacted for relevance). | FRE 401/402: Irrelevant |
| | | | FRE 403: Waste of time |
| | | | FRE 901(a): Exhibit not authenticated |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | | FRE 801/802: Inadmissible hearsay |
| DX-154 | | Eyenovia, Inc., SEC Schedule 14A (2021) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-155 | | G1 Therapeutics, Inc., SEC Schedule 14A (2021) (full version and version redacted for relevance). | FRE 401/402: Irrelevant<br><br>FRE 403: Waste of time<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay |
| DX-156 | | Puma Website Analytics Jan. 7, 2016, to Feb. 2, 2016. | No Objection |
| DX-157 | | Puma Website Analytics Jan. 7, 2016, to July 11, 2017. | No Objection |
| DX-158 | | Puma SEC Filing Detail (Harrison Ex. 0009). | No Objection |
| DX-159 | | EDGAR Log File Data Sets. | No Objection |
| DX-160 | | Screen Capture of SEC Log .csv Data (Harrison Ex. 0010). | No Objection |
| DX-161 | | Explanation of SEC Log Data (Harrison Ex. 0011). | No Objection |
| DX-162 | | Email from A. Roller to N. Harrison re: "Eshelman: Data," dated June 28, 2022 (HARRISON000234). | No Objection |
| DX-163 | | Email from A. Roller to N. Harrison, with new subject line, dated Aug. 9, 2022 | No Objection |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | (HARRISON000220). | | |
| DX-164 | | Screen Capture of Public Databases (*e.g.*, EDGAR Full Text Search (Sept. 19, 2022) (PUMA23_000001)). | Dr. Eshelman has moved to exclude this exhibit in Pl.'s Motion *in Limine* No. 8 (D.E. 522) | Sustained |
| | | | FCRP 26: Document was not produced by the deadlines set by the Court or in advance of expert depositions | |
| DX-165 | | Screen Capture of Public Databases (*e.g.*, Screen Capture Google Trends Search for Eshelman 2015 to 2016 (Sept. 20, 2022) (PUMA23_000046)). | Dr. Eshelman has moved to exclude this exhibit in Pl.'s Motion *in Limine* No. 8 (D.E. 522) | Sustained |
| | | | FCRP 26: Document was not produced by the deadlines set by the Court or in advance of expert depositions | |
| DX-166 | | Screen Capture of Public Databases (*e.g.*, Screen Capture Google Trends Search for Eshelman 2015 to Present (Sept. 20, 2022) (PUMA23_000060)). | Dr. Eshelman has moved to exclude this exhibit in Pl.'s Motion *in Limine* No. 8 (D.E. 522) | Sustained |
| | | | FCRP 26: Document was not produced by the deadlines set by the Court or in advance of expert depositions | |
| DX-167 | | Affidavit of T. Price for EDGAR Search Screen Capture, dated Sept. 20, 2022 (PUMA23_000091). | Dr. Eshelman has moved to exclude this exhibit in Pl.'s Motion *in Limine* No. 8 (D.E. 522) | Sustained |
| | | | FCRP 26: Document was not produced by the deadlines set by the Court or in advance of expert depositions | |
| DX-168 | | Affidavit of T. Price for Google Trends Screen Capture, dated Sept. 20, 2022 (PUMA23_000093). | Dr. Eshelman has moved to exclude this exhibit in Pl.'s Motion *in Limine* No. 8 (D.E. 522) | Sustained |
| | | | FCRP 26: Document was not | |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | produced by the deadlines set by the Court or in advance of expert depositions | |
| DX-169 | | Alicia Mundy, "Drug Industry Vets Back Group Behind Controversial Obama Ad," Wall Street Journal (Nov. 3, 2008). | FRE 401/402: Irrelevant FRE 403: Unduly prejudicial FRE 901(a): Document is not authenticated This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | Sustained |
| DX-170 | PX-409 | Jason deBruyn, "Fred Eshelman Sues California Company for Defamation," Triangle Business Journal (Feb. 11, 2016). | No Objection | |
| DX-171 | | Vida Weisblum, "Alexandra Pelosi's New Film Reveals Why Billionaires Pour Millions into Elections," Observer (June 2, 2016). | FRE 401/402: Irrelevant FRE 403: Unduly prejudicial FRE 901(a): Document is not authenticated This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Dr. Eshelman's Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | Sustained |
| DX-172 | | "Innocrin Pharmaceuticals Appoints Fred Eshelman, PharmD as CEO and Is Granted Fast Track Designation by FDA for Seviteronel Treatment of Women with Triple-Negative Breast | FRE 901(a): Exhibit not authenticated FRE 801/802: Inadmissible hearsay This document was excluded | Sustained |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | Cancer and women or Men with Estrogen Receptor-Positive Breast Cancer," Business Wire (Apr. 6, 2017). | by the Court during its March 8, 2019 Hearing (Tr. at 54:21-22, excluded as DX-24) | |
| DX-173 | | Jennifer Henderson, "G1 Closes IPO, Raising $108M," Triangle Business Journal (May 23, 2017). | FRE 401/402: Irrelevant<br><br>FRE 901(a): Exhibit not authenticated<br><br>FRE 801/802: Inadmissible hearsay | Sustained |
| DX-174 | | University Communications, "225 Years of Tar Heels: Fred Eshelman," UNC (May 1, 2019). | No Objection | |
| DX-175 | | Angus Liu, "Puma Biotech to Pay PPD Founder $22M in Defamation Suit from Proxy Fight," Fierce Pharma (Mar. 20, 2019). | No Objection | |
| DX-176 | | Robert Burnson, "Pro-Trump Group Donor Sues Over Failure to Expose Election Fraud," Bloomberg (Nov. 25, 2020). | FRE 401/402: Irrelevant<br><br>FRE 403: Unduly prejudicial<br><br>FRE 901(a): Document is not authenticated<br><br>This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | Sustained |
| DX-177 | | Adam Klasfeld, "Investor Sues to Get His $2.5 Million Back After Supporting True the Vote's Flailing Pro-Trump Election Suits," Law & Crime (Nov. 25, 2020). | FRE 401/402: Irrelevant<br><br>FRE 403: Unduly prejudicial<br><br>FRE 901(a): Document is not authenticated<br><br>This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was | Sustained |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-178 | | Jeanine Santucci, "Donor to Pro-Trump Group Sues to Get His Money Back After Dropped Election Lawsuits," USA Today (Nov. 27, 2020). | FRE 401/402: Irrelevant FRE 403: Unduly prejudicial FRE 901(a): Document is not authenticated | Sustained |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-179 | | Chacour Koop, "NC Donor Wants Millions Returned After Pro-Trump Group Drops Election Fraud Cases," Charlotte Observer (Nov. 28, 2020). | FRE 401/402: Irrelevant FRE 403: Unduly prejudicial FRE 901(a): Document is not authenticated | Sustained |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-180 | | Shawn Boberg & Jon Swaine, "A GOP Donor Gave $2.5 Million for a Voter Fraud Investigation. Now He Wants His Money Back," The Washington Post (Feb. 15, 2021). | FRE 401/402: Irrelevant FRE 403: Unduly prejudicial FRE 901(a): Document is not authenticated | Sustained |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* | |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-181 | | Paul LeBlanc, "Washington Post: GOP Who Donated Millions for Voter Fraud Investigation Wants Money Back," CNN (Feb. 15, 2021). | FRE 401/402: Irrelevant | Sustained |
| | | | FRE 403: Unduly prejudicial | |
| | | | FRE 901(a): Document is not authenticated | |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-182 | | Rob Schofield, "Wealthy NC Conservative Funder Fred Eshelman Wants His Money Back," The Pulse (Feb. 15, 2021). | FRE 401/402: Irrelevant | Sustained |
| | | | FRE 403: Unduly prejudicial | |
| | | | FRE 901(a): Document is not authenticated | |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-183 | | Mark Darrough, "Deep Dive: PPD Founder Wants Back $2.5m Contribution After Nonprofit Failed to Prove Voter Fraud to Keep Trump in Office," Port City Daily (Feb. 28, 2021). | FRE 401/402: Irrelevant | Sustained |
| | | | FRE 403: Unduly prejudicial | |
| | | | FRE 901(a): Document is not authenticated | |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, | |

89

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|--------------------------|---|
| | | | 2019 Minute Order (D.E. 360) | |
| DX-184 | | Complaint, Eshelman v. True the Vote Inc., et al., No. 4:20-cv-04034 (S.D. Tex.) (Nov. 25, 2020). | FRE 401/402: Irrelevant | Sustained |
| | | | FRE 403: Unduly prejudicial | |
| | | | FRE 901(a): Document is not authenticated | |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-185 | | Complaint, Eshelman v. True the Vote Inc., et al., No. 2021V-0015155 (Judicial District Court of Texas for Austin County). | FRE 401/402: Irrelevant | Sustained |
| | | | FRE 403: Unduly prejudicial | |
| | | | FRE 901(a): Document is not authenticated | |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-186 | | Mamta Mayani, "Aravive's Chairman Fred Eshelman Invests $10M," Seeking Alpha (Jan. 4, 2022). | FRE 401/402: Irrelevant | Sustained |
| | | | FRE 602: Document not authenticated | |
| | | | FRE 801, 802 Inadmissible hearsay | |
| DX-187 (prev. admitted as DX-41) | | Email from K. Lee to F. Eshelman, S. Rudnick, J. Daly, R. Brand, K. Carney, and M. Seidel re: "Puma's latest," dated Jan. 8, 2016 (ESH00003540). | No Objection | |
| DX-188 | | Email from F. Eshelman to H. | FRE 401/402: Irrelevant | overruled |

90

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | Rice re: "PBYI," dated Sept. 24, 2015 (ESH00009378). | |
| DX-189 | | Email from F. Eshelman to J. Daly, S. Rudnick, S. Sake, and N. Bryce re: "PUMA," dated Oct. 27, 2015 (ESH00006469). | No Objection |
| DX-191 | | Email from F. Eshelman to J. Daly, S. Rudnick, and K. Lee re: "FW: board vs. Nominee experience," dated Nov. 24, 2015 (ESH00018285). | No Objection |
| DX-192 | | Email from F. Eshelman to R. Brand, K. Carney, J. Daly, S. Rudnick, and K. Lee re: "going down swinging," dated Dec. 18, 2015 (ESH00018641). | No Objection |
| DX-193 | PX-154 | Demand to inspect books and records from Dr. Eshelman to Puma, July 16, 2015. | No Objection |
| DX-194 | | Email from M. Johnson to M. Seidel re: "Puma," dated Aug. 28, 2015 (ECF No. 181-12). | No Objection |
| DX-195 | | Email chain between M. Ohanesian and A. Auerbach re: "Shareholder question," dated Aug. 27–Sept. 8, 2015 (PUMA000000350). | No Objection |
| DX-196 | | Email chain between M. Ohanesian and A. Auerbach re: "Eshelman's holdings," dated Nov. 11, 2015 (PUMA000001267). | FRE 401/402: Irrelevant |
| DX-197 | | Email chain between F. Eshelman, P. Gross, and Adage Capital employees re: "4:30 PM Proposed Call: Fred Eshelman / Phil Gross," dated Sept. 30–Oct. 12, 2015 | FRE 401/402: Irrelevant |

Overruled

Overruled

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---|---|---|---|---|
| | | (ADAGE-E0006). | | |
| DX-198 | | Email from P. Gross to A. Auerbach re: "We spoke to Eshelman's Lawyer," dated Nov. 5, 2015 (ADAGE-E0076). | FRE 401/402: Irrelevant | Overruled |
| DX-199 | | Email from K. Lee to J. Daly, F. Eshelman, and S. Rudnick with no subject line, dated Nov. 30, 2015 (ESH00002276). | No Objection | |
| DX-200 | | Email from M. Fahey to P. re: "FW: Puma White Vote - consent solicited," dated Dec. 1, 2015 (ADAGE-E0094). | No Objection | |
| DX-201 | | Email from F. Eshelman to P. Gross re: "PBYI," dated Dec. 11, 2015 (ADAGE-E0164). | FRE 401/402: Irrelevant | Overruled |
| DX-202 | | Email and attachment from F. Eshelman to P. Gross re: "FW: HERE YOU GO," dated Dec. 12, 2015 (ADAGE-E0176). | No Objection | |
| DX-203 | | Email from F. Eshelman to J. Daly, S. Rudnick, and K. Lee re: "PBYI status," dated Dec. 14, 2015 (ESH00002518). | FRE 401/402: Irrelevant | Overruled |
| DX-204 | | Email chain between P. Gross and F. Eshelman re: "FW: HERE YOU GO," dated Dec. 18, 2015 (P. Gross. Dep. Ex. 0035). | No Objection | |
| DX-205 | | Email chain between S. Rudnick and K. Lee re: "PBYI," dated Dec. 26, 2015 (LEE00000091). | FRE 401/402: Irrelevant. | Overruled |
| DX-206 | | Email from R. Shipman to A. Auerbach and M. Ohanesian re: "Eshelman Morass...," dated Sept. 24, 2017 (PUMA22_00002194). | FRE 401/402: Irrelevant<br>FRE 801/802: Inadmissible hearsay | Sustained |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| DX-207 | PX-183 | Email from A. Auerbach to B. Wolff, re: "Thanks," dated Jan. 8, 2016 (PUMA053301). | No Objection |
| DX-208 | PX-197 | "PPD Appoints New CEO; Eshelman to Serve as Executive Director of Board," CenterWatch (May 20, 2009). | No Objection |
| DX-209 | PX-196 | Wayne Faulkner, "David Grange Named CEO of PPD; Eshelman Named Executive Chairman," StarNews (May 19, 2009). | No Objection |
| DX-210 | PX-195 | Bonnie Eksten, "CEO Shift Helps PPD Globalize," Wilmingtonbiz (May 20, 2009). | No Objection |
| DX-211 | PX-214 | Email from B. Matone to M. Ohanesian re: "PPDI Sell-Side Notes," dated Nov. 2, 2015 (PUMA00004792). | No Objection |
| DX-212 | PX-215 | Email from B. Matone to M. Ohanesian re: "PPDI Sell-Side Notes," dated Nov. 2, 2015 (PUMA00001268). | No Objection |
| DX-213 | PX-216 | Email from B. Matone to M. Ohanesian re: "PPDI Sell-Side Notes," dated Nov. 2, 2015 (PUMA00000344). | No Objection |
| DX-214 | | Email and attachments from R. Flamm to M. Ohanesian re: "Articles for the week," dated Nov. 20, 2015 (PUMA00000356). | No Objection |
| DX-215 | | Email from B. Prunty to C. Eyler and M. Ohanesian re: "Current Russo Partners Invoice," dated Dec. 4, 2015 (PUMA00000313). | No Objection |
| DX-216 | PX-181 | Email chain between A. Auerbach, B. Wolff, and I. Farman, dated | No Objection |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| | | Dec. 17–30, 2015 (PUMA00053143). | |
| DX-217 | | FDA Press Release, FDA Approves New Treatment to Reduce the Risk of Breast Cancer Returning (July 17, 2017). | FRE 901(a): Exhibit not authenticated FRE 801/802: Inadmissible hearsay FRE 401/402: Inconsequential and irrelevant This document was excluded by the Court during its March 8, 2019 Hearing (Tr. at 54:1-5, excluded as DX-17) |
| DX-219 | PX-002 | PPD-Aventis Contract (Nov. 1, 2001). | No Objection |
| DX-220 | PX-292 | PPD Contract with Anne Kirkman Campbell (Nov. 5, 2001) (PPD-0103-0110). | No Objection |
| DX-221 | PX-004 | Email from J. Lasley to N. Grethe re: "Teleconference to discuss findings from monitoring Kirkman-Campbell," dated Feb. 27, 2002. | No Objection |
| DX-222 | | PPD Code of Conduct (July 1999) (PPD-0111-174). | No Objection |
| DX-223 | PX-006 | Aventis and PPD Meeting Minutes (Mar. 6, 2002) (West Ex. 0006). | No Objection |
| DX-224 | PX-001 | Indictment of Dr. Maria Kirkman Campbell, No. CR-03-CO-0437-M (N.D. Al.) (Aug. 29, 2003). | No Objection |
| DX-225 (prev. admitted as DX-5) | | Congressional Testimony of Ann Marie Cisneros, "The Adequacy of FDA to Assure the Safety of the Nation's Drug Supply" (May. 22, 2007). | No Objection |
| DX-226 | PX-015 | Congressional Testimony of Dr. | No Objection |

Sustained

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | Fred Eshelman and Ann Marie Cisneros, "Ketek Clinical Study Fraud" (Feb. 12, 2008). | |
| DX-227 | | YouTube Video 1 of 3 of Dr. Eshelman's Congressional Testimony on Feb. 12, 2008. | No Objection |
| DX-228 | | YouTube Video 2 of 3 of Dr. Eshelman's Congressional Testimony on Feb. 12, 2008. | No Objection |
| DX-229 | | YouTube Video 3 of 3 showing Dr. Eshelman's Congressional Testimony on Feb. 12, 2008. | No Objection |
| DX-230 | PX-294 | PPD Special Board Meeting Materials (May 15, 2009) (PPD-0212-0252). | No Objection |
| DX-231 | | Jim Edwards, "FDA Approved an Antibiotic Based on Bogus Data–But the Courts Don't Care," CBS News Money Watch (Feb. 18, 2011). | FRE 801/802: Inadmissible hearsay<br><br>FRE 602: Lacks personal knowledge; lacks foundation<br><br>FRE 702: Improper expert opinion<br><br>FRE 401/402: Inconsequential and irrelevant<br><br>FRE 403: Unfairly prejudicial<br><br>FRE 901(a): Exhibit not authenticated<br><br>This document was excluded when the Court granted Pl.'s Motions *in Limine* Nos. 4 and 5 (D.E. 326, D.E. 331); March 1, 2019 Minute Order (D.E. 360) |
| DX-232 | | Stock Price History Chart from Yahoo Finance for the period of June 1, 2015, to Sept. 20, 2022. | No Objection |

Sustained

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| DX-~~234~~ 233 | | Puma Biotechnology, Inc., SEC Form 10-Q, filed [X]. | No Objection |
| DX-235 | | Breakfast Club Power 105.1 FM, "Pro-Trump Donor Who Gave 2.5 Million Towards Election Fraud Wants His Money Back," YouTube, https://www.youtube.com/watch?v=iDoYXheKOHk. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** |
| | | | FRE 401/402: Irrelevant |
| | | | FRE 403: Unduly prejudicial |
| | | | FRE 801/802: Inadmissible hearsay |
| | | | FRE 901(a): Video is not authenticated |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) |
| | | | FRE 106: The recording of the video described as DX-235 was never provided to counsel for Plaintiff |
| DX-236 | | David Pakman Show, "Guy Who Gave $2.5 Million to Trump Voter Fraud Scam Wants Money Back," YouTube, https://www.youtube.com/watch?v=DBNgJ4ZStpM. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** |
| | | | FRE 401/402: Irrelevant |
| | | | FRE 403: Unduly prejudicial |
| | | | FRE 801/802: Inadmissible hearsay |

*(handwritten annotation: "Sustained" next to DX-235 FRE 801/802 objection)*

*(handwritten annotation: "Sustained" next to DX-236 objection)*

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| | | | FRE 901(a): Video is not authenticated |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) |
| | | | FRE 106: The recording of the video described as DX-236 was never provided to counsel for Plaintiff |
| DX-237 | | The Ring of Fire, "Mega Donor Is Suing Republican Grifters For Lying About Donations," YouTube, https://www.youtube.com/watch?v=zJZMsLLAO2s. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** |
| | | | FRE 401/402: Irrelevant |
| | | | FRE 403: Unduly prejudicial |
| | | | FRE 801/802: Inadmissible hearsay |
| | | | FRE 901(a): Video is not authenticated |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) |
| | | | FRE 106: The recording of the video described as DX-237 was never provided to counsel for Plaintiff |

Sustained

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| DX-238 | | Secular Talk, Republican Who Gave MILLIONS To Investigate Voter Fraud Wants His Money Back," YouTube, https://www.youtube.com/watch?v=vJBZ1HWxG6g. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** |
| | | | FRE 401/402: Irrelevant |
| | | | FRE 403: Unduly prejudicial |
| | | | FRE 801/802: Inadmissible hearsay |
| | | | FRE 901(a): Video is not authenticated    _Sustained_ |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) |
| | | | FRE 106: The recording of the video described as DX-238 was never provided to counsel for Plaintiff |
| DX-239 | | Lawful Masses with Leonard French, "True The Vote" SUED For Failed Voter Fraud Efforts," YouTube, https://www.youtube.com/watch?v=CvqSfc_qGa8. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022**    _Sustained_ |
| | | | FRE 401/402: Irrelevant |
| | | | FRE 403: Unduly prejudicial |
| | | | FRE 801/802: Inadmissible hearsay |
| | | | FRE 901(a): Video is not authenticated |

98

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) |
| | | | FRE 106: The recording of the video described as DX-239 was never provided to counsel for Plaintiff |
| DX-240 | | Lisa Cabrera, "Trump Supporter Frederic Eshelman Wants His 2.5 Million Dollars Back," YouTube, https://www.youtube.com/watch?v=y6yR3rp7mzY. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** |
| | | | FRE 401/402: Irrelevant |
| | | | FRE 403: Unduly prejudicial |
| | | | FRE 801/802: Inadmissible hearsay |
| | | | FRE 901(a): Video is not authenticated |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) |
| | | | FRE 106: The recording of the video described as DX-240 was never provided to counsel for Plaintiff |
| DX-241 | | The Progressive Voice, "Trump Donor SUING Pro Trump Group After Donating $2 Mil To | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set |

*Sustained* (handwritten, right margin, next to DX-240)

*Sustained* (handwritten, right margin, next to DX-241)

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
| | | Overturn Election, Says It Was A Scam!," YouTube, https://www.youtube.com/watch?v=I0KQ-A32RT4. | in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** |
| | | | FRE 401/402: Irrelevant |
| | | | FRE 403: Unduly prejudicial |
| | | | FRE 801/802: Inadmissible hearsay |
| | | | FRE 901(a): Video is not authenticated |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) |
| | | | FRE 106: The recording of the video described as DX-241 was never provided to counsel for Plaintiff |
| DX-242 | | Screen Capture of Google Search Results (Harrison Ex. 0006). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** |
| | | | FRE 401/402: Irrelevant |
| | | | FRE 403: Unduly prejudicial, waste of time |
| | | | FRE 602: Lacks foundation |
| | | | FRE 901(a): Document is not authenticated |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was |

Justained

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| DX-243 | | Screen Capture of SEC Search Results (Harrison Ex. 0013). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | Sustained |
| | | | FRE 401/402: Irrelevant | |
| | | | FRE 403: Waste of time | |
| | | | FRE 602: Lacks foundation | |
| | | | FRE 901(a): Document is not authenticated | |
| DX-244 | | Farron Balanced, Donor Sues Pro-Trump Group For Failing To Prove Voter Fraud Happened," YouTube, https://www.youtube.com/watch?v=EQ3Rokg4DdM. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | |
| | | | FRE 401/402: Irrelevant | |
| | | | FRE 403: Unduly prejudicial | Sustained |
| | | | FRE 801/802: Inadmissible hearsay | |
| | | | FRE 901(a): Video is not authenticated | |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| | | | FRE 106: The recording of the | |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | video described as DX-244 was never provided to counsel for Plaintiff | |
| DX-245 | | Queen City News, "NC GOP donor sues to get his $2.5M for voter fraud investigation back," YouTube, https://www.youtube.com/watch?v=02uvIYs4K3o. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | |
| | | | FRE 401/402: Irrelevant | |
| | | | FRE 403: Unduly prejudicial | |
| | | | FRE 801/802: Inadmissible hearsay | Sustained |
| | | | FRE 901(a): Video is not authenticated | |
| | | | This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| | | | FRE 106: The recording of the video described as DX-245 was never provided to counsel for Plaintiff | |
| DX-246 | This Exhibit appears at Tab-5 of PX-212. | Schedule 14A by Puma Biotechnology, filed Nov. 2, 2015. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | Sustained |
| DX-247 | This Exhibit appears at Tab-8 of PX-212. | Schedule 14A by F. Eshelman filed Nov. 17, 2015 | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case | Sustained |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|--------------------|--------------------------|---|
| | | | Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | |
| DX-248 | This Exhibit appears at Tab-15 of PX-212. | Schedule 14A by F. Eshelman filed Dec. 7, 2015 | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | Sustained |
| DX-249 | This Exhibit appears at Tab-20 of PX-212. | Schedule 14A by F. Eshelman, filed Dec. 14, 2015. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | Sustained |
| DX-250 | | Email from M. Ohanesian to A. Auerbach re: "Any idea why yesterday and today's…," dated Jan. 5, 2016. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** FRE 401/402: Irrelevant FRE 801/802: Inadmissible hearsay FRE 602: Lacks foundation | Sustained |
| DX-251 | | Email from A. Auerbach to M. Ohanesian re: "Received a blue consent card…," Dec. 15, 2015. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** FRE 401/402: Irrelevant FRE 801/802: Inadmissible hearsay | Sustained |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | FRE 602: Lacks foundation | |
| DX-252 | This Exhibit appears at Tab-24 of PX-212. | Schedule 14A by Puma Biotechnology, filed Jan. 8, 2016. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | *Sustained* |
| DX-253 | | Screen Capture of Public Databases (e.g., search results for "Fred Eshelman" Twitter search). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | |
| | | | FRE 401/402: Irrelevant | |
| | | | FRE 403: Unduly prejudicial, waste of time—the document contains vulgar references to Dr. Eshelman being a "Shitler [sic] Supporter" | *Sustained* |
| | | | FRE 602: Lacks foundation | |
| | | | FRE 901(a): Document is not authenticated | |
| | | | FRE 106: The document is incomplete and contains only a subset of search results | |
| | | | The document refers to Dr. Eshelman as a "Pro Trump Donor." This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | |
| | | | FRE 801/802: Inadmissible | |

Case 7:16-cv-00018-D   Document 555   Filed 11/02/22   Page 104 of 137

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | hearsay | |
| | | | FRE 1001/1002: Document is not being produced in its original format | |
| DX-254 | | Screen Capture of Public Databases (e.g., "Fred Eshelman" Twitter profile). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | |
| | | | FRE 401, 402, and 403: Irrelevant, waste of time, unduly prejudicial, and likely to cause confusion as this Twitter profile does not belong to Dr. Eshelman Public records indicate this account belongs to an unrelated third party: Frederick M. Eshelman of Mechanicsburg, Pennsylvania. | Sustained |
| | | | FRE 602: Lacks foundation | |
| | | | FRE 901(a): Document is not authenticated | |
| | | | FRE 801/802: Inadmissible hearsay | |
| | | | FRE 1001/1002: Document is not being produced in its original format | |
| DX-255 | | Delaware 220 Complaint filed by F. Eshelman, Nov. 10, 2015. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 21, 2022** | Sustained |
| DX-256 | | "Alert: Data Not Exactly Clean at First Sight But Is Actually Robust | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not | Sustained |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---|---|---|---|
|  |  | in HER2+ Women – ER+ Receptor Also a Win," Citi (May 13, 2015). | disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** |
|  |  |  | FRE 401/402: Irrelevant |
|  |  |  | FRE 403: Waste of time |
|  |  |  | FRE 901(a): Document is not authenticated |
|  |  |  | FRE 602: Lacks foundation |
|  |  |  | FRE 801/802: Inadmissible hearsay |
| DX-257 |  | "Even the Skeptics May Get on Board: Key Takeaways + Transcript from Our Recent ExteNET Physician Call," Citi (July 28, 2014). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** *Sustained* |
|  |  |  | FRE 401/402: Irrelevant |
|  |  |  | FRE 403: Waste of time |
|  |  |  | FRE 901(a): Document is not authenticated |
|  |  |  | FRE 602: Lacks foundation |
|  |  |  | FRE 801/802: Inadmissible hearsay |
| DX-258 |  | "A Randomized Phase III Study Evaluating Adjuvant Bevacizumab Added to Tratuzumab/ Chemotherapy for Treatment of HER2+ Early Breast Cancer," BETH. | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** *Sustained* |
|  |  |  | FRE 401/402: Irrelevant |
|  |  |  | FRE 403: Waste of time |
|  |  |  | FRE 901(a): Document is not authenticated |

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---------|-----------|---------------------|---------------------------|---|
| | | | FRE 602: Lacks foundation | |
| | | | FRE 801/802: Inadmissible hearsay | |
| DX-259 | | "Neratinib After Adjuvant Chemotherapy and Tastuzumab in HER2-Positive Early Breast Cancer: Primary Analysis at 2 Years of a Phase 3, Randomized, Placebo-Controlled Trial (ExteNET)," (2015 ASCO Annual Meeting). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** | Sustained |
| | | | FRE 401/402: Irrelevant | |
| | | | FRE 403: Waste of time | |
| | | | FRE 901(a): Document is not authenticated | |
| | | | FRE 602: Lacks foundation | |
| | | | FRE 801/802: Inadmissible hearsay | |
| DX-260 | | "Edited Transcript: PBYI – Puma Biotechnology Inc. Amendment to Neratinib Agreement with Pfizer," Thomson Reuters (July 22, 2014). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** | Sustained |
| | | | FRE 401/402: Irrelevant | |
| | | | FRE 403: Waste of time | |
| | | | FRE 801/802: Inadmissible hearsay | |
| | | | FRE 901(a): Document is not authenticated | |
| DX-261 | | "Puma Biotechnology Announces Positive Top Line Results from Phase III PB272 Trial in Adjuvant Breast Cancer (ExteNET Trial), Puma Biotechnology, (July 22, 2014). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** | Sustained |

107

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections | |
|---|---|---|---|---|
| DX-262 | | Kaplan-Meier Plot of Disease-Free Survival (All Data with FDA Censoring Rule) in ITT Population (PUMA00539366). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** FRE 401/402: Irrelevant FRE 403: Waste of time | Sustained |
| DX-263 | | *Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-0865-AG (JCGx) (C.D. Cal), Notice of Settlement (Oct. 29, 2021). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** | Sustained |
| DX-264 | | *Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-0865-AG (JCGx) (C.D. Cal), Judgment Pursuant to Federal Rule of Civil Procedure 54 (Oct. 29, 2021). | No Objection | |
| DX-265 | | *Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-0865 AG (JCGx) (C.D. Cal.), Order Granting Joint Request Regarding October 29, 2021 and November 2, 2021 Orders (Nov. 9, 2021). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** | Sustained |
| DX-266 | | *Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-0865 AG (JCGx) (C.D. Cal.), Settlement Agreement (Dec. 13, 2021). | No Objection | |
| DX-267 | | *Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-0865 AG (JCGx) (C.D. Cal.), Final Judgment and Order of Dismissal With Prejudice (Aug. 3, 2022). | No Objection | |

108

| Exhibit | Pl.'s Ex. | Title or Description | Dr. Eshelman's Objections |
|---------|-----------|---------------------|---------------------------|
| DX-268 | | *Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-0865 AG (JCGx) (C.D. Cal.), Joint Request Seeking Clarification of October 29, 2021 & November 2, 2021 Orders (Nov. 5, 2021). | Local Rule 16(b), FRCP 16, FRCP 26: Exhibit was not disclosed by the deadlines set in the Court's Case Management Order (D.E. 488) Defendant did not disclose this Exhibit until **October 24, 2022** |

*Sustained* (handwritten)

## IV. DESIGNATION OF PLEADINGS AND DISCOVERY MATERIALS.

### A. Dr. Eshelman's Designations of Pleadings and Discovery Materials.[10]

The deposition designations listed below are a subset of deposition designations for these witnesses that were admitted and played for the jury during the first trial. See (D.E. 375) Deposition Testimony of Special Agent Robert West and (D.E. 376) Deposition Testimony of Mariann Ohanesian.

| Document | Portion | Objections | Reason |
|----------|---------|------------|--------|
| Deposition of Robert West | 7:10–12 | FRE 401, 403, and 602 | N/A |
| Deposition of Robert West | 12:10–11 | | N/A |
| Deposition of Robert West | 12:20–25 | | N/A |
| Deposition of Robert West | 20:17–21:10 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about |
| Deposition of Robert West | 22:19–24 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about |

*overruled* (handwritten, beside 20:17–21:10 row)

*overruled* (handwritten, beside 22:19–24 row)

---

[10] Puma has indicated that it plans to call Ms. Ohanesian live at trial.

| | | | | |
|---|---|---|---|---|
| Deposition of Robert West | 33:5–10 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about | overruled |
| Deposition of Robert West | 48:7–14 | | N/A | |
| Deposition of Robert West | 55:23–56:21 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about; the witness lacks personal knowledge regarding the subject of the question | overruled |
| Deposition of Robert West | 68:4–69:18 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about; the witness lacks personal knowledge regarding the subject of the question. | overruled |
| Deposition of Robert West | 70:5–10 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about | overruled |
| Deposition of Robert West | 185:23–187:3 | FRE 602 & 901  FRE 602 & 701 | Plaintiff does not lay foundation for the exhibit the witness is testifying about; the witness lacks personal knowledge regarding the subject of the question; the question requires the witness to speculate | overruled |
| Deposition of Robert West | 213:9–22 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about | overruled |
| 30(b)(6) Deposition of Mariann Ohanesian | 24:17–23 | No objection | N/A | |
| 30(b)(6) Deposition of | 27:4–10 | No objection | N/A | |

110

| | | | |
|---|---|---|---|
| Mariann Ohanesian | | | |
| 30(b)(6) Deposition of Mariann Ohanesian | 28:12–17 | No objection | N/A |
| 30(b)(6) Deposition of Mariann Ohanesian | 29:16–19 | No objection | N/A |
| 30(b)(6) Deposition of Mariann Ohanesian | 30:6–17 | No objection | N/A |
| 30(b)(6) Deposition of Mariann Ohanesian | 31:1–32:1 | No objection | N/A |
| 30(b)(6) Deposition of Mariann Ohanesian | 34:25–35:4 | No objection | N/A |
| 30(b)(6) Deposition of Mariann Ohanesian | 35:19–36:21 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about — overruled |
| 30(b)(6) Deposition of Mariann Ohanesian | 44:18–45:16 | No objection | N/A |
| 30(b)(6) Deposition of Mariann Ohanesian | 46:3–23 | No objection | N/A |
| 30(b)(6) Deposition of Mariann Ohanesian | 47:12–16 | FRE 602 & 901 | Plaintiff does not lay foundation for the exhibit the witness is testifying about — overruled |
| 30(b)(6) Deposition of Mariann Ohanesian | 50:12–51:20 | No objection | N/A |
| 30(b)(6) Deposition of Mariann Ohanesian | 53:10–55:25 | No objection | N/A |
| Deposition of Mariann Ohanesian | 11:9–11 | No objection | N/A |
| Deposition of Mariann Ohanesian | 21:1–4 | No objection | N/A |
| Deposition of Mariann Ohanesian | 164:15–165:4 | FRE 602<br><br>FRE 602 & 701<br><br>FRE 403 & 611<br><br>FRE 403 | The witness lacks personal knowledge regarding the subject of the question; the question requires the witness to speculate; the line of questioning is vague and ambiguous; the witness is asked the same question multiple times — overruled |
| Deposition of Mariann Ohanesian | 165:15–166:10 | FRE 602 & 901 | Plaintiff does not lay foundation for the — overruled |

111

| | | | exhibit the witness is testifying about; the question requires the witness to speculate; the witness lacks personal knowledge regarding the subject of the question |
|---|---|---|---|
| | | FRE 602 & 701 FRE 602 | |
| Deposition of Mariann Ohanesian | 174:23–175:3 | No objection | N/A |
| Deposition of Mariann Ohanesian | 207:2–24 | No objection | N/A |
| Puma's Amended Supp. Resps. and Objs. to Pl.'s First, Third, and Fourth Set of Irogs (Nos. 3, 8, and 9) | | No objection | N/A |

## *Puma's Counter-Designations of Pleadings and Discovery Materials*

| Document | Portion | Objections |
|---|---|---|
| Deposition of Robert West | 57:14–58:15 | |
| Deposition of Robert West | 69:13–70:4 | |
| Deposition of Robert West | 79:25–80:5 | |
| Deposition of Robert West | 80:21–81:14 | |
| Deposition of Robert West | 102:17–102:20 | |
| Deposition of Robert West | 103:6–104:2 | |
| Deposition of Robert West | 104:9–104:15 | |
| Deposition of Robert West | 174:12–174:14 | |
| Deposition of Robert West | 182:4–182:23 | |
| Deposition of Robert West | 214:3–213:20 | |

112

| 30(b)(6) Deposition of Mariann Ohanesian | 29:20–30:5 | |
| 30(b)(6) Deposition of Mariann Ohanesian | 30:18–30:25 | |
| 30(b)(6) Deposition of Mariann Ohanesian | 32:2–32:6 | |
| 30(b)(6) Deposition of Mariann Ohanesian | 33:4–34:2 | |
| 30(b)(6) Deposition of Mariann Ohanesian | 34:5–34:13 | |
| 30(b)(6) Deposition of Mariann Ohanesian | 34:16–34:22 | |
| 30(b)(6) Deposition of Mariann Ohanesian | 52:1–52:11 | |
| 30(b)(6) Deposition of Mariann Ohanesian | 53:1–53:5 | |
| Deposition of Mariann Ohanesian | 164:7–164:14 | |

## B. Puma's Designations of Pleadings and Discovery Materials.[11]

Dr. Eshelman objects to Puma using deposition or trial testimony without satisfying the

requirements of Federal Rule of Civil Procedure 32(a). At minimum, Puma should not be permitted

to present deposition or trial testimony from witnesses who appear live.

| Document | Portion | Objections | |
|----------|---------|------------|---|
| Deposition of Ashley Miller | 6:4 - 6:9 | | |
| Deposition of Ashley Miller | 6:16 - 7:14 | | |
| Deposition of Ashley Miller | 10:6 - 10:22 | FRE 401/402: Irrelevant | overruled |
| Deposition of Ashley Miller | 11:7 - 11:10 | FRE 401/402: Irrelevant | overruled |
| Deposition of Ashley Miller | 14:6 - 14:25 | FRE 401/402: Irrelevant | overruled |
| Deposition of Ashley Miller | 15:3 - 15:8 | FRE 401/402: Irrelevant | overruled |
| Deposition of Ashley Miller | 16:10 - 16:20 | | |
| Deposition of Ashley Miller | 24:16 - 26:4 | FRE 401/402: Irrelevant | overruled |
| Deposition of Ashley Miller | 27:14 – 28:16 | FRE 401/402: Irrelevant | overruled |
| Deposition of Ashley Miller | 29:25 - 30:5 | | |
| Deposition of Ashley Miller | 30:11 - 30:16 | | |
| Deposition of Ashley Miller | 30:25 - 31:16 | | |
| Deposition of Ashley Miller | 31:22 - 32:11 | | |
| Deposition of Ashley Miller | 32:13 - 32:15 | | |

[11] Plaintiff anticipates that Mr. Lee and Mr. Hartman will testify live at trial.

| Deposition of Ashley Miller | 32:20 - 33:20 | | |
|---|---|---|---|
| Deposition of Ashley Miller | 34:2 - 35:6 | | |
| Deposition of Kimberly Batten | 5:25 - 6:4 | | |
| Deposition of Kimberly Batten | 8:6 - 9:20 | | |
| Deposition of Kimberly Batten | 12:5 - 13:2 | | |
| Deposition of Kimberly Batten | 19:6 - 19:11 | | |
| Deposition of Kimberly Batten | 19:25 - 20:20 | FRE 401/402: Irrelevant | *sustained* |
| Deposition of Kimberly Batten | 23:11 - 24:2 | FRE 401/402: Irrelevant | *sustained* |
| Deposition of Kimberly Batten | 24:10 - 26:18 | FRE 401/402: Irrelevant FRE 403: Unduly prejudicial FRE 901(a): Document is not authenticated This category of evidence concerning Dr. Eshelman's political affiliations and political contributions was excluded by the Court when it granted Pl.'s Motion *in Limine* No. 6 (D.E. 333); March 1, 2019 Minute Order (D.E. 360) | *overruled as to 24:10 to 25:25; sustained as to page 26* |
| Deposition of Kimberly Batten | 28:16 - 28:18 | | |
| Deposition of Kimberly Batten | 39:16 - 40:8 | | |
| Deposition of Kimberly Batten | 40:18 - 41:14 | FRE 602: Lacks foundation | *overruled* |
| Deposition of Kimberly Batten | 42:12 - 42:25 | | |
| Deposition of Kimberly Batten | 43:2 - 43:6 | | |
| Deposition of Kimberly Batten | 44:6 - 44:20 | | |
| Deposition of April Eshelman | 6:15 - 6:20 | | |
| Deposition of April Eshelman | 8:5 – 10:7 | | |
| Deposition of April Eshelman | 15:7 - 15:13 | | |
| Deposition of April Eshelman | 16:5 - 16:8 | | |
| Deposition of April Eshelman | 16:15 - 16:22 | | |
| Deposition of April Eshelman | 17:19 - 17:23 | | |
| Deposition of April Eshelman | 18:14 - 18:21 | | |
| Deposition of April Eshelman | 20:14 - 20:21 | | |
| Deposition of April Eshelman | 24:14 - 24:25 | | |
| Deposition of April Eshelman | 25:2 - 25:10 | | |
| Deposition of April Eshelman | 25:19 - 26:2 | | |
| Deposition of April Eshelman | 27:13 - 28:12 | | |
| Deposition of April Eshelman | 30:4 - 30:16 | | |
| Deposition of April Eshelman | 30:25 - 31:11 | | |
| Deposition of April Eshelman | 34:17 - 36:20 | | |
| Deposition of April Eshelman | 37:9 - 38:7 | | |
| Deposition of April Eshelman | 39:4 - 39:13 | | |
| Deposition of April Eshelman | 39:23 - 40:23 | | |
| Deposition of April Eshelman | 43:15 - 44:20 | FRE 602: Lacks foundation | *sustained* |
| Deposition of April Eshelman | 44:24 - 45:2 | FRE 602: Lacks foundation | *overruled* |

Case 7:16-cv-00018-D   Document 555   Filed 11/02/22   Page 114 of 137

| Deposition | Lines | Objection | Ruling (handwritten) |
|---|---|---|---|
| Deposition of April Eshelman | 45:13 - 45:23 | | |
| Deposition of April Eshelman | 48:12 - 48:15 | | |
| Deposition of April Eshelman | 51:8 - 51:17 | | |
| Deposition of April Eshelman | 56:10 - 56:13 | | |
| Deposition of April Eshelman | 65:4 - 66:23 | FRE 401/402: Irrelevant | sustain as to 65:4 to 66:6; overruled as to 66:7 to 66:23 |
| Deposition of April Eshelman | 67:3 - 67:21 | | |
| Deposition of April Eshelman | 68:11 - 68:23 | | |
| Deposition of April Eshelman | 69:5 - 69:11 | | |
| Deposition of April Eshelman | 71:15 - 71:25 | | |
| Deposition of April Eshelman | 74:11 - 74:17 | | |
| Deposition of April Eshelman | 75:22 - 76:17 | | |
| Deposition of James Daly | 6:15 - 6:17 | | |
| Deposition of James Daly | 18:10 - 18:17 | | |
| Deposition of James Daly | 19:7 - 20:7 | | |
| Deposition of James Daly | 24:2 - 25:9 | | |
| Deposition of James Daly | 42:3 - 42:23 | FRE 401/402: Irrelevant | overruled |
| Deposition of James Daly | 54:7 - 54:22 | | |
| Deposition of Kenneth Lee, Jr. | 7:21 - 7:24 | | |
| Deposition of Kenneth Lee, Jr. | 8:8 - 8:12 | | |
| Deposition of Kenneth Lee, Jr. | 8:25 - 9:21 | | |
| Deposition of Kenneth Lee, Jr. | 10:6 - 10:23 | | |
| Deposition of Kenneth Lee, Jr. | 11:7 - 11:22 | | |
| Deposition of Kenneth Lee, Jr. | 12:14 - 12:25 | | |
| Deposition of Kenneth Lee, Jr. | 16:13 - 16:19 | FRE 401/402: Irrelevant  FRE 602: Lacks foundation | overruled |
| Deposition of Kenneth Lee, Jr. | 17:8 - 17:20 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 18:6 - 19:2 | | |
| Deposition of Kenneth Lee, Jr. | 19:9 - 19:22 | | |
| Deposition of Kenneth Lee, Jr. | 20:9 - 20:13 | FRE 401/402: Irrelevant  FRE 602: Lacks foundation | overruled |
| Deposition of Kenneth Lee, Jr. | 21:11 – 22:18 | | |
| Deposition of Kenneth Lee, Jr. | 22:21 – 23:18 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 24:2 - 24:24 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 25:4 - 25:7 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 27:13 – 28:12 | | |
| Deposition of Kenneth Lee, Jr. | 29:20 – 30:3 | | |
| Deposition of Kenneth Lee, Jr. | 30:17 – 33:4 | | |
| Deposition of Kenneth Lee, Jr. | 33:18 – 34:11 | | |
| Deposition of Kenneth Lee, Jr. | 36:4 - 36:24 | | |
| Deposition of Kenneth Lee, Jr. | 38:10 - 39:6 | | |
| Deposition of Kenneth Lee, Jr. | 39:16 – 40:7 | | |
| Deposition of Kenneth Lee, Jr. | 45:14 - 45:24 | | |
| Deposition of Kenneth Lee, Jr. | 46:9 - 46:15 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 51:25 – 52:5 | | |
| Deposition of Kenneth Lee, Jr. | 53:10 - 53:13 | | |

115

| | | | |
|---|---|---|---|
| Deposition of Kenneth Lee, Jr. | 53:20 - 53:25 | | |
| Deposition of Kenneth Lee, Jr. | 54:17 - 55:13 | | |
| Deposition of Kenneth Lee, Jr. | 56:12 - 56:13 | | |
| Deposition of Kenneth Lee, Jr. | 58:2 - 58:6 | | |
| Deposition of Kenneth Lee, Jr. | 63:10 - 64:18 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 65:7 - 65:20 | | |
| Deposition of Kenneth Lee, Jr. | 66:5 - 66:9 | | |
| Deposition of Kenneth Lee, Jr. | 67:16 – 68:2 | | |
| Deposition of Kenneth Lee, Jr. | 69:4 - 69:7 | | |
| Deposition of Kenneth Lee, Jr. | 69:24 - 70:18 | | |
| Deposition of Kenneth Lee, Jr. | 71:15 - 71:24 | | |
| Deposition of Kenneth Lee, Jr. | 71:3 - 71:12  11 | FRE 401/402: Irrelevant  FRE 602: Lacks foundation | overruled |
| Deposition of Kenneth Lee, Jr. | 72:5 - 72:25  73:4 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 73:2 - 73:4 | | |
| Deposition of Kenneth Lee, Jr. | 73:13 - 73:24 | | |
| Deposition of Kenneth Lee, Jr. | 74:4 - 74:13 | | |
| Deposition of Kenneth Lee, Jr. | 75:2 – 76:3 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 76:11 – 77:8 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 78:9 – 79:25 | | |
| Deposition of Kenneth Lee, Jr. | 80:23 - 81:19 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 82:11 - 82:25 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 83:4 – 84:10 | | |
| Deposition of Kenneth Lee, Jr. | 87:6 – 89:3 | | |
| Deposition of Kenneth Lee, Jr. | 89:11 - 89:15 | FRE 401/402: Irrelevant  FRE 602: Lacks foundation | sustained |
| Deposition of Kenneth Lee, Jr. | 92:7 - 92:8 | | |
| Deposition of Kenneth Lee, Jr. | 95:12 – 96:6 | | |
| Deposition of Kenneth Lee, Jr. | 96:19 – 97:13 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 101:10 - 101:20 | | |
| Deposition of Kenneth Lee, Jr. | 102:7 - 102:12 | | |
| Deposition of Kenneth Lee, Jr. | 102:20 - 102:24 | | |
| Deposition of Kenneth Lee, Jr. | 103:10 - 103:23 | FRE 602: Lacks foundation | overruled |
| Deposition of Kenneth Lee, Jr. | 104:6 – 105:16 | | |
| Deposition of Kenneth Lee, Jr. | 105:23 – 106:24 | | |
| Deposition of Kenneth Lee, Jr. | 107:23 – 109:13 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 112:10 - 112:16 | | |
| Deposition of Kenneth Lee, Jr. | 113:11 – 116:7 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 121:25 - 123:9 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 128:4 - 128:7 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 130:15 - 130:20 | | |
| Deposition of Kenneth Lee, Jr. | 131:5 – 132:21 | | |
| Deposition of Kenneth Lee, Jr. | 133:3 – 134:7 | | |
| Deposition of Kenneth Lee, Jr. | 138:15 – 139:23 | | |
| Deposition of Kenneth Lee, Jr. | 140:6 - 140:15 | | |

116

| | | | |
|---|---|---|---|
| Deposition of Kenneth Lee, Jr. | 141:5 - 141:8 | | |
| Deposition of Kenneth Lee, Jr. | 141:16 - 141:25 | | |
| Deposition of Kenneth Lee, Jr. | 149:3 - 149:10 | FRE 602: Lacks foundation | sustained |
| Deposition of Kenneth Lee, Jr. | 149:24 - 149:25 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 150:2 - 150:18 | FRE 602: Lacks foundation | sustained |
| Deposition of Kenneth Lee, Jr. | 151:2 - 151:6 | | |
| Deposition of Kenneth Lee, Jr. | 151:22 - 152:7 | | |
| Deposition of Kenneth Lee, Jr. | 154:22 − 157:16 | | |
| Deposition of Kenneth Lee, Jr. | 157:21 − 158:2 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 158:13 − 161:11 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 163:6 − 164:12 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 165:11 - 165:25 | | |
| Deposition of Kenneth Lee, Jr. | 168:13 - 168:21 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 169:2 - 173:17 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 174:11 - 174:21 | | |
| Deposition of Kenneth Lee, Jr. | 176:21 - 176:24 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 182:16 - 183:15 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 183:23 - 185:7 | | |
| Deposition of Kenneth Lee, Jr. | 185:17 - 185:25 | | |
| Deposition of Kenneth Lee, Jr. | 186:2 - 186:25 | | |
| Deposition of Kenneth Lee, Jr. | 189:13 - 190:9 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 190:14 - 190:20 | FRE 401/402: Irrelevant | overruled |
| Deposition of Kenneth Lee, Jr. | 193:22 - 194:23 | FRE 401/402: Irrelevant | sustained |
| Deposition of Kenneth Lee, Jr. | 195:4 − 195:10 | | |
| Deposition of Kenneth Lee, Jr. | 196:2 - 196:6 | | |
| Deposition of Kenneth Lee, Jr. | 196:11 − 197:8 | | |
| Deposition of Kenneth Lee, Jr. | 198:3 - 198:18 | | |
| Deposition of Kenneth Lee, Jr. | 198:25 - 199:10 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 79:11 - 79:14 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 79:23 - 79:25 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 81:16 - 81:22 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 100:14 - 101:22 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 102:21 - 102:23 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 106:21 - 107:7 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 108:18 - 109:13 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 109:25 - 112:4 | | |

117

| | | | |
|---|---|---|---|
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 113:11 - 114:21 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 117:10 - 117:13 | | |
| Trial Testimony of Kenneth Lee, Jr. (Trial Transcript Vol. II) | 117:19 - 117:21 | | |
| Deposition of Seth Rudnick | 7:7 - 7:8 | | |
| Deposition of Seth Rudnick | 7:24 - 8:2 | | |
| Deposition of Seth Rudnick | 9:21 - 9:24 | | |
| Deposition of Seth Rudnick | 10:4 - 10:6 | | |
| Deposition of Seth Rudnick | 10:13 - 10:19 | | |
| Deposition of Seth Rudnick | 10:23 - 11:24 | | |
| Deposition of Seth Rudnick | 12:5 - 13:10 | | |
| Deposition of Seth Rudnick | 13:15 - 13:17 | | |
| Deposition of Seth Rudnick | 13:21 - 14:15 | | |
| Deposition of Seth Rudnick | 16:11 - 16:20 | | |
| Deposition of Seth Rudnick | 17:25 - 18:15 | FRE 401/402: Irrelevant | overruled |
| Deposition of Seth Rudnick | 18:20 - 19:15 | FRE 401/402: Irrelevant | overruled |
| Deposition of Seth Rudnick | 20:3 - 20:11 | FRE 401/402: Irrelevant | overruled |
| Deposition of Seth Rudnick | 20:20 - 21:13 | | |
| Deposition of Seth Rudnick | 21:18 - 22:23 | | |
| Deposition of Seth Rudnick | 23:11 - 23:19 | | |
| Deposition of Seth Rudnick | 23:24 - 24:15 | FRE 401/402: Irrelevant | overruled |
| Deposition of Seth Rudnick | 24:20 - 24:23 | FRE 401/402: Irrelevant | overruled |
| Deposition of Seth Rudnick | 25:15 - 26:21 | | |
| Deposition of Seth Rudnick | 27:7 - 28:12 | FRE 401/402: Irrelevant | overruled |
| Deposition of Seth Rudnick | 29:9 - 30:18 | | |
| Deposition of Seth Rudnick | 31:19 - 32:17 | FRE 401/402: Irrelevant | sustained |
| Deposition of Seth Rudnick | 33:16 - 33:19 | | |
| Deposition of Seth Rudnick | 34:9 - 34:10 | | |
| Deposition of Seth Rudnick | 34:18 - 35:2 | | |
| Deposition of Seth Rudnick | 36:3 - 36:20 | | |
| Deposition of Seth Rudnick | 37:9 – 38: 2 | | |
| Deposition of Seth Rudnick | 39:4 - 39:22 | | |
| Deposition of Seth Rudnick | 43:5 - 43:17 | | |
| Deposition of Seth Rudnick | 43:23 – 44:17 | | |
| Deposition of Seth Rudnick | 46:24 - 47:10 | | |
| Deposition of Seth Rudnick | 52:2 - 52:17 | | |
| Deposition of Seth Rudnick | 56:6 - 56:18 | | |
| Deposition of Seth Rudnick | 63:12 - 63:17 | | |
| Deposition of Seth Rudnick | 64:2 - 64:5 | FRE 401/402: Irrelevant | sustained |
| Deposition of Seth Rudnick | 65:18 - 67:15 | | |
| Deposition of Seth Rudnick | 68:20 - 68:23 | | |
| Deposition of Seth Rudnick | 69:3 - 69:20 | | |
| Deposition of Seth Rudnick | 69:22 - 70:22 | | |

118

| | | | |
|---|---|---|---|
| Deposition of Seth Rudnick | 72:13 - 72:21 | | |
| Deposition of Seth Rudnick | 74:20 - 75:2 | | |
| Deposition of Seth Rudnick | 75:22 - 75:24 | | |
| Deposition of Seth Rudnick | 76:13 - 76:20 | | |
| Deposition of Seth Rudnick | 77:22 - 78:16 | | |
| Deposition of Seth Rudnick | 78:19 - 80:11 | FRE 401/402: Irrelevant | overruled |
| Deposition of Seth Rudnick | 83:6 – 84:21 | | |
| Deposition of Phillip Gross | 7:6 - 7:13 | | |
| Deposition of Phillip Gross | 12:21 - 12:24 | | |
| Deposition of Phillip Gross | 88:24 - 89:8 | | |
| Deposition of Phillip Gross | 98:13 - 100:11 | | |
| Deposition of Phillip Gross | 109:4 - 109:15 | | |
| Deposition of Phillip Gross | 143:11 - 144:6 | | |
| Deposition of Phillip Gross | 144:25 - 145:10 | | |
| Deposition of Phillip Gross | 185:24 - 188:10 | FRE 401/402: Irrelevant | overruled |
| Deposition of Phillip Gross | 193:4 - 194:3 | | |
| Deposition of Phillip Gross | 200:5 - 201:2 | FRE 401/402: Irrelevant | overruled |
| Deposition of Phillip Gross | 241:11 - 241:21 | | |
| Deposition of Phillip Gross | 243:5 - 243:12 | | |
| Deposition of Phillip Gross | 244:4 - 246:12 | | |
| Deposition of Phillip Gross | 250:4 - 252:5 | | |
| Deposition of Phillip Gross | 268:14 - 269:5 | | |
| Deposition of Phillip Gross | 273:21 - 274:23 | | |
| Deposition of Phillip Gross | 297:7 - 299:21 | FRE 602: Lacks foundation | overruled |
| Deposition of Phillip Gross | 313:8 - 313:15 | | |
| Deposition of Phillip Gross | 314:13 - 317:16 | FRE 602: Lacks foundation | sustained |
| Deposition of Phillip Gross | 337:22 - 338:3 | | |
| Deposition of Phillip Gross | 347:8 - 347:24 | | |
| Deposition of Judd Hartman | 7:16 - 8:13 | | |
| Deposition of Judd Hartman | 9:12 - 9:24 | | |
| Deposition of Judd Hartman | 11:2 – 11:7 | | |
| Deposition of Judd Hartman | 14:8 - 14:25 | | |
| Deposition of Judd Hartman | 137:21 - 138:2 | FRE 401/402: Irrelevant | sustained |
| Deposition of Judd Hartman | 139:8 - 140:2 | | |
| Deposition of Judd Hartman | 142:19 - 145:16 | FRE 401/402: Irrelevant | sustained |
| Deposition of Judd Hartman | 145:22 - 148:14 | FRE 401/402: Irrelevant | sustained |
| Deposition of Judd Hartman | 162:17 - 164:22 | FRE 401/402: Irrelevant | sustained |
| Deposition of Judd Hartman | 246:3 - 246:9 | | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. II) | 122:11 - 122:12 | | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. II) | 122:17 - 122:19 | | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. II) | 123:11 - 123:15 | | |
| Trial Testimony of Judd Hartman | 123:20 - 123:22 | | |

119

| | | |
|---|---|---|
| (Trial Transcript Vol. II) | | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. II) | 124:2 - 124:6 | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. II) | 125:18 - 125:23 | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. III) | 7:22 - 7:25 | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. III) | 8:15 - 8:18 | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. III) | 8:22 - 10:5 | |
| Trial Testimony of Judd Hartman (Trial Transcript Vol. III) | 22:1 - 22:21 | |
| Trial Testimony of Ann Marie Cisneros (Trial Transcript Vol. III) | 167:17 - 167:25 | |
| Trial Testimony of Ann Marie Cisneros (Trial Transcript Vol. III) | 177:10 - 177:20 | |
| Trial Testimony of Ann Marie Cisneros (Trial Transcript Vol. III) | 186:4 - 186:13 | |
| Trial Testimony of Ann Marie Cisneros (Trial Transcript Vol. III) | 187:23 - 189:12 | |
| Trial Testimony of Ann Marie Cisneros (Trial Transcript Vol. III) | 189:20 - 189:25 | |
| Trial Testimony of Ann Marie Cisneros (Trial Transcript Vol. III) | 204:8 - 204:24 | |

## C. Dr. Eshelman's Counter-Designations of Pleadings and Discovery Materials.

| Document | Portion | Puma's Objections |
|---|---|---|
| Deposition transcript of Kimberly Batten | 7:16-8:5 | |
| Deposition transcript of Kimberly Batten | 9:22-9:23 | |
| Deposition transcript of Kimberly Batten | 10:2-10:4 | |
| Deposition transcript of Kimberly Batten | 10:6-11:9 | |
| Deposition transcript of Kimberly Batten | 11:11-11:19 | |

120

| Document | Portion | Puma's Objections | |
|---|---|---|---|
| Deposition transcript of Kimberly Batten | 11:21-12:4 | FRE 401 & 402 | overruled |
| Deposition transcript of Kimberly Batten | 13:6-14:12 | | |
| Deposition transcript of Kimberly Batten | 14:21-15:2 | | |
| Deposition transcript of Kimberly Batten | 15:8-15:8 | | |
| Deposition transcript of Kimberly Batten | 15:10-15:18 | | |
| Deposition transcript of Kimberly Batten | 15:25-16:13 | | |
| Deposition transcript of Kimberly Batten | 27:4-27:8 | | |
| Deposition transcript of Kimberly Batten | 28:8-28:15 | | |
| Deposition transcript of Kimberly Batten | 28:19-29:11 | | |
| Deposition transcript of Kimberly Batten | 31:2-32:3 | | |
| Deposition transcript of Kimberly Batten | 40:10-40:17 | | |
| Deposition transcript of Kimberly Batten | 41:21-42:11 | FRE 401 & 402 | overruled |
| Deposition transcript of Kimberly Batten | 43:18-43:21 | | |
| Deposition transcript of Kimberly Batten | 43:25-44:4 | | |
| Deposition transcript of James Daly | 11:3-12:9 | | |

121

| Document | Portion | Puma's Objections |
|---|---|---|
| Deposition transcript of James Daly | 13:8-13:14 | |
| Deposition transcript of James Daly | 14:7-14:24 | |
| Deposition transcript of James Daly | 17:10-17:20 | |
| Deposition transcript of James Daly | 20:8-20:17 | |
| Deposition transcript of James Daly | 20:21-23:14 | |
| Deposition transcript of James Daly | 25:11-25:20 | |
| Deposition transcript of James Daly | 27:4-28:14 | |
| Deposition transcript of James Daly | 41:9-42:2 | |
| Deposition transcript of James Daly | 53:18-54:6 | |
| Deposition transcript of James Daly | 54:23-55:8 | |
| Deposition transcript of April Eshelman | 15:14-16:2 | |
| Deposition transcript of April Eshelman | 16:23-17:13 | |
| Deposition transcript of April Eshelman | 17:24-18:8 | |
| Deposition transcript of April Eshelman | 19:3-19:17 | |
| Deposition transcript of April Eshelman | 20:4-20:13 | |

| Document | Portion | Puma's Objections |
|---|---|---|
| Deposition transcript of April Eshelman | 20:23-21:2 | |
| Deposition transcript of April Eshelman | 21:6-21:19 | |
| Deposition transcript of April Eshelman | 22:5-22:25 | |
| Deposition transcript of April Eshelman | 25:11-25:18 | |
| Deposition transcript of April Eshelman | 28:14-29:23 | |
| Deposition transcript of April Eshelman | 31:12-32:19 | |
| Deposition transcript of April Eshelman | 32:21-33:20 | |
| Deposition transcript of April Eshelman | 41:3-42:7 | |
| Deposition transcript of April Eshelman | 45:3-45:12 | |
| Deposition transcript of April Eshelman | 47:22-48:2 | |
| Deposition transcript of April Eshelman | 48:16-51:6 | |
| Deposition transcript of April Eshelman | 51:21-51:24 | |
| Deposition transcript of April Eshelman | 52:2-52:3 | |
| Deposition transcript of April Eshelman | 53:23-54:18 | |
| Deposition transcript of April Eshelman | 69:12-69:19 | |

| Document | Portion | Puma's Objections | |
|---|---|---|---|
| Deposition transcript of April Eshelman | 70:2-70:24 | | |
| Deposition transcript of April Eshelman | 72:17-74:9 | | |
| Deposition transcript of April Eshelman | 74:18-74:25 | | |
| Deposition transcript of April Eshelman | 75:7-75:21 | | |
| Deposition transcript of April Eshelman | 76:19-77:5 | | |
| Deposition transcript of April Eshelman | 81:5-81:13 | | |
| Deposition transcript of Phillip Gross | 40:12-41:6 | | |
| Deposition transcript of Phillip Gross | 57:9-57:21 | | |
| Deposition transcript of Phillip Gross | 69:4–24 | | |
| Deposition transcript of Philip Gross | 70:2–6 | | |
| Deposition transcript of Philip Gross | ~~72:2-72:15~~ 71:21 - 72:18 | FRE 106: This designation does not include full questions and answers | overruled |
| Deposition transcript of Phillip Gross | 89:9-90:17 | | |
| Deposition transcript of Phillip Gross | 92:5-92:25 | | |
| Deposition transcript of Phillip Gross | 97:24-98:7 | FRE 602 & 901 | overruled |
| Deposition transcript of Phillip Gross | 337:6-337:21 | FRE 602 & 901 | |

124

| Document | Portion | Puma's Objections | |
|----------|---------|-------------------|---|
| Deposition transcript of Judd Hartman | 138:3-138:20 | | |
| Deposition transcript of Kenneth B. Lee | 8:20-8:24 | | |
| Deposition transcript of Kenneth B. Lee | 15:13-16:12 | | |
| Deposition transcript of Kenneth B. Lee | 17:21-17:24 | | |
| Deposition transcript of Kenneth B. Lee | 19:23-19:25 | FRE 106: This designation does not include full questions and answers | overruled |
| Deposition transcript of Kenneth B. Lee | 30:4-30:12 | | |
| Deposition transcript of Kenneth B. Lee | 33:2-33:2 | FRE 106: This designation does not include full questions and answers | overruled (in Δ's designation) |
| Deposition transcript of Kenneth B. Lee | 33:5-33:12 | | |
| Deposition transcript of Kenneth B. Lee | 40:8-40:12 | FRE 106: This designation does not include full questions and answers | overruled |
| Deposition transcript of Kenneth B. Lee | 45:25-46:8 | | |
| Deposition transcript of Kenneth B. Lee | 46:2-46:8 | FRE 403: This is a duplicate designation | not duplied ; overruled |
| Deposition transcript of Kenneth B. Lee | 50:23-51:11 | | |
| Deposition transcript of Kenneth B. Lee | 53:14-53:15 | | |
| Deposition transcript of Kenneth B. Lee | 55:14-55:15 | | |

Case 7:16-cv-00018-D   Document 555   Filed 11/02/22   Page 125 of 137

| Document | Portion | Puma's Objections | |
|---|---|---|---|
| Deposition transcript of Kenneth B. Lee | 55:18-55:19 | | |
| Deposition transcript of Kenneth B. Lee | 57:19-20 | FRE 401, 402, and 611: This testimony is irrelevant and outside the scope of cross | overruled |
| Deposition transcript of Kenneth B. Lee | 57:23-57:25 | FRE 401, 402, and 611: This testimony is irrelevant and outside the scope of cross | overruled |
| Deposition transcript of Kenneth B. Lee | 59:19-59:21 | | |
| Deposition transcript of Kenneth B. Lee | 60:2-60:8 | | |
| Deposition transcript of Kenneth B. Lee | 66:10-67:15 | | |
| Deposition transcript of Kenneth B. Lee | 70:19-71:2 | | |
| Deposition transcript of Kenneth B. Lee | 78:4-78:8 | | |
| Deposition transcript of Kenneth B. Lee | 80:2-80:14 | | |
| Deposition transcript of Kenneth B. Lee | 81:20-82:10 | | |
| Deposition transcript of Kenneth B. Lee | 94:2-94:25 95:11 | FRE 106: This designation does not include full questions and answers | overruled |
| Deposition transcript of Kenneth B. Lee | 95:2-95:11 | | |
| Deposition transcript of Kenneth B. Lee | 96:7-96:18 | | |
| Deposition transcript of Kenneth B. Lee | 97:14-98:2 | | |

126

| Document | Portion | Puma's Objections |
|---|---|---|
| Deposition transcript of Kenneth B. Lee | 98:6-98:12 | |
| Deposition transcript of Kenneth B. Lee | 101:21-101:23 | |
| Deposition transcript of Kenneth B. Lee | 102:16-19 | |
| Deposition transcript of Kenneth B. Lee | 106:25-107:13 | |
| Deposition transcript of Kenneth B. Lee | 116:8-116:9 | |
| Deposition transcript of Kenneth B. Lee | 126:20-127:8 | |
| Deposition transcript of Kenneth B. Lee | 128:2-128:3 | FRE 106: This designation does not include full questions and answers |
| Deposition transcript of Kenneth B. Lee | 128:8-128:10 | |
| Deposition transcript of Kenneth B. Lee | 134:18-135:6 | |
| Deposition transcript of Kenneth B. Lee | 141:9-141:15 | |
| Deposition transcript of Kenneth B. Lee | 142:2-142:5 | |
| Deposition transcript of Kenneth B. Lee | 149:11-149:23 | |
| Deposition transcript of Kenneth B. Lee | 158:3-158:12 | |
| Deposition transcript of Kenneth B. Lee | 161:12-161:20 | |
| Deposition transcript of Kenneth B. Lee | 164:13-164:24 | |

*[handwritten annotation next to 128:2-128:3 row]* not relevant; sustained

127

| Document | Portion | Puma's Objections | |
|----------|---------|-------------------|---|
| Deposition transcript of Kenneth B. Lee | 174:25-175:3 | FRE 106: This designation does not include full questions and answers | sustained |
| Deposition transcript of Kenneth B. Lee | 195:11-195:25 | FRE 106: This designation does not include full questions and answers | overruled |
| Deposition transcript of Kenneth B. Lee | 197:15-197:17 | | |
| Deposition transcript of Ashley Miller | 10:23-11:6 | | |
| Deposition transcript of Ashley Miller | 11:11-11:18 | | |
| Deposition transcript of Ashley Miller | 19:7-19:20 | FRE 611: This testimony is outside the scope of cross | sustained |
| Deposition transcript of Ashley Miller | 22:3-22:15 | | |
| Deposition transcript of Ashley Miller | 23:13-24:2 | FRE 611: The line of questioning is vague and ambiguous | overruled |
| Deposition transcript of Ashley Miller | 26:6-26:24 | | |
| Deposition transcript of Ashley Miller | 29:2-29:24 | | |
| Deposition transcript of Ashley Miller | 30:6-30:10 | | |
| Deposition transcript of Ashley Miller | 31:18-31:21 | | |
| Deposition transcript of Ashley Miller | 33:21-33:22 | | |
| Deposition transcript of Ashley Miller | 35:10-35:24 | | |

128

| Document | Portion | Puma's Objections | |
|---|---|---|---|
| Deposition transcript of Ashley Miller | 36:4-36:15 | | |
| Deposition transcript of Ashley Miller | 39:3-39:24 | | |
| Deposition transcript of Ashley Miller | 40:3-40:10 | FRE 602 & 901 | overruled |
| Deposition transcript of Ashley Miller | 40:13-40:17 | FRE 602 & 901 | overruled |
| Deposition transcript of Ashley Miller | 41:19-41:20 | FRE 602 & 901 | overruled |
| Deposition transcript of Ashley Miller | 41:23-41:23 | FRE 611: This testimony is outside the scope of cross | overruled |
| Deposition transcript of Ashley Miller | 41:25-42:13 | FRE 611: This testimony is outside the scope of cross | overruled |
| Deposition transcript of Ashley Miller | 42:15-42:16 | FRE 611: This testimony is outside the scope of cross | overruled |
| Deposition transcript of Mariann Ohanesian | 56:17-57:19 | | |
| Deposition transcript of Ashley Miller | 42:18-43:23 | | |
| Deposition transcript of Seth Rudnick | 13:19-13:20 | FRE 106: This designation does not include full questions and answers | sustained |
| Deposition transcript of Seth Rudnick | 21:14-21:17 | | |
| Deposition transcript of Seth Rudnick | 24:16-24:19 | | |
| Deposition transcript of Seth Rudnick | 24:24-25:5 | | |
| Deposition transcript of Seth Rudnick | 32:18-32:25 | | |

| Document | Portion | Puma's Objections |
|----------|---------|-------------------|
| Deposition transcript of Seth Rudnick | 33:20-34:8 | |
| Deposition transcript of Seth Rudnick | 35:13-35:25 | |
| Deposition transcript of Seth Rudnick | 36:2-36:2 | |
| Deposition transcript of Seth Rudnick | 38:3-38:6 | |
| Deposition transcript of Seth Rudnick | 39:24-39:25 | |
| Deposition transcript of Seth Rudnick | 40:5-40:22 | |
| Deposition transcript of Seth Rudnick | 53:5-53:24 | |
| Deposition transcript of Seth Rudnick | 76:22-76:25 | |
| Deposition transcript of Seth Rudnick | 77:2-77:7 | |
| Jury Trial - Volume II - March 11, 2019: K. Lee | 102:5–102:15 | |
| Jury Trial - Volume II - March 11, 2019: K. Lee | 102:24–103:8 | |
| Jury Trial - Volume II - March 11, 2019: K. Lee | 106:15–106:20 | |
| Jury Trial - Volume III - March 12, 2019: Judd Hartman | 10:6-11:15 | FRE 611: This testimony is outside the scope of cross  overruled |
| Jury Trial - Volume III - March 12, 2019: Judd Hartman | 11:22-14:6 | FRE 106: This designation does not include full questions and answers  overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie | 177:21-178:8 | FRE 611: This testimony is outside the scope of cross  overruled |

130

| Document | Portion | Puma's Objections | |
|----------|---------|-------------------|---|
| Cisneros | | | |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 186:14-187:6 | FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 192:2-192:8 | FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 192:11-193:23 | FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 194:5-196:8 | FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 196:9-196:12 | FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 197:20-197:25 | FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 198:5-198:11 | FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 199:1-198:6  199:6 | This designation does not provide notice as to what testimony it intends to designate | |
| | | If the designation is 199:1-199:6: FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 200:13-201:11 | FRE 611: This testimony is outside the scope of cross | overruled |
| Jury Trial - Volume III - March 12, 2019: Ann Marie | 201:16-202:4 | FRE 611: This testimony is outside the scope of cross | overruled |

| Document | Portion | Puma's Objections |
|---|---|---|
| Cisneros | | |
| Jury Trial - Volume III - March 12, 2019: Ann Marie Cisneros | 202:10-202:17 | |

## V.   WITNESSES.

### A.   Dr. Eshelman's Proposed Witnesses.

Puma objects pursuant to Federal Rules of Evidence 401, 403, and 602 to Eshelman's inclusion of Special Agent Robert J. West and Ms. Anne Marie Cisneros on his witness list. West's and Cisneros's anticipated testimony regarding the Ketek clinical trial fraud was introduced in the original trial because it was relevant to liability, but it is not be relevant to the question of Eshelman's damages. Neither witness can testify to the "the probable extent of actual harm" that is "a direct and natural consequence" of the statements in the investor presentation. Nor do they have knowledge related to compensatory damages, including whether the Investor Presentation was "widely circulated" or whether Eshelman suffered "other comparable harm" as a result of its publication. West and Cisneros also do not have any personal knowledge of Puma's or Auerbach's intent, motives, and state of mind when publishing the Investor Presentation, or any other conduct that would be relevant to punitive damages. Finally, West's and Cisneros' testimony would only confuse the jury, waste time, and lead to yet another mini-trial on whether PPD bears some culpability for the clinical trial fraud and whether Eshelman had any involvement.

| Name and Address | Proposed Testimony | Intends to Call / May Call | Puma's Objections |
|---|---|---|---|
| Dr. Fredric Eshelman c/o Counsel for Dr. Eshelman | Dr. Eshelman's experience, reputation, and dealings with Puma; falsity of Puma's accusations; the Ketek clinical | Intends to call | No objection |

| Name and Address | Proposed Testimony | Intends to Call / May Call | Puma's Objections |
|---|---|---|---|
| | trial; Dr. Eshelman's 2009 promotion from CEO and Vice Chairman of PPD's board to Executive Chairman of PPD's board; harm experienced as a result of Puma's false accusations. | | |
| Mr. Ken Lee c/o Counsel for Dr. Eshelman | Dr. Eshelman's experience, reputation, and dealings with Puma; harm experienced as a result of Puma's false accusations; Puma's misleading statements to Dr. Eshelman and other stockholders; falsity of Puma's accusations. | Intends to call | No objection |
| Special Agent Robert J. West (by video deposition designations) 3155 Evelyn Ct. Franklin, TN 37064-2525 (615)-790-3943 | Dr. Eshelman's reputation; seriousness of fraud allegations; falsity of Puma's accusations; the Ketek clinical trial. | Intends to call | FRE 401, 403, and 602   overruled |
| Ms. Anne Marie Cisneros 2474 Walnut Street #194 Cary, NC 27518 (919)-604-4399 | Falsity of Puma's accusations; the Ketek clinical trial. | May call | FRE 401, 403, and 602   overruled |
| Mr. Judd Hartman c/o Mr. John Huske Anderson Jr. McGuire Woods LLP 300 North Third Street, Suite 320 Wilmington, NC 28401-4099 (910)-254-3828 | Dr. Eshelman's reputation; falsity of Puma's accusations; Dr. Eshelman's 2009 promotion from CEO and Vice Chairman of PPD's board to Executive Chairman of PPD's board; the Ketek clinical trial. | Intends to call | No objection |
| Mr. Alan Auerbach c/o Counsel for Puma | Puma's dealings with Dr. Eshelman and other stockholders; Puma's actual malice, including its hostility toward Dr. Eshelman and its | Intends to call | No objection |

| Name and Address | Proposed Testimony | Intends to Call / May Call | Puma's Objections |
|---|---|---|---|
| | intentional disregard for the truth about Dr. Eshelman. | | |
| Puma Biotechnology, Inc. (by video deposition designations of Puma's Rule 30(b)(6) corporate representatives) c/o Counsel for Puma | Puma's actual malice; the scope of Puma's publication of the defamatory investor presentation. | May call | No objection |
| Mr. Frank Zavrl c/o Counsel for Puma | Harm resulting from Puma's false accusations; Puma's misleading statements to Dr. Eshelman and other stockholders; Puma's actual malice, including the board's longstanding and ongoing disregard for the truth and Dr. Eshelman. | Intends to call | No objection |
| Ms. Mariann Ohanesian (by video deposition designations) c/o Counsel for Puma | Puma's actual malice, including its hostility toward Dr. Eshelman and its intentional disregard for the truth about Dr. Eshelman. | May call | No objection |
| Dr. Seth A. Rudnick c/o Counsel for Dr. Eshelman | Dr. Eshelman's experience, reputation, and dealings with Puma; harm experienced as a result of Puma's false accusations. | Intends to call | No objection |
| Mr. James M. Daly c/o Counsel for Dr. Eshelman | Dr. Eshelman's experience, reputation, and dealings with Puma; harm experienced as a result of Puma's false accusations. | May call | No objection |
| Ms. Kimberly Batten c/o Counsel for Dr. Eshelman | Dr. Eshelman's reputation and charitable endeavors. | May call | No objection |
| Mr. Norman Harrison c/o Counsel for Dr. Eshelman | The harm Dr. Eshelman experienced as a result of Puma's false accusations; the scope of Puma's publication of the defamatory investor presentation. | Intends to call | No objection |

## B. Puma's Proposed Witnesses.

| Witness | Compensatory/Punitive | Anticipated Testimony | Objections |
|---------|----------------------|----------------------|-----------|
| Frederic Eshelman | Will call for compensatory damages<br><br>May call for punitive damages | Eshelman's reputation, (lack of) harm from defamatory statements, proxy contest context and timing. | |
| Alan Auerbach | May call for compensatory damages<br><br>Will call for punitive damages | Proxy contest context and timing, Puma's public disclosures, (lack of) harm from defamatory statements, discussions with Puma shareholders, Puma's motives and conduct, and other factors relevant to punitive damages. | |
| Jason Frankl | Will call for compensatory damages | As disclosed in expert report and deposition. | |
| Troy Wilson | May call for compensatory and/or punitive damages | Proxy contest context and timing, (lack of) harm to Eshelman's reputation, Puma's motives and conduct, other factors relevant to punitive damages. | |
| Mariann Ohanesian | May call for compensatory and/or punitive damages | Proxy contest context and timing, discussions with Puma shareholders, Puma's motives and conduct, other factors relevant to punitive damages. | |

135

| | | | |
|---|---|---|---|
| Jay Moyes | May call for punitive damages | Puma's motives and conduct, other factors relevant to punitive damages. | |

Dr. Eshelman objects to Puma using deposition or trial testimony without satisfying the requirements of Federal Rule of Civil Procedure 32(a). At minimum, Puma should not be permitted to present deposition or trial testimony from witnesses who appear live.

**To be called by designated deposition and/or trial testimony:**

| Name and Address | Proposed Testimony | Dr. Eshelman's Objections |
|---|---|---|
| Ashley Miller | Eshelman's reputation, (lack of) harm from defamatory statements | |
| Kimberly Batten | Eshelman's reputation, (lack of) harm from defamatory statements | |
| April Eshelman | Eshelman's reputation, (lack of) harm from defamatory statements | |
| James Daly | Proxy contest context and timing, (lack of) harm to Eshelman's reputation, other factors relevant to punitive damages. | |
| Kenneth Lee, Jr. | Proxy contest context and timing, (lack of) harm to Eshelman's reputation, other factors relevant to punitive damages. | |
| Seth Rudnick | Proxy contest context and timing, (lack of) harm to Eshelman's reputation, other factors relevant to punitive damages. | |
| Phillip Gross | Proxy contest context and timing, (lack of) harm to Eshelman's reputation, Puma's | |

136

| Name and Address | Proposed Testimony | Dr. Eshelman's Objections |
|---|---|---|
| | motives and conduct, other factors relevant to punitive damages. | |
| Judd Hartman | Ketek clinical trial fraud and related Congressional testimony. | |
| Ann Marie Cisneros | Ketek clinical trial fraud and related Congressional testimony. | |

APPROVED. This **2** day of November, 2022.

JAMES C. DEVER III
United States District Judge

137